1  **BRYAN CAVE LLP**
   ROBERT E. BOONE III (SBN 132780)
2  NAFIZ CEKIRGE (SBN 255710)
   ROBERT G. LANCASTER (SBN 257504)
3  120 Broadway, Suite 300
   Santa Monica, California  90401-2386
4  Telephone:  (310) 576-2100
   Facsimile:   (310) 576-2200
5  E-Mail:       reboone@bryancave.com
                 nafiz.cekirge@bryancave.com
6                rglancaster@bryancave.com

7  Attorneys for Plaintiffs
   COUNTRYWIDE HOME LOANS, INC.,
8  BANK OF AMERICA CORPORATION and
   BANK OF AMERICA, N.A.

9
                    UNITED STATES DISTRICT COURT
10       CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

11 COUNTRYWIDE HOME LOANS,              Case No. 8:12-cv-00242-CJC-AN
   INC.; BANK OF AMERICA
12 CORPORATION; BANK OF
   AMERICA, N.A.                        ***EX PARTE* APPLICATION FOR A
13                                      TEMPORARY RESTRAINING
                   Plaintiffs,          ORDER TO STOP DEFENDANTS
14                                      FROM INFRINGING THE
          v.                            AMERICA'S WHOLESALE
15                                      LENDER® TRADEMARK AND
   AMERICA'S WHOLESALE                  "AMERICA'S WHOLESALE
16 LENDER, INC., a New York             LENDER" NAME AND ORDER
   Corporation, DENNIS L. BELL, an      TO SHOW CAUSE RE:
17 individual; CHERI B. ENGLISH, an     PRELIMINARY INJUNCTION;
   individual, JAN VAN ECK (a/k/a       MEMORANDUM OF POINTS
18 HERMAN JAN VAN ECK a/k/a             AND AUTHORITIES
   MAURITZ VAN ECK a/k/a
19 MAURICE VAN ECK a/k/a MARITZ         [Filed Concurrently with Declaration
   VAN ECK a/k/a GEORGE TOMAS),         of Devra Lindgren; Declaration of
20 an individual; and DOES 1-100,       Renell Welch; Declaration of Nafiz
                                        Cekirge; Request for Judicial Notice;
21                 Defendants.          and [Proposed] Temporary
                                        Restraining Order]
22
                                        Date Filed: February 13, 2012
23                                      Trial Date: None

24

25

26

27

28

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 7, 2012, in Department 9B of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California 92701, Plaintiffs Countrywide Home Loans, Inc., Bank of America Corporation and Bank of America, N.A. (collectively, "Plaintiffs") will, and hereby do, apply *ex parte* for a temporary restraining order to stop Defendants America's Wholesale Lender, Inc. ("AWLI"), Dennis L. Bell, Cheri B. English and Jan van Eck (a/k/a Herman Jan Van Eck a/k/a Mauritz Van Eck a/k/a Maurice Van Eck a/k/a Maritz Van Eck a/k/a George Tomas) (collectively, "Defendants"), from infringing the America's Wholesale Lender® trademark and the "America's Wholesale Lender" name and impersonating CHL and an order to show cause regarding a preliminary injunction.

Plaintiffs further state as follows in compliance Local Rule 7-19-7-19.2

**I.    Contact Information For Opposing Counsel (L.R. 7-19)**

The contact information for counsel for AWLI, Bell and English is: Steve C. Vondran, Esquire (SBN 232337), Vondran Law, 620 Newport Center Drive, Suite 1100, Newport Beach, CA 92660, tel.: (877) 276-5084, fax: (888) 551-2252, e-mail steve@vondranlaw.com.

Van Eck does not have counsel.  His contact information is: 24 Ebony Lane, Ivoryton, CT 06442, tel.: (860) 767-5032, e-mail: georgeatawl@gmail.com (unverified) and dutchman4753@gmail.com (unverified).

**II.    Reasons For Seeking Ex Parte Relief (L.R. 7-19)**

As more fully described in the accompanying Memorandum of Points and Authorities, Plaintiffs seek *ex parte* relief because they need the Court's immediate intervention to stop Defendants' ongoing fraudulent scheme to impersonate Plaintiff Countrywide' Home Loans, Inc. by infringing its trade mark and trade name.

Defendants' fraudulent conduct is irreparably harmful to Plaintiffs because it causes Plaintiffs to lose control over their business reputation and good will.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009)

2  ("In trademark cases, courts have found irreparable harm in the loss of control of a

3  business' reputation, a loss of trade and loss of goodwill.")

4        There is a substantial risk that Defendants will continue, and even accelerate,

5  their fraudulent conduct during the notice period of a regularly noticed motion for a

6  preliminary injunction, so that they can profit from their fraudulent scheme as much

7  as possible before an injunction issues.  Given Defendants' history of fraudulent

8  conduct, an *ex parte* temporary restraining order is appropriate.  *See Kremen v.*

9  *Cohen*, 2011 U.S. Dist. LEXIS 141273, at *20-*22 (holding that an *ex parte*

10  temporary restraining order is appropriate because the defendant's "extensive

11  history of evasive and abusive conduct" makes it likely that the defendant "will

12  attempt to secret away or dissipate the assets in their control if given notice").

13        If a temporary restraining order is not granted, the harm to Plaintiffs and the

14  public at large is great in that the land records will continue to be muddied and

15  Plaintiffs and borrowers will continue to be defrauded.  On the other hand, if a

16  temporary restraining is granted, all that Defendants temporarily lose is their ability

17  to commit fraud.

18  **III.   Notice Requirements And Waiver of Notice (L.R. 7-19.1 & 7-19.2)**

19        Notice has been given to all parties.  (Declaration of Nafiz Cekirge ("Cekirge

20  Decl.") ¶¶ 2-10.)  Therefore, the requirements of  Federal Rule of Civil Procedure

21  65(b) and Local Rule 7-19.2 are inapplicable.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    The *ex parte* application is based upon the accompanying Memorandum of

2 Points and Authorities, the concurrently filed Declaration of Devra Lindgren, the

3 concurrently filed Declaration of Renell Welch; the concurrently filed Declaration

4 of Nafiz Cekirge, the concurrently filed Request for Judicial Notice and the

5 concurrently filed Proposed Temporary Restraining Order and all other matters that

6 the Court may consider.

7

8 DATED:  March 7, 2012                    Respectfully submitted,

9                                                          **BRYAN CAVE LLP**

10                                                         By:   ___/s/ Nafiz Cekirge_____

11                                                               NAFIZ CEKIRGE

12                                                         Attorneys for Defendants
                                                              Countrywide Home Loans, Inc.
13                                                         Bank of America Corporation
                                                              and Bank of America, N.A.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# **Table of Contents**

**Page**

I.  INTRODUCTION ................................................................. 1

II. FACTUAL BACKGROUND .................................................. 1

    A.  CHL's Wholesale Lending Business ..................................... 1

    B.  The "America's Wholesale Lender" Fictitious Business Name And The AMERICA'S WHOLESALE LENDER® Mark ................... 2

    C.  The "America's Wholesale Lender" Fictitious Business Name and AMERICA'S WHOLESALE LENDER® Mark Are Well Known ........................................................................... 3

    D.  Bell Incorporated "America's Wholesale Lender, Inc." Solely For Fraudulent Purposes ................................................. 3

    E.  There Is No Indication that AWLI Conducts Any Legitimate Business ...................................................................... 13

III. THE STANDARD FOR OBTAINING A TEMPORARY RESTRAINING ORDER ...................................................... 13

IV. THERE IS A LIKELIHOOD PLAINTIFFS WILL SUCCEED ON THE MERITS .................................................................. 14

    A.  The Trademark Infringement And False Designation of Origin Claims ........................................................................ 14

        1.  AMERICA'S WHOLESALE LENDER® Is A Valid, Protectable Mark .................................................... 16

        2.  Defendants' Use Of The Name "America's Wholesale Lender, Inc." Is Likely To Cause Confusion ................ 16

    B.  Plaintiffs Are Likely To Prevail On Their UCL Claim ............ 20

V.  IRREPARABLE HARM ...................................................... 21

VI. THE BALANCE OF EQUITIES ............................................ 22

VII. THE PUBLIC INTEREST ................................................... 22

VIII. CONCLUSION ................................................................ 23

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## Table of Authorities

**Page**

### Cases

*Applied Info. Scis. Corp. v. eBay, Inc.*,
   511 F.3d 966 (9th Cir. 2007) ................................................................ 14, 15

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ...................................................................... 15

*Cal. Hosp. Ass'n v. Maxwell-Jolly*,
   No. Civ. S-10-3465 FCD/EFB, 2011 U.S. Dist. LEXIS 10523 (E.D. Cal.
   Jan. 28, 2011) ............................................................................................. 13

*Cal. Med. Ass'n v. Douglas*,
   Case No. CV 11-9688 CAS (MANx), 2012 U.S. Dist. LEXIS 12074 (C.D.
   Cal. Jan. 31, 2012) ...................................................................................... 13

*CytoSport, Inc. v. Vital Pharms., Inc.*,
   617 F. Supp. 2d 1051 (E.D. Cal. 2009) ....................................................... 20

*Electropix v. Liberty Livewire Co.*,
   178 F. Supp. 2d 1125 (C.D. Cal. 2001) ....................................................... 19

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
   618 F.3d 1025 (9th Cir. 2010) ...................................................................... 15

*Garrett v. City of Escondido*,
   465 F. Supp. 2d 1043 (S.D. Cal. 2006) ....................................................... 13

*Kendall-Jackson Winery, Ltd. V. E & J. Gallo Winery*,
   150 F.3d 1042 (9th Cir. 1998) ................................................................ 16, 17

*Mortgage Elec. Registration Sys. v. Brosnan*,
   No: C 09-3600 SBA, 2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4,
   2009) .....................................................................................................passim

*Paisa, Inc. v. N & G Auto*,
   928 F. Supp. 1009 (C.D. Cal. 1996) ............................................................ 21

*Plascencia v. Lending 1st Mortgage*,
   583 F. Supp. 2d 1090 (N.D. Cal. 2008) ....................................................... 20

*Williams v. Wells Fargo Bank, N.A.*,
   Case No. CV 10-4761 PA (PJWx), 2010 U.S. Dist. LEXIS 91158 (N.D.
   Cal. Aug. 9, 2010) ....................................................................................... 20

*Winter v. Natural Res. Def. Fund*,
   555 U.S. 7 (2008) ........................................................................................ 13

### Statutes

15 U.S.C. § 1059 ................................................................................................. 2

15 U.S.C. § 1065 ................................................................................................. 3

15 U.S.C. § 1114 ............................................................................................... 15

15 U.S.C. § 1116(a) .......................................................................................... 14

15 U.S.C. § 1125 ............................................................................................... 15

Cal. Bus. & Prof. Code § 17200 ................................................................. 14, 20

Cal. Bus. & Prof. Code § 17203 ................................................................14

**Rules**

Fed. R. Civ. P. 65(b) ................................................................................14

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     Introduction**

This is a case of outright fraud by Defendant Dennis Bell and his cohorts.

In 2008, Bell incorporated "America's Wholesale Lender, Inc." ("AWLI") in New York for the sole purpose of impersonating Countrywide Home Loans, Inc.'s ("CHL") registered and well-known fictitious business name, "America's Wholesale Lender," so that he could solicit unauthorized short payoffs of CHL mortgages from unknowing or complicit CHL borrowers.  Defendants took the cash from the payoffs and executed fraudulent releases or assignments of CHL's liens, purporting to extinguish these liens or assign them to AWLI.  Not coincidentally, CHL was also incorporated in New York over 40 years ago.

Bell also used the "America's Wholesale Lender, Inc." name to try to confess a $5.825 million judgment in his favor and to attempt to release three of his own mortgages with CHL.

This is not the first time that Bell has forayed into real estate fraud: he served jail time in California in the 1990s for felony offenses involving such fraud.

There is no reason to believe that Bell and his confederates have stopped their fraudulent activity.  Bell recorded a fraudulent document relating to the scheme as late as January 4, 2012.

This Court's immediate intervention is necessary to stop the irreparable harm that Defendants are causing to Plaintiffs' business reputation and goodwill, to prevent Defendants from defrauding Plaintiffs and their customers and to maintain the integrity of the land records.  This Court should issue a temporary restraining order enjoining Defendants' fraudulent conduct.

**II.     Factual Background**

    **A.     CHL's Wholesale Lending Business**

CHL was incorporated in New York on or about March 17, 1969. (Declaration of Devra Lindgren "Lindgren Decl." ¶ 6.)  CHL was in the business of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

making residential loans to consumers.  (Declaration of Renell Welch "Welch Decl." ¶ 8.)  CHL originated loans through three primary channels: retail, wholesale and correspondent.  (Welch Decl. ¶ 9.)  In the retail channel, CHL originated mortgage loans through its own employees at brick-and-mortar branch offices and call centers. (Welch Decl. ¶ 10.)  In the wholesale channel, CHL originated loans through third-party mortgage brokers.  (Welch Decl. ¶ 11.)  The broker would collect information from the borrower and submit the loan application to CHL for underwriting and approval.  (Welch Decl. ¶ 11.)  In the correspondent channel, CHL purchased completed loans originated by third party lenders that were in conformity with CHL's underwriting guidelines.  (Welch Decl. ¶ 12.)

**B.  The "America's Wholesale Lender" Fictitious Business Name And The AMERICA'S WHOLESALE LENDER® Mark**

On or about January 29, 1993, CHL began registering "America's Wholesale Lender" as a fictitious business name, so that it could conduct its wholesale business under that name.  (Lindgren Decl. ¶ 7.)  CHL registered "America's Wholesale Lender" as a fictitious business name in 49 of 50 states.  (Lindgren Decl. ¶ 8.)  The registration continues to be in effect in 46 of those states.  (Lindgren Decl. ¶ 9.)  CHL did not register "America's Wholesale Lender" as a fictitious business name in Mississippi and the District of Columbia because those jurisdictions provided no provisions for registering a fictitious business name.  (Lindgren Decl. ¶ 10.)

CHL also registered AMERICA'S WHOLESALE LENDER® as a federal service mark on January 10, 1995.  (Lindgren Decl. ¶ 11; Declaration of Nafiz Cekirge ("Cekirge Decl.") Ex. 1 at 6.)  As a result of its acquisition of Countrywide Financial Corporation and its family of companies, including CHL, Bank of America Corporation ("BAC") now owns the AMERICA'S WHOLESALE LENDER® mark.  (Lindgren Decl. ¶ 12; Cekirge Decl. Ex. 1 at 6.)  The mark is currently renewed until January 10, 2015.  *See* 15 U.S.C. § 1059.  The mark has been in continuous use over a five year period, (Lindgren Decl. ¶ 13), and is

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   therefore incontestable, *see* 15 U.S.C. § 1065.

2   **C.    The "America's Wholesale Lender" Fictitious Business Name and**

3   **AMERICA'S WHOLESALE LENDER® Mark Are Well Known**

4   "America's Wholesale Lender" is a trademark and fictitious business name

5   that is well-known by both the lending industry and the public at large.  CHL

6   originated over 3.5 million loans using the "America's Wholesale Lender" name.

7   (Welch Decl. ¶ 13.)  The notes and security instruments recorded in the land records

8   (*e.g.*, deeds of trust and mortgages) associated with most—if not all—of these loans

9   identify "America's Wholesale Lender" as the "lender."  (Welch Decl. ¶ 14.)

10   **D.    Bell Incorporated "America's Wholesale Lender, Inc." Solely For**

11   **Fraudulent Purposes**

12   On December 16, 2008, Bell—a convicted felon with a history of perpetrating

13   real estate fraud—incorporated "America's Wholesale Lender, Inc." in New York.[1]

14   (Cekirge Decl. Ex. 3 at 10-12.)

15   At the time Bell incorporated AWLI, he knew that CHL used the virtually

16   identical fictitious business name "America's Wholesale Lender."  On October 3,

17   2008—over two months before he incorporated AWLI—Bell admitted in a *pro se*

18   complaint that he filed in the United States District Court for the Western District of

19   Kentucky against CHL that CHL was "registered in the State of Kentucky as an

20   Assumed Name Corporation using the name and style of America's Wholesale

21   Lender."[2]  (Cekirge Decl Ex. 4 at 13.)

22   On December 18, 2008—a mere two days after Bell incorporated AWLI—

23   Defendant Cheri English, executed a confession of judgment as the "Executive Vice

---

24   [1]    On January 10, 1997, Bell was sentenced in the Superior Court of California
25   for Sutter County to a three-year state prison term in connection with convictions for
grand theft by false pretenses and perjury related to real estate fraud.  (Cekirge Decl.
26   Ex. 2 at 8.)
[2]    The *pro se* lawsuit was styled *Bell v. Countrywide Home Loans, Inc., et al.*,
27   5:08-vv-0167-JHM-ERG (W.D. Ky.)  It alleged wrongful origination and servicing
practices by CHL in connection with three mortgages that Bell obtained from CHL.
28   (Cekirge Decl Ex. 4 at 13-39.)

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

1   President" of "America's Wholesale Lender, Inc. a New York Corporation,"

2   purporting to confess a $5.825 million judgment in favor of Bell. (Cekirge Decl Ex.

3   5 at 42, 49.)  The confession of judgment falsely identified the entity executing the

4   document—AWLI—as the "'LENDER' named on each of" Bell's loans. (Cekirge

5   Decl. Ex. 5 at 43.)  In reality, the "lender" identified on Bell's loan documents was

6   not AWLI, but rather CHL under its fictitious business name "America's Wholesale

7   Lender." (Welch Decl. ¶ 15 & Ex. 1 at 8, 28, 44.)  The confession of judgment was

8   a ruse to trick the federal court into believing that CHL was confessing judgment in

9   favor of Bell.  The federal court did not fall for the trick and ordered the

10  "fraudulent" confession of judgment stricken. (Cekirge Decl. Ex. 6 at 51.)

11       Bell did not stop there.  On September 11 and October 6, 2009, Defendant Jan

12  Van Eck, using one of his aliases, Maurits Van Eck, executed three satisfactions of

13  mortgage, stating that Bell's $35,000, $37,000 and $28,000 mortgages that were the

14  subject of Bell's *pro se* federal court lawsuit in Kentucky were "SATISFIED, PAID

15  and RELEASED pursuant to that certain AGREEMENT/RELEASE." (Cekirge

16  Decl. Ex. 7 at 52-55.)  These satisfactions of mortgages were recorded on September

17  17 and October 28, 2009. (Cekirge Decl. Ex. 7 at 52-55.)

18       In reality, none of these three mortgages had been paid off or released

19  pursuant to any settlement agreement or otherwise. (Welch Decl. ¶ 16.)  Neither

20  Van Eck nor any other Defendant had any direct or indirect authority to release

21  Bell's CHL-originated mortgages. (Welch Decl. ¶¶ 24-27.)

22       Then, in 2011, Defendants expanded their fraudulent scheme beyond Bell's

23  loans and embarked on a much more far-reaching consumer fraud.  Posing as

24  officers of CHL, Defendants entered into settlement agreements and stipulated

25  judgments with borrowers that purported to cancel or modify the borrowers' CHL-

26  originated loans and to reconvey the associated liens.  In connection with these

27  transactions, Defendants directed the borrowers to make large payments to AWLI in

28  exchange for cancelling or modifying their CHL-originated loans.  Defendants never

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   had and do not now have any authority to act on behalf of CHL.  (Welch Decl. ¶¶

2   24-27.)

3        Some specific examples of Defendants' fraudulent conduct in connection with

4   loans originated by CHL are as follows.

5        **The Burk Loan.**  On or about June 7, 2011, Dennis and Linda Burk

6   commenced an action against "America's Wholesale Lender, Inc." in the Orange

7   County Superior Court for the State of California styled *Burk, et al. v. America's*

8   *Wholesale Lender, Inc., et al.*, Case No. 30-2011-00481641.  (Cekirge Decl. Ex. 8 at

9   56-63.)

10       The lawsuit concerned a loan for $600,000 that the Burks obtained from CHL

11  on or about May 19, 2005, in a transaction in which CHL utilized its fictitious

12  business name, "America's Wholesale Lender."  (Cekirge Decl. Ex. 8 at 57; Welch

13  Decl. ¶ 17 & Ex. 2 at 63-64.)  The loan was secured by a deed of trust recorded in

14  the Orange County Recorder's Office on or about May 24, 2005, as document

15  number 2005000395457.  (Cekirge Decl. Ex. 8 at 57; Welch Decl. ¶ 17 & Ex. 2 at

16  63.)  BANA currently services this loan.  (Welch Decl. ¶ 17.)

17       On or about June 20, 2011, Bell, acting as "President" of AWLI, executed a

18  "Settlement Agreement, Stipulation for Entry of Judgment and Judgment," which

19  was filed with the Court on June 11, 2011.  (Cekirge Decl. Ex. 9 at 73.)  The court

20  entered the stipulated judgment on or about July 11, 2011.  (Cekirge Decl. Ex. 9 at

21  64.)

22       The "Settlement Agreement, Stipulation for Entry of Judgment and

23  Judgment" called for a $260,000 lump sum payment to AWLI in exchange for full

24  satisfaction of the original loan that the Burks obtained from CHL and a full

25  reconveyance of the deed of trust associated with that loan.  (Cekirge Decl. Ex. 9 at

26  68.)

27       The Burks paid $260,000 to AWLI.  (Cekirge Decl. Ex. 10 at 74.)  Plaintiffs

28  never received any funds from anyone to pay off the Burks' CHL-originated loan.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

1  (Welch Decl. ¶ 17.)

2      Nevertheless, on or about June 20, 2011, Bell, acting as "President" of AWLI,

3  executed a reconveyance of the deed of trust associated with CHL's original loan

4  and recorded the reconveyance as document number 2011000420707 in the Orange

5  County Recorder's Office on August 25, 2011.  (Cekirge Decl. Ex. 11 at 75.)

6      Neither AWLI, Bell, Van Eck, nor any other Defendant had any direct or

7  indirect authority to take any action with respect to the loan that CHL originated to

8  the Burks or the lien associated with that loan.  (Welch Decl. ¶¶ 24-27.)

9      **The Wells Loan.**  On or about June 21, 2011, borrower Merry B. Wells

10 commenced an action against "America's Wholesale Lender, Inc." in the Orange

11 County Superior Court for the State of California styled *Wells v. America's*

12 *Wholesale Lender, Inc., et al.*, Case No. 30-2011-00485562.  (Cekirge Decl. Ex. 12

13 at 76-84.)

14      The lawsuit concerned a residential loan for $994,500 that Wells obtained

15 from CHL on or about January 25, 2006, in a transaction in which CHL utilized its

16 fictitious business name "America's Wholesale Lender."  (Cekirge Decl. Ex. 12 at

17 77; Welch Decl. ¶ 18 & Ex. 3 at 85-86.)  The loan was secured by a deed of trust

18 recorded in the Orange County Recorder's Office on or about January 30, 2006, as

19 document number 2006000067191.  (Cekirge Decl. Ex. 12 at 77; Welch Decl. ¶ 18

20 & Ex. 2 at 85.)  Bank of America, N.A. ("BANA") currently services this loan.

21 (Welch Decl. ¶ 18.)

22      On or about July 18, 2011, Van Eck, using his alias, "Maurits Van Eck," and

23 acting as a "Vice-President" of AWLI, executed a "Settlement Agreement,

24 Stipulation for Entry of Judgment and Judgment," which was filed in the court

25 records on August 10, 2011.  (Cekirge Decl. Ex. 13 at 92.)  The court entered the

26 stipulated judgment on or about August 26, 2011.  (Cekirge Decl. Ex. 14 at 124.)

27      The "Settlement Agreement, Stipulation for Entry of Judgment and

28 Judgment" called for Wells to execute a new $385,000 promissory note in favor of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

AWLI and to make a $225,000 lump sum payment to AWLI in exchange for full satisfaction of the original loan that Wells obtained from CHL and a full reconveyance of the deed of trust associated with that loan.  (Cekirge Decl. Ex. 13 at 88.)

Plaintiffs never received any funds from anyone to pay off Wells's CHL-originated loan.  (Welch Decl. ¶ 18.)

On or about November 15, 2011, AWLI recorded a "Short Form Deed of Trust and Assignment of Rents" as document number 2011000580146 in the Orange County Recorder's Office.  (Cekirge Decl. Ex. 15 at 126.)  This deed of trust purported to secure the $385,000 promissory note that Wells agreed to execute in favor of AWLI under the terms of the "Settlement Agreement, Stipulation for Entry of Judgment and Judgment."  (Cekirge Decl. Exs. 13 at 88 & 15 at 126.)

On or about December 12, 2011, Bell, acting as "President" of AWLI, executed an "Assignment of Deed of Trust," purporting to assign AWLI's deed of trust to "Wendmere Funding, LLC, a Kentucky Limited Liability Company." (Cekirge Decl. Ex. 16 at 129.)  This "Assignment of Deed of Trust" was recorded on or about January 4, 2012, in the Orange County Recorder's Office as document number 2012000002551.  (Cekirge Decl. Ex. 16 at 129.)

Neither AWLI, Van Eck, Bell nor any other Defendant had any direct or indirect authority to take any action with respect to the loan that CHL originated to Wells or the lien associated with that loan.  (Welch Decl. ¶¶ 24-27.)

**The Nguyen Loan.**  On or about March 25, 2011, Tan Nguyen commenced an action against "America's Wholesale Lender, Inc." in the Orange County Superior Court for the State of California styled *Nguyen v. America's Wholesale Lender, Inc.*, *et al.*, Case No. 30-2011-00461444.  (Cekirge Decl. Ex. 17 at 131-140.)

The lawsuit concerned a residential loan for $390,000 that Nguyen obtained from CHL on or about October 4, 2004, in a transaction in which CHL utilized its

SM01DOCS\872185.7

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    fictitious business name and mark, "America's Wholesale Lender."  (Cekirge Decl.

2    Ex. 17 at 132; Welch Decl. ¶ 19 & Ex. 4 at 109-11.)  The loan was secured by a

3    deed of trust recorded in the Orange County Recorder's Office on or about October

4    18, 2004, as document number 2004000938222.  (Cekirge Decl. Ex. 17 at 132;

5    Welch Decl. ¶ 19 & Ex. 4 at 109.)  BANA currently services this loan.  (Welch

6    Decl. ¶ 19.)

7         On or about March 31, 2011, Van Eck, using his alias, "Maurits Van Eck,"

8    and acting as a "Sr. Vice President" of AWLI, executed a "Settlement Agreement,

9    Stipulation for Entry of Judgment and Judgment," which was filed in the court

10   records on April 1, 2011.  (Cekirge Decl. Ex. 18 at 149.)  The court entered the

11   stipulated judgment on or about April 7, 2011.  (Cekirge Decl. Ex. 19 at 183.)

12        The "Settlement Agreement, Stipulation for Entry of Judgment and

13   Judgment" called for Nguyen to execute a new promissory note for $225,000 in

14   favor of AWLI (with a sixty day window to extinguish the entire $225,000 loan for

15   a lump sum payment of $75,000) in exchange for full satisfaction of the original

16   loan that Nguyen obtained from CHL and a full reconveyance of the deed of trust

17   associated with that loan.  (Cekirge Decl. Ex. 18 at 144.)

18        Plaintiffs never received any funds from anyone to pay off Nguyen's CHL-

19   originated loan.  (Welch Decl. ¶ 19.)

20        Nevertheless, on or about April 9, 2011, Bell, acting as a "Vice President" of

21   AWLI, executed a reconveyance of the deed of trust associated with CHL's original

22   loan and recorded the reconveyance as document number 2011000197448 in the

23   Orange County Recorder's Office on April 18, 2011.  (Cekirge Decl. Ex. 20 at 185.)

24        Neither AWLI, Bell, Van Eck, nor any other Defendant had any direct or

25   indirect authority to take any action with respect to the loan that CHL originated to

26   Nguyen or the lien associated with that loan.  (Welch Decl. ¶¶ 24-27.)

27        **The Calco-Crawford Loan.**  On or about June 14, 2011, Celia Calco-

28   Crawford commenced an action against "America's Wholesale Lender" in the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   Orange County Superior Court for the State of California styled *Calco-Crawford v.*

2   *America's Wholesale Lender, et al.*, Case No. 30-2011-00483557.  (Cekirge Decl.

3   Ex. 21 at 187-96.)

4       The lawsuit concerned a loan for $396,000 that Calco-Crawford obtained

5   from CHL on or about October 12, 2005, in a transaction in which CHL utilized its

6   fictitious business name "America's Wholesale Lender."  (Cekirge Decl. Ex. 21 at

7   189; Welch Decl. ¶ 20 & Ex. 5 at 136-37.)  The loan was secured by a deed of trust

8   recorded in the Orange County Recorder's Office on or about October 14, 2005, as

9   document number 2005000829245.  (Cekirge Decl. Ex. 21 at 189; Welch Decl. ¶ 20

10  & Ex. 5 at 136.)  BANA currently services this loan.  (Welch Decl. ¶ 20.)

11      On June 29, 2011, Van Eck, using his alias, "Maurice Van Eck," and acting as

12  a "Vice President" of AWLI, executed a "Settlement Agreement, Stipulation for

13  Entry of Judgment and Judgment," which was filed in the court records on July 1,

14  2011.  (Cekirge Decl. Ex. 22 at 204.)  The court entered the stipulated judgment on

15  or about July 8, 2011.  (Cekirge Decl. Ex. 23 at 233.)

16      The "Settlement Agreement, Stipulation for Entry of Judgment and

17  Judgment" called for Calco-Crawford to execute a new promissory note for

18  $130,000 in favor of AWLI and to make a $122,000 lump sum payment to AWLI,

19  in exchange for full satisfaction of the original loan that Calco-Crawford obtained

20  from CHL and a full reconveyance of the deed of trust associated with that loan.

21  (Cekirge Decl. Ex. 22 at 200.)

22      Plaintiffs never received any funds from anyone to pay off Calco-Crawford's

23  CHL-originated loan.  (Welch Decl. ¶ 20.)

24      On or about June 29, 2011, Van Eck, using his alias "Maurits Van Eck," and

25  acting as a "V.P." of AWLI, executed an "Assignment of Deed of Trust," purporting

26  to assign CHL's legitimate deed of trust to AWLI.  (Cekirge Decl. Ex. 24 at 235.)

27  The "Assignment of Deed of Trust" was recorded in the Orange County Recorder's

28  Office on or about July 14, 2011, as document number 2011000344047.  (Cekirge

1  Decl. Ex. 24 at 235.)  On or about July 13, 2011, Van Eck, using his alias "Maurice

2  Van Eck," and acting as "V.P." of "America's Wholesale Lender" executed another

3  "Assignment of Deed of Trust," purporting to assign CHL's legitimate deed of trust

4  to AWLI.  (Cekirge Decl. Ex. 25 at 236.)  The "Assignment of Deed of Trust" was

5  recorded in the Orange County Recorder's Office on or about July 18, 2011, as

6  document number 2011000347498.  (Cekirge Decl. Ex. 25 at 236.)

7        Neither AWLI, Van Eck, nor any other Defendant had any direct or indirect

8  authority to take any action with respect to the loan that CHL originated to Calco-

9  Crawford or the lien associated with that loan.  (Welch Decl. ¶¶ 24-27.)

10        **The Budka Loan.**  On or about June 8, 2011, Michael and Jan Budka

11  commenced an action against "America's Wholesale Lender, Inc." in the Orange

12  County Superior Court for the State of California styled *Budka, et al. v. America's*

13  *Wholesale Lender, Inc., et al.*, Case No. 30-2011-00481753.  (Cekirge Decl. Ex. 26

14  at 237-44.)

15        The lawsuit concerned a loan for $1,500,000 that the Budkas obtained from

16  CHL on September 29, 2004, in a transaction in which CHL utilized its fictitious

17  business name "America's Wholesale Lender."  (Cekirge Decl. Ex. 26 at 238;

18  Welch Decl. ¶ 21 & Ex. 6 at 158-59.)  The loan was secured by a deed of trust

19  recorded in the Orange County Recorder's Office on or about October 1, 2004, as

20  document number 2004000884675.  (Cekirge Decl. Ex. 26 at 238; Welch Decl. ¶ 21

21  & Ex. 5 at 158.)  BANA currently services this loan.  (Welch Decl. ¶ 21.)

22        Plaintiffs never received any funds from anyone to pay off the Budkas' CHL-

23  originated loan.  (Welch Decl. ¶ 21.)

24        On July 23, 2011, Van Eck, using his alias "Maurice Van Eck," and acting as

25  a "Vice President" of AWLI, executed an "Assignment of Deed of Trust," which

26  purported to assign the deed of trust associated with CHL's original loan to AWLI.

27  (Cekirge Decl. Ex. 27 at 245.)  The "Assignment of the Deed of Trust" was recorded

28  in the Orange County Recorder's Office on or about July 25, 2011, as document

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

1   number 2011000360230.  (Cekirge Decl. Ex. 27 at 245.)

2       Neither AWLI, Van Eck, Bell, nor any other Defendant had any direct or

3   indirect authority to take any action with respect to the loan that CHL originated to

4   the Budkas or the lien associated with that loan.   (Welch Decl. ¶¶ 24-27.)

5       **<u>The May Loan.</u>**  On or about June 21, 2011, Cecilia May commenced an

6   action against "America's Wholesale Lender, Inc." in the Los Angeles County

7   Superior Court for the State of California styled *May, et al. v. America's Wholesale*

8   *Lender, Inc., et al.*, Case No. LC093985.  (Cekirge Decl. Ex. 28 at 247-56.)

9       The lawsuit concerned a loan for $877,600 that May obtained from CHL on

10   or about December 20, 2005, in a transaction in which CHL utilized its fictitious

11   business name, "America's Wholesale Lender."  (Cekirge Decl. Ex. 28 at 249;

12   Welch Decl. ¶ 22 & Ex. 7 at 184-186.)  The loan was secured by a deed of trust

13   recorded in the Los Angeles County Recorder's Office on or about December 30,

14   2005, as document number 05 3232308.  (Cekirge Decl. Ex. 28 at 249; Welch Decl.

15   ¶ 22 & Ex. 7 at 184.)  BANA currently services this loan.  (Welch Decl. ¶ 22.)

16       Plaintiffs never received any funds from anyone to pay off May's CHL-

17   originated loan.  (Welch Decl. ¶ 22.)

18       Nevertheless, on or about October 12, 2011, Bell, acting as "President" of

19   AWLI, executed a reconveyance of the deed of trust associated with CHL's original

20   loan and recorded the reconveyance as document number 20111445629 in the Los

21   Angeles County Recorder's Office on or about October 26, 2011.  (Cekirge Decl.

22   Ex. 29 at 257-58.)

23       Neither AWLI, Bell nor any other Defendant had any direct or indirect

24   authority to take any action with respect to the loan that CHL originated to May or

25   the lien associated with that loan.  (Welch Decl. ¶¶ 24-27.)

26       On or about November 16, 2011, AWLI recorded a "Deed of Trust" as

27   document number 20111548663 in the Los Angeles County Recorder's Office

28   purporting to secure a $65,000 loan from May to AWLI.  (Cekirge Decl. Ex. 30 at

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

1  260-63.)

2      On or about November 21, 2011, Bell, acting as "President" of AWLI,

3  executed an "Assignment of Deed of Trust," purporting to assign AWLI's deed of

4  trust to "Wendmere Funding, LLC, a Kentucky Limited Liability Company."

5  (Cekirge Decl. Ex. 31 at 265.)  This "Assignment of Deed of Trust" was recorded on

6  or about November 22, 2011, in the Los Angeles County Recorder's Office as

7  document number 20111584674.  (Cekirge Decl. Ex. 31 at 264.)

8      **The Hamilton Loan.**  On or about April 25, 2005, CHL, utilizing its

9  fictitious business name and mark, "America's Wholesale Lender," made a loan in

10  the amount of $1,440,000 to Jeffrey C. Hamilton and Elizabeth Hamilton, which

11  was secured by a deed of trust recorded in the Orange County Recorder's Office as

12  document number 2005000329048.  (Welch Decl. Decl. ¶ 23 & Ex. 8 at 208-209.)

13  BANA currently services this loan.  (Welch Decl. ¶ 23.)

14      Plaintiffs never received any funds from anyone to pay off the Hamiltons'

15  CHL-originated loan.  (Welch Decl. ¶ 23.)

16      On or about August 18, 2011, Van Eck, using his alias "Maurice Van Eck,"

17  and acting as a "Vice President" of "America's Wholesale Lender" executed an

18  "Assignment of Deed of Trust," which purported to assign the deed of trust

19  established by CHL to "The Ryzman Foundation, Inc." (Cekirge Decl. Ex. 32 at

20  266.)  The assignment was recorded as document number 2011000415908 in the

21  Orange County Recorder's Office on or about August 23, 2011.  (Cekirge Decl. Ex.

22  32 at 266.)

23      Neither AWLI, Van Eck, nor any other Defendant had any direct or indirect

24  authority to take any action with respect to with respect to the loan that CHL

25  originated to the Hamiltons or the lien associated with that loan.  (Welch Decl. ¶¶

26  24-27.)

27  ///

28  ///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**E.     There Is No Indication that AWLI Conducts Any Legitimate Business**

It appears that AWLI was incorporated solely for committing fraud.  There is no indication that AWLI engages in any legitimate business and is solely a vehicle for conducting Defendants' fraudulent scheme.  AWLI is on inactive status with the New York Department of State as of October 26, 2011.  (Cekirge Decl. Ex. 33 at 268.)  Presumably, a legitimate going concern would not allow its registration to lapse.

There is also indication the Defendants continue to perpetrate fraud through AWLI.  As recently as January 4, 2012—after AWLI's registration lapsed—Defendants recorded fraudulent documents on AWLI's behalf.  (Cekirge Decl. Ex. 16 at 129.)

**III.     The Standard For Obtaining A Temporary Restraining Order**

"The standard for issuing a [temporary restraining order] is similar to the standard for issuing a preliminary injunction." *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1049 (S.D. Cal. 2006).  A party seeking a temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Fund*, 555 U.S. 7, 20 (2008).  If there are multiple claims in a complaint, "the court need only determine that plaintiff has demonstrated a likelihood of success on one claim that would entitle it to a permanent injunction . . . ." *See Cal. Hosp. Ass'n v. Maxwell-Jolly*, No. Civ. S-10-3465 FCD/EFB, 2011 U.S. Dist. LEXIS 10523, at *3 (E.D. Cal. Jan. 28, 2011).[3]

_____

[3]     If a party shows a likelihood of irreparable injury and that the injunction is in the public interest," it may obtain a temporary restraining order on the lesser showing of "serious questions going to the merits and a hardship balance that tips sharply towards the plaintiff." *Cal. Med. Ass'n v. Douglas*, Case No. CV 11-9688 CAS (MANx), 2012 U.S. Dist. LEXIS 12074, at *8 (C.D. Cal. Jan. 31, 2012) (internal quotations and citation omitted).  Plaintiffs here do not need to resort to this less restrictive standard.

1    Because this *ex parte* application is not without notice, the additional

2  requirements of Federal Rule of Civil Procedure 65(b) are not applicable.  (Cekirge

3  Decl. ¶¶ 2-10.)

4  **IV.    There Is A Likelihood Plaintiffs Will Succeed On The Merits**

5    Courts are vested with the authority to grant permanent injunctive relief in

6  connection with trademark infringement and false designation of origin claims.  *See*

7  15 U.S.C. § 1116(a).  Courts may also grant injunctive relief in connection with a

8  claim under California Business and Professions Code sections 17200 *et seq.*  (the

9  "UCL").  *See* Cal. Bus. & Prof. Code § 17203.  Thus, Plaintiffs may obtain a

10 temporary restraining order upon a showing of likelihood of success on the merits

11 with respect to any one of these claims.

12 **A.    The Trademark Infringement And False Designation of Origin**

13 **Claims**

14   "To prevail on [a] trademark infringement claim, [a plaintiff] must show that:

15 (1) [he] has a valid, protectable trademark, and (2) that [the defendant's] use of the

16 mark is likely to cause confusion."  *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d

17 966, 969 (9th Cir. 2007).

18   A false designation of origin claim "turns on the likelihood of confusion" as

19 well.  *Mortgage Elec. Registration Sys. v. Brosnan*, No: C 09-3600 SBA, 2009 U.S.

20 Dist. LEXIS 87596, at *10 (N.D. Cal. Sept. 4, 2009) (hereinafter "*Brosnan*").  But

21 "because a trade name cannot be registered," a plaintiff asserting a false designation

22 of origin claim does not need to establish the existence of a valid, protectable

23 trademark.  *Id.*

24   The following eight factors, generally referred to as the *Sleekcraft* factors,

25 guide the inquiry into whether a defendant's use of a mark is likely to confuse

26 consumers: (1) the similarity of the marks; (2) the strength of the plaintiff's mark;

27 (3) the proximity or relatedness of the goods or services; (4) the defendant's intent

28 in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    used; (7) the likelihood of expansion into other markets; and (8) the degree of care

2    likely to be exercised by purchasers of the defendant's product.[4]  *See Fortune*

3    *Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th

4    Cir. 2010).  "This eight-factor analysis is pliant, illustrative rather than exhaustive,

5    and best understood as simply providing helpful guideposts." *Id.* (internal

6    quotations and citation omitted).  "Some factors are much more important than

7    others, and the relative importance of each individual factor will be case-specific."

8    *Id.* at 1031 (internal quotations and citation omitted).  "[I]t is often possible to reach

9    a conclusion with respect to likelihood of confusion after considering only a subset

10   of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d

11   1036, 1054 (9th Cir. 1999).

12        As explained below, Plaintiffs will likely prevail on both their trademark

13   infringement claim under 15 U.S.C. section 1114 and their false designation of

14   origin claim under 15 U.S.C. section 1125 because they can establish that:  (1) BAC

15   has a valid, protectable mark in AMERICA'S WHOLESALE LENDER®; and (2)

16   Defendants' use of "America's Wholesale Lender, Inc." is confusing.

### 1.    AMERICA'S WHOLESALE LENDER® Is A Valid, Protectable Mark

19        A plaintiff can establish that it has a valid, protectable trademark by showing

20   that it has a "federally registered mark in goods or services." *Applied Info. Scis.*

21   *Corp.*, 511 F.3d at 969-70.  Because AMERICA'S WHOLESALE LENDER® is

22   BAC's federally registered mark, Plaintiffs meet the first element of a trademark

23   infringement claim.  *See supra*, Part II.B, pp. 2-3.

24   ///

25   ///

26

---

27   [4]    This test is often called the *Sleekcraft* test because it was announced in *AMF*
*Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).  *See Fortune Dynamic, Inc. v.*
28   *Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION; MEM. OF Ps & As

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

### 2.     Defendants' Use Of The Name "America's Wholesale Lender, Inc." Is Likely To Cause Confusion

A combination of the *Sleekcraft* factors reveals that Defendants' use of the name "America's Wholesale Lender, Inc." is likely to cause confusion.

**Strength of the Mark.**  "The strength of the trademark is evaluated in terms of its conceptual strength and commercial strength." *Id.* at *13.  "'Marks are often classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful.'"  *Id.* (*quoting Kendall-Jackson Winery, Ltd. V. E & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998)).

> *Generic marks* give the general name of the product; they embrace an entire class of products.  *Descriptive marks* define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood.  Thus, 'Honey Baked Ham' is a descriptive term for a ham that has been baked with honey and 'Honey Roast' is a descriptive term for nuts that have been roasted with honey. If a consumer must use imagination or any type of multistage reasoning to understand the mark's significance, then the mark does not *describe* the product's features, but *suggests* them. Such a mark is therefore classified as 'suggestive' rather than 'descriptive.' Examples of *suggestive marks* include 'Air Care' for a service that maintains medical equipment used for administering oxygen and 'Anti-Washboard' for a soap that makes scrubbing unnecessary when washing clothes. *Arbitrary marks* have no relevance to any feature or characteristic of a product. *Fanciful marks* are the most distinctive marks of all; they involve a high degree of imagination."

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1 *Kendall-Jackson Winery, Ltd. V. E & J. Gallo Winery*, 150 F.3d 1042, 1049 n.8 (9th
2 Cir. 1998)  "The latter three characterizations are inherently more distinctive and,
3 hence, are associated with stronger marks."  *Brosnan*, 2009 U.S. Dist. LEXIS
4 87596, at *13.

5 Descriptive marks that do not "require much imagination to understand the
6 type of business" are "nonetheless protectable upon a showing of acquired
7 distinctiveness.  The more likely a mark is to be remembered and associated in the
8 public's mind with the mark's owner, the greater protection the mark is accorded by
9 trademark laws."  *Id.* at *13-*14.

10 Thus, in *Brosnan*, the court found that even though the trademark "Mortgage
11 Electronic Registration Systems, Inc." was descriptive, it was still strong because it
12 pervaded the mortgage industry:

13 In this case, Plaintiff MERS has presented undisputed evidence
14 that its name has commercial strength. Over 4,593 member
15 lenders and loan servicers use Plaintiff MERS' services
16 (among them are the nation's best known financial
17 institutions), and Plaintiff is identified as the mortgagee or
18 beneficiary in close to 60 million mortgages and deeds of trust.
19 In addition, Plaintiff MERS has used and marketed its
20 corporate name for the last thirteen years, which further
21 supports the strength of its name. The Court finds that Plaintiff
22 MERS has presented sufficient evidence to support the strength
23 of its mark.

24 *Id.* at *14-*15.

25 For the same reasons, the AMERICA'S WHOLESALE LENDER® mark and
26 "America's Wholesale Lender, Inc." name are strong.  Even if "America's Whole
27 Sale Lender" is arguably descriptive, its association with Plaintiffs' services
28 permeates the market.  Over a time span exceeding 15 years, CHL originated over

3.5 million through its wholesale lending division using the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender, Inc." name.  *See supra*, Part II.C, p. 3.  Moreover, the mortgages and deeds of trust associated with these loans were recorded in the land records and reflect "America's Wholesale Lender" as the creditor.  *See supra*, Part II.C, p. 3.

**Relatedness Of The Services.**  There is no question as to the relatedness of the Plaintiffs' services and Defendants' "services."  Indeed, Defendants pretend to be Plaintiffs, so that they can perpetrate a fraudulent scheme with respect to CHL-originated loans.  *See supra*, Part II.D, pp. 3-12.

**Similarity of the Marks.**  "The greater the similarity between the two marks at issue, the greater the likelihood of confusion."  *Brosnan*, 2009 U.S. Dist. LEXIS 87596, at *16.  Here, Plaintiffs and Defendants' marks are deliberately virtually identical, with the only difference being the inclusion of the abbreviation "Inc." in Defendants' mark.

**Evidence Of Actual Confusion.**  There is clear evidence of actual confusion in this case:

- At least six borrowers sued AWLI, believing they were suing CHL regarding their CHL-originated loans.  *See supra*, Part II.D, pp. 5-11.
- At least four borrowers appear to have entered into settlement agreements and stipulated judgments with Defendants to modify their CHL-originated loans, believing that they were dealing with CHL.  *See supra*, Part II.D, pp. 5-9.
- The Burks paid $260,000 to Defendants, believing that they were paying CHL in a settlement that would reduce the balance of their CHL-originated loan; other borrowers may have made similar payments pursuant to the terms of their settlement agreements.  *See supra*, Part II.D, pp. 5-6.

**Defendants' Intent.**  "The defendants' intent is a critical element.  Where an

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  alleged infringer chooses a mark he knows to be similar to another, one can infer an

2  intent to confuse." *Brosnan*, 2009 U.S. Dist. LEXIS 87596, at *17 (internal

3  quotations and citation omitted).

4      Here, Defendants' intent to confuse by the use of the name "America's

5  Wholesale Lender, Inc." can be inferred from their misconduct.  As explained

6  above, Defendants were aware that CHL used the virtually identical name

7  "America's Wholesale Lender" in its lending operations and specifically chose a

8  similar name for their corporation, so that they could impersonate CHL and

9  perpetrate their fraudulent scheme.  *See supra*, Part II.D, pp. 3-12.

10      **Marketing Channels, Expansion Into Other Markets And Care Exercised**

11  **By Customers.**  These *Sleekcraft* factors are inapplicable in this case.  Because

12  Defendants have no legitimate business interest in the "America's Wholesale

13  Lender, Inc." name, there is no need to address the marketing channels used by

14  Defendants and the likelihood of the expansion of Defendants' business into other

15  markets.  In *Brosnan*, which involved a similar fraudulent scheme to hijack a

16  company's name and impersonate it to commit fraud, the court granted a

17  preliminary injunction without any analysis of marketing channels or the likelihood

18  of expansion into other markets.  *See Brosnan*, 2009 U.S. Dist. LEXIS 87596, at *20

19  n.8.

20      Moreover, when marks are virtually identical, the degree of care consumer

21  care is irrelevant.  *See Electropix v. Liberty Livewire Co.*, 178 F. Supp. 2d 1125,

22  1134 (C.D. Cal. 2001) ("However, virtually no amount of consumer care can

23  prevent confusion where two entities have the same name.  It is irrational to expect

24  that even the most sophisticated consumer will exercise the kind of scrupulous

25  examination that would enable him or her to discern the difference between

26  'Livewire' and 'Live Wire.'")

27      **B.     Plaintiffs Are Likely To Prevail On Their UCL Claim**

28      "California Business and Professions Code section 17200 makes actionable

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  any 'unlawful, unfair or fraudulent business act or practice.'" *Brosnan*, 2009 U.S.

2  Dist. LEXIS 87596, at *22 (*quoting* Cal. Bus. & Prof. Code § 17200). "'The

3  violation of almost any federal, state, or local law may serve as the basis for a UCL

4  claim.'" *Brosnan*, 2009 U.S. Dist. LEXIS 87596, at *22 (*quoting Plascencia v.*

5  *Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008)). "As such,

6  the 'unlawful' prong of the UCL effectively turns a violation of the underlying law

7  into a per se violation of the UCL." *Williams v. Wells Fargo Bank, N.A.*, Case No.

8  CV 10-4761 PA (PJWx), 2010 U.S. Dist. LEXIS 91158, at *6 (N.D. Cal. Aug. 9,

9  2010). "Moreover, a business practice may be unfair or fraudulent under the UCL,

10  even if the practice does not violate any law." *Brosnan*, 2009 U.S. Dist. LEXIS

11  87596, at *22.

12      Here, Plaintiffs will likely prevail on their UCL claim because, as described

13  above, they have demonstrated that they will likely prevail on their predicate

14  Lanham Act claims. *See supra*, Part III.A, pp. 14-19. Further, it is self-evident that

15  Defendants' hijacking of Plaintiffs trademark and trade name to impersonate CHL

16  and engage in a fraudulent scheme is both an unfair and fraudulent business

17  practice.

18  **V.   Irreparable Harm**

19      "In trademark cases, courts have found irreparable harm in the loss of control

20  of a business' reputation, a loss of trade and loss of goodwill." *CytoSport, Inc. v.*

21  *Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009). "Trademarks

22  serve as the identity of their owners and in them resides the reputation and goodwill

23  of their owners. Thus, if another person infringes the marks, that person borrows

24  the owner's reputation, whose quality no longer lies within the owner's control." *Id.*

25  "A trademark owner's loss of the ability to control its marks, thus, creates the

26  potential for damage to its reputation." *Id.* "Potential damage to reputation

27  constitutes irreparable injury for the purpose of granting a preliminary injunction in

28  a trademark case." *Id.*

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   Here, Defendants' hijacking of BAC's trademark and CHL's trade name have

2 caused irreparable harm to Plaintiffs.  Because Defendants are impersonating

3 Plaintiffs, they have caused BAC and CHL to lose control over their business

4 reputations.  Moreover, BAC and CHL's "potential misidentification with the

5 entities recently created by Defendants poses a serious threat to the years of good

6 will that [BAC and CHL have] established in the mortgage industry."  *Brosnan*,

7 2009 U.S. Dist. LEXIS 87596, at *26.

8 **VI.    The Balance Of Equities**

9   The balance of equities tips sharply in favor of Plaintiffs.  The harm to

10 Plaintiffs is self-evident—Defendants are purporting to fraudulently reconvey and

11 assign liens established by CHL and fraudulently cancel debt obligations to BANA.

12 *See supra*, Part II.D, pp. 4-12.  In contrast, an injunction will not harm Defendants

13 given that all it will do is stop Defendants from carrying out a fraud.

14 **VII.   The Public Interest**

15   Defendants are using the "America's Wholesale Lender, Inc." name to record

16 fraudulent lien reconveyances and assignments in the land records and to defraud

17 borrowers.  *See supra*, Part II.D, pp. 4-12.  The significant public interest in

18 maintaining the accuracy of land records and "preventing consumer confusion and

19 fraud favors" enjoining Defendants from using the "America's Wholesale Lender,

20 Inc." name.  *Paisa, Inc. v. N & G Auto*, 928 F. Supp. 1009, 1013 (C.D. Cal. 1996).

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

**VIII.  Conclusion**

   Defendants' sole purpose in using the "America's Wholesale Lender, Inc." name is to impersonate CHL and commit fraud.  This Court should issue a temporary restraining order against the use of that name to protect Plaintiffs and the public at large.

DATED:  March 7, 2012                    Respectfully submitted,

                                         **BRYAN CAVE LLP**

                                         By:  ___/s/ Nafiz Cekirge_____

                                                NAFIZ CEKIRGE
                                                Attorneys for Defendants
                                                Countrywide Home Loans, Inc.
                                                Bank of America Corporation
                                                and Bank of America, N.A.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386