# EXHIBIT 1

Trademark Electronic Search System (TESS)

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Feb 29 04:35:46 EST 2012*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TARR Status | ASSIGN Status | TDR | TTAB Status   ( *Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | AMERICA'S WHOLESALE LENDER |
| **Goods and Services** | IC 036. US 102. G & S: financial services; namely, mortgage banking and mortgage lending services. FIRST USE: 19930201. FIRST USE IN COMMERCE: 19930201 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 74358690 |
| **Filing Date** | February 8, 1993 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | October 18, 1994 |
| **Registration Number** | 1872784 |
| **Registration Date** | January 10, 1995 |
| **Owner** | (REGISTRANT) Countrywide HOME LOANS, INC. CORPORATION NEW YORK 4500 PARK GRANADA CALABASAS CALIFORNIA 91302 |
| | (LAST LISTED OWNER) BANK OF AMERICA CORPORATION CORPORATION DELAWARE 100 NORTH TRYON STREET CHARLOTTE NORTH CAROLINA 28255 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Randel S. Springer |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "WHOLESALE LENDER" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL-2(F)-IN PART |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20050402. |
| **Renewal** | 1ST RENEWAL 20050402 |
| **Live/Dead Indicator** | LIVE |
| **Distinctiveness Limitation Statement** | as to "AMERICA'S" |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

# EXHIBIT  2

## ABSTRACT OF JUDGMENT – PRISON COMMITMENT

FORM DSL 290

☒ SUPERIOR
☐ MUNICIPAL } COURT OF CALIFORNIA, COUNTY OF ___SUTTER___
☐ JUSTICE

COURT (I.D.)   BRANCH OR JUDICIAL DISTRICT: _____
S 5 1 0 0 0

**FILED**
JAN 1 0 1997
SUTTER COUNTY CONSOLIDATED
MUNICIPAL AND SUPERIOR COURT
By _Audrey Goodnight_ Deputy Clerk

PEOPLE OF THE STATE OF CALIFORNIA  VERSUS        ☒ PRESENT    CRP96-0114-A
DEFENDANT:  DENNIS LYNN BELL                                  50799    -B
AKA:                                          ☐ NOT PRESENT            -C

COMMITMENT TO STATE PRISON      AMENDED                              -D
ABSTRACT OF JUDGMENT           ABSTRACT  ☐                           -E

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO | JUDGE | CLERK |
|---|---|---|---|
| 01/10/97 | 4 | WILLIAM ABEL | AUDREY GOODNIGHT |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| LISA OLLAR | JOHN RAMSAUR | HARRY ROTH | DONNA RUCKER |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES (OR ALTERNATE FELONY/MISDEMEANORS):

☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES)          SENTENCE RELATION

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | CONVICTED BY COURT/JURY | PLEA | JOINT/TRIAL | TERM A.W./M.S. | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE FULL TERM | CONSECUTIVE RECONSTITUTED SENTENCED § 1170/PER PC | 667.6(H) | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YEARS | MONTHS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15A | PC | 118(a) | Perjury | 92 | 11 | 15 | 96 | X | M | | PRINCIPAL | | | | | | 3 | |
| 2B | PC | 487(1)/532(a) P | Gr.Theft by Fraud | 91 | 11 | 05 | 92 | X | M | | | X | | | | | | 8 |

2. **ENHANCEMENTS** charged and found true **TIED TO SPECIFIC COUNTS** (mainly in the § l2022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.:
For each count list enhancements horizontally. **Enter** time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385.
Add up time for enhancements on each line and enter total in right-hand column.

| Count | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

3. **ENHANCEMENTS** charged and found true **FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS** (mainly § 667-series) and/or:
List all enhancements based on prior convictions or prior prison terms charged and found true. If 2 or more under the same section, repeat it for each enhancement (e.g., if 2 non-violent prior prison terms under § 667.5(b) list § 667.5(b) 2 times). Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add time for these enhancements and enter total in right-hand column. Also enter here any other enhancement not provided for in space 2.

| Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |

4. INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|
| | | |

5. **OTHER ORDERS**     IN CRF96-0114
$500 restitution fine/1202.4 PC
$500 restitution fine/1202.45 PC stayed
pending successful completion of parole
Use additional sheets of plain paper if necessary.

6. TOTAL TIME ON **ALL** ATTACHMENT PAGES (FORM DSL 290-A):

7. TIME STAYED TO COMPLY WITH 5-YEAR OR 10-YEAR LIMIT ON SUBORDINATE TERMS, DOUBLE-BASED-TERM LIMIT, ETC. (Do not include § 654 stays or discretionary stays of term for enhancements):

8. TOTAL TERM IMPOSED:                                                          3 | 8

9. EXECUTION OF SENTENCE IMPOSED:     *resentencing after decision on appeal, after
CRF96-0114                     revocation of probation

A. ☒ AT INITIAL SENTENCING HEARING   B. ☐ AT RESENTENCING PURSUANT TO DECISION ON APPEAL   C. ☐ AFTER REVOCATION OF PROBATION   D. ☐ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PC § 1170(d))   E. ☐ OTHER  50799 *

10. DATE OF SENTENCE PRONOUNCED (MO) (DAY) (YR)
01/10/97

| CREDIT FOR TIME SPENT IN CUSTODY | TOTAL DAYS | ACTUAL TIME | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS |
|---|---|---|---|---|
| A: 2 B: 190 | INCLUDING: | A: 2 B: 127 | A: 0 B: 63 | ☐ DMH   ☐ CDC |

11. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

☒ FORTHWITH
☐ AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

☐ INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

☐ CALIF. INSTITUTION FOR WOMEN – FRONTERA
☐ CALIF. MEDICAL FACILITY – VACAVILLE
☐ SAN QUENTIN
☐ OTHER (SPECIFY):

☐ CALIF. INSTITUTION FOR MEN – CHINO
☒ DEUEL VOC. INST.

**CLERK OF THE COURT**

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

DEPUTY'S SIGNATURE
_Audrey Goodnight_                          January 10, 1997

This form was prescribed under Penal Code § 1213.5 to satisfy the requirement of § 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Form Adopted by the
Judicial Council of California
Effective April 1, 1992

ABSTRACT OF JUDGMENT – PRISON COMMITMENT
FORM DSL 290

Pen.C. 1213.5

DISTRIBUTION:   PINK COPY – COURT FILE        YELLOW COPY – DEPARTMENT OF CORRECTIONS

**EXHIBIT 2, PAGE 8**

The foregoing instrument is a correct
copy of the original on file in this office
ATTEST: M. B. TODD

MAR 0 1 2012

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SUTTER
CLERK OF THE COURT

By,_____ Deputy



# EXHIBIT 3

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on December 12, 2011.

Daniel E. Shapiro
First Deputy Secretary of State

Rev. 06/07

**EXHIBIT 3, PAGE 9**

FROM :                              FAX NO. :              Dec. 16 2008 11:35AM P2

**08 12 16 00 00 608**

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231
www.dos.state.ny.us

( ~~This form must be printed or typed in black ink.~~ )

## CERTIFICATE OF INCORPORATION
### OF

AMERICA'S WHOLESALE LENDER, INC.
(Insert corporate name)

Under Section 402 of the Business Corporation Law

**FIRST:** The name of the corporation is:   AMERICA'S WHOLESALE LENDER, INC.

**SECOND:** This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

**THIRD:** The county, within this state, in which the office of the corporation is to be located is:  ALBANY

**FOURTH:** The total number of shares which the corporation shall have authority to issue and a statement of the par value of each share or a statement that the shares are without par value are:  200 No Par Value

**FIFTH:**      The Secretary of State is designated as agent of the corporation upon whom process against the corporation may be served. The address to which the Secretary of State shall mail a copy of any process accepted on behalf of the corporation is:

ONE COMMERCE PLAZA

99 WASHINGTON AVE  SUITE 805 A

ALBANY, NEW YORK 12260

DOS-1239 (Rev. 5/08)                      -1-

081216000608

**EXHIBIT 3, PAGE 10**

FROM :                    FAX NO. :                Dec. 16 2008 11:36AM  P3

08121600060q

### Incorporator Information Required

X _~jh~ B_
  *(Signature)*

DENNIS L. BELL
  *(Type or print name)*

2934 BENTON ROAD
  *(Address)*

PADUCAH, KY 42003
  *(City, State, Zip code)*

# CERTIFICATE OF INCORPORATION
## OF

AMERICA'S WHOLESALE LENDER, INC
  *(Insert corporate name)*

STATE OF NEW YORK
DEPARTMENT OF STATE

DEC 16 2008

Filed by:  DENNIS BELL
  *(Name)*

2934 BENTON ROAD
  *(Mailing address)*

PADUCAH, KY 42003
  *(City, State and Zip code)*

FILED
TAX $ 10
BY: m
albany

Note: This form was prepared by the New York State Department of State for filing a certificate of incorporation for a business corporation. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. The fee for a certificate of incorporation is $125 plus the applicable tax on shares required by Section 180 of the Tax Law. The minimum tax on shares is $10. The tax on 200 no par value shares is $10 (total $135). Checks should be made payable to the Department of State for the total amount of the filing fee and tax.

609

**EXHIBIT 3, PAGE 11**

```
FROM :                    FAX NO. :              Dec. 16 2008 11:36AM  P4
N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS      ALBANY, NY 12231-0001

                         FILING RECEIPT
==============================================================================
ENTITY NAME: AMERICA'S WHOLESALE LENDER, INC.

DOCUMENT TYPE: RESERVATION (DOM. BUSINESS)

==============================================================================
FILED:12/05/2008 DURATION:02/04/2009 CASH#:081205000833 FILM #:081205000753


     FILER:
     ------
     DENNIS BELL
     2934 BENTON ROAD

     PADUCAH, KY 42003

     ADDRESS FOR PROCESS:
     --------------------



     REGISTERED AGENT:
     -----------------
```



```
     ** SUBMIT RECEIPT WHEN FILING CERTIFICATE **
     APPLICANT NAME  : DENNIS BELL
==============================================================================
SERVICE COMPANY: ** NO SERVICE COMPANY **            SERVICE CODE: 00

  FEES        20.00                     PAYMENTS        20.00
              --------                                  --------
  FILING      20.00                     CASH             0.00
  TAX          0.00                     CHECK           20.00
  CERT         0.00                     CHARGE           0.00
  COPIES       0.00                     DRAWDOWN         0.00
  HANDLING     0.00                     OPAL             0.00
                                        REFUND           0.00
==============================================================================
                                        DOS-1025 (04/2007)
```

**EXHIBIT 3, PAGE 12**

# EXHIBIT  4



1  Dennis Bell
   2934 Benton Road
2  Paducah, Ky 42003
   (270) 556-1571
3

'08 OCT -3 A10:44

4

FILED
US DISTRICT COURT CLERK
WESTERN DIST KENTUCKY

5  Plaintiff

6

7            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF KENTUCKY
8

9

10  DENNIS BELL,                  5 : '08 C V - 0167  R

11              Plaintiff,        CASE NO._____

12

13      v.

                                  COMPLAINT
14                            (JURY TRIAL REQUESTED)

15  COUNTRYWIDE HOME LOANS, INC., ANDREW
    BESHEAR, JONATHON D. PITCHFORD, AMERICA'S
16  WHOLESALE LENDER, INC., aka AMERICA'S
    WHOLESALE LENDER, MORTGAGE ELECTRONIC
17  REGISTRATION SERVICES, INC., and
    DOES 1 TO 20.
18
                Defendants
19

20

21      COMES NOW, Plaintiff, Dennis Bell, and would show unto the Court the following:

22                              *Parties*

23  1.    Plaintiff is a resident of McCracken County Kentucky, residing at 2934 Benton Road, Paducah,

24  Ky., 42003.

25  2.    Defendant Countrywide Home Loans, Inc. ( hereinafter "CHL") is a New York Corporation with

26  its principal offices located in Calabasas, California, and registered to do business in Kentucky as a

27  foreign corporation. It is also registered in the State of Kentucky  as an Assumed Name Corporation

28  using the name and style of America's Wholesale Lender with a principal office at 155 No. Lake Ave.,

1

EXHIBIT 4, PAGE 13

1   Pasadena, Ca. 91101. Such assumed name is not to be confused with the defendant identified in

2   paragraph 5 herein. The registered agent for Countrywide Home Loans, Inc. in the State of Kentucky is

3   The Prentice Hall Corporation Systems, 421 West Main Street, Frankfort, Ky., 40601.

4   3.     Defendant Andrew Beshear (hereinafter "Beshear") is a resident of the State of Kentucky whose

5   principal business address is 400 West Market Street, Suite 1800, Louisville, Ky., 40202. Beshear is an

6   attorney licensed to practice law in the State of Kentucky and is therefore a judicial officer in his

7   capacity as attorney, which is an officer of the court, as provided by Kentucky State regulation.

8   4.     Defendant Jonathon Duncan Pitchford , (hereinafter "Pitchford") is a resident of the State of

9   Kentucky whose principal business address is 300 Broadway, Paducah, Ky., 42002. Pitchford is an

10   attorney licensed to practice law in the State of Kentucky and is therefore a judicial officer in his

11   capacity as attorney, which is an officer of the court,  as provided by Kentucky State regulation.

12   5.     Defendant America's Wholesale Lender, Inc.(hereinafter "AWL") claims to be a New York

13   Corporation with its principal address located at P.O. Box 660694, Dallas, TX., 75266-0694.

14   6.     Defendant, Mortgage Electronic Registration Systems, Inc., (hereinafter "MERS") is a Delaware

15   corporation with its principal address located at P.O. Box 2026, Flint, MI., 48501-2026. MERS in not

16   registered or authorized to conduct business in the State of Kentucky.

17                  *Jurisdiction*

18   7.     There is complete diversity of jurisdiction between the plaintiff and all defendants in this action,

19   and the amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000) The real

20   property in question is located in this jurisdiction, consequently this Court has subject matter jurisdiction

21   and jurisdiction over the parties.

22                *Factual Allegations*

23   8.     During 2004 Plaintiff executed 3 mortgages with America's Wholesale Lender, the defendant

24   identified in paragraph 5 above. On February 2, 2004 Plaintiff executed a mortgage in the amount of

25   $37,000 secured by real property located at 2914½ Benton Road, Paducah, Ky. On February 24, 2004

26   Plaintiff executed a mortgage in the amount of $35,000 secured by real property located at 2115 Park

27   Ave., Paducah, Ky. On May 11, 2004 Plaintiff executed a mortgage in the amount of $28,000 secured

28   by real property located at 840 Burkhart Lane, Paducah, Ky.  Upon recording, each of these mortgages

2

1   was duly transferred to MERS.

2   9.       On each of the 3 mortgages stated above, the Lender is identified as Americas Wholesale Lender

3   as identified in paragraph 5 above, and the Mortgagee is identified as Mortgage Electronic Registration

4   Systems, Inc. as identified in paragraph 6 above. None of the other defendants hold or maintain any

5   lawful interest in said mortgages. Plaintiff is informed and believes that CHL was assigned the servicing

6   rights on each of the loans associated with the mortgages identified in ¶8.

7   10.      During the loan processing and/or loan signing of the loans that are secured by the above-stated

8   mortgages the defendants failed to disclose the true terms, conditions and costs of the loans and

9   otherwise failed to comply with the Federal Truth In Lending Act and Kentucky Residential Mortgage

10  Fraud Act.

11  11.      In the case of each loan and mortgage, plaintiff refinanced his real property in an amount that was

12  less than 70% of the appraised value. Because of plaintiff's low loan-to-value ratio loans there was no

13  requirement made by the defendant lender for escrow accounts on plaintiff's loans . Plaintiff requested

14  that such escrow accounts be established solely for his benefit, and not for the lender.

15  12.      During the origination and processing of plaintiff's loans/mortgages by the defendant(s),

16  defendant(s) CHL, AWL and/or MERS forged, altered or falsified certain loan documents on one or

17  more of plaintiff's loans with the intent to defraud and/or deceive the plaintiff.

18  13.      During the origination and processing of plaintiff's loans/mortgages by the defendant(s),

19  defendant(s) CHL, AWL and/or MERS charged fees in excess of the amounts allowed under Federal

20  and Kentucky State Laws.

21  14.      During the origination and processing of plaintiff's loans/mortgages by the defendant(s),

22  defendant(s) CHL, AWL and/or MERS provided plaintiff with false and misleading information related

23  to the costs and terms of such loans which compromised the plaintiff's rights and interests related to such

24  loans and violated the defendant's obligation to plaintiff of good faith and fair dealing.

25  15.      Subsequent to the closing of plaintiff's loans, one or more of the defendants, and specifically

26  CHL, began servicing such loans, including the plaintiff's escrow accounts.

27  16.      During 2005, defendants, and specifically CHL, began wrongly, fraudulently, recklessly, and/or

28  knowingly, and without authority, began demanding inflated escrow payments that were in excess of the

3

**EXHIBIT 4, PAGE 15**

1  amounts actually owed, were in violation of RESPA limits, and which violate the Kentucky Residential

2  Mortgage Fraud Act.

3  17.     On May 6, 2008, at a Senate hearing, Senator Charles Schumer identified Countrywide Home

4  Loans as "fabricating documents to wring dubious payments" from borrowers, while U.S. Bankruptcy

5  Judge Thomas Agresti, in referring to "Countrywide's fabrication of letters" said, "These letters are a

6  smoking gun that something is not right in the state of Denmark."

7  18.     Defendant CHL is now under investigation by the U.S. Bankruptcy Trustee and the U.S. Attorney

8  for fraud associated with its loan servicing practices, including the bankruptcy case of Diane Hill of

9  Pittsburgh, PA. in which Judge Agresti presides.

10  19.     During 2005 CHL's loan sales peaked at which time it was experiencing a high volume of

11  foreclosures.  Liquidity was rapidly becoming a concern despite the fact that CHL was  continuing to

12  misrepresent its actual financial condition on its annual and quarterly filings to the SEC.

13  20.     Although CHL loan sales decreased from 138B to 126B in the 3rd quarter of 2005, it reported

14  an increase in revenue from its mortgage servicing operations. CHL depended heavily on its mortgage

15  servicing revenue for cash flow to fund its daily operations.

16  21.     To increase its cash flow, and consistent with its report that its mortgage servicing revenue was

17  increasing as its loan volume was decreasing, CHL embarked upon a scheme where it would inflate

18  charges to its borrowers on existing loans and escrow accounts. Routinely, CHL would unlawfully

19  inflate the stated insurance premium or real property tax when it in fact had not actually been increased

20  by the insurance company or county tax assessor.

21  22.     Additionally, CHL would fail to apply a borrowers payment until after the 15th of the month and

22  then charge the borrower a late fee. CHL intentionally and unlawfully used fraudulent tactics to increase

23  a borrowers payments which resulted in an illgotten windfall of pure profit upon which CHL began to

24  rely to meet its increasing operational cash flow demands.

25  23.     During this time, CHL was servicing approximately 198,000,000 loans with a total value of over

26  One Trillion Dollars. Doing the math, if CHL simply added one dollar to each loan it serviced, CHL

27  would be making $198,000,000 per month in pure profit based solely upon fraud.

28

24.    On one single loan, defendant CHL was unlawfully charging the plaintiff over $150 per month in fraudulently inflated charges.

25.    To perpetuate this ongoing fraud against borrowers, including the Plaintiff herein, who resisted this excessive and fraudulent business practice by CHL, CHL would threaten to report negative credit against the borrower if he failed to pay, which posed a more severe problem than the amount being extorted from him at the time.

26.    Plaintiff refused to pay the unlawfully inflated amounts demanded by CHL on his escrow accounts and sent his written demand that CHL cease demanding such improper amounts, and thereafter withdrew his authorization to allow CHL to maintain his escrow accounts associated with his loans.

27.    Although CHL had never imposed any condition of his loans that plaintiff was required to establish escrow accounts, and that such escrow accounts were merely established as an accommodation to plaintiff's request for such accounts, CHL refused to cease demanding payment into such accounts even after plaintiff's written demand for it to do so.

28.    CHL threatened plaintiff with negative credit reporting and foreclosure if he failed to make the inflated payments as demanded by the defendant. Plaintiff refused to pay the unlawfully inflated amounts and after rescinding defendant CHL's authority to collect escrow payments, plaintiff continued to make his principal and interest payments under the terms of the mortgages.

29.    Defendant CHL failed and refused to apply plaintiff's payments in accordance with his instructions and thereafter misapplied such payments for the purpose of imposing late fees and reporting negative credit against the plaintiff.

30.    Thereafter, and by the use of non-genuine documents, defendant CHL filed suit against the plaintiff to foreclose on one of his properties. Within weeks, defendant CHL filed suit to foreclose on two additional properties owned by plaintiff.

31.    On or about May 19, 2006, plaintiff herein obtained a default judgment in the amount of $556,989.75 on his counterclaim against CHL in the McCracken Circuit Court related to CHL's foreclosure suit. A few days later, defendants Andrew Beshear and Jonathon Pitchford filed their appearances in that case as counsel for defendant herein, CHL, who was the plaintiff in the McCracken Circuit Court case.

5

**EXHIBIT 4, PAGE 17**

32.    On or about July 20, 2006 Andrew Beshear filed a sworn affidavit in the McCracken Circuit in support of his motion on behalf of CHL to set aside the default judgment in favor of the plaintiff herein. In that affidavit, Beshear stated that "I have had detailed discussions with numerous members of Countrywide" and "Countrywide will be able to produce evidence that defendant (plaintiff herein) missed payments, made late payments, or made insufficient payments under the loan."

33.    After discovery was served upon CHL and Beshear which included a request for production of documents, and specifically the documents identified in Beshear's affidavit, both Beshear and CHL failed to produce the documents that Beshear stated in his sworn affidavit were in CHL's possession. Beshear either perjured himself, or he violated Kentucky Rules of Discovery, and Kentucky Rules of Professional Conduct by failing to produce these documents.

34.    CHL, Beshear and Pitchford have failed to provide responses to discovery in the McCracken Circuit Court case in accordance with Kentucky Rules of Discovery and where such conduct by Beshear and Pitchford has violated Kentucky Rules of Professional Conduct.

35.    On or about November 19, 2007 Beshear and Pitchford requested a 2 week extension of time to answer interrogatories and request for production of documents in the McCracken Circuit Court case. Defendant (plaintiff herein) agreed to such request expecting Beshear and Pitchford to serve the responses of CHL within 2 weeks. After 2 weeks, Beshear and Pitchford failed to serve any responses at all, in violation of Kentucky Rules of Discovery.

36.    Beshear and Pitchford, after more than 6 weeks, served discovery responses that were neither executed or verified. This violated the agreement for a 2 week extension of time to respond, and it violated Kentucky Rules of Discovery as well as Kentucky Rules of Professional Conduct.

37.    During this same time, Beshear and Pitchford were withholding documents they had received from 3rd parties pursuant to subpoenas they had served. Despite a duty to immediately provide such documents to the defendant (plaintiff herein) under KRCP 45.03, Beshear and Pitchford withheld these documents and secreted them from the defendant in that case.

38.    Beshear and Pitchford attempted to force the defendant (plaintiff herein) into a deposition without providing the defendant with copies of documents they had received from the 3rd party subpoenas. Defendant refused to appear for deposition until such documents were provided to him.

6

39.     Beshear and Pitchford agreed to provide the 3rd party documents before setting the defendant's deposition, but thereafter noticed the defendant's deposition while failing and refusing to provide the 3rd party documents. The defendant sent written notification to Beshear and Pitchford that he would not attend any deposition until the 3rd party documents were provided to him as previously agreed, and provided to him in accordance with KRCP 45.03.

40.     Thereafter, and still refusing to produce the 3rd party documents to the defendant (plaintiff herein) Beshear and Pitchford filed a motion to compel and motion for sanctions against the defendant for his failure to attend a deposition. These motions were filed in bad faith and were filed in violation of the agreement between the defendant and Beshear and Pitchford to provide the 3rd party documents before taking the defendant's deposition.

41.     Beshear and Pitchford have abused and misused the discovery process to delay the McCracken Circuit Court case to hinder and delay the defendant's ability to prosecute his case, and to prejudice his right of due process under the 14th Amendment throughout the case.

42.     Beshear and Pitchford,  filed a motion in the McCracken Court for sanctions against the defendant (plaintiff herein) which contain materially false statements, intentionally alluded to matters that are not relevant or are likely to be supported by admissible evidence, and which seek to obtain an advantage over the defendant in this case, all in violation of Rules Of Professional Conduct.

43.     In the motion for sanctions, which bears the signatures of both Andrew Beshear and J. Duncan Pitchford, plaintiff (CHL) its and counsel seek sanctions and a dismissal of defendant's (plaintiff herein) counterclaim based upon false allegations that defendant 1)"committed the unauthorized practice of law", 2) "made at least two deliberately untruthful statements", and, 3) that defendant was the subject of a felony criminal conviction in 2001.

44.     These statements made by Beshear and Pitchford are false, they are made with the intent to disgrace the defendant to gain an advantage over him , they show a wanton and reckless disregard for the plaintiff's right of due process, and they violate several Kentucky Rules of Professional Conduct which prohibit such conduct, where such prohibition serves to protect due process.

45.     At the time Beshear and Pitchford made false allegations in their motion for sanctions against the defendant in the McCracken Circuit Court case, the defendant (plaintiff herein) was represented by

7

1  Dennis Null. Mr. Null notified Beshear and Pitchford that they had made substantial misrepresentations

2  to the court and those misrepresentations should be eliminated or corrected. Beshear and Pitchford

3  refused to correct their misrepresentations or otherwise advise the court of their falsity. The conduct of

4  Beshear and Pitchford was approved and ratified by CHL. Such conduct violated the plaintiff's due

5  process rights, and it violates Kentucky Rules of Professional Conduct 3.3(a)(1) and (2), and it

6  constitutes fraud.

7  46.    The judge presiding over the McCracken Circuit Court case was Judge Craig Clymer. Beshear

8  and Pitchford were keeping a secret that substantially prejudiced the rights of the defendant (plaintiff

9  herein) and denied his due process rights in that case. After more than a year-and-a-half, plaintiff herein

10  discovered that Judge Clymer's daughter-in-law was working for the law firm who represents CHL in

11  that case, Whitlow, Roberts & Straub, who is also Pitchford's employer.

12  47.    While Beshear and Pitchford enjoyed this nefarious relationship with Judge Clymer, and

13  benefitted from the conflict of interest that existed, they both failed to disclose this fact to the defendant

14  in that case  (plaintiff herein). The result was that the defendant's due process rights were completely

15  defeated. While plaintiff's due process rights were compromised, Beshear and Pitchford intended to take

16  advantage thereof and seek a summary adjudication in that case, thus depriving the plaintiff of his

17  property without due process.

18  48.    Beshear, Pitchford and CHL knowingly, recklessly, wrongly and fraudulently used this conflict

19  of interest and special relationship with Judge Clymer to gain an unfair advantage over the defendant

20  (plaintiff herein) in the McCracken Circuit Court case, to obtain favorable rulings, to defeat the

21  defendant's claims,  to  prevail in the action, all by denying the defendant (plaintiff herein) his due

22  process rights.

23  49.    In one instance, Beshear and Pitchford filed a motion for sanctions against the defendant

24  (plaintiff herein), and in support thereof, filed a sworn affidavit attesting to the fact that Jonathan

25  Pitchford had performed $1854 in legal services in that case. As a result of the special relationship

26  between Pitchford and Judge Clymer, that motion was granted.

27  50.    A few weeks later when the defendant (plaintiff herein) discovered that Judge Clymer's daughter

28  worked for Pitchford's law firm, Pitchford attempted to avoid the conflict of issue by stating to the court

EXHIBIT 4, PAGE 20

1    that he had done no work on the case, and had only made and filed copies with the court. Mr. Pitchford

2    made the following statement in open court: "*and just to echo what Mr. Beshear said, my role has been*

3    *very limited...um...aah...essentially filling the role of local counsel in this case...aah...largely printing*

4    *documents and delivering them to the clerk, so in providing real estate when Mr. Beshear needs to take*

5    *a deposition...so **all** the substantive work has come from Mr. Beshear's office."*

6    51.    Pitchford has committed perjury by filing a false affidavit in court, and then confirmed that

7    perjury when he made his statement in open court that he had done no work in the case. Pitchford and

8    Beshear have committed a fraud upon the McCracken Circuit Court, a fraud upon the defendant

9    (plaintiff herein), and violated the defendant's due process rights as guaranteed by the 14th Amendment.

10    52.    Throughout the McCracken Circuit Court case, Beshear and Pitchford failed to raise any relevant

11    defense to the counterclaim filed by the defendant (plaintiff herein) because their client has no defense

12    to the allegations  therein. Beshear and Pitchford resorted to filing false proceedings against the

13    defendant to support erroneous requests for summary adjudication of the claims made therein by both

14    the plaintiff and defendant. In each motion filed by Beshear and Pitchford, they were relying on their

15    special relationship with Judge Clymer, the conflict of interest that existed, and the defendant's lack of

16    knowledge about such conflict as a means to obtain the relief they sought, all which violate the plaintiff's

17    due process rights in that case.

18    53.    CHL is currently the subject of investigations or legal action by various states and/or their

19    respective Attorneys General, including, California, Washington, Illinois, Florida, West Virginia,

20    Connecticut, New Mexico and Indiana related to unlawful and/or fraudulent business practices.

21    54.    Additionally, CHL, along with many of its affiliates and high ranking officers are under criminal

22    investigation by the FBI, SEC, U.S. Attorney, and U.S. Bankruptcy Trustee for high level fraud

23    including insider trading, securities fraud, and fraudulent and deceptive business practices, forgery and

24    demanding erroneous charges from borrowers, including borrowers in the U.S. Bankruptcy Court.

25    55.    Defendants CHL, Beshear and Pitchford are attempting to deprive the plaintiff of his property

26    by way of flawed and unconstitutional judicial proceedings where such proceedings have been tainted

27    by CHL, Beshear, and Pitchford's use of forged and altered documents, false matters being filed with

28    the McCracken Circuit Court, and a secret and special relationship with the presiding judge who has a

9

1    family member working for the law firm representing CHL. All such proceedings violate this plaintiff's

2    right to due process in that case.

3    56.      The conduct of Beshear and Pitchford in rendering unlawful and unconstitutional legal services

4    was done wantonly, recklessly, knowingly, and without authority of law, and was designed to deprive

5    the plaintiff his due process rights while allowing CHL to perpetuate its fraud of using forged

6    documents, overcharging the plaintiff, failing to disclose evidentiary matter to expose CHL's fraud, all

7    of which is a violation of the Kentucky Residential Mortgage Fraud Act (KRS 286.8-990), Kentucky

8    Consumer Protection Act (KRS 367.170)  and the Sarbanes/Oxley Act which prohibits attorneys from

9    assisting their clients to commit or conceal fraud.

10    **COUNT 1: VIOLATIONS OF THE TRUTH IN LENDING ACT**

11    57.      Plaintiff incorporates by reference the allegations of all the preceding and subsequent

12    paragraphs of the Complaint as if fully set forth herein.

13    58.      The plaintiff's loans evidenced by the mortgages herein are regulated by the federal Truth

14    in Lending Act and the regulations promulgated by the Office of Thrift Supervision thereunder.

15    ("Regulation Z")

16    59.      As discussed above, CHL, AWL, and MERS failed to lawfully disclose, prior to the loan

17    settlement, during the loan settlement, and after the loan settlement, the actual and proper costs of the

18    loans, the true terms of the loans, the proper amount of payments of the loans, and/or to disclose any

19    change of payment that would occur.

20    60.      As a direct result of defendants CHL, AWL and MERS failure to make such lawful

21    disclosures, plaintiff was charged cost and fees that were not disclosed and plaintiff's payments were

22    subsequently increased without lawful disclosure in violation of USC 15 § 1605.

23    61.      As a direct and proximate result of the aforesaid violations of the federal Truth in

24    Lending Act, the plaintiff suffered a significant ascertainable loss of money and/or valuable property,

25    and foreseeable consequential damages (including but not limited to emotional distress, adverse credit

26    report entries, foreclosures, late fees, additional interest expense, inability to pay other bills when due,

27    attorney fees, court costs, and similar and related items), all caused by CHL, AWL and/or MERS, and

28    all amounts to be proven at trial.

62.     As a result of the foregoing, Plaintiff is entitled to and prays for statutory and actual compensatory, consequential, and punitive damages, as well as attorney fees and costs, to the extent allowed by law and in amounts to be proven at trial.

**COUNT 2: KENTUCKY MORTGAGE LOAN PRACTICES VIOLATION**

63.     Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

64.     KRS 286.8-220(2) provides that: It shall be unlawful for any mortgage loan company ...directly or indirectly:

(a) To employ a device, scheme, artifice to defraud;

(b) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;...

KRS 286.8-125(1) provides that: It shall be unlawful for any licensee or person holding a claim of exemption to originate a loan secured by a mortgage on residential real property in Kentucky if the total net income generated by the licensee or person exceeds two thousand dollars ($2000) or 4% of the total loan amount, whichever is greater.

65.     The acts and practices by CHL, AWL and MERS described herein violate KRS 286.8-220(2) and KRS 286.8-125(1), and caused damage to Plaintiff in an amount to be proven at trial, but which exceed the jurisdictional minimum of the Court.

**COUNT 3: VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**

66.     Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

67.     12 USC §2607 states that:

(a) No person shall give, and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) No person shall give and no person shall accept any portion, split, or % of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually rendered.

11

68.   12 USC §2609 states that:

(a)   A lender, in connection with a federally related mortgage loan, may not require the borrower or prospective borrower...

(2) to deposit in any escrow account in any month beginning with the first full installment payment under the mortgage a sum in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges...

69.   12 USC §2605 states that :

(e)(3)  During the 60-day period beginning on the date of a servicer's receipt from any borrower of a qualified request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency.

(f) Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) In the case of any action by an individual, an amount equal to the sum of

(A) any actual damages to the borrower as a result of the failure.

70.   Defendant CHL, with the support and ratification of AWL and MRES, issued kickbacks on fees charged the Plaintiff on his loans and further overcharged Plaintiff for settlement services which were then split among persons who did not perform such settlement services, in violation of 12 USC § 2607.

71.   Defendant CHL, with the support and ratification of AWL and MRES, charged Plaintiff amounts on his escrow accounts which were in excess of the actual amounts required to pay taxes and insurance premiums in violation of 12USC § 2609.

72.   Defendant CHL, with the support and ratification of AWL and MRES, reported that Plaintiff made late payments on his loans during the 60-day period after Plaintiff submitted a qualified written request to notify Defendant CHL that it had improperly made such an error in reporting, and that CHL had failed to properly credit Plaintiff's payments to his account. Despite the fact that defendant CHL provided Plaintiff with written proof that his payments were in fact not late during the period in question, CHL continued to report Plaintiff's loan payments late during and after the 60-day period.

73.     As a result of the foregoing, Plaintiff is entitled to and prays for statutory and actual compensatory, consequential, and punative damages, as well as attorney fees and costs, to the extent allowed by law and in amounts to be proven at trial.

**COUNT 4: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

74.     Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

75.     Defendants, and each of them, with respect to Plaintiff's loans, are acting within their capacity as principal, agent, or employee of the mortgagee and/or lender, are acting in concert with one another, are acting for the benefit of one another, are acting with the knowledge and consent of one another, and therefore are liable to the Plaintiff for any and all acts or conduct taken by such defendants, whether jointly or individually.

76.     Defendants, and each of them, are debt collectors under the federal Fair Debt Collection Practices Act as defined by 15 USC § 1692a (6). The Lender under Plaintiff's mortgages is AWL, however it is using a name other than its own, CHL, Lerner, Sampson & Rothfuss, Stites & Harbison, PLC and Whitlow, Roberts & Straub, which would indicate that a third person is collecting or attempting to collect the debt of the Plaintiff. Defendant's own pleadings in the McCracken Circuit Court case indicate they are debt collectors.

77.     The amounts demanded by the defendants include sums that are prohibited under 12 USC § 2609, 12 USC §2605, and such amounts exclude payments that were made by the Plaintiff but not credited by the defendant. Further, such amounts include late fees and other charges that are solely the result of the defendants' fraud and negligence and which are not owed by the Plaintiff nor lawfully owed to the defendants.

78.     The defendants, and each of them, as debt collectors, have presented forged and altered documents to the Plaintiff in an effort to force the Plaintiff to pay sums he does not owe, which is in violation of 15 USC § 1692e.

79.     The defendants, and each of them, as debt collectors, have failed and refused to provide actual copies of documents to support the amount such debt collector defendants are attempting to collect from the Plaintiff despite Plaintiff's request for such documents. Such conduct on the part of the

13

1   defendant debt collectors violated 15 USC § 1691g (b).

2       80.   Defendants Beshear and Pitchford, with the support and consent of CHL, AWL and

3   MERS, made the false representation, and in conjunction with their collection attempts against the

4   Plaintiff, that Plaintiff was convicted of a felony in Missouri in 2001, and that such felony was relevent

5   to the debt that the defendants, and each of them, are attempting to collect against the Plaintiff.

6       81.   When Beshear and Pitchford made this false statement, they knew it was false, but they

7   made such false statement in order to disgrace the Plaintiff for the purpose of defaming him and

8   damaging his reputation. Beshear and Pitchford were advised in writing by both the Plaintiff, and

9   attorney Dennis Null, that Plaintiff was never convicted of any crime in Missouri as falsely stated by

10  Beshear and Pitchford. Beshear and Pitchford were also requested to retract their false statement, but

11  they refused. The conduct of Beshear and Pitchford as described herein is a strict violation of 15 USC

12  § 1692e(7). The defendants and each of them, are subject to civil liability to the Plaintiff under 15 USC

13  § 1692k and other state and federal laws.

14      82.   As a result of the aforesaid violations of the federal Fair Debt Collection Practices Act,

15  the Plaintiff is entitled to recover and prays for the recovery of actual and statutory compensatory

16  damages, and consequential and punitive damages, and reasonable attorney fees, to the maximum

17  allowed by law.

18  **COUNT 5: VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**

19      83.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent

20  paragraphs of the Complaint as if fully set forth herein.

21      84.   KRS 367.170(1) provides that "Unfair, false, misleading or deceptive acts or practices

22  in the conduct of any trade or commerce are hereby declared unlawful."

23      85.   The acts and practices by CHL, AWL, MERS, Beshear and Pitchford, set out herein, are

24  in violation of KRS 367.170(1), and caused damage to Plaintiff in an amount to be proven at trial, but

25  which exceeds the jurisdictional minimum of the Court.

26  **COUNT 6: FRAUD AND CONVERSION**

27      86.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent

28  paragraphs of the Complaint as if fully set forth herein.

14

87.     Plaintiff was approved for 3 loans by defendants CHL, AWL and MERS (hereinafter Lender Defendants) which are evidenced by the three mortgages herein.

88.     After loan approval, but prior to loan settlement, Plaintiff requested that his loans include escrow accounts solely for his benefit. Never at any time did the Lender Defendants suggest or require that Plaintiff's loans were subject to, or contingent upon escrow accounts.

89.     Plaintiff is informed and believes that he never executed any document which required or authorized the Lender Defendants to impose or otherwise establish escrow accounts for his loans.

90.     As requested by Plaintiff, lender defendants began collecting sums from his monthly payments that Plaintiff believed were for the purpose of paying the exact amount of insurance premiums and real property taxes related to Plaintiff's loans and properties.

92.     Lender Defendants thereafter began inflating charges to Plaintiff's escrow accounts by falsely representing to Plaintiff that his insurance premiums and/or real property taxes were more than their actual and legitimate amounts.

93.     Lender Defendants also mismanaged Plaintiff's escrow accounts by making improper or duplicative disbursements which gave the appearance of escrow account shortages for which Plaintiff was improperly billed.

94.     After making improper disbursements, and improperly inflating Plaintiff's escrow accounts, Lender Defendants then began billing Plaintiff for amounts that were not actually owed.

95.     As Plaintiff continued to make his monthly payments as agreed, Lender Defendants would then convert those payments and apply such sums to late fees and erroneous charges that the Lender Defendants declared were due.

96.     Plaintiff informed the lender defendants that they had made errors on Plaintiff's escrow accounts and requested that they correct such errors and restore his escrow accounts to their proper status.

97.     After the Lender Defendants failed and refused to make such corrections to Plaintiff's escrow accounts, Plaintiff sent written notice to lender defendants that he had withdrawn his authorization to allow the lender defendants to manage, maintain or collect sums for escrow accounts related to his loans.

15

98.    The Lender Defendants ignored Plaintiff's written demand and as the lender defendants collected and received the Plaintiff's monthly payments that were directed to his loans for PITI, the Lender Defendants converted those payments for their own purposes and applied them to erroneous late fees and other charges that were not legitimate sums owed by Plaintiff.

99.    Lender Defendants continued to misapply and convert Plaintiff's monthly loan payments while simultaneously showing that Plaintiff's loans were in default as a result of lender defendants' fraud and conversion of Plaintiff's payments.

100.    Lender Defendants then initiated foreclosure lawsuits against Plaintiff's properties alleging that Plaintiff was in default on his loans, but the reality is that the alleged defaults are a result of Lender Defendants's fraud and conversion of Plaintiffs loan payments, Lender Defendants failure to properly and lawfully apply Plaintiff's loan payments, and Lender Defendants inclusion of unlawfully and fraudulently inflated escrow charges and late fees to the amount of the default alleged of plaintiff.

101.    12 USC §2609 states that:

(a)    A lender, in connection with a federally related mortgage loan, may not require the borrower or prospective borrower...

(2)    to deposit in any escrow account in any month beginning with the first full installment payment under the mortgage a sum in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges... Lender defendants violated this federal code when they, and each of them, forced and/or demanded that Plaintiff pay sums in excess of the limits set forth herein.

102.    KRS 286.8-130 provides that (1) all sums paid into an escrow account by the borrower shall be placed into an interest-bearing account and shall belong to the borrower and not the lender, (2) all interest paid on such escrow funds shall belong to the borrower, (3) the lender shall account to any borrower whose property secured the loan such funds are held for, (5) Escrow funds shall not be subject to execution or attachment on any claim of the lender and it shall be unlawful for the lender to knowingly to keep any such escrow funds, and, (6) Payments to the debtor's escrow account shall be properly credited. Defendants never paid interest to Plaintiff on his escrow deposits.

16

103.   KRS 286.8-220(2) provides that: It shall be unlawful for any mortgage loan company ...directly or indirectly:

(a) To employ a device, scheme, artifice to defraud;

(b) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;...

104.   As alleged herein, the lender defendants have violated KRS 286.8-130(1), (2), (3), (5) and (6).

105.   As a result of the aforesaid violations of 12 USC §2609 and KRS 286.8-130(1), (2), (3), (5) and (6), and KRS 286.8-220(2), the Plaintiff is entitled to recover and prays for the recovery of actual and statutory compensatory damages, and consequential and punitive damages, and reasonable attorney fees, to the maximum allowed by law.

**COUNT 7: FRAUD AND CONSPIRACY**

105.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

106.   Defendants, and each of them, have initiated and maintained legal action against the plaintiff to foreclose the mortgages herein, which are identified in ¶8 above.

107.   In each foreclosure suit as described herein, the plaintiff in those cases (CHL) holds no actual interest in the mortgages, has no legal capacity to maintain those foreclosure proceedings, and is therefore committing fraud against the plaintiff herein by maintaining those actions.

108.   Additionally, the defendants, and each of them, are using altered, fabricated, or non-genuine documents as evidence to support the foreclosure proceedings against the plaintiff herein knowing that such documents are not the original or genuine documents, and knowing that use of such documents are a fraud upon the court and a fraud upon the plaintiff.

109.   Defendants, and each of them, continue to maintain the foreclosure proceedings against the plaintiff and his mortgages with full knowledge that the loans related to such mortgages were made in violation of the federal Truth in Lending Act, the federal Real Estate Settlement Procedures Act, and the federal Fair Debt Collection Act, all of which constitute a fraud upon the Plaintiff.

**EXHIBIT 4, PAGE 29**

1   110.   The Defendants, and each of them, in concert with one another, have willfully attempted

2   to deprive the plaintiff of his property and money for their own benefit by initiating and maintaining

3   foreclosure lawsuits against him, with the full knowledge that such Defendants were committing fraud

4   as alleged herein.

5   111.   KRS 286.8-220(10 states: it shall be unlawful for any mortgage loan company ...directly

6   or indirectly:

7   (a) To employ a device, scheme, artifice to defraud;

8   (b) To engage in any act, practice, or course of business which operates  or would operate

9   as a fraud or deceit upon any person;...

10   112.   The foreclosure lawsuits initiated and maintained by the defendants, and each of them,

11   constitute a device or scheme as defined by KRS 286.8-220(1)(a), and such suits constitute an act,

12   practice and course of business in which the defendants have engaged themselves in for the purpose of

13   defrauding the Plaintiff and wrongfully depriving him of his property and money.

14   113.   As a result of the foregoing, Plaintiff is entitled to and prays for compensatory,

15   consequential, and punitive damages, in amounts to be proven at trial.

16   **COUNT 8:  BAD FAITH, INTERFERENCE WITH THE PERFORMANCE OF A
         CONTRACT,  AND BREACH OF THE COVENANT OF FAIR DEALING**

17

18   114.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent

19   paragraphs of the Complaint as if fully set forth herein.

20   115.   KRS 286.8-270 provides that:

21   (1) A mortgage loan broker shall comply with the following duties:

22   (a) A mortgage loan broker shall exercise good faith and fair dealing, shall act in the best

23   interest of the borrower, and shall not compromise a borrower's right or interest in favor of another's

24   right or interest;

25   (b)  A mortgage loan broker shall disclose to borrowers all material facts of which the

26   mortgage loan broker has knowledge that might reasonably affect the borrower's rights, interests, or

27   ability to receive the borrower's intended benefit from the residential mortgage loan.

28

18

**EXHIBIT 4, PAGE 30**

116.   The requirements set forth in KRS 286.8-270 are all-encompassing and do not establish limitations related to loan origination, processing, funding or servicing. Accordingly, a mortgage lender owes such duties to its borrowers in all phases of the mortgage loan process through out the life of the loan. Such duties are required of any and all of the mortgage lenders agents, officers, employees, or other persons or entities acting within the scope of the authority held by the mortgage lender  related to its duties to the borrower related to his mortgage(s).

117.   Defendants CHL, AWL, and MERS violated the mortgage contracts with the Plaintiff when they falsely and fraudulently inflated charges to the Plaintiff's escrow accounts, falsely and fraudulently demanded payment for those erroneous charges, refused to correct the fraudulent charges after they were requested to do so, and then falsely initiated foreclosure proceedings against the plaintiff's mortgages based upon such false and fraudulent charges.

118.   Defendants, and each of them, thereafter have withheld documents, evidence, and other material facts related to Plaintiff's loans which have severely and detrimentally affected his rights, interests, and benefits related to such mortgage loans, and where such material facts have been wrongfully withheld, Plaintiff has been denied his due process rights to protect his money and property or to otherwise receive the full benefits entitled to him under his mortgages and the provisions of KRS 286.8-270.

119.   Defendants, and each of them, have interfered with Plaintiff's ability to perform his mortgage contract by demanding sums from Plaintiff that were not actually or lawfully due, by refusing to comply with the terms and conditions of the mortgage contracts, and by refusing to comply with laws and regulations that govern such mortgage contracts in this judicial district. Defendants have further interfered with Plaintiff's ability to perform his mortgage contract by initiating and maintaining foreclosure lawsuits against the Plaintiff which were brought in bad faith, which are being maintained in bad faith and in violation of law, and which the named plaintiff in those actions has no lawful interest or legal capacity with respect to such mortgages.

120.   As a result of the foregoing, incorporating by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein, the Defendants, and each of them, are liable for the aforesaid acts of bad faith, interference, and the breach of the covenant of good

EXHIBIT 4, PAGE 31

1    faith and fair dealing in an amount to be determined as compensatory and punitive damages for the

2    Plaintiff.

3    **COUNT 9: VIOLATION OF THE FAIR CREDIT REPORTING ACT**

4         121.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent

5    paragraphs of the Complaint as if fully set forth herein.

6         122.    At some  time within the 12 month period immediately prior to Plaintiff's mortgages

7    being issued by the Defendants, TransUnion reported the plaintiff's credit score at 816.

8         123.    Plaintiff is informed and believes that one or more of the defendants caused Plaintiff's

9    credit report to be obtained in 2004 as part of the loan processing related to Plaintiff's mortgages.

10        124.    Plaintiff is informed and believes that the credit report obtained by one or more of the

11    Defendants in 2004 listed Plaintiff's FICA score as 684, and that such credit report was void of any

12    negative credit against the Plaintiff.

13        125.    Plaintiff is informed and believes that his credit score during the time his mortgage loans

14    were being processed by the Defendants was sufficient to allow him to obtain "A" credit loans, including

15    mortgage loans, consumer loans, auto loans, commercial loans, and other services for which credit is

16    a factor, such as homeowner insurance, commercial insurance, auto insurance, bonding, etc.

17        126.    On or about August, 2005, one or more of the defendants reported negative credit against

18    the Plaintiff which included that he had made late payments by 30 days or more on one or more of his

19    mortgages. The negative credit reporting was made to the three major credit reporting agencies.

20        127.    On or about late August 2005, Plaintiff contacted CHL to inform them that they had made

21    an error on their credit reporting of Plaintiff and requested that it immediately be corrected. A loan

22    service representative for CHL indicated that CHL had made an error by not properly crediting Plaintiff's

23    loan payment, that two of Plaintiff's loans showed the payments were past due, and that Plaintiff owed

24    late payment penalties.

25        128.    Defendant CHL then refused to correct the error unless and until Plaintiff produced proof

26    that his payments had in fact been made. Plaintiff produced his cancelled checks which proved beyond

27    any doubt that his payments had been made.

28

**EXHIBIT 4, PAGE 32**

129.    Thereafter, and upon receipt of Plaintiff's cancelled checks, CHL told Plaintiff that it would correct the incorrect negative reporting against his credit, correct the loan status, and issue a written statement indicating that he had no negative credit or late payments on his mortgages.

130.    On or about October, 2005, CHL issued a letter to Plaintiff stating that Plaintiff had no negative credit and that his loans had not been paid late at any time from their inception.

131.    Defendant CHL thereafter failed to correct the negative credit reported against the Plaintiff, and continued to report that he was making late payments.

132.    The conduct of CHL was at the very least negligent up to the time it was notified by the Plaintiff of such improper reporting. Thereafter, once it was placed on notice of the improper credit reporting, and once it agreed to correct the mistake, any further negative credit reporting and/or any failure to correct the known credit reporting errors, CHL, AWL and MERS was in strict violation of 15 USC §1681n and 15 USC §1681o.

133.    By the Defendants' own negligence, including CHL, AWL and MERS, the incorrect reporting of negative credit against the Plaintiff was in violation of 15 USC §1681e.

134.    As a result of the Defendants' improper credit reporting against the Plaintiff, and then the Defendants' subsequent failure to correct such improper credit reporting, Plaintiff suffered both the denial of credit and/or additional expense where  mortgage loans, consumer loans, auto loans, commercial loans, and other services for which credit is a factor, such as homeowner insurance, commercial insurance, auto insurance, or bonding, was sought.

135.    As a result of the foregoing, incorporating by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein, the Defendants, including CHL, AWL and MERS, are liable for the aforesaid acts of negligence and violation of the Fair Credit Reporting Act in an amount to be determined as compensatory and punitive damages for the Plaintiff.

**COUNT 10:   CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3)**

136.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

137.    Defendants Andrew Beshear and Jonathon Pitchford are and were at all times mentioned herein, acting within the scope and authority granted them by a regulation of the State of Kentucky

EXHIBIT 4, PAGE 33

1    which authorizes them to practice law in the Kentucky Courts, and which makes them Officers of the

2    Court, including the McCracken Circuit Court of McCracken County Kentucky.

3        138.    Beshear and Pitchford are "persons" as that term is used in the text of 42 U.S.C. § 1983.

4        139.    Under color or Kentucky regulation and by use of the authority granted thereunder to

5    Beshear and Pitchford, and in violation of 42 USC § 1985(3) by all defendants, Beshear, Pitchford, CHL,

6    AWL and MERS (through their respective officers, agents and/or employees) entered into express and/or

7    implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiff

8    of his constitutional rights by filing false matters, failing to provide discovery, withholding material

9    facts, obstructing justice, maintaining a secret relationship with the presiding judge, and interfering with

10   Plaintiff's meaningful access to the court, all of which such conduct is prohibited by Kentucky Revised

11   Statutes, and/or Kentucky Rules of Civil Procedure, and/or Kentucky Rules of Professional Conduct.

12       140.    The Defendants, and each of them, willfully participated in this illegal objective by

13   various means, with the intent to further some purpose of the conspiracy, including for example:

14       a.    Filing false and inflammatory statements about the Plaintiff;

15       b.    Failing to turn over documents and material facts that would prove Plaintiffs allegations;

16       c.    abusing the discovery process to harass and intimidate the Plaintiff;

17       d.    agreeing to use false, altered, or forged documents to support foreclosure actions

18            against the Plaintiff and his real properties.

19       e.    seeking sanctions against the Plaintiff under false pretenses

20       f.    withholding 3rd party documents to gain an unfair advantage over the Plaintiff;

21       g.    failing to comply with discovery rules promulgated by the Kentucky Supreme Court

22       h.    filing false sworn affidavits with the court to deny certain relief to the Plaintiff

23       i.    withholding information from the Plaintiff to prevent him from learning that the

24            presiding judge had a family member working for the defendant's counsel.

25       141.    The Defendants', and each of them, their actions evidenced a reckless and callous

26   disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

27       142.    As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his

28   rights under the Fourteenth Amendment to the United States Constitution.

143.   As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of privacy, loss opportunity, loss of status and standing in the business community, and irreparable harm to his income potential.

144.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in a portion of the civil proceedings to protect his property, and incurred expenses associated with defending against the unlawful civil proceedings initiated and sustained by the defendants.

145.   As a result of the foregoing, the Defendants, and each of them, are liable for the aforesaid acts of conspiracy and violation of 42 U.S.C. § 1983 and 42 U.S.C. §1985(3) in an amount to be determined as compensatory and punitive damages for the Plaintiff.

**COUNT 11:  CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985(2)  (OBSTRUCTION)**

146.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

147.   Beshear, Pitchford, CHL, AWL, and MERS are "persons" as that term is used in  42 .U.S.C. 1985(2).

148.   Under color of state regulation, and in their capacities as attorneys and officers of the court, Beshear and Pitchford, along with CHL, AWL, and MERS who were acting in their individual capacities, conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of impeding, hindering, obstructing and defeating the due course of justice (including Plaintiff's due process rights) in the State of Kentucky, with the intent to deny Plaintiff the equal protection of laws.

149.   Defendants, and each of them, their actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

150.   As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourteenth Amendment to the United States Constitution.

151.   As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of privacy, loss opportunity, loss of status and standing in the business community, and irreparable harm to his income potential.

23

**EXHIBIT 4, PAGE 35**

1    152.    As a further consequence of these deprivations, Plaintiff was required to retain counsel

2    to represent him in a portion of the civil proceedings to protect his property, and incurred expenses

3    associated with defending against the unlawful civil proceedings initiated and sustained by the

4    defendants.

5    153.    As a result of the foregoing, the Defendants, and each of them, are liable for the aforesaid

6    acts of conspiracy and violation of 42 U.S.C. §1985(2) in an amount to be determined as compensatory

7    and punitive damages for the Plaintiff.

8    **COUNT 12: DECLARATORY RELIEF**

9    154.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent

10   paragraphs of the Complaint as if fully set forth herein.

11   155.    A dispute has arisen between and among Plaintiff and Defendants with regard to the

12   rights, obligations, benefits and duties due or owed under the mortgage/loans herein.

13   156.    These disputes concern, but are not limited to, use of forged, altered or non-genuine

14   documents by the defendants, no lawful interest held in the mortgages, no lawful capacity to enforce

15   such mortgages, propriety of servicing such mortgage loans, propriety of originating and funding such

16   loans, including compliance with the Truth in Lending Act, the Real Estate Settlement Procedures Act,

17   and the Fair Debt Collection Act.

18   157.    Additionally, there exists a dispute between the Plaintiff and the Defendants as to whether

19   the Defendants have violated the laws of Kentucky in the course of their foreclosure actions initiated and

20   maintained against the Plaintiff in the McCracken County Circuit Court, including violating the

21   Plaintiff's constitutional rights under the U.S. and Kentucky Constitutions.

22   158.    Plaintiff further alleges that a declaration of rights and duties of the parties herein are

23   essential to determine the actual status and validity of the mortgage loans, the mortgagee, the lender, the

24   loan servicer, and who has lawful authority to initiate foreclosure proceedings.

25   WHEREFORE, Plaintiff prays for a Declaration by this Court that finds the foreclosure

26   proceedings initiated against the Plaintiff in the McCracken County Circuit Court are invalid and

27   unlawful because the plaintiff in those actions lacks legal capacity to bring the action, that the plaintiff

28   in those actions does not hold a legal interest in the mortgages, that the plaintiff in those actions have

1  used forged, altered, or non-genuine documents, and that the mortgage loans violate various federal laws

2  from their origination to the present time.

3  **COUNT 13: INJUNCTIVE RELIEF**

4  159.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent

5  paragraphs of the Complaint as if fully set forth herein.

6  160.    Plaintiff is the owner in fee simple of real property located at 2115 Park Ave., 2914½

7  Benton Road, and 840 Burkhart Lane, all located in Paducah, Kentucky.

8  161.    Defendants CHL, AWL, and MERS claim an interest in the Plaintiff's property, disputing

9  or denying Plaintiff's rights to ownership and contend that their interest or ownership will be with

10  Defendants by means of a judicial foreclosure of the mortgages identified in ¶ 8 herein.

11  162.    Plaintiff alleges that Defendants CHL, AWL, and MERS have no such right, title or

12  interest in Plaintiff's real property because the foreclosure suit initiated against the Plaintiff's properties

13  is based upon fraud, in violation of Kentucky State Laws, in violation of federal laws, and has been

14  maintained in a manner that violates Kentucky State laws and the Plaintiff's constitutional rights.

15  163.    Plaintiff further alleges that CHL is the plaintiff in those foreclosure actions, and that

16  CHL does not hold an interest in the Plaintiff's mortgages, CHL does not have legal capacity to initiate

17  or maintain a suit upon those mortgages, and that none of the defendants hold or will produce original

18  or genuine documents to support such foreclosure actions.

19  164.    Defendants, and each of them, have wrongly interfered with, and continue to interfere

20  with Plaintiff's use and ownership of his properties by continued attempt to foreclose by judicial force

21  and dispossess Plaintiff from his properties.

22  165.    Defendants' attempts and threats to dispossess the Plaintiff from his properties will

23  continue unless and until enjoined or restrained by this Honorable Court.

24  166.    Failure to enjoin or restrain Defendants will cause Plaintiff grave and irreparable harm

25  as he will be deprived of his constitutional rights, deprived of his unique property, and deprived of his

26  ability to own real property due to the damage Defendants have inflicted upon Plaintiff's credit

27  worthiness and income.

28

**EXHIBIT 4, PAGE 37**

167.    Plaintiff has no adequate remedy of law to force the Defendants to comply with Kentucky law and the U.S. Constitution and/or to cease with their fraudulent foreclosure action against the Plaintiff's properties.

168.    Plaintiff alleges that the judicial foreclosures initiated and maintained by CHL in action no. 05-CI-305 in the McCracken County Circuit Court, in conjunction with Defendants' fraud, conspiracy and violation of law, is of such a nature and character to transfer title of Plaintiff's properties to defendant CHL.

**WHEREFORE**, as to the **Thirteenth** Cause of Action, Plaintiff respectfully requests this Honorable Court to issue an Order to enjoin and restrain the Defendants from maintaining the foreclosure actions against the Plaintiff in case no. 06-CI-305 in the McCracken County Circuit Court, to restrain the Defendants from further violating the Plaintiff's Constitutional Rights under the Fourteenth Amendment, and restraining the Defendants from any further violation of the federal Truth in Lending Act, federal Real Estate Settlement Act, federal Fair Debt Collection Act, and the federal Fair Credit Reporting Act.

As to the **First** through the **Twelfth** Causes of Actions, Plaintiff prays for relief against the Defendants as follows:

1.    Compensatory damages in an amount sufficient to compensate the Plaintiff for the actual damages incurred by him as a result of the acts and omissions of the Defendants;

2.    Statutory damages to the extent allowed by law for the Plaintiff for the acts and omissions of the Defendants;

3.    Consequential damages to the extent allowed by law for the Plaintiff for the acts and omissions of the Defendants;

4.    Under the Kentucky Consumer Protection Act, the Kentucky Mortgage Loan Practices Act, and other applicable Kentucky Revised Statutes, damages as allowed by those statutes, including punitive or exemplary damages, double or treble damages, penalties, attorneys fees, and expenses of litigation;

5.    Prejudgment interest at the maximum legal rate;

6.    Punitive or exemplary damages for the willful, intentional, malicious, and/or reckless

**EXHIBIT 4, PAGE 38**

1  actions of the Defendants in the amount of Five Million Dollars ($5,000,000);

2     7.   Reasonable attorneys fees and expenses of litigation as allowed by all applicable laws;

3     8.   A declaration that the Defendants violated federal Truth in Lending laws, federal Real

4  Estate Settlement laws, federal Fair Debt Collection laws, and federal Fair Credit Reporting laws  against

5  the Plaintiff;

6     9.   A declaration that the Defendants violated the Plaintiff's constitutional rights afforded

7  him under the U.S. Constitution;

8     10.   A declaration that the Loan Servicing Practices of Countrywide Home Loans is illegal

9  and an injunction against all Defendants preventing them from perpetrating such acts in the future;

10     11.   Reasonable compensation to the Plaintiff for his time and expenses in preparing, filing

11  and maintaining this action without an attorney at the hourly rate of $100 per hour, plus expenses of

12  litigation .

13     12.   An order requiring the CHL, AWL and MERS to correct the accounts of the Plaintiff;

14     13.   A trial by a jury of 12 persons; and

15     14.   Such other and further relief as the Court deems just and appropriate.

16

17        Respectfully submitted,

18

19

20  Dennis Bell
    2934 Benton Road
21  Paducah, Ky. 42003
    (270) 556-1571

22

23

24

25

26

27

28

# EXHIBIT  5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

'08  DEC 18  AM :17

FILED
US DISTRICT COURT CLE K
WESTN DIST. KENTUC :

DENNIS BELL,

        PLAINTIFF              CIVIL ACTION NO. 5:08-CV-167-R

V.                           HONORABLE THOMAS B. RUSSELL

COUNTRYWIDE HOME LOANS, INC., et, al

        DEFENDANTS          /

## CONFESSION OF JUDGMENT BY DEFENDANT
## AMERICA'S WHOLESALE LENDER, INC.
## A CORPORATION ORGANIZED UNDER
## THE LAWS OF THE STATE OF NEW YORK

The Defendant, America's Wholesale Lender, a New York Corporation (AWL), by corporate resolution, confesses judgment unto the plaintiff, Dennis Bell, in the above-entitled action as follows:

1.    AWL acknowledges service of the Summons and Complaint, duly served upon it, by and through service made on the Secretary of State of New York.

2.    AWL acknowledges the jurisdiction of the above-entitled court as to subject matter jurisdiction and jurisdiction of the parties.

3.    AWL acknowledges that it is currently in default in this action, having filed no response to plaintiff's complaint, and having no valid defense thereto.

4.    AWL acknowledges that all acts taken under the name "America's Wholesale Lender, a New York Corporation" prior to the date of incorporation in the State of New York, by any and all persons purporting to act as, or on behalf of such corporation, knowing there was no such

corporation, are in violation of Kentucky Law and shall be jointly and severally liable for all

liabilities created while so acting. KRS 271B.2-040.

5.      AWL acknowledges it is a foreign corporation without a certificate of authority in the

State of Kentucky and therefore shall not maintain a proceeding in any court in this state.

KRS 271B.15-020.

6.      AWL hereby makes this confession of judgment under the authority of KRS 454.090

which provides: *Any person may personally appear in a court of competent jurisdiction and,*

*with the assent of a person having cause of action against him, confess judgment therefor;*

*whereupon judgment shall be entered accordingly.*

7.      AWL acknowledges that this confession of judgment, pursuant to KRS 454.100, *shall*

*authorize the same proceedings as judgments rendered in actions, and the confession shall*

*operate as a release of errors.*

8.      AWL accepts and acknowledges responsibility and liability for the conduct set forth in

the stipulation of facts attached to this confession of judgment as Exhibit "A" which relates and

responds to the allegations made in Plaintiff's complaint.

9.      In accordance with KRS 271B.2-040, this confession of judgment shall hold liable,

jointly and severally, all persons who acted on behalf of America's Wholesale Lender, a New

York corporation, knowing there was no such corporation in existence.

10.     America's Wholesale Lender, a New York corporation, duly organized under the laws of

the State of New York, hereby confesses judgment in favor of the Plaintiff, Dennis Bell, in the

sum of Eight Hundred Twenty-Five Thousand Dollars ($825,000) as for general and

compensatory damages, Five Million Dollars for punitive damages, together with interest from

**EXHIBIT 5, PAGE 41**

the 27th day of March, 2006, plus costs and disbursements and do hereby authorize the Plaintiff

or his assigns to enter judgment for said amount.

America's Wholesale Lender, Inc. a New York Corporation

_____
Cheri English
Executive Vice President

Sworn to and subscribed by Cheri English, in her capacity as executive vice president of
America's Wholesale Lender, Inc. a New York Corporation, in my presence,  this _____
day of December , 2008.

_____
Notary Public for State of Kentucky

My Commission expires _____ .

3

**EXHIBIT 5, PAGE 42**

**Exhibit "A"**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

DENNIS BELL,

                PLAINTIFF                       CIVIL ACTION NO. 5:08-CV-167-R

V.                                        HONORABLE THOMAS B. RUSSELL

COUNTRYWIDE HOME LOANS, INC., et, al

_____DEFENDANTS._____/

**STIPULATION OF FACTS IN RE: CONFESSION OF
JUDGMENT OF AMERICA'S WHOLESALE LENDER,
A NEW YORK CORPORATION**

America's Wholesale Lender, a New York Corporation, duly organized under the laws of the State of New York, by and through its officers, hereby acknowledges and stipulates:

1.     America's Wholesale Lender, a New York corporation is the "LENDER" named on each of the plaintiff's three mortgages alleged in paragraph 8 of the Complaint.

2.     No persons or entities are now, nor were they ever, lawfully authorized to conduct business under the name and style of America's Wholesale Lender, a New York Corporation, save and except the existing officers, agents and/or employees of America's Wholesale Lender, a New York corporation, duly  organized under the laws of the State of New York.

3.     Countrywide Home Loans, Inc., a defendant named in the above-entitled action, is not now, nor was it ever authorized to conduct business in the name and style of America's Wholesale Lender, a corporation organized under the laws of the State of New York.

4.      America's Wholesale Lender, a New York corporation never authorized Countrywide Home Loans, Inc. to act in its behalf, however Countrywide represented to the Court that the two entities are one-in-the-same in its "Objection Of Countrywide Home Loans, Inc. And Mortgage Electronic Registration Systems, Inc. To Request For Entry Of Default" filed 11/6/2008 (See page 2, line 19) Countrywide's representation therein is a fraud upon this defendant, and a fraud upon the Court.

5.      Any attempt by Countrywide Home Loans, Inc. or any of its affiliates and/or assumed names, to represent itself to be, or to act on behalf of, America's Wholesale Lender, a New York corporation, it strictly unauthorized and constitutes fraud.

6.      Stites & Harbison, PLLC, the law firm representing Countrywide Home Loans, Inc., in the above-entitled action is not now, nor was it ever authorized to represent America's Wholesale Lender, a New York corporation, in any legal action, and specifically not this action, nor the action currently pending in the McCracken Circuit Court entitled <u>Countrywide Home Loans, Inc. dba America's Wholesale Lender v. Dennis Bell</u>, consolidated case no. 06-CI-00305.

7.      With regard to Count 1 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation while conducting preincorporation transactions which damaged the Plaintiff herein. As to Count 1, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $25,000.

8.      With regard to Count 2 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation while conducting preincorporation transactions which

2

**EXHIBIT 5, PAGE 44**

damaged the Plaintiff herein. As to Count 2, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $25,000.

9.      With regard to Count 3 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation while conducting preincorporation transactions which damaged the Plaintiff herein. As to Count 3, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $25,000.

10.     With regard to Count 4 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation,  while conducting preincorporation transactions as defined by KRS 271B.2-040, and Andrew Beshear and Jonathan Pitchford falsely held themselves out to be counsel for America's Wholesale Lender, a New York corporation, while actually representing Countrywide Home Loans, Inc., which damaged the Plaintiff herein. As to Count 4, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $100, 000.

11.     With regard to Count 5 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation,  while conducting preincorporation transactions as defined by KRS 271B.2-040, and Andrew Beshear and Jonathan Pitchford falsely held themselves out to be counsel for America's Wholesale Lender, a New York corporation, while actually

3

representing Countrywide Home Loans, Inc., which damaged the Plaintiff herein. As to Count 5, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $25, 000.

12.     With regard to Count 6 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation while conducting preincorporation transactions which damaged the Plaintiff herein. As to Count 6, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $25,000.

13.     With regard to Count 7 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation,  while conducting preincorporation transactions as defined by KRS 271B.2-040, and Andrew Beshear and Jonathan Pitchford falsely held themselves out to be counsel for America's Wholesale Lender, a New York corporation, while actually representing Countrywide Home Loans, Inc., which damaged the Plaintiff herein. As to Count 7, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $150, 000.

14.     With regard to Count 8 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation,  while conducting preincorporation transactions as defined by KRS 271B.2-040, and Andrew Beshear and Jonathan Pitchford falsely held themselves out to be counsel for America's Wholesale Lender, a New York corporation, while actually

4

**EXHIBIT 5, PAGE 46**

representing Countrywide Home Loans, Inc., which damaged the Plaintiff herein. As to Count 8, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $50, 000.

15.   With regard to Count 9 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation while conducting preincorporation transactions which damaged the Plaintiff herein. Additionally, Countrywide Home Loans, Inc. negligently reported negative credit against the Plaintiff as a result of Countrywide Home Loan Inc.'s own error and/or fraud. As to Count 9, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $200, 000.

16.   With regard to Counts 10 and 11,  America's Wholesale Lender, a New York corporation, acknowledges that  Andrew Beshear and Jonathan Pitchford, while holding themselves out to be counsel for America's Whole Sale Lender, a New York corporation,  and Countrywide Home Loans, Inc., while purporting to act on behalf of America's Wholesale Lender, Inc., a New York corporation, did conspire to violate the Plaintiff's constitutional rights of due process and equal protection of law in the manner and course set forth in Plaintiff's allegations.  As to Counts 10 and 11, America's Wholesale Lender, a New York corporation, stipulates that each of the allegations therein are true and confesses judgment to Plaintiff in the amount of $200, 000.

17.   With regard to Count 12 of the Complaint, America's Wholesale Lender, a New York corporation, acknowledges that Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation while maintaining foreclosure actions against the Plaintiff in the McCracken Circuit Court entitled Countrywide Home Loans, Inc. dba America's

Wholesale Lender v. Dennis Bell, consolidated case no. 06-CI-00305. America's Wholesale Lender,

a New York corporation is the "LENDER" on each of the mortgages upon which Countrywide Home

Loans, Inc. has filed foreclosure, but it did not authorize Countrywide Home Loans, Inc. to initiate

such foreclosure actions, nor is Countrywide Home Loans, Inc. authorized to be a plaintiff in that

action. In the course of its unauthorized lawsuit against the plaintiff herein, Countrywide Home

Loans, Inc. has filed non-genuine and non-original documents  with that court in an attempt to

remove him from his properties. As to Count 12, America's Wholesale Lender, a New York

corporation, stipulates that each of the allegations therein are true and confesses declaratory

judgment to Plaintiff by stipulating that the foreclosure proceedings initiated against the Plaintiff

herein, in the McCracken County Circuit Court consolidated case no. 06-CI-00305 are invalid and

unlawful because the plaintiff in those actions lacks legal capacity to bring the action, that the

plaintiff in that action does not hold legal interest in the mortgages, that the plaintiff in those actions

has used forged, altered, or non-genuine documents, and that the mortgage loans violate federal law

from their inception to the present.

18.      With regard to Count 13 of the Complaint, America's Wholesale Lender, a New York

corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's

Wholesale Lender, a New York Corporation while conducting preincorporation transactions, and that

Countrywide Home Loans, Inc. claims an interest in Plaintiff's properties by and through the interest

conveyed to  America's Wholesale Lender, a New York corporation in the mortgages executed by

Plaintiff.  America's Wholesale Lender, a New York corporation, stipulates that Plaintiff is entitled

to injunctive relief, that Countrywide has no authority to act on behalf of America's Wholesale

Lender, a New York Corporation, and that Countrywide Home Loans, Inc. holds no legal interest

in Plaintiff's mortgages.

19.     America's Wholesale Lender, a New York corporation, acknowledges that, Countrywide Home Loans, Inc. held itself out to be America's Wholesale Lender, a New York Corporation while conducting preincorporation transactions. Countrywide's unlawful conduct of using multiple names similar to one-another mirrors the unlawful conduct found in <u>United States v. Oliver Hurley</u> where the defendant used multiple names to avoid fees and governmental oversight. Countrywide avoided governmental licensing requirements, governmental regulation, costs and fees, income tax, employee payroll taxes and contributions to worker's disability insurance, unemployment, and workman's compensation insurance by holding itself out to be America's Wholesale Lender, a New York Corporation. (See Hurley case synopsis attached hereto as Exhibit "A")

## <u>EXECUTIVE VICE PRESIDENT'S CERTIFICATE</u>

I have read the Stipulation of Facts herein with respect to the Confession of Judgment to Plaintiff, Dennis Bell and hereby confirm that each of those stipulations represent a true and accurate summary of the facts of this case, as well as the position embraced by America's Wholesale Lender, Inc.

America's Wholesale Lender, Inc. a New York Corporation

_____
Cheri B. English
Executive Vice President

7

**EXHIBIT 5, PAGE 49**

### Oliver Bruce Hurley And Charles Williams Johnston Sentenced To 25 Months In Prison For Mail Fraud

Gregory F. Van Tatenhove, United States Attorney for the Eastern District of Kentucky, and Guy Cottrell, Postal Inspector in Charge, United States Postal Inspection Service, Pittsburg Division, jointly issue the following announcement:

Two men who were involved in a scheme in the Middlesboro, Kentucky area to defraud workers compensation insurance companies were sentenced in Federal District Court in Lexington today. OLIVER BRUCE HURLEY, 54, of Speedwell, Tennessee, and CHARLES WILLIAM JOHNSON, age 56 of Tazewall, TN, plead guilty last May to mail fraud based on their efforts to hide from insurance companies the number of employees that were working for a temporary employment service in order to reduce the insurance premium. The two admitted assisting GARY LINDSEY SLATER, age 47, of Harrogate, TN, who was described as the ringleader, in committing the fraud. SLATER was convicted on August 1st, of mail fraud and money laundering after a jury trial and will be sentenced on December 16th in Lexington.

Evidence at trial indicated that GARY SLATER owned and operated a company which provided temporary employees to coal mines in the Middlesboro, Kentucky area. The company, which changed names several times, generally employed over 100 miners, but paid insurance based upon declarations to the insurance companies that they employed around 15.

The scheme primarily involved creating two separate companies on paper. One company would employ approximately 10% of the employees and the other the remaining 90%. An insurance policy would be purchased only for the small company. The companies had very similar names so that they were able to fool coal mine operators into believing that the policy covered all of the employees of both companies. Between October, 1999 and June, 2004, the men used the names Carol Dale Contracting, Inc., Carol-Dale, Inc., B&G Contracting, Inc., B&G Inc., Cumberland Gap Contracting, Inc., and Cumberland Gap, Inc. Whenever an employee was injured, the company would either arrange to pay off the injured worker to avoid filing a claim, or they would file the claim in the name of the covered company. Between 1999 and 2004, the companies were able to defraud two insurance companies, Kentucky Employers Mutual Insurance Company (KEMI) of Lexington, and the American International Group, Inc. (AIG) of New York, of over $6,000,000 of premium.

The evidence at SLATER'S trial also showed that the men engaged in an elaborate scheme to avoid paying taxes on the profits of the employment service. They accomplished this by creating false business expenses and invoices from fictitious trucking companies. Money was moved from one company account to another, before being cashed at Gambrel's Grocery in Arjey, Kentucky with the use of fictitious gasoline purchase invoices.

United States District Judge Jennifer Coffman sentenced HURLEY and JOHNSTON each to 25 months in prison. JOHNSTON was also ordered to pay the maximum fine of $250,000. Both men were ordered to pay a portion of the restitution to the insurance companies, as previously agreed by them in their plea agreements with the prosecutor. JOHNSTON has 60 days to pay one million dollars, which he indicated in court would come from the sale of his tax accounting business. HURLEY was ordered to pay $500,000 in restitution, which he paid several weeks ago.

The prison sentences imposed on JOHNSTON and HURLEY were approximately one half of what they would have received if the court followed the federal sentencing guidelines. The court accepted the prosecution's recommendation that the sentences be reduced because both men had fully cooperated in the investigation from the time of their arrest by assisting authorities in uncovering all the evidence. Additionally, both testified at the trial of GARY SLATER.

In a related case, Judge Coffman sentenced CAROLYN GAMBREL, age 55, for her role in laundering the money at her grocery store. GAMBREL was placed on probation for three years and fined $30,000. As a condition of probation, GAMBREL was placed on home incarceration for a period of six months.

In August, GARY SLATER was tried along with his wife, ANITA CAROL SLATER, on mail fraud charges. Mrs. Slater was found not guilty by the jury. GARY SLATER was convicted of both mail fraud and money laundering. Prosecutors do not plan to request leniency for SLATER, who faces a potentially stiff sentence of incarceration, fines and restitution.

In January of this year, federal officers seized or placed under court ordered restraint numerous assets belonging to SLATER and HURLEY, including cash, certificates of deposit, vehicles, airplanes, homes and personal assets. The total amount seized approached the six million dollars involved in the crime.

The investigation leading to the indictment in this case was a joint effort by a number of private and government entities. The investigation began with in-house auditing and questioning by officials at KEMI. Later, the matter was turned over to the investigating arm of the Kentucky Department of Insurance and ultimately to the United States Postal Inspection Service. Officials from AIG were alerted that they were potential victims and thereafter provided support to the investigation. The prosecution was handled by Assistant United States Attorney Kenneth R. Taylor.

EXHIBIT "A"