THE LAW OFFICES OF STEVEN C. VONDRAN, ESQ.
Steven C. Vondran (SBN# 232337)
620 Newport Center, Suite 1100
Newport Beach, California  92660
Telephone: (949) 945-8700
Facsimile: (888) 551-2252

Attorneys for Defendant(s):
AMERICA'S WHOLESALE LENDER, INC., DENNIS L.
BELL AND CHERI B. ENGLISH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A., | Case No.: 8:12-cv-00242-CJC-AN |
| Plaintiffs, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR TRO AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES.** |
| v. | |
| AMERICA'S WHOLESALE LENDER, INC., a New York Corporation;  DENNIS L. BELL, an individual;  CHERI B. ENGLISH, an individual; JAN VAN ECK (a/k/a HERMAN JAN VAN ECK a/k/a MAURITZ VAN ECK a/k/a MAURICE VAN ECK a/k/a MARITZ VAN ECK a/k/a GEORGE TOMAS), an individual: and DOES 1-10 | |
| Defendants. | |

# TABLE OF CONTENTS

1. Introduction/Key Facts...................................................................2-8

2. Memorandum of Points and Authorities.........................................8-21

   A.  PLAINTIFFS HAVE NO STANDING TO BRING THE EX PARTE MOTION SEEKING AN INJUNCTION AND NO STANDING TO FILE THE COMPLAINT ON FILE WITH THE COURT; THEY ARE NOT THE REAL PARTY INTEREST AND THE ROOKER FELDMAN-DOCTRINE PROHIBITS REVIEW OF PLAINTIFF'S CLAIMS.

      1.  *The Rooker-Feldman Doctrine prevents court from exercising jurisdiction over claims and issues that were resolved in the State Court.........................8-9*

      2.  *Plaintiffs' have no standing to file the present action as they have absolutely no ownership interest in any of the loans at issue in this case due to their own fraud in the recorded documents...........................................................9-11*

   B.  PLAINTIFF'S CANNOT ESTABLISH THE ELEMENTS FOR TRADEMARK INFRINGMENT UNDER THE LANHAM ACT........................................10-17

   C.  PLAINTIFF'S CANNOT ESTABLISH THE ELEMENTS FOR FALSE DESIGNATION OF ORIGIN...........................................................17

   D.  PLAINTIFF CANNOT MEET THE TRADITIONAL REQUIREMENTS FOR AN INJUNCTION.............................................................................17-20

   E.  PLAINTIFF COMES TO THE COURT WITH UNCLEAN HANDS AND THEY CANNOT DEMAND EQUITABLE RELIEF.......................................20-21

4. Conclusion..........................................................................21-22

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

(*Pinkerton's Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348, 57 Cal.Rptr.2d 356.).....6

*Hydrotech Systems, Ltd. v. Oasis Waterpark, 52 Cal. 3d 988, 277 Cal. Rptr. 517, 803 P.2d 370 (1991)*... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...7

*Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923)...........................................8

*District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)..........................8

*Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir. 1995)...........................8

*In re Federated Dept. Stores, Inc.,* 226 B.R. 191, 193 (Bkrtcy. S.D. Ohio 1998)...................9

*Johnson v. De Grandy,* 512 U.S. 997. 1005-06 (1994))...........................................9

*Warth v. Seldin,* 422 U.S. 490, 495 (1975)....................................................9

*Brock v. City of St. Louis,* 724 S.W.2d 721 (Mo.App. E.D.1987.................................9

*AMF, Inc v Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979)*... ... ... ... ... ... ... ... ... ...11

Mortgage Elec. Registration Sys. v. Brosnan, No: C 09-3600 SBA 2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4, 2009)...................................12

*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App4th 1149)........................13

*Wilson v. S.L. Rey, Inc.* (1993) 17 Cal. App.4th 234, 244....................................20

*Kendall-Jackson Winery, Ltd v. Superior Court* (1999) 76 Cal. App.4th 970, 978................20

*In re Dunkly*, D.C.Cal.1946, 64 Fed.Supp. 184, 185..........................................21

**Statutes**

*15 U.S.C. 1605*.............................................................................11

*California Bus. & Prof. Code Section 17200*... ... ... ... ... ... ... ... ... ... ... ... ... ...18

*Civ. Code. § 3517*..........................................................................20

(ii)

COMES NOW Defendants, AMERICA'S WHOLESALE LENDER, INC., DENNIS L. BELL AND CHERI B. ENGLISH ("Defendant") by and through their respective counsel in opposition to Plaintiff COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A. ("Plaintiff") motion seeking an Ex Parte TRO and preliminary injunction.

## I.
## INTRODUCTION / KEY FACTS

Plaintiff Countrywide Home Loans, Inc. ("CHLI") will arguably go down in history as one of the most prolific predatory lenders of all time. One would think this is a matter beyond reasonable dispute but by way of a few examples, this point will be illustrated:

a. A press release from the California Attorney General's website dated October 6, 2008 announced a landmark "settlement with Countrywide Home Loans, Countrywide Financial Corporation and Full Spectrum Lending" (a Countrywide company) "that is expected to provide up to 8.68 billion of home loan and foreclosure relief nationally." The statement goes on to state that "*Countrywide's lending practices turned the American Dream into a nightmare for tens of thousands of families by putting them into loans they couldn't understand and ultimately couldn't afford.*" (See Defendant's RJN Exh. 1). The stipulated judgment is represented in Defendant's RJN Exh. 2.

b. Defendant's Request for Judicial Notice Exh. 3 evidences a February 24, 2009 consent judgment between State of Nevada and Countrywide Financial Corporation. Plaintiff's RJN Ex. 4 is a press release from the Nevada Attorney General's website discussing the multi-million dollar settlement and stating "the foreclosure relief being distributed this week is one part of a multi-million dollar effort to assist *Nevadans who have suffered because of Countrywide's lending practices.*" Defendant's RJN Ex. 5 is a press release also from the Attorney General website which discusses the Attorney General requesting to amend the

complaint to add Bank of America for additional claims relating to mortgage origination and servicing and seeking to hold CHLI (through BofA) liable for breaching the settlement agreement.

c.  In Arizona, the same sort of settlements were to benefit Arizona homeowners who were victims of Countrywide's predatory lending. Defendant's RJN Exh. 6 is a press release from the Arizona Attorney General's website announcing the settlement. Defendant's RJN Exh. 7 is another release from the Attorney General's website indicating Bank of America had breached the settlement agreement and the Attorney General filed another lawsuit charging Bank of America with mortgage fraud.  The release stated:  "I am filing this lawsuit today because after years of delay and broken promises, Arizonans should not have to wait any longer to seek redress……our homeowners and communities need and deserve relief bank of America must be held accountable for its deceptive conduct and failed commitments."  The complaint filed against Countrywide et al is set forth in Defendant's RJN Exh. 8.

d.  It seems the there is literally no end to the types of wrongful conduct Countrywide could get itself involved in. Defendant's RJN Exh. 9 is a press release from the Michigan Attorney General's website evidencing the State of Michigan was taking legal action against Countywide for making false and misleading statements about its business practices that ultimately injured the State of Michigan Retirement System to the tune of $65 million dollars.

e.  Defendant's RJN Exh. 10 is a press release from the Oregon Department of Justice website wherein a securities lawsuit was filed against Countrywide for misleading filings that caused $14 million in losses to the state.

f.  Defendant's RJN Exh. 11 is a December 21, 2011 press release from the United States Attorney General's office which announces a $335 million dollar settlement against Countrywide for engaging in mortgage lending discrimination against African American and

Hispanic borrowers (charging them higher fees or steering them into subprime loans when they qualified for better).

g. Defendant's RJN Exh. 12 is another press release dated July 1, 2008 from the Florida Attorney General indicating a lawsuit was filed against Countrywide alleging deceptive marketing of loans to boost company profits.   The statement states: "It appears to us Countrywide did no due diligence and accepted applications which were patently fraudulent." It went on: "the company's deceptive marketing practices were supposedly designed to sell costly loans while hiding or misrepresenting the terms and damages."

h. As the record reflects, there is no end to the lawsuits filed against Countrywide for its predatory lending practices.   There cannot be a reasonable person who believes Countrywide's name and reputation is anything other than MUD. Defendant's RJN Exh. 13 is another press release from Illinois Attorney General website.  Same story different state.  It makes no difference whether you are looking to the North, West, South or East.  The charges and the practices were the same.   In this release, the Attorney General's office states: "Countrywide's illegal discriminatory lending practices destroyed the wealth and dreams of thousands of African Americans Latino homeowners.......*Bank of America needs to be held accountable by taking financial responsibility for cleaning up the devastation of the predatory company that it chose to take over*."  Of course even people who were not directly victimized by Countrywide's predatory lending practices were indirectly victimized by a loss in equity to their property, which is well established across the United States.

i. Defendant's RJN Exh. 14 is another predatory lending lawsuit filed by the State of Indiana against Countywide Financial and its DBA AMERICAS WHOLESALE LENDER.   Same story, different day.

j.  The owners and management of Countrywide did nothing but harm the final sinking image and reputation of Countrywide, including its federally registered trademark AMERICAS WHOLESALE LENDER. Defendant's RJN Exh. 15 is a printout from the California Attorney Generals website that evidences California had entered into a settlement agreement for a "predatory lending case" with Angel Mozilo and David Sambol former officers of Countrywide. The settlement was in the amount of 6.5 million dollars.

k.  Defendant's RJN Exh. 16 is a printout from the Securities and Exchange Commission website that involves a lawsuit for insider trading against Angelo Mozilo and David Sambol. The case was settled for 67.5 million as set forth in Defendant's RJN Exh. 17 and an agreement that Mozilo would never again serve as a director for a publicly traded company.

l.  There are also lawsuits alleging Countywide never transferred the notes to the securitized loan trusts creating a major chain-of-title problem. Defendant's RJN Exh. 18 reflects an opinion from a Bankruptcy court in the case of *Kemp v. Countrywide* which disallowed a proof of claim in a bankruptcy court because it was found certain notes were never transferred to the transferee who failed to prove possession of such. This creates the problem that leads many people to believe that Countrywide (through its predecessor Bank of America) is foreclosing on people without any legal right and without an ability to show a legally enforceable right to collect on a note. This is seriously troubling. Defendant's RJN Exh. 20 shows in parody form, the public perception of this massive mortgage fraud problem. The cat is completely out of the bag. *Interestingly, in this case there has been no allegation by Plaintiff that they own any of the loan to which they seek judicial notice of.* This is significant.

There simply is not enough time in the day to document all of the abuses, shortcuts, predatory lending practices, discrimination, foreclosure and servicing abuses, and other lawsuits alleging violations of a multitude of state and federal laws (both Attorney General and private party suits).

Suffice it to say, there is virtually no reasonable person who could hold Countywide (including ANY of its trademarks, service marks or trade names) to any level of esteem.

Clearly, if there were public approval ratings for Banks, Countrywide would score very low marks, if not the lowest. Yet it is Countywide that was the original owner and registrant of the federally registered mark AMERICAS WHOLESALE LENDER that it apparently used in originating over 3.5 million loans. (See Renell Welch declaration at Page 3 ¶ 13).

In fact, the trademark / service mark "AMERICAS WHOLESALE LENDER" only has meaning or significance as used in conjunction with Countrywide and its wholesale lending division (See Plaintiff's RJN Exh. 19). There are no allegations Bank of America currently uses this mark in any way meaningful except for Countrywide's previous use in 3.5 million notes and deeds of trusts.

As such, the two (Countrywide and its trademark/service mark "AMERICAS WHOLESALE LENDER") are virtually intertwined and have no meaning apart from each other. The STRENGTH of the mark, if any, is given only by the large numbers of loans originated and this name being used on the notes and deeds of trusts for 3.5 million loans.

However, there is another problem here. Countrywide committed another major blunder in thinking that: a DBA is allowed to _impersonate_ a New York Corporation as AMERICAS WHOLESALE LENDER has done. In fact, over 3.5 million loans _falsely_ state that: "AMERICAS WHOLESALE LENDER" is a "CORPORATION" that is "ORGANIZED AND EXISTING UNDER THE LAWS OF NEW YORK" when in fact that is simply not true, and has never been true (See Plaintiff's Request for Judicial Notice which contain numerous requests for judicial notice of various notes and deeds of trust each containing this identical language).

Under California law, "use of a fictitious business name does not create a separate legal entity distinct from the person operating the business." (*Pinkerton's Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348, 57 Cal.Rptr.2d 356.). The object of the fictitious name statute is simply to

**ensure that those who do business with persons operating under a fictitious name will know the true identities of the individuals with whom they are dealing** or to whom they are giving credit or becoming bound. <u>Hydrotech Systems, Ltd. v. Oasis Waterpark, 52 Cal. 3d 988, 277 Cal. Rptr. 517, 803 P.2d 370 (1991)</u>.

In the 3.5 million loans at issue, taking the notes and deeds of trust at face value, there is no way to ascertain who the true and actual lender was (i.e. CHLI), instead, each of the borrowers was lead to believe the lender was a CORPORTATION, named AMERICAS WHOLESALE LENDER when this was completely false. The average borrower would not know whom to sue for a predatory loan as this was not disclosed. Consequently, as discussed below, after organizing his corporation (to protect his interests in a lawsuit that he filed in 2008) various predatory lending Plaintiffs' began to file complaints and serve Defendant's legitimate corporation, *Americas Wholesale, Lender, Inc.*, (hereinafter "AWL, Inc.") which is the only existing New York Corporation with that name.

With these lawsuits and inherent problems, BofA now comes forward claiming they have a STONG MARK in a mark that has done little more than misrepresent borrowers in over 3.5 million loan transactions and where CHLI, falsely and deceptively *impersonated a New York Corporation* when in fact its fictitious business name is NOT a corporation at all. There is also no indication or allegation that BofA has any plans to use the mark *in its own right* separate and inside from Countrywide's dubious use of the mark in chains of title across America.

Bank of America, (as successor in interest to the defunct predatory lender Countrywide), and its self-tarnished trademark/service mark, comes into this court with *dirty hands* and cannot demand equity and cannot seek an injunction on this ground alone.

The public simply does not associate "AMERICAS WHOLESALE LENDER" with any lending or other financial services activities of Bank of America. It is simply a registered trademark (on paper only), and merely a paper asset of questionable value purchased from the defunct CHLI.

This is not a Marquee corporate trademark at issue here.  Rather, it is the last remnant of a ship that has sunk.  The trademark name of Americas Wholesale Lender is synonymous with greed, predatory lending, insider trading and the most destructive mortgage meltdown in history. For the reasons that follow, the TRO and injunction must be denied.

## II.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A. PLAINTIFFS HAVE NO STANDING TO BRING THE EX PARTE MOTION SEEKING AN INJUNCTION AND NO STANDING TO FILE THE COMPLAINT ON FILE WITH THE COURT; THEY ARE NOT THE REAL PARTY INTEREST AND THE ROOKER FELDMAN-DOCTRINE PROHIBITS REVIEW OF PLAINTIFF'S CLAIMS.**

**1. *The Rooker-Feldman Doctrine prevents court from exercising jurisdiction over claims and issues that were resolved in the State Court.***

The state court judgment in the *Burk* case (See Plaintiff's RJN Exh. 6) precludes this Court from reviewing the issues set forth in Plaintiff's complaint because the state court judgment very clearly determined that AWL, Inc. was the only party to hold an interest in the Burke loan (the order in the Burke case states that: "*no other person or entity has any interest therein*").   As such, there could be no trademark infringement as to the Burke loan (or other loans that have been adjudicated).  Plaintiff's now contend there is an issue of false designation of origin, unfair business practices, trademark infringement, and other wrongdoing in connection with the loans at issue.  These issues should not be reached by this Court as they have already been resolved by the respective state courts.

The *Rooker-Feldman Doctrine* was established by two U.S. Supreme court decisions, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983). The Rooker-Feldman Doctrine stands for the basic proposition that lower federal courts do not have subject matter jurisdiction to review state court judgments. <u>Charchenko v. City of Stillwater</u>, 47 F.3d 981, 983 (8th Cir. 1995). Stated another way by another court: "Rooker-

Feldman, in essence, bars "a party losing in state court… from seeking what… would be appellate review of the state judgment in a Untied States district court." In re Federated Dept. Stores, Inc., 226 B.R. 191, 193 (Bkrtcy. S.D. Ohio 1998) (citing Johnson v. De Grandy, 512 U.S. 997. 1005-06 (1994)). Review of state court judgments in the federal court system lies only with the United States Supreme Court.

Their request for a TRO and injunction should be denied on this ground alone.

**2. *Plaintiffs' have no standing to file the present action as they have absolutely no ownership interest in any of the loans at issue in this case due to their own fraud in the recorded documents.***

It is axiomatic that, in coming to federal court to enforce an alleged right, movant must comply with the applicable procedures of the federal court and applicable law.  Two such procedural requirements are "standing" and "real party in interest." Standing is a threshold issue in every federal case determining the power of the court to entertain the action.  Warth v. Seldin, 422 U.S. 490, 495 (1975).   Lack of standing cannot be waived and may be considered by the court sua sponte.  Brock v. City of St. Louis, 724 S.W.2d 721 (Mo.App. E.D.1987).  In addition, *FRCP Rule 17(a)(1)* states that an "*action must be prosecuted in the name of the real party in interest.* "  "Standing" and "real party in interest" are concepts that are related but not identical.    Standing encompasses two major components: "***constitutional limitations on federal court jurisdiction and prudential limitations on its exercise,***" Warth v. Seldin, 422 U.S. 490, 498 (1975), while "real party in interest" is generally part of "standing," as discussed below.

Here, Plaintiff's hands are dirty and they have no standing and are not the real party interest to the loans they complain of.  They have made false statements of fact in recorded loan documents (notes and deeds of trust) and this can be easily verified by looking at the documents subject to Plaintiff's Request for Judicial Notice.  Each of the documents that have attachments including notes

and deeds of trust falsely recite that "AMERICAS WHOLESALE LENDER" is a "CORPORATION" that is "ORAGANIZED AND EXISTING UNDER NEW YORK LAW." This is completely false and was designed to strip away any legal recourse on the predatory loans originated by CHLI.

In fact, these false statements prevented potentially thousands of lawsuits that may have been brought because it was impossible to determine who the agent for service of process might have been. Since CHLI was not mentioned anywhere on the recorded loan documents, no one would think to have CHLI served on a lawsuit, and there would be no way to find out how to serve a non-existent New York Corporation. This is a pure fraud by CHLI that BofA now seeks to continue to perpetrate. They must be stopped.

A fictitious business name has no authority to contract where its purpose is to defraud. As such, they have no interest in the loans at bar. In fact, it must be noted that they do not allege they are the legal owners of the loans that they urge the court to scrutinize. The only connection plaintiffs allege to such loans is that BANA is the servicer. As such, they fail to demonstrate their standing, or that they are the real party in interest to bring their lawsuit that alleges their trademarks have been infringed due to Defendant's responding to complaints that were served on them. Their request for a TRO and injunction should be denied on this ground alone.

**B.   PLAINTIFF'S CANNOT ESTABLISH THE ELEMENTS FOR TRADEMARK INFRINGMENT UNDER THE LANHAM ACT**

Plaintiff claims their federally registered trademark for AMERICAS WHOLESALE LENDER is being infringed by Defendant's lawful registration of his New York Corporation Americas Wholesale Lender, Inc. and its responses to unsolicited lawsuits that have been served on them. Defendant disputes this contention.

First, Plaintiff asserts that their mark is valid and protectable. They argue the mark has been in "continuous use for over five years" and thus is "incontestable under 15 U.S.C. 1605." (See Lindgren Decl. ¶ 13). However, *there is no affidavit of continuous use* attached to the motion and Ms. Lindgren respectfully does not allege such was filed. Section 15 of the Trademark Act, 15 U.S.C. 1065, provides a procedure by which the exclusive right to use a registered mark in commerce on or in connection with the goods or services covered by the registration can become "incontestable," if the owner of the registration *files an affidavit* stating that the mark has been in continuous use in commerce for a period of five years after the date of registration.    Without an affidavit serving as proof, the Court should not accept their assertions at face value. Defendant objects to this assertion and believes the mark has been abandoned with the dissolving of CHLI. Accordingly, the name Countrywide Home Loan Servicing, LLC was changed to BAC Home Loan Servicing, LLC, a step taken by Bank of America to distance itself from the countrywide trademark.

Defendant hereby reserves all rights to challenge the alleged mark on the grounds of (this is not an exclusive list, all rights are reserved): The mark is merely descriptive; the mark is scandalous; the mark falsely suggests a connection with Defendant's identity; the mark was abandoned due to nonuse or due to a course of conduct that has caused the mark to lose significance as an indication of source, etc. Defendant objects to the mark being protectable on each of these grounds.

Next, Plaintiff's ex parte motion sets for the test for trademark infringement, and sets forth the *Sleekcraft Factors* for infringement. In <u>AMF, Inc v Sleekcraft Boats</u>, *599 F.2d 341 (9th Cir. 1979)* The Court there announced eight specific elements to measure *likelihood of confusion*: (1) Strength of the mark, (2) Proximity of the goods, (3) Similarity of the marks, (4) Evidence of actual confusion, (5) Marketing channels used, (6) Type of goods and the degree of care likely to be exercised by the purchaser, (7) Defendant's intent in selecting the mark, (8) Likelihood of expansion of the product lines. Applying this test in a fair and reasonable manner warrants a finding that there is no trademark

1   is no trademark infringement and thus, the request for TRO and injunction must be denied.

2   **APPLYING THE SLEECKRAFT TEST FOR TRADEMARK INFRINGEMENT**

3   (1) STRENGTH OF THE MARK

4

5   Plaintiff asserts that the trademark and service mark for AMERICAS WHOLESALE LENDING

6   ("mark") is "well known by both the lending industry and the public at large." (See Plaintiff's TRO

7   application at Page 3 lines 4-5). If that is the case, it can only be known as the vehicle that created

8   the largest mortgage fraud and monetary loss in history. They assert that the mark is "*descriptive*"

9   (the mark describes the type of business) and as such, requires a showing that the mark "*acquired*

10  *distinctiveness*" (Plaintiff's TRO application at Page 17 lines 5-9). In support, they cite Mortgage

11

12  Elec. Registration Sys. v. Brosnan, No: C 09-3600 SBA 2009 U.S. Dist. LEXIS 87596 (N.D. Cal.

13  Sept. 4, 2009) for the proposition that since MERS is entitled to a finding that its mark was strong

14  (based on being named in over 60 million mortgages, and having 4,593 lending members) then by

15  analogy, AMERICAS WHOLESALE LENDING is also a strong mark because they are named in 3.5

16  million loan documents (such as the notes and deeds of trust in this case). Plaintiff offers no other

17  explanation of how their mark was used, or how it may have acquired distinctiveness other than

18  reference to their (false and fraudulent) use of the mark on over 3.5 million loans originated over a

19  15-year period. Many borrowers never even review their loan documents and likely have little

20

21  knowledge of this mark, that falsely purports to be a New York corporation in the recorded

22  documents. Any borrowers who recognize the mark most likely recognize it from news reports

23  related to Countrywide's collapse under the weight of its own fraud and self-dealing.

24  Defendant rejects this analogy outright, and disputes that Plaintiff has a strong mark. There

25  are some key distinguishing factors from the MERS case. First, MERS is still in business, CHLI, the

26  original owner of the mark (that it alone was associated with), is defunct due to its predatory lending

27  practices that could not sustain itself. Second, courts have duly recognized the validity of the MERS

28

system, which has been hotly contested (See <u>Gomes v. Countrywide Home Loans, Inc.</u> (2011) 192 Cal.App4th 1149).   No court has ruled on the legality of a DBA pretending to be a New York Corporation and impersonating such in 3.5 million recorded loan documents.   Third there is a huge difference between MERS.   Fourth there is a dispute as to whether a fictitious business name may enter into contracts if the purpose was to mislead, deceive, and defraud borrowers as to who the "lender" is.   It must be noted that on page 18 of Plaintiff's application they cleverly use the word "creditor" instead of "lender" to describe their alleged status.   These issues preclude against a finding that the mark is strong because the MERS mark is strong.   It is like comparing a snickers to a payday.

This factor leads to a finding of no likelihood of consumer confusion and thus, no infringement

(2) <u>PROXIMITY OF THE GOODS</u> (RELATEDNESS OF THE SERVICES).

Plaintiff argues in their application for TRO / Injunction that "there is no question as to the relatedness of the Plaintiff's services and the Defendant's Services.......Defendants pretend to be Plaintiff's so they can perpetrate a fraudulent scheme....".   (See Plaintiff's TRO application at Page 18 lines 6-9).   Defendant disputes this.   BofA is a lending institution and acts as a loan servicer of loans.   Defendant, through its lawfully registered New York corporation offers no such services, and has not sought to.   There are no allegations that Defendant has engaged in any of these types of activities.   In fact, as referenced above, it is Plaintiff who has impersonated a New York corporation for over 15 years of doing business with its mark, and has caused this mark to be used in 3.5 million loan documents so borrowers could not detect who the real party originating the loan was, and who could be served a lawsuit in the event a predatory lending or wrongful foreclosure lawsuit needed to be filed.   It is disingenuous to call Plaintiff's business and Defendants business related.   One responds to lawsuits served on them, and the other is a lender and loan servicer.   So yes, there is a question as to whether the services are related,

This factor leads to a finding of no likelihood of consumer confusion and thus, no infringement

(3) <u>SIMILARITY OF THE MARKS</u>

Defendant does not have a federally registered trademark ('mark") and therefore disputes Plaintiff's contention that "here, Plaintiff's and Defendant's marks are deliberately virtually identical, with the only difference being the inclusion of the abbreviation, "Inc." (See Plaintiff's TRO application at Page 18 lines 12-14). Defendant has a registered corporation, organized under the laws of the State of New York, and valid under the New York Business Corporations Law Section 402. Plaintiff purports to be the owner of an incontestable trademark. The two names may be similar in nature but are different types of names and Defendant's use was authorized by state law while Defendant's mark is authorized by federal law. There is no preemption. This element is neutral.

(4) <u>EVIDENCE OF ACTUAL CONFUSION</u>

First, at the outset it must be pointed out that due to CHLI's deceptive use of the mark, millions of potential predatory lending Plaintiffs would not know: (a) that Countrywide was their alleged "lender" or (b) who to serve summons and complaint on as AMERICAS WHOLESALE LENDER was NOT a New York Corporation as it falsely claimed to be in over 3.5 million recorded documents (notes and deeds of trust) and there would be not other valid way to find an agent for service of process. For this reason, the genesis of any "confusion" rests with the complaining party, CHLI.

Nevertheless, Plaintiff's proceed to argue that *"there is clear evidence of actual confusion"* (See Plaintiff's TRO application at Page 18 lines 15-16) and they point to the lawsuits served on Defendant, and his response thereto (which involved Defendant resolving the matters in the best interest of his corporation) as evidence. At all times Defendant took only those actions to protect his corporation and to protect his interests in the civil lawsuit he filed against Countrywide, (See

Plaintiff's RJN Exh. 4) who was attempting to illegally foreclose on him after unlawfully raising escrow account payments literally forcing him into a default.

To the extent there is any evidence of actual consumer confusions, it is attributable to Plaintiff's own actions in not truly and accurately representing the lender in the 3.5 million notes and deeds of trust. This factor leads to a finding of no likelihood of consumer confusion and thus, no infringement.

(5) MARKETING CHANNELS USED

There is no evidence or allegations of BofA continuing to use the tarnished AMERICAS WHOLESALE LENDER mark after CHLI was acquired before bankruptcy. Why would they? The name only had meaning in connection with CHLI's wholesale lending practice. That business is gone now. There is no connection in any consumers mind that AMERICAS WHOLESALE LENDER and BofA are somehow related. Thus, it is disputed that there are any marketing channels used by Plaintiff. As for Defendant, he does not originate or service loans as BofA does, and takes no other action to market or solicit business under his corporate name. His only business at this time is responding to lawsuits that may be filed against him in a manner that protects his company interests (See Defendant's Decl.). In addition, Plaintiff itself asserts: "*there is no need to address the marketing channels used by Defendants and the likelihood of expansion of Defendant's business into other markets.*" This should dispose of this issue under this prong. This factor leads to a finding of no likelihood of consumer confusion and thus, no infringement

(6) TYPE OF GOODS AND THE DEGREE OF CARE LIKELY TO BE EXERCISED BY THE PURCHASER

Plaintiff argues "when marks are virtually identical, the degree of consumer care is irrelevant." (See Plaintiff's TRO application at Page 19 lines 20-21). Thus, no argument was provided as to this element. However, that statement is simply not true when you have the facts of the case at hand.

Here it is important to determine what the consumer would think in interacting with Plaintiff's trademark and Defendant's New York corporation.

The average reasonable consumer would not know how to interact with "AMERICAS WHOLESALE LENDER," a "CORPORATION" that is "ORGANIZED AND EXISTING UNDER THE LAWS OF NEW YORK" (Plaintiff's purported trademark). In fact, there is no way to interact with such a company, because there was no such company at the time of Plaintiff's representations. On the other hand, a consumer might well believe they are interacting with Plaintiff's company when filing a lawsuit against Defendant's Americas Wholesale Lender, Inc. but it seems this is the chance Plaintiff's took in not properly registering their own New York Corporation as they go on to represent they did in recorded documents. It is hard to find how this factor could lean in favor of Plaintiff's, given their clumsy, albeit deliberate failure to organize a New York Corporation. This factor leads to a finding of non-infringement.

(7) DEFENDANT'S INTENT IN SELECTING THE MARK

Defendant's intent in registering the corporation in New York is well documented in his attached Declaration, which is incorporated herein by reference. To summarize, he first formed his corporation to assist him in his predatory lending lawsuit against Countywide who was trying to illegally and artificially raise escrow payments and literally force him into foreclosure. This happens all the time, which is why the private lawsuits are flying and why attorney generals had to get involved. Defendant had absolutely no intent to originate or service any mortgage loans, and has not done so even to Plaintiff's own admission.

There is no documented proof that Defendant ever held himself out to be CHLI in any manner. Plaintiff tries to infer this from a consent judgment. Plaintiff's claim Defendant formed his corporation in order to "*impersonate CHLI and perpetrate a fraudulent scheme*" (See Plaintiff's TRO application at Page 19 lines 7-9), but there is no evidence. This is simply the pot calling the kettle

black.   In addition, Defendant's declaration discusses how he has no knowledge of the acts of Defendant Van Eck who undertook separate actions that he alone must answer to.  In weighing the evidence under this prong, the court should find no infringement has occurred.

(8) <u>LIKELIHOOD OF EXPANSION OF THE PRODUCT LINES</u>

As to the last element, and as referenced above, Plaintiff claims there is no need to evaluate this claim. However, under *Sleekcraft*, all factors must be examined, whether or not relied on in the final decision.   Again, in line with the analysis above, Defendant has no products and has no intent to expand any product lines. There is no evidence or allegations that BofA has any plans to try to exploit the self-tarnished name any more than it has to in order to try to clean up CHLI's mess.  Again, this factor weighs in favor of a finding of no likelihood of consumer confusion, and thus no infringement.

Applying the *Sleekcraft* factors, the Court should deny Plaintiff's ex parte application and request for a TRO and Injunction.

**C.   PLAINTIFF'S CANNOT ESTABLISH THE ELEMENTS FOR FALSE DESIGNATION OF ORIGIN.**

If there is no likelihood of consumer confusion, there can be no false designation of origin, and no injunction based on such a claim.  As Plaintiff's pointed out in their brief: "a false designation of origin claim turns on the likelihood of consumer confusion." (See Plaintiff's TRO application at Page 14 lines 18-19).  Since, as discussed above, the Court should find that there is no likelihood of consumer confusion, applying the *Sleekcraft* factors, then there is no false designation of origin and no legal right to an injunction for an alleged violation thereof.  Plaintiff is not likely to succeed on their trademark or false designation of origin claim and their demand for an injunction must be denied.

**D.   PLAINTIFF CANNOT MEET THE TRADITIONAL REQUIREMENTS FOR AN INJUNCTION.**

Plaintiff's application sets forth the traditional elements to obtain a TRO and Injunction. To summarize the moving party must establish: (1) likelihood of success on the merits; (2) likely to suffer irreparable harm; (3) balance of equities tips in his favor, and (4) an injunction is in the public interest. (See Plaintiff's TRO application at Page 13 lines 14-19). A fair application of these elements confirm that Plaintiff is not entitled to a TRO or injunction.

### 1. *Likelihood of success on the merits:*

Plaintiff asserts they are likely to succeed on their trademark infringement and false designation or origin claims. For the reasons set forth above, Defendant vigorously opposes this position. Plaintiff further argues they are entitled to an injunction because they are likely to succeed on their unfair competition claim (California Business and Professions Code Section 17200) because "*they will likely prevail on their predicate Lanham Act claims.*" Again, this is highly disputed especially after applying the *Sleekcraft* factors above. Their pleading also has hints and suggestions as to fraud, but none is alleged with specificity and there is no cause of action for fraud alleged. For this reason, there is no evidence before the court that would allow the Court to agree that Plaintiff is likely to succeed on each of their claims they allege gives them a legal right to an injunction. This prong is not satisfied and no TRO or injunction should issue.

### 2. *Likely to suffer irreparable harm:*

Moreover, BoA is not suffering any harm, and is not likely to suffer any harm. For the reasons set forth in the facts section of this opposition paper, and in Defendant's Request for Judicial Notice, it is clear the reputation of Countrywide is tarnished, as is their AMERICAS WHOLESALE LENDER mark. Especially given this new revelation that CHLI/ AMERICAS WHOLESALE LENDER so no problem in holding itself out as a New York corporation in 3.5 million recorded documents when in fact it was not a New York Corporation, but rather, only a DBA impersonating a New York Corporation apparently in an attempt to hide who the true "lender" of 3.5 million loans was. In

addition, as discussed above, there is no contention by BofA that it is currently using the mark, or has future plans to use the mark, and given their contention that Defendant is not using the mark.  There are no identifiable damages whatsoever.

In fact, if CHLI was true and accurate in the recorded documents, the likely result would be that more lawsuits would be filed and served on Plaintiff leading to increased legal exposure and increased damages to BofA the successor in interest.  In their brief, Plaintiff argues *"courts have found irreparable harm in the loss of control of a business reputation, a loss of trade, and goodwill."* (See Plaintiff's TRO application at Page 20 lines 19-20).

The only problem is the CHLI/ AMERICAS WHOLESALE LENDER project, now defunct, has left nothing but a  mountain of ill will in its wake.  BofA, by acquiring the assets of CHLI did nothing to magically convert this intellectual property into a strong recognizable mark the country has come to know and love.  In fact, it is doubtful the mark will ever be used by BofA for this reason.  There is no loss of trade, and Defendant does not originate or service loans as BofA does.  There is no injury, except the injury to the public caused by CHLI that BofA has chosen to answer for.

To the extent Plaintiff has suffered any damages, which is disputed, money damages will suffice.  This prong cannot be satisfied by Plaintiff under any stretch of the imagination.

3. *Balance of equities:*

The equities at this point should be clear.  Plaintiff has misled the public in recorded documents and now argues that the public is being misled by Defendant's New York corporation.  Plaintiff was in the best position to prevent this situation from occurring, yet it had a business reason for wanting to fool the public.  So rather than incorporating in New York and providing the world with a valid agent for service of process, they voluntarily chose to instead impersonate a then non-existent New York corporation thereby failing to disclose the true lender. CHL was never the "lender" rather they were the originator and servicer.

Balancing Plaintiff's acts and omissions against Defendant's lawful right to organize the New York Corporation Americas Wholesale Lender, Inc., (to protect himself in a lawsuit he was fighting against Countywide for predatory loan servicing for forcing him into foreclosure by artificially raising escrow payments) leads to a conclusion that no injunction should issue. Defendant's declaration is incorporated herein by reference and this should be weighed into the equation as well.

### 4. Public interest:

The public interest is best served by allowing those who organize legitimate corporations under the laws of a state to continue to pursue their legitimate business activities (contrary to Plaintiff's contention and RJN, Defendant's corporation is "active"). Granting an injunction to Plaintiff's, who refused to incorporate as they represented they did, and allow them to clean up their mess with wild deeds does not serve this problem. It only further perpetrates the fraud. This must be stopped. It is time for Plaintiff to be held accountable for its actions, rather than to try to strong-arm courts and others into caving in to their litigation tactics. The public interest needs to be protected.

Since Plaintiff cannot establish ALL the required elements for an injunction, their request for TRO and Injunction must be denied.

### E. PLAINTIFF COMES TO THE COURT WITH UNCLEAN HANDS AND THEY CANNOT DEMAND EQUITABLE RELIEF

California has long recognized the maxim that "No one can take advantage of his own wrong." (Civ. Code. § 3517.) Put another way, "[h]e who comes into equity must come with clean hands." (See *Wilson v. S.L. Rey, Inc.* (1993) 17 Cal. App.4th 234, 244; *Kendall-Jackson Winery, Ltd v. Superior Court* (1999) 76 Cal. App.4th 970, 978.)  The underpinnings of the doctrine/defense of unclean hands was explained in *Kendall-Jackson Winery, Ltd v. Superior Court, supra*, at p9. 978-79:

"The unclean hands doctrine protests judicial integrity and promotes justice. It protects judicial integrity because allowing a plaintiff with unclean hands to recover in an action creates doubts as to the justice provided by the judicial system. Thus, precluding recovery to the unclean plaintiff protects the courts, rather than the opposing parties' interest. [Citation omitted.] The doctrine promotes justice by making a plaintiff answer for its own misconduct in the action. It prevents "a wrongdoer from enjoying the fruits of his transgression." [Citation omitted.] [At p.p. 978-970.]"

As one court put it: "An injunction should not be made an instrument of oppression, and will not be granted where it would seem inequitable to do so, if it will operate oppressively, or will tend to promote rather than to prevent fraud and injustice." In re Dunkly, D.C.Cal.1946, 64 Fed.Supp. 184, 185.

The acts and omissions of Plaintiff has been well documented in this case and will become more clear as the case progresses. Suffice it to say, BofA (through the acts of its acquired company and the use of a trademark) comes to this court with unclean hands. An injunction request is a request that the court do equity. A party with unclean hands cannot demand equity.

## CONCLUSION

THIS IS SIMPLY A CASE OF PLAINTIFF TRYING TO FIX ITS PREVIOUS FRAUD COMMITTED OVER THE COURSE OF 15 YEARS IN 3.5 MILLION RECORDED DOCUMENTS THAT DEFENDANT'S INNOCENT ACTS HAVE UNFORTUNATELY REVEALED. Plaintiff should not be allowed to use this Court as an associate to its shoddy, clumsy, and predatory lending practices that were intentionally designed to mislead homeowners across the country. It is clear what has happened here, and it is clear that BofA is attempting clean up Countrywide's mess that it voluntarily chose to undertake (in the hopes of quick profits and a bargain basement sale price).

CHLI, and its successor in interest, BofA come to the court with unclean hands and they ask for equity to be served in the form of a TRO and Injunction. Their use of the federally registered

trademark "AMERICAS WHOLESALE LENDER" is a past-use that shows up in recorded deeds of trust and mortgage notes where the documents improperly state and represent: "AMERICAS WHOLESALE LENDER, a New York Corporation." AMERICAS WHOLESALE LENDER is nothing but a DBA and fictitious business name and NOT a New York Corporation. To put it in layman's terms, they lied.

This is just another amazing chapter of the predatory lending saga of Countrywide. There is simply no good faith in the actions of CHLI, and BofA brings nothing new to the table as far as good faith or clean hands are concerned since their acquisition of CHLI and the mark at issue. Moreover, there is no indication BofA has suffered, or is in any risk of loss with Defendant's use of its New York Corporation, which was validly registered, and Plaintiff admits to this day that Defendant is not engaged in any business with the corporation.

Thus, they cannot meet the legal standards required to obtain a TRO/Injunction and they cannot show irreparable harm in any way, shape or form. If in fact there are any damages suffered by Plaintiff's then money damages is a sufficient remedy for Plaintiff's to pursue. Their motion for a TRO/Injunction must be denied.


Respectfully Submitted

Dated: March 12, 2012                    THE LAW OFFICES OF STEVEN C.
                                         VONDRAN, P.C.


                                         By:  ____/s/ Steven C. Vondran____
                                                  Steven C. Vondran, Esq.

                                              steve@vondranlaw.com

                                              Attorneys for Defendants
                                              AMERICA'S WHOLESALE
                                              LENDING, INC., DENNIS L. BELL
                                              AND CHERI B. ENGLISH

**PROOF OF SERVICE OF DOCUMENT**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed by The Law Offices of Steven C. Vondran in the County of Orange, State of California.  I am over the age of 18 and not a party to the above-captioned action.  My business address is **620 Newport Center Drive, Suite 1100, Newport Beach, CA, 92660.**  I also have an office at 2415 E. Camelback Road, Suite 700, Phoenix, Arizona 85016.

On *March 12th, 2012*, I placed a copy of the attached documents entitled:

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE REQUEST FOR TRO AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

On the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

[ ]     **BY MAIL:**     By placing a true and correct copy thereof enclosed in a sealed envelope addressed as above, with postage thereon fully prepared, in the U.S. Mail at Newport Beach, CA.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal service on the same day with postage thereon fully prepaid at Phoenix, Arizona, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing as stated in the affidavit.

[ ]     **BY OVERNIGHT COURIER:** I caused the above referenced document(s) to be delivered to _____ for deliver to the above addresses.

[ ]     **BY FAX:** I transmitted a true copy of the foregoing document(s) this date from telecopier number **Fax: (XXX) XXX-XXX**

[ ]     **BY PERSONAL SERVICE:**  I caused such envelope to be delivered by hand to the offices of the addressee(s).

[X]     **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and LBR(s), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 12, 2012**, I checked the CM/ECF docket for this civil case, bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Nafiz Cekirge          nafiz.cekirge@bryancave.com
Robert E. Boone III    reboone@bryancave.com
Robert G. Lancaster    rglancaster@bryancave.com

[ ] **(State)** I  declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] **(Federal)** I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**PROOF OF SERVICE**

Executed on *March 12, 2012*, at Phoenix, Arizona

_____
Steven C. Vondran, Esq.

**SERVICE LIST**

Robert E. Boone III, Esq.
Nafiz Cekirge, Esq.
Robert G. Lancaster, Esq.
Bryan Cave, LLP
120 Broadway, Suite 300
Santa Monica, CA  90401-2386

**PROOF OF SERVICE**