1  **BRYAN CAVE LLP**
   ROBERT E. BOONE III (SBN 132780)
2  NAFIZ CEKIRGE (SBN 255710)
   ROBERT G. LANCASTER (SBN 257504)
3  120 Broadway, Suite 300
   Santa Monica, California  90401-2386
4  Telephone:   (310) 576-2100
   Facsimile:   (310) 576-2200
5  E-Mail:   reboone@bryancave.com
             nafiz.cekirge@bryancave.com
6            rglancaster@bryancave.com

7  Attorneys for Plaintiffs
   COUNTRYWIDE HOME LOANS, INC.,
8  BANK OF AMERICA CORPORATION and
   BANK OF AMERICA, N.A.

9

10              UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

11  COUNTRYWIDE HOME LOANS,          Case No. 8:12-cv-00242-CJC-AN
    INC.; BANK OF AMERICA
12  CORPORATION; BANK OF
    AMERICA, N.A.                    **PLAINTIFFS' REPLY TO**
13                                   **DEFENDANTS' OPPOSITION TO**
                Plaintiffs,          **APPLICATION FOR A**
14                                   **TEMPORARY RESTRAINING**
          v.                         **ORDER TO STOP DEFENDANTS**
15                                   **FROM INFRINGING THE**
    AMERICA'S WHOLESALE              **AMERICA'S WHOLESALE**
16  LENDER, INC., a New York         **LENDER® TRADEMARK AND**
    Corporation, DENNIS L. BELL, an  **"AMERICA'S WHOLESALE**
17  individual; CHERI B. ENGLISH, an **LENDER" NAME AND ORDER**
    individual, JAN VAN ECK (a/k/a   **TO SHOW CAUSE RE:**
18  HERMAN JAN VAN ECK a/k/a         **PRELIMINARY INJUNCTION**
    MAURITZ VAN ECK a/k/a
19  MAURICE VAN ECK a/k/a MARITZ     [Filed Concurrently with Declaration
    VAN ECK a/k/a GEORGE TOMAS),     of Dennis Burk; Declaration of Linda
20  an individual; and DOES 1-100,   Burk; Reply to Objection to Request
                                     for Judicial Notice; Objection to
21              Defendants.          Request For Judicial Notice]

22

23                                   Date Filed: February 13, 2012
                                     Trial Date: None
24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA  90401-2386

# **Table of Contents**

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     CHL'S USE OF THE "AMERICA'S WHOLESALE LENDER" FICTITIOUS BUSINESS NAME WAS PROPER ................................ 3

III.    THE *ROOKER-FELDMAN* DOCTRINE DOES NOT PREVENT THIS COURT FROM ISSUING A TEMPORARY RESTRAINING ORDER ........ 4

IV.     PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AND TO SEEK A TEMPORARY RESTRAINING ORDER ................................... 4

V.      PLAINTIFFS CAN ESTABLISH THE ELEMENTS OF THEIR LANHAM ACT CLAIMS .................................................................... 6

        A.      AMERICA'S WHOLESALE LENDER® Is A Valid, Protectable Mark ............................................................................................ 7

        B.      The *Sleekcraft* Factors Demonstrate A Likelihood Of Confusion ......... 7

VI.     PLAINTIFFS' ARE LIKELY TO PREVAIL ON THEIR UCL CLAIM ...... 11

VII.    IRREPARABLE HARM .................................................................... 11

VIII.   BALANCE OF THE EQUITIES ......................................................... 12

IX.     THE PUBLIC INTEREST ................................................................. 12

X.      CONCLUSION ................................................................................. 13

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# Table of Authorities

<u>Page</u>

## Cases

*AMF Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979) ..................................................... 6, 7, 9

*Applied Info. Scis. Corp. v. eBay, Inc.,*
  511 F.3d 966 (9th Cir. 2007) ......................................................... 6, 7

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,*
  174 F.3d 1036 (9th Cir. 1999) ............................................................ 7

*Electropix v. Liberty Livewire Co.,*
  178 F. Supp. 2d 1125 (C.D. Cal. 2001) .......................................... 10

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.,*
  618 F.3d 1025 (9th Cir. 2010) ............................................................ 6

*Glow Indus. v. Lopez,*
  273 F. Supp. 2d 1095 (C.D. Cal. 2003) ............................................. 5

*Jack Russell Terrier Network v. Am. Kennel Club, Inc.,*
  407 F.3d 1027 (9th Cir. 2005) ............................................................ 5

*Kougasian v. TMSL, Inc.,*
  359 F.3d 1136 (9th Cir. 2004) ............................................................ 4

*Maldonado v. Harris,*
  370 F.3d 945 (9th Cir. 2004) .............................................................. 4

*Mortgage Elec. Registration Sys. v. Brosnan,*
  No: C 09-3600 SBA, 2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4,
  2009) ................................................................................................. 6

*Noel v. Hall,*
  341 F.3d 1148 (9th Cir. 2003) ............................................................ 4

*Sterling Bank v. Sterling Bank & Trust,*
  Case No. CV-94-8378-KMW (MCx), 1996 U.S. Dist. LEXIS 22215 (C.D.
  Cal. May 29, 1996) ............................................................................ 5

## Statutes

15 U.S.C. § 1114 ................................................................................... 4, 5

15 U.S.C. § 1125(a)(1)(A) ....................................................................... 5

Cal. Bus. & Prof. Code § 17900 ............................................................. 3

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

## I.    Introduction

In their *Ex Parte* Application, Plaintiffs adduced an overwhelming amount of evidence demonstrating that Defendants hijacked the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name for the sole purpose of defrauding Plaintiffs and Plaintiffs' customers.[1]

In their Opposition, Defendants do not meaningfully address the evidence of fraud against them.  Rather, they try to divert the Court's attention from their malfeasance by tarnishing Plaintiffs.  But once the Opposition is stripped of its recriminations and rhetoric, it is clear that the Opposition only confirms that Plaintiffs' allegations against Defendants are true.

Defendants claim nonsensically that Defendant Dennis Bell first incorporated America's Wholesale Lender, Inc. ("AWLI") "to protect his interest in a lawsuit that he filed in 2008."

They then try to explain away their fraudulent impersonation of Plaintiffs by contending that CHL's identification of "America's Wholesale Lender" as both the "lender" and a New York corporation in loan documents is somehow wrongful.  Defendants claim that as a result of this allegedly wrongful conduct, they had free reign to impersonate CHL and con Plaintiffs and Plaintiffs' customers.

For starters, there is nothing improper about that fact that CHL identified "America's Wholesale Lender" as the "lender" and a New York corporation in loan documents.  The use of fictitious business names is perfectly proper and "America's Wholesale Lender" is CHL, which is a New York corporation.

Moreover, it is inconceivable that CHL's manner of identifying "America's Wholesale Lender" in loan documents—whether Defendants think it is right or wrong—gave Defendants the right to defraud Plaintiffs and Plaintiffs' customers.

---

[1]    Plaintiffs are Countrywide Home Loans, Inc., Bank of America Corporation and Bank of America, N.A.  Defendants are America's Wholesale Lender, Inc., Dennis L. Bell and Cheri B. English.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

The most troubling aspect of the Opposition is that it suggests that Defendants' fraudulent scheme is far more widespread than Plaintiffs initially suspected.  While Paragraph 27 of the Complaint identifies seven fraudulent transactions by Defendants, Bell states in Paragraph 4 of his declaration that AWLI was sued "hundreds" of times and agreed to "settlement terms" in many of these cases.  Given that the terms of these "settlements" appear to involve stripping Plaintiffs' liens, Plaintiffs now fear that there are many more impacted customers and properties than they originally thought.  This makes a restraining order against Defendants all the more urgent.[2]

Defendants' remaining arguments are also without merit:

- Contrary to Defendants' contention, the *Rooker-Feldman* doctrine does not prevent this Court from issuing an injunction, because Plaintiffs do not seek relief from a state court judgment on the ground that the state court committed legal error.

- Contrary to Defendants' contention, Plaintiffs have standing to pursue their Lanham Act claims regardless of whether Plaintiffs own the loans described in the Complaint.

- Contrary to Defendants' contention, Plaintiffs establish all elements of their Lanham Act claims.

- Contrary to Defendants' contention, Plaintiffs demonstrate that the elements of irreparable harm, balance of the equities, and the public interest tip sharply in their favor.

In short, this court should grant  Plaintiffs' *Ex Parte* Application to put an end to the massive ongoing consumer fraud perpetrated by Defendants.

///

///

---

[2]      Plaintiffs expect to amend their Complaint shortly to add federal RICO and mail and wire fraud claims.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## II.    CHL's Use Of The "America's Wholesale Lender" Fictitious Business Name Was Proper

A recurring theme throughout Defendants' Opposition is that CHL somehow acted wrongfully by identifying "America's Wholesale Lender" as the "lender" in loan documents and by describing "America's Wholesale Lender" as a New York corporation in loan documents.  (*See* Opp'n 6:17-6:24, 9:27-10:2, 13:2-13:3, 13:20-13:25, 14:14,-14:21, 16:3-16:6, 18:24-18:27, 19:20-19:21, 21:27-22:6.)

There is nothing improper about using a fictitious business name.  *See, e.g.,* Cal. Bus. & Prof. Code §§ 17900 *et seq.*  CHL did not use this fictitious business name to conceal its identity from borrowers.  To the contrary, CHL publicly registered "America's Wholesale Lender" as a fictitious business name in 49 of 50 states.[3]  (*Ex Parte Appl.* Mem. Ps & As 2; Declaration of Devra Lindgren ("Lindgren Decl.") ¶ 8.)

Also, identifying "America's Wholesale Lender" as a New York corporation in loan documents is proper.  "America's Wholesale Lender" is CHL, which is a New York corporation.  (*Ex Parte Appl.* Mem. Ps & As 2; Lindgren Decl. ¶ 6.)

Defendants do not provide any evidence that Plaintiffs' customers were prejudiced by CHL's manner of identifying "America's Wholesale Lender" in loan documents.  Rather, the confusion as to the identity of the lender started when Defendants incorporated AWLI, and began impersonating CHL to swindle Plaintiffs and Plaintiffs customers.

In any event, CHL's manner of identifying "America's Wholesale Lender" in loan documents—even if Defendants believed it was improper—did not give Defendants license to impersonate Plaintiffs and to defraud Plaintiffs and Plaintiffs' customers.

---

[3]    The only jurisdictions in which CHL did not register its fictitious business names were places that did not provide a mechanism for such registration.  (*Ex Parte Appl.* Mem. Ps & As 2; Lindgren Decl. ¶ 10.)

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**III.   The *Rooker-Feldman* Doctrine Does Not Prevent This Court From Issuing A Temporary Restraining Order**

"The *Rooker-Feldman* doctrine has evolved from the two Supreme Court cases from which its name is derived." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). "The basic premise of *Rooker-Feldman* is that 'a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.'" *Maldonado v. Harris*, 370 F.3d 945, 949 (9th Cir. 2004) (*quoting Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003)). The *Rooker-Feldman* doctrine "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Kougasian*, 359 F.3d at 1140 (emphasis in the original). *Maldonado*, 370 F.3d at 951 ("As we have already explained, Maldonado does not allege any legal errors by the California state court as a basis for relief, and *Rooker-Feldman* therefore does not bar his federal action.") The *Rooker-Feldman* doctrine does not apply when a federal plaintiff "alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud" or alleges claims based on "wrongful acts by the defendants." *Kougasian*, 359 F.3d at 1141-42.

The *Rooker-Feldman* doctrine does not apply in this case. Neither Plaintiffs' Complaint nor their *Ex Parte* Application seeks relief from the state court stipulated judgments—that Defendants obtained by fraudulently impersonating CHL—based on legal error by the state courts. Rather, the relief that Plaintiffs seek is based on Defendants' continuing wrongful impersonation of CHL to defraud Plaintiffs and Plaintiffs' customers.

**IV.   Plaintiffs Have Standing To Bring This Action And To Seek A Temporary Restraining Order**

The registrant of a trademark has "standing to assert a claim for trademark infringement" under 15 U.S.C. section 1114. *Glow Indus. v. Lopez*, 273 F. Supp. 2d

1   1095, 1106 (C.D. Cal. 2003).

2        To have standing to assert a claim based on 15 U.S.C. section 1125(a)(1)(A),

3   a plaintiff "need only allege commercial injury based upon the deceptive use of a

4   trademark or its equivalent." *Jack Russell Terrier Network v. Am. Kennel Club,*

5   *Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).  The parties need not be "competitors."

6   *Id.*  "Commercial injury" includes "damage to goodwill [and] loss of control over

7   reputation."  *Sterling Bank v. Sterling Bank & Trust*, Case No. CV-94-8378-KMW

8   (MCx), 1996 U.S. Dist. LEXIS 22215, at *24 (C.D. Cal. May 29, 1996).

9        Because Bank of America Corporation ("BAC") is the registrant of the

10  AMERICA'S WHOLESALE LENDER® trademark, it has standing to pursue the

11  first claim in the Complaint for violations of 15 U.S.C. section 1114.  (*Ex Parte*

12  *Appl.* Mem. Ps & As 2-3; Lindgren Decl. ¶ 11; Declaration of Nafiz Cekirge

13  ("Cekirge Decl.") Ex. 1 at 6.)

14       Further, all Plaintiffs have standing to assert the second claim in the

15  Complaint for violations of 15 U.S.C. section 1125(a)(1)(A).  As explained in

16  Plaintiffs' *Ex Parte* Application, Defendants' infringement of the AMERICA'S

17  WHOLESALE LENDER® trademark and "America's Wholesale Lender" are

18  harming Plaintiffs' goodwill and causing them to lose control over their reputation.

19  (*Ex Parte Appl.* Mem. Ps & As 21; Declaration of Dennis Burk ("D. Burk Decl.") ¶¶

20  30-31; Declaration of Linda Burk ("L. Burk Decl.") ¶¶ 30-31.)  Moreover, Plaintiffs

21  will have to expend significant sums of money and other resources to correct the

22  land records that have been muddied by Plaintiffs' recordation of fraudulent lien

23  reconveyances and assignments.

24       Defendants' claim that Plaintiffs have no standing to pursue their trademark

25  claims because they "are not the legal owners of the loans that they urge the court to

26  scrutinize" is baseless.  (Opp'n 10:15.)  As discussed above, the issue of loan

27  ownership is not relevant to standing to bring Lanham Act claims.

28  ///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## V.   Plaintiffs Can Establish The Elements Of Their Lanham Act Claims

"To prevail on [a] trademark infringement claim, [a plaintiff] must show that: (1) [he] has a valid, protectable trademark, and (2) that [the defendant's] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

A false designation of origin claim "turns on the likelihood of confusion" as well. *Mortgage Elec. Registration Sys. v. Brosnan*, No: C 09-3600 SBA, 2009 U.S. Dist. LEXIS 87596, at \*10 (N.D. Cal. Sept. 4, 2009) (hereinafter "*Brosnan*").  But "because a trade name cannot be registered," a plaintiff asserting a false designation of origin claim does not need to establish the existence of a valid, protectable trademark. *Id.*

The following eight factors, generally referred to as the *Sleekcraft* factors, guide the inquiry into whether a defendant's use of a mark is likely to confuse consumers: (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product.[4]  *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010).  "This eight-factor analysis is pliant, illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Id.* (internal quotations and citation omitted).  "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Id.* at 1031 (internal quotations and citation omitted).  "[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset

---

[4]     This test is often called the *Sleekcraft* test because it was announced in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010).

1  of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d

2  1036, 1054 (9th Cir. 1999).

3  As discussed in Plaintiffs' *Ex Parte* Application and below, Plaintiffs will

4  likely prevail on their Lanham Act claims because AMERICA'S WHOLESALE

5  LENDER® is a valid, protectable mark and Defendants' use of the name

6  "America's Wholesale Lender, Inc." is likely to cause confusion.  (*Ex Parte* Appl.

7  Mem. Ps & As 15:19-19:26.)

8      **A.   AMERICA'S WHOLESALE LENDER® Is A Valid, Protectable**

9          **Mark**

10  Defendants claim that the AMERICA'S WHOLESALE LENDER® is not a

11  valid, protectable mark because "***there is no affidavit of continuous use attached to***

12  ***the motion and Ms. Lindgren respectfully does not allege such was filed***."  (Opp'n

13  11:3-11:4 (emphasis in the original).)  But to establish a valid, protectable mark, all

14  a party needs to establish is a "federally registered mark in goods or services."

15  *Applied Info. Scis. Corp.*, 511 F.3d at 969-70.  And Plaintiffs have established this.

16  (*Ex Parte* Appl. Mem. Ps & As 3; Lindgren Decl. ¶ 11; Cekirge Decl. Ex. 1 at 7.)

17  Moreover, the Section 15 affidavit that Plaintiffs reference is a matter of public

18  record and was filed with the United States Patent and Trademark Office in 2000.

19  (Cekirge Decl. Ex. 1 at 7.)  There is no requirement for this affidavit to be annexed

20  to Plaintiffs' *Ex Parte* Application.

21      **B.   The *Sleekcraft* Factors Demonstrate A Likelihood Of Confusion**

22  Defendants claim that Plaintiffs failed to demonstrate the likelihood of

23  confusion under the *Sleekcraft* test.  As discussed more fully below, Defendants are

24  wrong.

25  **Strength of the Mark.**  Defendants do not dispute—nor can they—that CHL

26  originated more than 3.5 million loans over a 15 year period using the America's

27  Wholesale Lender mark.  (*Ex Parte* Appl. Mem. Ps & As 3; Declaration of Renell

28  Welch ("Welch Decl.") ¶ 13.)

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    Without presenting any evidence, Defendants argue that this fact is not

2 enough to establish the strength of the mark because "[m]any borrowers never even

3 review their loan documents and likely have little knowledge of this mark."  (Opp'n

4 12:19-12:20.)  Defendants' unsupported premise that borrowers do not read their

5 loan documents and thus do not know of the "America's Wholesale Lender" mark is

6 contradicted by Defendants' own contentions.  If borrowers were not aware of

7 "America's Wholesale Lender," they could not mistakenly "overwhelm[ ]" AWLI

8 with lawsuits meant for CHL, as Bell declares.  (Declaration of Dennis Bell ("Bell

9 Decl.) ¶ 6.)  Indeed, the declarations of borrowers Dennis and Linda Burk

10 demonstrate that borrowers knew of the "America's Wholesale Lender" mark, as the

11 Burks state that they understood "America's Wholesale Lender" to be their lender.

12 (D. Burk Decl. ¶¶ 6, 15; L. Burk ¶¶ 6, 15.)

13    Defendants do not directly address the fact that the "America's Wholesale

14 Lender" mark pervades the industry, but concede that Plaintiffs used the mark to

15 originate more than 3.5 million loans over a 15 year period.  (Opp'n 13:2-13:3.)

16    **Relatedness of Services.**  Defendants claim that their services and Plaintiffs'

17 services are not related because "BofA is a lending institution and acts as a loan

18 servicer of loans," while Defendants "offers no such services," but rather "responds

19 to lawsuits served on them."   (Opp'n 13:17-13:18 & 13:25-13:25.)

20    In so claiming, Defendants ignore the mountain of evidence confirming that

21 they are not merely responding to lawsuits, but rather pretending to be CHL—a

22 lender.  (*Ex Parte Appl.* Mem. Ps & As 5-13.)  In fact, the loan closing documents

23 that Defendants and their agents provided to the Burks as part of the fraudulent short

24 payoff that Defendants orchestrated for the Burks demonstrate that Defendants hold

25 themselves out to the public as a lender, albeit falsely.  (D. Burk Decl. ¶¶ 5, 8, 11,

26 17-28 & Ex. 2 at 14-18 & Ex. 3 at 19; L. Burk Decl. ¶¶ 5, 8, 11, 17-28 & Ex. 2 at

27 14-18 & Ex. 3 at 19.)

28    **Similarity of the Marks.**  Defendants contend that this factor does not come

1  into play because Defendants' mark is a valid corporate name under state law and

2  Plaintiffs' mark is a federally registered trademark.  (Opp'n 14:4-14:9.)  Thus,

3  Defendants argue, the names are not comparable.

4        Defendants' contention is without merit.  It does not matter whether a name is

5  a corporate name, trademark, logo or some other demarcating symbol.  The analysis

6  of the "[s]imilarity of the marks is tested on three levels: sight, sound, and

7  meaning." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979).  Under

8  these criteria, the marks are essentially identical.

9        **Evidence of Actual Confusion.**  As explained in Plaintiffs' *Ex Parte*

10 Application, there is clear evidence that many of Plaintiffs' customers were

11 confused into believing that AWLI was CHL.  (*Ex Parte* Appl. Mem. Ps & As 18.)

12 Ironically, Defendants' Opposition further proves this point by asserting that AWLI

13 has been mistakenly sued in hundreds of lawsuits by Defendants' borrowers.  (Bell

14 Decl. ¶¶ 4, 6.)  Moreover, the Burks' declarations clearly indicate that they were

15 actually confused into believing that AWLI and CHL were the same entity; indeed,

16 Defendants and their agents repeatedly told the Burks as much, so that they could

17 carry out their fraudulent scheme.  (D. Burk Decl. ¶¶ 5, 8-9, 11, 18, 24-25; L. Burk

18 Decl. ¶¶ 5, 8-9, 11, 18, 24-25.)  In fact, the Burks paid AWLI $260,000 believing

19 that they were paying CHL.  (D. Burk Decl. ¶¶ 20-21 & Ex. 2 at 11; L. Burk Decl.

20 ¶¶ 20-21 & Ex. 2 at 11.)

21       Defendants contend that "[t]o the extent there is any evidence of actual

22 confusions [*sic*] it is attributable to Plaintiff's own action in not truly and accurately

23 representing the lender in the 3.5 million notes and deeds of trust." (Opp'n 15:3-

24 15:6.)  Presumably, Defendants are referring to their contention that there is

25 something improper in the way CHL described its fictitious business name

26 "America's Wholesale Lender" in loan documents.  As explained above, this claim

27 is baseless.

28 ///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**Marketing Channels, Expansion Into Other Markets And Care Exercised By Customers.** As explained in Plaintiffs' *Ex Parte* Application, these three *Sleekcraft* factors are not meaningful in this case. (*Ex Parte Appl.* Mem. Ps & As 19.)  Defendants do not operate a legitimate business where marketing channels and expansion into other markets are serious factors to consider.  As explained in the declarations of Dennis and Linda Burk, Defendants' sole market consists of Plaintiffs' former and current customers, who had loans originated under CHL's fictitious business name "America's Wholesale Lender."  (D. Burk Decl. ¶¶ 5, 8, 11; L. Burk Decl. ¶¶ 5, 8, 11.)  Defendants' seek these customers out and try to lure them into the scam.  (D. Burk Decl. ¶ 5; L. Burk Decl. ¶ 5.)

Similarly, it is not valuable to talk about the care of customers.  Defendants target consumers and actively deceive them into thinking that AWLI is CHL. "[V]irtually no amount of consumer care can prevent confusion" here.  *See Electropix v. Liberty Livewire Co.*, 178 F. Supp. 2d 1125, 1134 (C.D. Cal. 2001).

**Defendants' Intent.**  Defendant Bell claims that he did not incorporate AWLI to impersonate CHL, but rather "to assist him in his predatory lending lawsuit against Countrywide."  (Opp'n 16:18.)

This is nonsense.  Bell's actions after he incorporated AWLI prove his fraudulent intent.  First, he filed a confession of judgment in his favor for $5.825 million to trick the federal court into believing that the judgment was in his favor and against CHL.  (*Ex Parte* Appl. Mem. Ps & As 3-4; Cekirge Decl. Ex. 5 at 42, 49.)

Then, he had his confederate, Jan Van Eck, attempt to release his mortgages. (*Ex Parte* Appl. Mem. Ps & As 3-4; Cekirge Decl. Ex. 7 at 52-55.)

Then, Bell and the other Defendants impersonated CHL to collect unauthorized payments from Plaintiffs' customers, (*Ex Parte* Appl. Mem. Ps & As 5-12), on loans that Bell admits were neither originated or serviced by AWLI (Opp'n 16:21-16:22 ("Defendant has absolutely no intent to originate or service any

1   mortgage loans, and has not done so . . . .")).  Indeed, the scam is explained in great

2   detail in the first person in the declarations of Dennis and Linda Burk.  (D. Burk

3   Decl. ¶¶ 5-28; L. Burk Decl. ¶¶ 5-28.)

4        Moreover, AWLI, Bell and English's efforts to distance themselves from

5   Defendant Jan Van Eck are unavailing.  It is simply implausible that Van Eck would

6   sign satisfactions of Bell's mortgages unless Bell and Van Eck were in cahoots.  (*Ex*

7   *Parte* Appl. Mem. Ps & As 3-4; Cekirge Decl. Ex. 7 at 52-55.)  Moreover, even if

8   they were not in cahoots with Van Eck, Bell and English do not explain the

9   fraudulent documents that they signed, such as the confession of judgment signed by

10  English, and the various stipulations, reconveyances and assignments signed by

11  Bell.  (*See, e.g.*, *Ex Parte* Appl. Mem. Ps & As 3-6, 12; Cekirge Decl. Ex. 5 at 42,

12  49; Cekirge Decl. Ex. 9 at 73; Cekirge Decl. Ex. 11 at 75; Cekirge Decl. Ex. 31 at

13  265.)

14  **VI.   Plaintiffs' Are Likely To Prevail On Their UCL Claim**

15       Defendants claim that Plaintiffs will not prevail on their UCL claim because

16  Plaintiffs cannot prevail on their Lanham Act claims.  (Opp'n 18:10-18:12.)  As

17  discussed above, Plaintiffs will likely succeed on their Lanham Act claims.

18  Moreover, as Plaintiffs explain in the *Ex Parte* Application, they will also likely

19  succeed under the "unfair" and "fraudulent" prongs of the UCL.  (*Ex Parte* Appl.

20  Mem. Ps & As 20:14-20:17.)

21  **VII.  Irreparable Harm**

22       The gist of Defendants' purported defense is that Plaintiffs suffered no

23  irreparable harm because the "America's Wholesale Lender" mark is no longer

24  viable and has a bad reputation.  (Opp'n 18:20-19.2)  Again, the fact that

25  Defendants were able to fool many of Plaintiffs' customers, by using the "America's

26  Wholesale lender, Inc." name, into thinking that Defendants were related to CHL

27  demonstrates that the AMERICA'S WHOLESALE LENDER® trademark and

28  "America's Wholesale Lender" trade name are alive and well in the minds of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   consumers.  (*Ex Parte* Appl. Mem. Ps & As 5-12; D. Burk Decl. ¶¶ 5-28; L. Burk

2   Decl. ¶¶ 5-28.)

## VIII.  Balance Of The Equities

4       Defendants claim that the balance of equities favors them because Plaintiffs

5   could have foreshadowed and prevented Defendants' fraudulent conduct by

6   incorporating a New York Corporation called "America's Wholesale Lender,"

7   instead of using that name as a fictitious business name.  This is nonsense.  The fact

8   that Plaintiffs chose to conduct business under a fictitious business name, rather than

9   a corporate name, does not give Defendants a license to commit fraud.

## IX.    The Public Interest

11      Defendants claim that the public interest would be "served by allowing those

12  who organize legitimate corporations under the laws of a state to continue to pursue

13  their legitimate business activities."  (Opp'n 20:8-20:9.)  This premise may be true,

14  but is irrelevant here because Defendants are not conducting any legitimate

15  business; rather they are defrauding Plaintiffs and Plaintiffs' customers by infringing

16  Plaintiffs' marks.  The public interest is not served by allowing them to continue.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

1    **X.      Conclusion**

2         In a word, Defendants' Opposition is unbelievable.  The premise of the

3    Opposition is that because CHL did not incorporate its business name in New York,

4    Defendants had the right to incorporate a corporation in New York with a similar

5    name, impersonate CHL and then proceed to defraud Plaintiffs' and their customers.

6    One thing is clear:  Defendants' fraudulent scheme is widespread.  Indeed, it is

7    much more widespread than originally contemplated by Plaintiffs, as evidenced by

8    Defendants' admission that AWLI has been sued hundreds of times by CHL

9    borrowers.  Defendants should be enjoined from their fraudulent and criminal

10   conduct.

11   DATED:  March 15, 2012              Respectfully submitted,

12                                      **BRYAN CAVE LLP**

13                                      By:  ___/s/ Nafiz Cekirge_____

14                                          NAFIZ CEKIRGE
                                           Attorneys for Plaintiffs
15                                         Countrywide Home Loans, Inc.
                                           Bank of America Corporation
16                                         and Bank of America, N.A.

17

18

19

20

21

22

23

24

25

26

27

28