1    THE LAW OFFICES OF STEVEN C. VONDRAN, ESQ.
     Steven C. Vondran (SBN# 232337)
2    steve@vondranlaw.com
     620 Newport Center, Suite 1100
3    Newport Beach, California 92660
     Telephone: (949) 945-8700
4    Facsimile: (888) 551-2252

5    Attorneys for Defendant(s):
     AMERICA'S WHOLESALE LENDER, INC., DENNIS L.
6    BELL AND CHERI B. ENGLISH

7              UNITED STATES DISTRICT COURT

8             CENTRAL DISTRICT OF CALIFORNIA

9                  WESTERN DIVISION

| | |
|---|---|
| 10   COUNTRYWIDE HOME LOANS, INC.;<br>     BANK OF AMERICA CORPORATION;<br>11   BANK OF AMERICA, N.A., | Case No.: 8:12-cv-00242-CJC-AN<br><br>Honorable Judge Cormac J. Cartney |
| 12<br><br>13               Plaintiffs,<br><br>14            v.<br><br>15   AMERICA'S WHOLESALE LENDER, INC., a<br>     New York Corporation; DENNIS L. BELL, an<br>16   individual; CHERI B. ENGLISH, an individual:<br>     JAN VAN ECK (a/k/a HERMAN JAN VAN<br>17   ECK a/k/a MAURITZ VAN ECK a/k/a<br>     MAURICE VAN ECK a/k/a MARITZ VAN<br>18   ECK a/k/a GEORGE TOMAS), an individual:<br>     and DOES 1-10<br>19             Defendants.<br><br>20<br><br>21 | **DEFENDANT'S OPPOSITION TO<br>PLAINTIFF'S MOTION FOR<br>PRELIMINARY INJUNCTION;<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES.**<br><br>**[FILED CONCURRENTLY WITH<br>DEFENDANT'S REQUEST FOR JUDICIAL<br>NOTICE]**<br><br><u>Hearing</u><br>Date: March 30, 2012<br>Time: 9:00 a.m.<br>Dept: 9B |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

1. Introduction...................................................................................2-5

2. Key Facts......................................................................................5-7

2. Memorandum of Points and Authorities................................................7-25

    A. PLAINTIFFS HAVE NO STANDING TO BRING THE EX PARTE MOTION SEEKING AN INJUNCTION AND NO STANDING TO FILE THE COMPLAINT ON FILE WITH THE COURT; THEY ARE NOT THE REAL PARTY INTEREST AND THE ROOKER FELDMAN-DOCTRINE PROHIBITS REVIEW OF PLAINTIFF'S CLAIMS..............................................................................7-8

        1. *The Rooker-Feldman Doctrine prevents court from exercising jurisdiction over claims and issues that were resolved in the State Court.........................7-8*

        2. *Plaintiffs' CHL and Bank of America, N.A. have no standing to file the present action as they are not the present owners of the alleged trademark.....................8-9*

        3. *Plaintiffs' CHL and Bank of America, N.A. are not real parties in interest to file the present action as they are not the present owners of the alleged trademark................9*

    B. PLAINTIFF HAS ABANDONED THEIR MARK DUE TO NON-USE FOR THREE CONSECUTIVE YEARS.......................................................9-12

    C. PLAINTIFF CANNOT MEET THE REQUIREMENTS FOR AN INJUNCTION: ...............................................................12-25

4. Conclusion.....................................................................................25

# TABLE OF AUTHORITIES

PAGE

## CASES

*Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) ...........................................................7

*District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)...............................7

*Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir. 1995)...................................8

*Johnson v. De Grandy,* 512 U.S. 997. 1005-06 (1994)........................................................8

*Warth v. Seldin,* 422 U.S. 490, 495 (1975)...................................................................8-9

*Brock v. City of St. Louis,* 724 S.W.2d 721 (Mo.App. E.D.1987). .......................................8

*In re Smith,* 419 B.R. 622, 628 (Bankr. E.D. Va. 2008)....................................................9

*Imperial Tobacco, Ltd. v. Philip Morris, Inc.* (1990) 899 F.2d 1575, 1582-83...........................10

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.,* 458 F.3d 931, 938 (9th Cir.2006)..........10

*Exxon Corp. v. Humble Exploration Co.,* 695 F.2d 96, 99 (5th Cir.1983).................................10

*Phillips Van Heusen Corp. v. Calvin Clothing Co.* (2006) 444 F. Supp. 2d 250........................11

*Hiland Potato Chip Co. v. Culbro Corp.* (1981) 216 U.S.P.Q. (BNA) 352...............................11

*Winter v. NRDC,* 555 U.S. at 20, 129 S. Ct. at 374.........................................................12

*Applied Info. Scis. Corp. v. eBay, Inc.* 511 F.3d 966, 969 (9th Cir. 2007)............................12-13

*M2 Software, Inc. v. Madacy Entertainment,* 421 F.3d 1073, 1080 (9th Cir.2005)......................13

*Dreamworks Prod. Group v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir. 1998).........................14

*AMF, Inc v Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979).............................................14

*Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175 (9th Cir.1988) ................................14

*New West Corp. v. NYM Co. of California,* 595 F.2d 1194, 1201 (9th Cir.1979).........................14

*HIT Entertainment, Inc. v. National Discount Costume Co., Inc.,* 552 F.Supp.2d 1099 (9th Cir. S.D. 2008)........................................................................................................14

TABLE OF AUTHORITIES

(ii)

*Gomes v. Countrywide Home Loans Inc.*, 192 Cal.App.4th 1149 (2011)...........................15

*Entertainment, Inc. v. National Discount Costume Co.*, 552 F. Supp. 2d 1099 (S.D. Cal. 2008)......18

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008)...........................................18

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999)...........................................................................................................20

*E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*, E.D.Cal.1994, 905 F.Supp. 1403...................21

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949, 119 Cal. Rptr. 2d 296 (2002)...........................21,23

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal.App.4th 508, 128 Cal.Rptr.2d 463, Cal.App. 2 Dist.,2002............................................................................................21

*People v. Casa Blanca Convalescent Homes Inc.*, 159 Cal.App.3d 509, 206 Cal.Rptr. 164, 177 (1984) (citing Spiegel, Inc. v. F.T.C., 540 F.2d 287, 293 (7th Cir.1976).............................................22

*Spiegler v. Home Depot U.S.A., Inc.*, C.D.Cal.2008, 552 F.Supp.2d 1036, affirmed 349 Fed.Appx. 174, 2009 WL 3358556. .........................................................................................22

*Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543 (1980)..............22

*Hall v. Time Inc.*, 158 Cal.App.4th 847, 852, 70 Cal.Rptr.3d 466 (2008)...............................22

*O'Brien v. Camisasca Auto. Mfg., Inc.*, 161 Cal.App.4th 388, 399, 73 Cal.Rptr.3d 911 (2008).......22

*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 52, 77 Cal.Rptr.2d 709, 960 P.2d 513.).......................................................................................................................23

*Chern v. Bank of America* (1976) 15 Cal.3d 866, 876, 127 Cal.Rptr. 110, 544 P.2d 1310.............23

*Wilson v. S.L. Rey, Inc.* (1993) 17 Cal. App.4th 234, 244.................................................24

*Kendall-Jackson Winery, Ltd v. Superior Court* (1999) 76 Cal. App.4th 970, 978.......................24

TABLE OF AUTHORITIES

1
2

*In re Dunkly*, D.C.Cal.1946, 64 Fed. Supp. 184, 185…………………………..………………25

3

## STATUTES

4
*FRCP Rule 17(a)(1)*… … … … … … … … … … … … … … … … … … … … … … … … …9

5

*15 U.S.C. § 1127*… … … … … … … … … … … … … … … … … … … … … … … … … …9

6

*Cal. Bus. & Prof. Code §14245*… … … … … … … … … … … … … … … … … … … …10

7
8

*15 U.S.C. 1125 (A)(1)(A)* … … … … … … … … … … … … … … … … … … … … … …12

9

*15 U.S.C. 1605*… … … … … … … … … … … … … … … … … … … … … … … … … …13

10

*15 U.S.C. 1115*… … … … … … … … … … … … … … … … … … … … … … … … … …13

11

*New York Business Corporations Law Section 402*… … … … … … … … … … … … …16

12

*California Business and Professions Code Section 17203*… … … … … … … … … …20,21

13

*Business and Professions Code Section 17200*… … … … … … … … … … … … … … …21

14

*Cal. Bus. & Prof.Code § 17204*… … … … … … … … … … … … … … … … … … … …22

15

*Cal. Bus. & Prof.Code §17203*… … … … … … … … … … … … … … … … … … …22,23

16

*Cal. Bus. & Prof.Code §17500*… … … … … … … … … … … … … … … … … … … …23

17
18

## MISC.

19
Thomas Casagrande, 93 The Trademark Reporter 1354, 1357 (2003) …………………………..…11

20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

COMES NOW Defendants, AMERICA'S WHOLESALE LENDER, INC., DENNIS L. BELL AND CHERI B. ENGLISH (hereinafter "Defendant" or "Defendants") by and through their respective counsel in response and opposition to Plaintiff COUNTRYWIDE HOME LOANS, INC. (hereinafter "CHLI"); BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A. (hereinafter collectively referred to as "BOA") (all three parties may be referred to collectively as "Plaintiff" or "Plaintiff's) motion for preliminary injunction.

## I.
## INTRODUCTION

This case involves Plaintiff's attempt to fix a problem that it alone created.  They are using this trademark action as a tool to achieve their end means, which is to correct a problem with literally millions of loans originated by CHLI and ultimately taken over by BOA.

The problem arises because Plaintiff CHLI (a well known predatory lender) originated roughly 3.5 million loans that, on information and belief, each falsely portrayed that CHLI'S <u>dba</u> ("AMERICA'S WHOLESALE LENDER"), which was also the same name that is the subject of a federally registered trademark, was a "CORPORATION" that is "ORGANIZED AND EXISTING UNDER NEW YORK LAW" when in fact such was not true (i.e. CHLI falsely represented in 3.5 million recorded documents that America's Wholesale Lender was a New York Corporation when in fact it was not).  This was the start of their problems.

In their brief, they ask the court to look the other way and ignore the plain legal language of the notes and deeds of trust that falsely bear these representations and instead they argue that *"for starters there is nothing improper about the fact that CHL identified "America's Wholesale Lender" and the "lender" and a New York Corporation in loan documents.  The use of fictitious business names is perfectly proper and "Americas Wholesale Lender" is CHL, which is a New York Corporation"* (See Plaintiff's reply P.1 19-23).  As Jim Croce said in his song 'time in a

bottle'.......*if words could make wishes come true."* AWL is NOT a corporation, CHLI was a corporation. CHLI intentionally mislead millions of borrowers, on both notes and deeds of trust, as to who the entity they were contracting with. As AWL was not a corporation as they falsely portrayed, the loans are likely void as a pre-incorporation contract where the corporation never materialized. This was a material misrepresentation that consumers were never aware of. A pre-corporation contract is one which is entered into when the Company is in the process of being incorporated but is not yet completed it. At common law such contracts were held to be void, as the Company is not yet in existence. Had the Plaintiffs explained in their corporate disclosure statement that America's Wholesale Lender was a New York Corporation, surely the court would take issue with this if it was not clarified why exactly this would be the case. Plaintiffs are playing games here.

The Court should also take notice that in this statements made by Defendant's in their reply (in regard to the above statement), they do not use the "®" (registered trademark symbol) as they do in other portions of their pleading. In fact, as discussed below, Plaintiff's *pleadings* are the first time we see use of the registered trademark symbol. The mark is not used on the recorded documents.

It should also be noted that in seeking to use the Declarations of Linda and Dennis Burk they attach a *promissory note* that does not indicate that AMERICA'S WHOLESALE LENDER is a New York Corporation, and also do not use the "®" symbol. (See Decl. Linda Burk Exh. 2 p 13). Thus, there seems to be literally no rhyme or reason as to how CHLI conducted its business, or how or when it would use its tradename, and when or where it would pretend to be a New York corporation on 3.5 million recorded loan documents. This creates a problem where the note and deed of trust do not match in some cases, and again raises issues as to the enforceability of these loans BOA chose to purchase from the withering CHLI.

Moreover, as discussed above, in using their dba/tradename in 3.5 million recorded documents, on information and belief CHLI never used any symbol to alert anyone that the name

3

1  being used was a federally registered trademark (i.e. there was never any "TM," or "®" symbol used

2  on these 3.5 million recorded documents) and yet Plaintiff's now urge their mark is STRONG and

3  entitled to protection and that their mark *"pervades the industry"* (See Plaintiff's Reply P.8 at 14)

4  despite the failure to notify the public of its mark on the 3.5 million loan documents they claim to

5  have used this mark on.   All the public really knows is that CHLI used its tradename in a deceptive

6  manner.   This is not strength in a mark, this the deceptive use of a tradename/dba.

7

8          In addition, other problems are presented by Plaintiff's demand for a preliminary injunction.

9  Since it was assigned the trademark and service mark at issue (hereinafter "mark" or "marks") on or

10  around 11/08/08, Defendants allege, on information and belief, that there has been *no actual use* of

11  the mark by BOA or CHLI in commerce (for three consecutive years) in any manner to promote its

12  goods or services.   In fact, Plaintiff's make no such allegations of any actual use of the mark from

13  11/08/08 or thereafter in their pleadings.

14

15          As the old adage goes *"use it or lose it."*   This could not be more true when it comes to the

16  issue of trademarks and servicemarks.   An owner of a mark may not sit on their rights.   Their marks

17  must be *actually used* in commerce or they can be lost through abandonment. Once a business' mark

18  is deemed to be abandoned, anyone can use it, even a competitor who may be argued to be acting in

19  bad faith.   Simply put, the owner or assignee of a trademark cannot exclude others from using a

20  similar mark or similar name if their mark has been abandoned.   This a harsh legal reality that all

21  owners of federal trademarks must deal with.

22

23          Plaintiff's however seem to believe these standards do not apply to them, and that they do not

24  have to actually use the marks that were assigned to them by the now-defunct predatory lender CHLI

25  and that they somehow retain federal trademark protection due to a *prior use* of the mark *by CHLI* in

26  3.5 million recorded loan documents well over three years ago.   This shows a fatal misunderstanding

27  of federal trademark law, and the non-use of the mark for the past three consecutive years evidences

28

4

Plaintiff's intent to abandon the marks (raising a rebuttable presumption of intent to abandon) and this is a recognized defense to any assertion of incontestability.

Given Plaintiff's *abandonment of the mark*, they cannot now cry foul and claim Defendant is prohibited from forming a New York corporation that uses a name similar to Plaintiff's abandoned mark and their claims for trademark infringement (under state and federal law), false designation of origin, unfair competition (B & P 17200), and false advertising (B & P 17500) cannot succeed. Since they are not likely to succeed on the merits of these causes of action they are not entitled to a preliminary injunction. This should not harm Plaintiff's as they are not currently using the mark in any form or fashion to promote any of its goods or services, and have not done so in the last three years. **On page 10 of their Reply (lines 1-14) they discuss who the "<u>marketing channels and expansion into other markets</u>" (Sleekcraft factors) are "<u>not meaningful in this case.</u>" This admission literally proves there is no use of the mark, no plan to use the mark, and proves there are no damages suffered and no irreparable harm.** For the reasons that follow, Plaintiff's motion for preliminary injunction must be denied.

## II.
## KEY FACTS

Plaintiff Countrywide Home Loans, Inc. ("CHLI") will arguably go down in history as one of the most prolific predatory lenders of all time. One would think this is a matter beyond reasonable dispute but by way of a few examples, this point will be illustrated:

## 1. CHLI USED THE MARK (NOT BOA) AND CHLI IS A PREDATORY LENDER.

Attached to this opposition, and incorporated herein by reference is Defendant's Request for Judicial Notice (#1-23). Defendant requests that the Court take judicial notice of exhibits #1-23 as evidence of the predatory nature of CHLI, which is well known to the public at large, and to attorney generals of all 50 states. In fact, this is a matter of common knowledge. The documents are pulled

from various governmental websites (with the exception of exhibits #18 and #20) and demonstrate a sample of plethora of legal actions and settlements against CHLI for practices related to discriminatory lending, predatory lending, wrongful foreclosure practices, loan servicing abuses, and more.

There simply is not enough time in the day to document all of the abuses, shortcuts, predatory lending practices, wrongful foreclosures, discrimination practices, foreclosure and servicing abuses, and other acts and omissions that have lead to hundreds if not thousands of lawsuits alleging violations of a multitude of state and federal laws (both Attorney General and private party suits).

2.  Plaintiff CHLI was the original owner of the servicemark "AMERICA'S WHOLESALE LENDER." The mark was federally registered on or around 1/10/95. The registration number for this mark is #1872784. This servicemark was renewed in 2005 by CHLI (See Defendant's **RJN Exh. 21** which is a true and correct copy of a printout from the USPTO website and is incorporated herein by reference).

3.  Plaintiff BAC purchased CHLI on or around 7/1/2008, and thus Plaintiff ceased to exist as a corporate entity, (yet they are named as a Plaintiff in this matter). (See Defendant's **RJN Exh. 22** which is a true and correct copy of a printout from the State of Washington Department of Financial Institutions website and is incorporated herein by reference).

4. On or around 11/08/08 CHLI executed the assignment ("assigns the entire interest") to BANK OF AMERICA CORPORATION and on 1/13/09 the mark was recorded. The Reel/Frame# is 3917/0827 (See Defendant's **RJN Exh. 23** which is a true and correct copy of a printout from the USPTO website and is incorporated herein by reference).

5.  On 2/13/12, Plaintiffs filed the civil lawsuit against Defendants alleging trademark infringement under state and federal law, false designation of origin, false advertising and unfair

1    competition.    They asserted that their mark has been in continuous use for 5 years and is

2    incontestable.

3            6.    On 2/16/12 this court granted a TRO and ordered Plaintiff's to post a $10,000 bond.

4    Defendant has not received any evidence that this bond has been posted.

5

6        Plaintiff now seeks a preliminary injunction which Defendant vigorously opposes.  For the reasons

7    that follow, the Plaintiff is not entitled to an injunction preventing Defendants from using their

8    corporate name, which they lawfully acquired.

9                                                      II.

10                        **MEMORANDUM OF POINTS AND AUTHORITIES**

11
     **A.   PLAINTIFFS HAVE NO STANDING TO BRING THE MOTION SEEKING A**
12   **PRELIMINARY INJUNCTION AND NO STANDING TO FILE THE COMPLAINT**
     **ON FILE WITH THE COURT; THEY ARE NOT THE REAL PARTY INTEREST**
13   **AND   THE   ROOKER   FELDMAN-DOCTRINE   PROHIBITS   REVIEW   OF**
     **PLAINTIFF'S CLAIMS.**
14

15        **1.   *The Rooker-Feldman Doctrine prevents court from exercising jurisdiction over claims***
                ***and issues that were resolved in the State Court.***
16

17        The state court judgment in the *Burk* case (See Plaintiff's RJN Exh. 6) precludes this Court

18   from reviewing the issues set forth in Plaintiff's complaint because the state court judgment very

19   clearly determined that AWL, Inc. was the only party to hold an interest in the Burke loan (the order

20   in the Burke case states that: "*no other person or entity has any interest therein*").    As such, there

21   could be no trademark infringement as to the Burke loan regardless of whether or not they claim to be

22   confused (or other loans that have been adjudicated).  Plaintiff's now contend there is an issue of

23   false designation of origin, unfair business practices, false advertising, trademark infringement, and

24   other wrongdoing in connection with the loans cited in their brief.    These issues should not be

25   reached by this Court as they have already been resolved by the respective state courts and Plaintiff's

26   cannot now seek relief as to these findings which are inherent in the claims they raise.

27

28

The *Rooker-Feldman Doctrine* was established by two U.S. Supreme court decisions, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The Rooker-Feldman Doctrine stands for the basic proposition that lower federal courts do not have subject matter jurisdiction to review state court judgments. *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir. 1995). Stated another way by another court: "Rooker-Feldman, in essence, bars "a party losing in state court... from seeking what... would be appellate review of the state judgment in a Untied States district court." *In re Federated Dept. Stores, Inc.,* 226 B.R. 191, 193 (Bkrtcy. S.D. Ohio 1998) (citing *Johnson v. De Grandy,* 512 U.S. 997. 1005-06 (1994)). Review of state court judgments in the federal court system lies only with the United States Supreme Court.

Their request for a preliminary injunction should be denied on this ground alone.

**2. Plaintiffs' CHL and Bank of America, N.A. have no standing to file the present action as they are not the present owners of the alleged trademark.**

It is axiomatic that, in coming to federal court to enforce an alleged right, movant must comply with the applicable procedures of the federal court and applicable law. Two such procedural requirements are "standing" and "real party in interest." Standing is a threshold issue in every federal case determining the power of the court to entertain the action. *Warth v. Seldin,* 422 U.S. 490, 495 (1975). Lack of standing cannot be waived and may be considered by the court sua sponte. *Brock v. City of St. Louis,* 724 S.W.2d 721 (Mo.App. E.D.1987). As one court put it:

> "Under the oft-repeated standing formulation, Chapman (litigant) **must demonstrate that he has suffered an injury-in-fact**, that the injury is traceable to the Store's actions, and that the injury can be redressed by a favorable decision. *See Chapman v. Pier One Imports, Inc.* 631 F.3d 939 *(9th Cir. 2011).* (emphasis added)."

Here, CHLI is defunct and was purchased by BOA on July 1, 2008. They have assigned their mark to BANK OF AMERICA CORPORATION (it is not clear, and it is disputed that Plaintiff Bank

of America, N.A. has any legal interest in the trademark) and thus, these Defendant's have no standing in the present action since they have no concrete stake in the outcome of this action, and they must be immediately dismissed from the action.

      **3.** ***Plaintiffs' CHL and Bank of America, N.A. are not real parties in interest to file the present action as they are not the present owners of the alleged trademark.***

In addition to the standing requirement, *FRCP Rule 17(a)(1)* states that an "*action must be prosecuted in the name of the real party in interest.*" "Standing" and "real party in interest" are concepts that are related but not identical. Standing encompasses two major components: "*constitutional limitations on federal court jurisdiction and prudential limitations on its exercise,*" *Warth v. Seldin*, 422 U.S. 490, 498 (1975), while "real party in interest" is generally part of "standing," The purpose of Rule 17 is to ensure that *the person bringing a lawsuit has the right to enforce the asserted claim.*" *In re Smith*, 419 B.R. 622, 628 (Bankr. E.D. Va. 2008).

For the same reasons cited above, CHLI and Bank of America, N.A. do not have any interest in this litigation (no interest in the alleged trademark) and no right to enforce the asserted claims set forth in the complaint or in their demand for injunction.   These parties must be immediately dismissed from the action.

**B.    PLAINTIFF HAS ABANDONED THEIR MARK DUE TO NON-USE FOR THREE CONSECUTIVE YEARS**

Under federal trademark law, non-use of a mark for three consecutive years amounts to prima facie evidence of intent to abandon the mark. See *15 U.S.C. § 1127*.  Under *15 USC §1127* a mark shall be deemed to be "abandoned" if the following occurs:

> "(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. ***Nonuse for 3 consecutive years shall be prima facie evidence of abandonment***. "Use" of a mark means the <u>bona fide use</u> of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." (emphasis added).

1    Therefore, businesses making merely token use of their mark, or making promotional use of

2    their mark on goods in a different course of trade do not meet the requirement of "use in commerce."

3    *Imperial Tobacco, Ltd. v. Philip Morris, Inc.* (1990) 899 F.2d 1575, 1582-83 .

4    Evidence of non-use of the mark for three consecutive years is prima facie evidence of

5    abandonment. *A* prima facie showing of abandonment creates a ***rebuttable presumption*** of

6    abandonment; *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 938 (9th

7    Cir.2006). Abandonment "is generally a ***factual issue***." *Id.* at 937.  Where the defendant proves the

8    necessary consecutive years of non-use, the burden shifts to the plaintiff to go forward with evidence

9    to prove that circumstances do not justify the inference of intent not to resume use. *Exxon Corp. v.*

10   *Humble Exploration Co.*, 695 F.2d 96, 99 (5th Cir.1983).

11

12   The requirements are even less under California (state) trademark law.  Plaintiff has alleged a

13   cause of action for violation of Cal. Bus. & Prof. Code §14245.  Under California trademark law,

14   there is a presumption of intent to abandon after only two years of consecutive non-use. Cal. Bus. &

15   Prof. Code §14245 (h)(2) (i)(1):

16

17        (i) "Abandoned" means either of the following has occurred:
          (1) A mark's use has been discontinued with intent not to resume that use. Intent not to resume
18        the use *may be inferred* from circumstances. *Nonuse for two consecutive years shall*
19        *constitute prima facie evidence of abandonment.* (emphasis added).

20   Under either the state or federal test, Plaintiff cannot prevail on its trademark infringement

21   claim. Here, Defendant alleges on information and belief that Plaintiff BOA is not, and has not, been

22   in the business or originating or servicing any loans using the mark "AMERICAS WHOLESALE

23   LENDER" since the time it was assigned the mark on 11/08/08 (Defendants RJN #23).  As such, it is

24   simply *not using, nor has it used* the mark in commerce in connection with any goods or service and

25   Defendant alleges on information and belief that this non-use has continued for more than three

26   consecutive years raising a presumption of abandonment under both state and federal law.

27

28

10

In fact, the only indication presented to the Court as to any actual "use" of the mark is in reference to *previous use* deceptive use of the mark (without the "®") in 3.5 million recorded loan documents. This is not a *bona fide* use of the mark and BOA cannot not meet the legal requirements to maintain the federal protection over the marks assigned to them by CHLI over three years ago.

For service marks, a mark is deemed *used* in commerce when the following two conditions are met: "(1) the **mark is used or displayed** in the advertising or **sale of services**; and (2) the services are '**rendered in commerce**.'" Thomas Casagrande, 93 The Trademark Reporter 1354, 1357 (2003) interpreting 15 U.S.C. §1127. (emphasis added).

Courts routinely deny trademark infringement protection on the grounds of abandonment. In *Phillips Van Heusen Corp. v. Calvin Clothing Co.* (2006) 444 F. Supp. 2d 250, a men's clothing company was held to have abandoned its trademark on one of its labels when it engaged primarily in making clothing for other brands, and failed to sell clothing under the registered trademark brand name for a period of at least ten years. The other company was therefore permitted to use the name on its own line of clothing.

In *Hiland Potato Chip Co. v. Culbro Corp.* (1981) 216 U.S.P.Q. (BNA) 352, a business that made potato chips sent out notice to its customers that the chips would be sold under another brand name. In so doing, the business was deemed to have abandoned its trademark in the original brand name of the potato chips, and another potato chip maker was immediately allowed to sell potato chips under the original brand name.

These cases are analogous to the case at bar. Here, BANK OF AMERICA CORPORATION (the sole assignee of the mark) has simply not used the mark on its own behalf, from 11/18/08 to the present. As such, they cannot now claim the right to a protected and exclusive use the mark, and even fierce competitors are free to use the mark. Defendants, while not competitors of BOA, are and were free to organize their corporation under New York law despite

1    Plaintiff's contentions and protests.  They have sat on their rights and their trademark rights have

2    expired through abandonment.

3          Their failure to *actually use* the mark in commerce for over three consecutive years since the

4    date of assignment, is fatal to their claim for trademark infringement (under state and federal law),

5    false designation of origin, false advertising and unfair competition.  As they are not likely to succeed

6    on the merits of these causes of actions.  As such, they cannot meet the elements required to obtain a

7

8    preliminary injunction and their motion must be denied due to their own deliberate inaction.

9          **C.  PLAINTIFF CANNOT MEET THE REQUIREMENTS FOR AN INJUNCTION.**

10         Plaintiffs' bear the burden to prove they meet the elements for an injunction.  In order to

11   obtain a preliminary injunction the: "A plaintiff seeking a preliminary injunction must establish that

12   (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of

13

14   preliminary relief, (3) the balance of equities tips in his favor, and (4) the injunction is in the public

15   interest." See *Winter v. NRDC,* 555 U.S. at 20, 129 S. Ct. at 374.   A fair analysis of these

16   requirements confirm that PLAINTIFFS CANNOT MEET EVEN ONE OF THESE ELEMENTS

17   and are not therefore entitled to a preliminary injunction.

18         *1.  Likelihood of success on the merits:*

19         Plaintiff asserts they are likely to succeed on their trademark infringement (state and federal), false

20   designation of origin (15 U.S.C. 1125 (A)(1)(A), false advertising, and unfair competition causes of

21

22   action. They also claim they are entitled to declaratory relief and cancellation of instruments.

23   Defendant rejects this contention as to each cause of action and request for relief.

24         *A.  Plaintiffs are not likely to succeed on their (state or federal) trademark infringement claims*

25            *and are not entitled to a preliminary injunction.*

26         To prove trademark infringement under federal law a Plaintiff must show: (1) a valid and

27   protectable mark and (2) defendant's use of the mark is likely to cause consumer confusion. *Applied*

28

1   *Info. Scis. Corp. v. eBay, Inc.* 511 F.3d 966, 969 (9th Cir. 2007). The "likelihood of confusion" test

2   also applies to trademark infringement claims under California law. See *M2 Software, Inc. v. Madacy*

3   *Entertainment,* 421 F.3d 1073, 1080 (9th Cir.2005).

4       The first barrier to obtaining an injunction (under either state or federal) is showing a valid

5   and protectable mark.  As discussed above, and incorporated herein, applying either the state or

6   federal test for abandonment, there is no valid right to the use of the mark because Plaintiff's have

7   simply failed to use the mark, in connection with goods and/or services in commerce for over three

8   consecutive years since 11/18/08 when they were first assigned the mark.  This is fatal to their

9   demand for trademark protection and an injunction.

10      Plaintiff asserts that their mark is valid and protectable.  They argue the mark has been in

11  "*continuous use for over five years*" and thus is "incontestable under 15 U.S.C. 1605." (See Lindgren

12  Decl. ¶ 13).  However, as discussed above, and incorporated herein, Plaintiff's have intentionally

13  abandoned their mark. They have lost all rights to the mark and cannot complain, even if their main

14  competitor were to adopt and use the mark in commerce.  Those are the rules of the game.

15      *15 U.S.C. 1115* expressly contemplates that abandonment is an exception to "incontestability

16  status at 15 U.S.C. 1115 which states:

17      "Such conclusive evidence of the right to use the registered mark shall be subject to proof of

18      infringement as defined in section 1114 of this title, and shall be subject to the following

19      defenses or defects: (1) That the registration or the incontestable right to use the mark was

20      obtained fraudulently; or (2) **That the mark has been abandoned by the registrant**."

21      (emphasis added)

22      As such, and since BOA makes no reference to any actual use of the mark in its own right

23  since the time it was assigned the mark on 11/18/08 (over three consecutive years for federal law and

13

over 2 consecutive years for state law rights), their claim to a valid protectable mark under both state and federal fails as must their demand for a preliminary injunction.

Should the court not agree that Plaintiff has abandoned there mark, the next inquiry would be whether or not consumers would be likely to be confused by Defendant's use of his New York corporation.   Only once the validity of the trademark is recognized by the Court, then the Court determines whether there is a *likelihood of confusion between the moving party's goods or services, on the one hand, and the responding party's goods or services, on the other.* The test for likelihood of confusion is whether a "reasonably prudent consumer in the marketplace is *likely to be confused as to the origin of the goods or services bearing one of the marks.*" *Dreamworks Prod. Group v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir. 1998).

To assess likelihood of consumer confusion, courts look to the *Sleekcraft* factors.  In *AMF, Inc v Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979)* The Court there announced eight specific elements to measure *likelihood of confusion*: (1) Strength of the mark, (2) Proximity of the goods, (3) Similarity of the marks, (4) Evidence of actual confusion, (5)  Marketing channels used, (6) Type of goods and the degree of care likely to be exercised by the purchaser, (7) Defendant's intent in selecting the mark, (8) Likelihood of expansion of the product lines.

To prevail on a claim of trademark infringement or unfair competition under the Lanham Act, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks." *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175 (9th Cir.1988) (quoting *New West Corp. v. NYM Co. of California,* 595 F.2d 1194, 1201 (9th Cir.1979)). *The "likelihood of confusion" test also applies to trademark infringement claims under California law. HIT Entertainment, Inc. v. National Discount Costume Co., Inc.,* 552 F.Supp.2d 1099 (9th Cir. S.D. 2008).

Applying this test in a fair and reasonable manner warrants a finding that there is no trademark infringement and thus, the request for preliminary injunction must be denied.

1    Plaintiff contends their federally registered trademark for "AMERICAS WHOLESALE

2    LENDER" is being infringed by Defendant's lawful registration of his New York Corporation

3    Americas Wholesale Lender, Inc. and its responses to lawsuits that have been served on them and the

4    likelihood of consumer confusion they allege has resulted.  Defendant disputes this contention.

5
     APPLYING THE SLEEKCRAFT TEST FOR TRADEMARK INFRINGEMENT

6
7    (1) STRENGTH OF THE MARK

8    Plaintiff asserts that the trademark and service mark for AMERICAS WHOLESALE LENDING

9    ("mark") is "well known by both the lending industry and the public at large." (See Plaintiff's TRO

10   application at Page 3 lines 4-5).  If that is the case, it can only be known as the mark of its parent

11   company a well-known predatory and abusive lender and loan servicer (See Plaintiff's Request for

12   Judicial Notice Exhibits 1-20).   Defendant alleges this is the reason Plaintiff BOA has not used the

13
14   mark for over three consecutive years since *Bank of America Corporation* was assigned the mark on

15   11/18/08.  This is also the reason they have no plans to use the mark as discussed in regard to the

16   market expansion factor below.  The mark is not strong, it has been used in a deceptive manner and

17   without any reference to the "®" or "™" symbols in over 3.5 million recorded notes and deeds of

18   trust.  There is absolutely no reason to believe ANYONE knows that this mark is a trademark or

19   CHLI much less BOF who has not ever used the mark.

20
21   Plaintiff's reference to the *MERS* case is distinguishable on several grounds.  First, MERS is

22   still in business. Second, they are referenced on 60 million (as opposed to 3.5 million) loan

23   documents Third, they continue to use their mark.  Fourth, many courts have legitimized the MERS

24   system (See *Gomes v. Countrywide Home Loans Inc.*, 192 Cal.App.4th 1149 (2011).  Defendant is

25   not aware of any court that has legitimized the false use of a corporate name in recorded documents.

26
     This *Sleekcraft* factor leads to a finding of no likelihood of consumer confusion and thus, no

27
28   infringement.

15

(2) <u>PROXIMITY OF THE GOODS</u> (RELATEDNESS OF THE SERVICES).

Plaintiff argues in their application for TRO / Injunction that "there is no question as to the relatedness of the Plaintiff's services and the Defendant's Services.......Defendants pretend to be Plaintiff's so they can perpetrate a fraudulent scheme....". (See Plaintiff's TRO application at Page 18 lines 6-9). Defendant disputes this. BofA is a lending institution and acts as a loan servicer of loans. Defendant, through its lawfully registered New York corporation offers no such services. Furthermore, there are no allegations that Defendant has engaged in any of these types of activities. In fact, as referenced above, *it is Plaintiff through the use of a tradename who has impersonated a New York corporation for over 15 years* of doing business with its mark, and has caused this mark to be used in 3.5 million loan documents so borrowers could not detect who the real party originating the loan was, and who could be served a lawsuit in the event a predatory lending or wrongful foreclosure lawsuit needed to be filed. The services are simply not related. BOA is a lender and loan servicer, Defendant is not.

This factor leads to a finding of no likelihood of consumer confusion and thus, no infringement.

(3) <u>SIMILARITY OF THE MARKS</u>

Defendant does not have a federally registered trademark ('mark") and therefore disputes Plaintiff's contention that "here, Plaintiff's and Defendant's marks are deliberately virtually identical, with the only difference being the inclusion of the abbreviation, "Inc." (See Plaintiff's TRO application at Page 18 lines 12-14). Defendant has a registered corporation, organized under the laws of the State of New York, and valid under the New York Business Corporations Law Section 402. Plaintiff purports to be the owner of an incontestable trademark that Defendant alleges has been abandoned. The two names may be similar in nature but are different types of names and

1  Defendant's use was authorized by state law while Defendant's mark is authorized by federal law.

2  There is no preemption.  This element is neutral.

3  (4) UNDERLINE EVIDENCE OF ACTUAL CONFUSION

4       Plaintiffs assert that: "the confusion as to the identity of the lender started when Defendants

5  incorporated AWLI and began impersonating CHL to swindle Plaintiff and Plaintiff's customers."

6  (See Plaintiff's Reply to Opposition to ex parte TRO p. 3 at 19-20).   This cannot be true.  The

7  confusion began when the first predatory lending Plaintiff sought to sue America's Wholesale

8  Lender, a New York corporation (a represented in Plaintiff's 3.5 million notes and deeds of trust) and

9  no such company could be found prior to Defendant's registration of the company.  This is exactly

10  what Plaintiff's hoped to accomplish (to shield CHLI from legal liability and make it difficult for

11  borrowers to seek recourse for the predatory loans being originated).  ***Their plan was simple, if a***

12  ***borrower had a predatory lending claim, they could go seek to sue some non-existent entity***.

13  Defendant alleges CHLI was not identified as the "lender" on 3.5 million recorded loan documents

14  for this reason.  So clearly any confusion has it genesis with the deceptive and potentially fraudulent

15  acts of Plaintiffs.  Their hands are dirty.

16       Plaintiffs' continue to point to the Burk transaction as evidence of confusion.  They claim

17  Defendant was impersonating CHLI and that consumers were confused.  However, there is no

18  evidence that Defendants ever specifically or expressly impersonated CHLI.  This is a leap they

19  invite the Court to take given Defendant's "confession of judgment" in a case Defendant was fighting

20  to prevent a wrongful foreclosure by an alleged lender (AWL Inc.) that simply did not exist at the

21  time.  The confession of judgment was signed by America's Wholesale Lender, Inc. (not by

22  Countrywide) which was a New York Corporation _not_ owned by Plaintiff's.   To the extent there is

23  any evidence of actual consumer confusions, it is attributable to Plaintiff's own actions and

1  deception.   This factor leads to a finding of no likelihood of consumer confusion and thus, no

2  infringement especially since BOA has never used the mark in commerce and has abandoned it.

3  (5) <u>MARKETING CHANNELS USED</u>

4

5       There is no evidence or allegations of BOA continuing to use the self tarnished AMERICAS

6  WHOLESALE LENDER mark after CHLI was acquired on the verge of bankruptcy and the mark

7  was assigned on 11/18/08.   Why would they?   They have abandoned the mark for over three

8  consecutive years now as evidenced by their statement "*there is no need to address the marketing*

9  *channels used by Defendants and the likelihood of expansion of Defendant's business into other*

10 *markets.*" (See Plaintiff's ex parte application P.19 at 13-14).   Clearly BOA does not use the mark on

11 any goods or services and has no plans to use any marketing channel going forward.

12

13      However, the Court cannot simply gloss over this factor as Plaintiff requests as **each of the**

14 **Sleekcraft factors must be analyzed**.   See *Entertainment, Inc. v. National Discount Costume Co.*, 552

15 F. Supp. 2d 1099 (S.D. Cal. 2008); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008).

16      This lawsuit is simply a ruse to try to help them fix problems they created.   This factor leads

17 to a finding of no likelihood of consumer confusion and thus, no infringement

18 (6) <u>TYPE OF GOODS AND THE DEGREE OF CARE LIKELY TO BE EXERCISED BY THE</u>

19 <u>PURCHASER</u>

20      Plaintiff argues "when marks are virtually identical, the degree of consumer care is irrelevant."

21 (See Plaintiff's TRO application at Page 19 lines 20-21).   Thus, no argument was provided as to this

22 element.   However, as referenced above, each factor must be reviewed even more important when

23 you have facts like the present case has.   Here it is important to determine what the consumer would

24

25 think in interacting with Plaintiff's trademark and Defendant's New York corporation.

26      The average reasonable consumer would not know how to interact with "AMERICAS

27 WHOLESALE LENDER," a "CORPORATION" that is "ORGANIZED AND EXISTING UNDER

28

                                    18

1  THE LAWS OF NEW YORK" (Plaintiff's purported trademark). In fact, there is no way to interact

2  with such a company, because there was no such company at the time of Plaintiff's representations.

3  On the other hand, a consumer might well believe they are interacting with Plaintiff's company when

4  filing a lawsuit against Defendant's Americas Wholesale Lender, Inc. but it seems this is the chance

5
6  Plaintiff's took in not properly registering their own New York Corporation as they go on to

7  represent they did in recorded documents. It is hard to find how this factor could lean in favor of

8  Plaintiff's, given their clumsy, albeit deliberate failure to organize a New York Corporation. This

9  factor leads to a finding of non-infringement.

10  (7) <u>DEFENDANT'S INTENT IN SELECTING THE MARK</u>

11  
12      Defendant's intent in registering the corporation in New York is well documented in his attached

13  Declaration, which is incorporated herein by reference. To summarize, he first formed his

14  corporation to assist him in his predatory lending lawsuit against Countywide who was trying to

15  illegally and artificially raise escrow payments and literally force him into foreclosure. This happens

16  all the time, which is why the private lawsuits are flying and why attorney generals had to get

17  involved. Defendant had absolutely no intent to originate or service any mortgage loans, and has not

18  done so even to Plaintiff's own admission.

19
20      There is no documented proof that Defendant ever held himself out to be CHLI in any manner.

21  Plaintiff tries to infer this from a consent judgment. Plaintiff's claim Defendant formed his

22  corporation in order to "*impersonate CHLI and perpetrate a fraudulent scheme*" (See Plaintiff's TRO

23  application at Page 19 lines 7-9), but there is no evidence. This is simply the pot calling the kettle

24  black. In addition, Defendant's declaration discusses how he has no knowledge of the acts of

25  Defendant Van Eck who undertook separate actions that he alone must answer to. In weighing the

26  evidence under this prong, the court should find no infringement has occurred.

27

28

(8) <u>LIKELIHOOD OF EXPANSION OF THE PRODUCT LINES</u>

As to the last element, and as referenced above, Plaintiff claims there is no need to evaluate this claim.   Again, under *Sleekcraft*, all factors must be examined, whether or not relied on in the final decision.   Although these factors must all be considered, "the factors are not rigidly weighed." *Blue*, supra. In fact, the Ninth Circuit has held that: "this eight-factor test for likelihood of confusion is pliant. Some factors are much more important than others, and the relative importance of each individual factor will be case specific." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

Again, in line with the analysis above, Defendant has no products and has no intent to expand any product lines because they have not used the mark for the last three consecutive years. There is no evidence or allegations that BofA has any plans to try to exploit the self-tarnished name any more than it has to in order to try to clean up CHLI's mess.  Again, this factor weighs in favor of a finding of no likelihood of consumer confusion, and thus no infringement.

Applying the *Sleekcraft* factors, the Court should deny Plaintiff's ex parte application and request for a TRO and Injunction.

**B. Plaintiffs are not likely to succeed on their false designation of origin claim under 15 U.S.C. 1125(a) and are not entitled to a preliminary injunction**

As Plaintiff points out in their brief "*a false designation or origin claim turns on the likelihood of consumer confusion*" (See Plaintiff's ex parte application for TRO and Injunction P.14 line 18).  As analyzed above, and incorporated herein, applying the Sleekcraft factors warrants a finding of no likelihood of consumer confusion.  Without this showing, Plaintiff's cannot succeed and are not likely to succeed on this cause of action and their motion for preliminary injunction must be denied.

In addition, they have abandoned their mark and cannot claim that they were damaged or likely to be damaged.  The injunction must be denied.

*C. A. Plaintiffs are not likely to succeed on their unfair competition claim and are not entitled*

*to an injunction under California Business and Professions Code Section 17203*

Elements of trademark infringement and unfair competition under California law are essentially the same.   *E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*, E.D.Cal.1994, 905 F.Supp. 1403.   Plaintiff argues they are entitled to an injunction because they are likely to succeed on their unfair competition claim (California Business and Professions Code Section 17200) because "*they will likely prevail on their Lanham Act claims and succeed under the "unfair" and "fraudulent" prong prongs*"   (See Plaintiff's Reply to Opposition to TRO P. 11 17-19)   Again, this is highly disputed especially after applying the *Sleekcraft* factors above and given BOA's intentional abandonment of the mark as discussed above.   As such, there is no statutory violation that Plaintiff's can rely on to save them.   Their state and federal trademark infringement claims and false designation of origin claims fail for the reasons discussed above.

Their pleading hints that they believe Defendant is engaged in a fraudulent scheme but *fraud is not alleged as a cause of action* and is not alleged with any specificity as required.   Thus, they cannot rely on their suggestion that they will prevail on showing fraud.   They also argue that at a minimum they meet the elements of the "*unfair prong*" of the UCL. This is simply not the case.

California's unfair competition law (*Business and Professions Code Section 17200* et seq.) defines "unfair competition" to mean and include "*any unlawful, unfair or fraudulent business act or practice.*"   See *Kasky v. Nike, Inc., 27 Cal. 4th 939, 949, 119 Cal. Rptr. 2d 296 (2002)*.   By defining unfair competition to include any unlawful business act or practice, "the UCL permits *violations of other laws to be treated as unfair competition that is independently actionable.*"

*There is no single definition for the phrase "unfair business practices."*   The existence of an unfair business practice is a question of fact determined in light of all the circumstances surrounding a case. See <u>People ex rel. Bill Lockyer v. Fremont Life Ins. Co.</u>, 104 Cal.App.4th 508, 128

Cal.Rptr.2d 463, Cal.App. 2 Dist.,2002.   An 'unfair' business practice occurs *when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.*" *People v. Casa Blanca Convalescent Homes Inc.*, 159 Cal.App.3d 509, 206 Cal.Rptr. 164, 177 (1984) (citing Spiegel, Inc. v. F.T.C., 540 F.2d 287, 293 (7th Cir.1976)); *Spiegler v. Home Depot U.S.A., Inc.*, C.D.Cal.2008, 552 F.Supp.2d 1036, affirmed 349 Fed.Appx. 174, 2009 WL 3358556.

California courts have long applied a ***balancing test*** to determine if an act or practice is unfair. Under that test, "the determination of whether a particular business practice is unfair necessarily involves an ***examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer***. In brief, the court ... weigh[s] the *utility of the defendant's conduct* against the *gravity of the harm* to the alleged victims." *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543 (1980).

The *Speigel* Court supra, held that recovery is limited to one who (1) "**has suffered injury in fact**," and (2) "has ***lost money or property*** as a result of such unfair competition." *Cal. Bus. & Prof.Code* § 17204; *Hall v. Time Inc.*, 158 Cal.App.4th 847, 852, 70 Cal.Rptr.3d 466 (2008), modified by, 2008 Cal.App. LEXIS 139 (2008); see also *O'Brien v. Camisasca Auto. Mfg., Inc.*, 161 Cal.App.4th 388, 399, 73 Cal.Rptr.3d 911 (2008) ("**under the UCL ... the plaintiff must have spent money, lost money or property**, or been denied money to which he or she was entitled, due to unfair business practices or false advertising.").

Here, Plaintiffs have not alleged that they have lost money or property as a result of the alleged unfair practices of Defendant.  Also, they have abandoned their mark and cannot claim they are damages or likely to suffer irreparable injury.  Moreover, their plan and scheme was to make borrowers go on a wild goose chase if they wanted to sue their lender (which was never identified as Countrywide, the grand master predatory lender).  As such, the inquiry must end there, and their

1   demand for a preliminary injunction under 17203 and elsewhere must also be denied.   There is

2   simply no evidence before the court that would warrant a determination that Plaintiff is likely to

3   succeed on their unfair competition claim.

4   **D.  *Plaintiffs are not likely to succeed on their false advertising claim under 17500.***

5   California's false advertising law ( [Bus. & Prof.Code,] § 17500 et seq.) makes it 'unlawful for

6   any person, ... corporation ..., or any employee thereof with intent directly or indirectly to dispose of

7

8   real or personal property or to perform services ... or to induce the public to enter into any obligation

9   relating thereto, to make or disseminate ... before the public in this state, ... in any newspaper or other

10  publication ... or in any other manner or means whatever ... ***any statement***, concerning that real or

11  personal property or those services ... ***which is untrue or misleading***, and which is known, or which

12  by the exercise of reasonable care should be known, to be untrue or misleading....' ( [Bus. &

13  Prof.Code,] § 17500.)" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296, 45 P.3d

14  243.)

15

16  In short, Business and Professions Code section 17500 "prohibits advertising property or

17  services with ***untrue or misleading statements*** or with the intent not to sell at the advertised price."

18  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 52, 77 Cal.Rptr.2d 709, 960 P.2d

19  513.). "[A] statement is false or misleading if members of the public are likely to be deceived.... 'The

20  statute affords protection against the probability or likelihood as well as the actuality of deception or

21

22  confusion." (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 876, 127 Cal.Rptr. 110, 544 P.2d 1310

23  (*Chern*).

24  Here, Plaintiffs are not likely to succeed because the Defendant's do not make any statements,

25  and have no advertisements that are designed to induce any consumer to take any type of action.

26  There is simply no grounds to prevail on this cause of action.

27

28

### 2. *Likely to suffer irreparable harm:*

Plaintiffs cannot credibly argue they will suffer irreparable harm when (1) they set out to mislead, deceive, and confuse customers, (2) their mark has been abandoned under both state and federal law by having over three years on consecutive non-use.

### 3. *Balance of equities:*

The equities at this point should be clear.   Plaintiff has misled the public in recorded documents by pretending to be AWL, Inc when it was not.  The goal was to confuse customers as to who the real lender was and to frustrate their attempts to seek predatory lending recourse.  Yet now they argue that Defendant is the culpable party for registering a New York corporation that was available and lawfully granted to him (to assist him in his predatory lending case against Countrywide).

Plaintiff's assert that Defendant "*knew that CHL used the virtually identical* **fictitious business name** *America's Wholesale Lender......on October 3, over two months before he incorporated AWLI- Bell admitted in a pro se complaint that......CHL was registered in the State of Kentucky as an* **assumed name corporation**."   (See Plaintiff's ex parte application at P. 3 15-20). This shows nothing about any knowledge of any *trademark* that Defendant would have been aware of.  As mentioned above, Plaintiff's neglected to identify its mark on 3.5 million loan documents.  On balance, there is no hardship to Plaintiff in denying their request for injunction.  Their hands are dirty and they are not using the mark nor are their any plans to use the mark known.

California has long recognized the maxim that "No one can take advantage of his own wrong." (Civ. Code. § 3517.) Put another way, "[h]e who comes into equity must come with clean hands." (See *Wilson v. S.L. Rey, Inc.* (1993) 17 Cal. App.4th 234, 244; *Kendall-Jackson Winery, Ltd v. Superior Court* (1999) 76 Cal. App.4th 970, 978.)

### 4. *Public interest:*

The public interest is best served by allowing those who organize legitimate corporations under the laws of a state to continue to pursue their legitimate business activities.   Granting an injunction to Plaintiffs who refused to incorporate to shield themselves from predatory lending claims does not serve the public.   It only further perpetrates the fraud.   This must be stopped.

As one court put it: "An injunction should not be made an instrument of oppression, and will not be granted where it would seem inequitable to do so, if it will operate oppressively, or will tend to promote rather than to prevent fraud and injustice." In re Dunkly, D.C.Cal.1946, 64 Fed.Supp. 184, 185.   Since Plaintiff cannot establish ALL the required elements for an injunction, their request for TRO and Injunction must be denied.

**CONCLUSION**

Plaintiffs have abandoned their mark due to non-use.   CHLI did not use registered trademark symbol on any of their recorded documents.   They did this so they could instead act as a corporation and deceive the public in recorded documents for self-serving reasons and they cannot claim any injury or irreparable harm.   They do not use the mark at issue for good reason, it is a badge and incident of predatory lending and nothing else.   Defendant incorporated the name to assist in his defense in a predatory lending lawsuit against countrywide and not for nefarious purposes.   The injunction should be denied.

Dated: March 23, 2012     THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.

         By:  /s/ Steven C. Vondran
             Steven C. Vondran, Esq.

          steve@vondranlaw.com

         Attorneys for Defendants
         AMERICA'S WHOLESALE
         LENDING, INC., DENNIS L. BELL
         AND CHERI B. ENGLISH

# PROOF OF SERVICE OF DOCUMENT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed by The Law Offices of Steven C. Vondran in the County of Orange, State of California. I am over the age of 18 and not a party to the above-captioned action. My business address is **620 Newport Center Drive, Suite 1100, Newport Beach, CA, 92660.** I also have an office at 2415 E. Camelback Road, Suite 700, Phoenix, Arizona 85016.

On *March 23rd, 2012*, I placed a copy of the attached documents entitled:

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES.**

On the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

[ ]   **BY MAIL:**   By placing a true and correct copy thereof enclosed in a sealed envelope addressed as above, with postage thereon fully prepared, in the U.S. Mail at Newport Beach, CA. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal service on the same day with postage thereon fully prepaid at Phoenix, Arizona, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing as stated in the affidavit.

[ ]   **BY OVERNIGHT COURIER:** I caused the above referenced document(s) to be delivered to _____ for deliver to the above addresses.

[ ]   **BY FAX:** I transmitted a true copy of the foregoing document(s) this date from telecopier number **Fax: (XXX) XXX-XXX**

[ ]   **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee(s).

[X]   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and LBR(s), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 23, 2012**, I checked the CM/ECF docket for this civil case, bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Nafiz Cekirge        nafiz.cekirge@bryancave.com
Robert E. Boone III  reboone@bryancave.com
Robert G. Lancaster  rglancaster@bryancave.com

[ ] **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] **(Federal)** I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**PROOF OF SERVICE**

Executed on *March 23RD, 2012*, at Newport Beach, CA


_____
Steven C. Vondran, Esq.


**SERVICE LIST**

Robert E. Boone III, Esq.
Nafiz Cekirge, Esq.
Robert G. Lancaster, Esq.
Bryan Cave, LLP
120 Broadway, Suite 300
Santa Monica, CA  90401-2386


**PROOF OF SERVICE**