Exhibit "24"

JS-6

**FILED**
CLERK, U.S. DISTRICT COURT
DEC 28 2011
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  ERIC H. HOLDER, JR.
   Attorney General
2  THOMAS E. PEREZ
   Assistant Attorney General, Civil Rights Division
3  STEVEN H. ROSENBAUM
   Chief
4  DONNA M. MURPHY
   Principal Deputy Chief
5  PATRICIA L. O'BEIRNE
   E-mail: Patricia.O'Beirne@usdoj.gov
6  BURTIS M. DOUGHERTY
   E-mail: Burtis.M.Dougherty@usdoj.gov
7  DANIEL P. MOSTELLER
   E-mail: Daniel.Mosteller@usdoj.gov
8  Trial Attorneys
   Housing and Civil Enforcement Section
9  Civil Rights Division
   U.S. Department of Justice
10 950 Pennsylvania Avenue, N.W. - G Street
   Washington, DC 20530
11 Tel: (202) 514-4713
   Fax: (202) 514-1116

12 ANDRÉ BIROTTE JR.
   United States Attorney
13 LEON W. WEIDMAN
   Chief, Civil Division
14 SEKRET T. SNEED
   Assistant United States Attorney (SBN 217193)
15 E-mail: Sekret.Sneed@usdoj.gov
   Federal Building, Suite 7516
16 300 North Los Angeles Street
   Los Angeles, California 90012
17 Tel: (213) 894-8551
   Fax: (213) 894-7819
18
   Attorneys for Plaintiff
19 UNITED STATES OF AMERICA

20              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
21
22 UNITED STATES OF AMERICA,                )
23           Plaintiff,                     )
                                            )   CIVIL CV11 10540-PSG (AJW)
24      v.                                  )
                                            )
25 COUNTRYWIDE FINANCIAL                    )
   CORPORATION; COUNTRYWIDE                 )   [PROPOSED]
26 HOME LOANS, INC; COUNTRYWIDE             )   **CONSENT ORDER**
   BANK,                                    )
27                                          )
             Defendants.                    )
28

LODGED

## I. INTRODUCTION

This Consent Order (Order) is submitted jointly by the parties for the approval of and entry by the Court simultaneously with the filing of the United States' Complaint in this action. This Order resolves the claims of the United States that the Defendants have engaged in a pattern or practice of conduct in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, and the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619, by discriminating on the basis of race, national origin, and marital status in the extension of residential credit and in the making of residential real estate-related transactions.

There has been no factual finding or adjudication with respect to any matter alleged by the United States. The parties have entered into this Order to avoid the risks, expense, and burdens of litigation and to resolve voluntarily the claims in the United States' Complaint of the Defendants' alleged violations of federal fair lending laws.

## II. BACKGROUND

Between 2004 and 2008, Countrywide Financial Corporation ("CFC"), acting through its various divisions and subsidiaries (collectively, "Countrywide"), was one of the largest single-family mortgage lenders in the United States. During that period, Countrywide originated over 4.4 million residential mortgage loans through its retail loan offices and its wholesale division using mortgage brokers.

In 2006, Federal Reserve System examiners initiated a fair lending review of Countrywide Home Loans' mortgage pricing practices. As a result of that review, the Federal Reserve Board ("FRB") determined that it had "reason to believe that Countrywide Home Loans engaged in a pattern or practice of discrimination based on race and ethnicity in violation of Section 701(a) of the Equal Credit Opportunity Act and the Fair Housing Act." Following that determination, and pursuant to 15 U.S.C. § 1691e(g), the FRB referred the matter to the Department of Justice. In early 2008, the

Office of Thrift Supervision ("OTS") conducted an examination of the operations of Countrywide, including compliance by Countrywide Bank,[1] at that time a subsidiary of CFC, with applicable fair lending laws and regulations, and determined that it had "a 'reason to believe' that Countrywide has displayed a 'pattern or practice' of discriminating against minority loan applicants in the pricing of home loans and against married couples concerning the terms and condition of home loans." Following its determination, and pursuant to 15 U.S.C. § 1691e(g), the OTS referred the matter to the Department of Justice.

In its Complaint, the United States alleges that between 2004 and 2008, Countrywide's Consumer Markets Division and Wholesale Lending Division engaged in a pattern or practice of discrimination on the basis of race and national origin in violation of both the FHA and the ECOA based on the interest rates, fees, and costs paid by African-American and Hispanic borrowers. For loans sourced through mortgage brokers, the Complaint further alleges that Countrywide engaged in a pattern or practice of discrimination because African-American and Hispanic borrowers were more than twice as likely to be placed in subprime loans than non-Hispanic White wholesale borrowers who had similar credit qualifications. The Complaint also alleges that, until at least June 1, 2008, Countrywide engaged in discrimination on the basis of marital status by following policies and practices that had the effect of requiring married borrowers applying for credit in one spouse's name having their non-applicant spouses give up all their rights and interests in the property securing the loan at the time the loans were originated. Under the ECOA, a creditor may only require the non-applicant spouse to execute the document(s) necessary to create a valid security interest in the

---

[1] In a series of corporate transactions that occurred on April 27, 2009, Countrywide Bank ("CWB") converted its charter to that of a national bank; Bank of America, N.A. immediately acquired CWB by a merger; and CWB then ceased to exist. Thus, Bank of America, N.A. is the successor in interest to CWB.

- 3 -

property used to secure the loan; the creditor may not obligate the non-borrower spouse to sign an instrument that transfers that spouse's rights or interest in the property.

The United States acknowledges that its claims against the Defendants relate solely to loans originated by Countrywide and do not relate to any mortgage lending practices of Bank of America Corporation ("BAC").

Defendants deny all the allegations and claims of a pattern or practice of discrimination in violation of the FHA and the ECOA as set forth in the United States' Complaint.

BAC has represented to the United States that BAC and its subsidiaries do not originate and price loans employing policies and procedures that the United States alleges resulted in the discriminatory practices at issue in its Complaint. BAC has further represented that it has furnished substantial support to non-profit community organizations which provide education counseling and other assistance to low income and minority borrowers in connection with obtaining credit, loan modifications and other retention activities. This Consent Order does not contain any injunctive measures against the current operations of BAC or any of its subsidiaries.

### III. REMEDIAL ORDER

1. Unless otherwise stated herein, the remedial provisions of this Order shall be implemented not later than thirty (30) days after the effective date of this Order. The effective date of this Order is the date upon which it is approved and entered by the Court.

2. Defendants represent that Countrywide Financial Corporation and Countrywide Home Loans, Inc. (collectively, "Countrywide Defendants") no longer originate residential loans. In the event that either Countrywide Defendant reenters the business of originating residential loans, Defendants shall notify the United States at the earlier of sixty (60) days before it intends to reenter this line of business or the time that they notify their federal regulators of either Countrywide Defendant's intent to reenter this line of business. Countrywide Defendants shall also implement policies, practices and

monitoring designed to prevent and detect potential fair lending violations in their origination of residential loans, and shall provide the United States with the details of these policies, practices, and monitoring, forty-five (45) days prior to implementing such reentry. The United States shall have thirty (30) days to review and agree or object to the proposed policies. The parties shall utilize the dispute resolution procedures set forth in Paragraph 24 to resolve any objections by the United States.

3. In the event that either Countrywide Defendant reenters the business of originating residential loans, it shall adopt policies and practices designed to ensure compliance with ECOA's prohibition on marital status discrimination comparable to those adopted by Countrywide on or about June 1, 2008. Countrywide Defendants shall provide the United States with the details of these policies, practices, and monitoring, forty-five (45) days prior to implementing such reentry. The United States shall have thirty (30) days to review and agree or object to the proposed policies. The parties shall utilize the dispute resolution procedures set forth in Paragraph 24 to resolve any objections by the United States.

4. Within thirty (30) days of the effective date of this Order, Defendants shall cause to be deposited in an interest-bearing escrow account the total sum of three hundred and thirty-five million dollars ($335 million) to compensate allegedly aggrieved persons for monetary and other damages they may have suffered as a result of Defendants' alleged violations of the FHA and the ECOA ("Settlement Fund"). Title to this account shall specify that it is "for the benefit of aggrieved persons pursuant to Order of the Court in *United States v. Countrywide Financial Corp., et al.* filed on December 21, 2011". Defendants shall provide written verification of the deposit to the United States, along with the account number and identification of the depository

institution, within five days of the depositing of the funds described above.[2] Any interest that accrues shall become part of the Settlement Fund and be utilized and disposed of as set forth herein.

5.  The United States has requested from Defendants information and data it reasonably believes will assist in identifying aggrieved persons and determining any damages. Such information and data shall be used by the United States only for the law enforcement purposes of implementing this Order. Within ninety (90) days of the date on which the United States provides an electronic file specifying the loans for which it requests data, Defendants shall supply, to the extent that it is within their custody or control, the requested information and data. To the extent that any requested information and data is not within Defendants' custody or control, but such information and data is held by a currently or formerly affiliated entity, they also shall make a good faith effort to obtain such information and data from the entity or entities. If Defendants acquire such information or data from such an entity or entities, they shall supply such information and data within fifteen (15) days of receipt of such information or data.

6.  Within sixty (60) days of entry of this Order Defendants also shall enter into a contract retaining a Settlement Administrator ("Administrator"), subject to approval by the United States, to conduct the activities set forth in the following paragraphs. Defendants shall bear all costs and expenses of the Administrator, and Defendants' contract with the Administrator shall require the Administrator comply with the

---

[2] Any documents or information required by this Order to be submitted to the United States shall be sent by private (non-USPS) overnight delivery addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street, NW, Suite 7002, Washington, DC 20006, Attn. DJ #188-12C-32. The parties may also agree to delivery electronically or by hand-delivery to the above address by courier.

provisions of this Order as applicable to the Administrator.[3] The Administrator's contract shall require the Administrator to work cooperatively with the United States in the conduct of its activities, including reporting regularly to and providing all reasonably requested information to the United States. Defendants shall allow the Administrator access to mortgage origination loan files, including non-electronic loan file data and documents that are in the possession of Defendants or any entity owned, directly or indirectly, by BAC, for the purposes of accomplishing the Administrator's task set forth in Paragraph 12. The Administrator's contract shall require the Administrator to comply with all confidentiality and privacy restrictions applicable to the party who supplied the information and data to the Administrator.

7.   The United States shall identify aggrieved persons with respect to its race and national origin discrimination claims within ninety (90) days of receipt of all the information and data it requested. The United States shall provide a list of allegedly aggrieved persons to the Defendants and the Administrator.

8.   The Administrator's contract shall require the Administrator to make its best efforts, using all reasonable methods, to locate each identified aggrieved person and obtain such information as the United States reasonably considers necessary from each. The Administrator's contract shall require the Administrator to complete this responsibility within a period of six (6) months from the date the United States provides the list described in Paragraph 7, subject to an extension of time as provided by Paragraph 20. The Administrator's contract shall require the Administrator, as part of

---

[3] In the event the United States has reason to believe that the Administrator is not materially complying with the terms of its contract with Defendants, the United States and Defendants shall meet and confer for the purpose of mutually agreeing upon a course of action to effect the Administrator's material compliance with its contract with Defendants. In the event that the United States and Defendants are unable to agree upon a course of action to effect the Administrator's material compliance with its contract with the Defendants, the parties shall present the matter to the Court.

its operation, to establish cost-free means for aggrieved persons to contact it, such as email and a toll-free telephone number.

9. The United States shall specify the amount each allegedly aggrieved person identified in Paragraph 8 and located by the Administrator shall receive from the Settlement Fund no later than one-hundred-and-twenty (120) days after the deadline for locating allegedly aggrieved persons has passed. The United States shall provide the compensation list to the Administrator. This list shall direct no less than twenty million dollars ($20 million) to allegedly aggrieved persons who lived in Illinois at the time of origination to resolve Defendants' pending litigation with the State of Illinois, and the Administrator's communications with such borrowers shall refer to both the settlement of litigation by the United States and the State of Illinois.

10. The Administrator's contract shall require the Administrator to send releases, with language approved by the United States, to aggrieved persons. After receipt of executed releases, Defendants shall require the Administrator promptly to deliver payments to those persons in amounts determined by the United States as described in Paragraph 9. The Administrator's identification and payment responsibility may take place on a rolling basis with approval from the United States.

11. The United States also shall provide to the Administrator a list of loans between 2004 and 2008 for which it reasonably believes that there is the potential that a non-borrowing spouse may be an aggrieved person with respect to the marital status discrimination claims alleged in the Complaint. The Administrator's contract shall require the Administrator to send letters describing the marital status discrimination alleged in the Complaint, the text for which is approved in advance by the United States, to the borrowers on this list. The letter shall also specifically request that the information regarding these claims be shared with the person who was their spouse at the time of the loan, and further request that the spouse or former spouse contact the Administrator if a quitclaim deed or other similar instrument was executed as part of the loan origination or closing process.

12. The Administrator's contract shall require the Administrator to review the loan files for those loans with respect to which a non-borrowing spouse contacts it pursuant to Paragraph 11. The Administrator shall determine to the extent possible, based on its review of the aforementioned loan files and, if necessary, an interview of the non-borrowing spouse, whether a non-borrower spouse made a knowing and voluntary decision to execute a transfer of title or was presented with the opportunity to execute instead only a security interest in the property in connection with the origination of the loan. The Administrator shall report to the United States on the results of each such review. The United States shall review the information from the Administrator and provide to the Administrator a list of persons identified by the United States as aggrieved by Countrywide's signature policies and practices for non-applicant spouses, as well as a specified compensation amount for damages. In addition, Defendants and the Administrator shall provide reasonable assistance to any non-borrowing spouse who the United States has determined was aggrieved because he or she transferred his or her property rights, in the execution and filing of instruments necessary to re-transfer to the non-borrowing spouse his or her property interest, if he or she so chooses, the borrower spouse agrees to such a transaction, and the property interest can still be recovered. In addition, the Defendants shall pay the administrative costs required to effect the re-transfer of such property interests which, in no event, shall exceed $1,500.00, in cases where the property interest still can be recovered.

13. The Administrator's contract shall require the Administrator to set forth reasonable deadlines, subject to approval of the United States, so that the compensation is distributed and checks are presented for payment or become void prior to the date that is twenty-four (24) months from the date the initial notifications are sent.

14. Payments from the Settlement Fund to allegedly aggrieved persons shall be subject to the following conditions, provided that the details in administration of the Settlement Fund set forth in Paragraphs 5-13 can be modified by written agreement of the parties and without further Court approval:

(a) No allegedly aggrieved person shall be paid any amount from the Settlement Fund until he or she has executed and delivered to the Defendants a written release, with language approved by the United States, of all lending discrimination claims, legal or equitable, that he or she might have against the released entities regarding the claims asserted by the United States in this lawsuit, so long as such claims accrued prior to the entry of this Order; and

(b) The total amount paid by Defendants collectively to allegedly aggrieved persons shall not exceed the total amount of the Settlement Fund, including accrued interest.

15. All money not distributed to allegedly aggrieved persons from the Settlement Fund, including accrued interest, within twenty-four (24) months of the date the initial notification letters are sent to identified aggrieved persons, shall be distributed to qualified organization(s) that provide services including credit and housing counseling (including assistance in obtaining loan modification and preventing foreclosure), financial literacy, and other related programs targeted at African-American and Hispanic potential and former homeowners in communities where the Complaint alleges significant discrimination occurred against African-American and Hispanic borrowers. Recipient(s) of such funds must not be related to BAC, but may include non-profit community organizations that provide education, counseling and other assistance to low-income and minority borrowers in connection with obtaining credit, loan modifications and other home retention activities to which Bank of America Corporation has furnished substantial support. Any money remaining from the funds designated for Illinois borrowers pursuant to Paragraph 9 shall be distributed to qualified organizations(s) located in Illinois. Defendants will consult with and obtain the non-objection of the United States in selecting recipient(s) of these funds and the amount to be distributed to each, and the parties shall obtain the Court's approval prior to distribution of any remainder of the Settlement Fund's remaining assets. Defendants

shall require each recipient to submit to Defendants and the United States a detailed report on how funds are utilized within one year after the funds are distributed.

16. Defendants shall not be entitled a set-off, or any other reduction, of the amount of payments to identified persons because of any debts owed by the identified persons. Defendants also shall not refuse to make a payment based on a release of legal claims or loan modification previously signed by any identified persons.

## IV. EVALUATING AND MONITORING COMPLIANCE

17. For the term of this Order, the Defendant shall retain all records relating to their obligations hereunder as well as their compliance activities as set forth herein. The Defendants shall provide such records to the United States upon request.

18. In addition to the submission of any other plans or reports specified in this Order, the Defendants shall submit semi-annual reports to the United States on compliance with this Order. Each such report shall provide a complete account of the Defendants' and Administrator's material actions to comply with each requirement of this Order during the previous six months, an objective assessment of the extent to which each quantifiable obligation was met in all material respects, an explanation of why any particular component fell short of meeting their goal for the previous six months, and any recommendations for additional actions to achieve the goals of this Order. The Defendants shall submit their first report no later than one-hundred-eighty (180) days after the Effective Date of this Order, and every one-hundred-eighty (180) days thereafter for so long as the Order is in effect.

## V. ADMINISTRATION

19. The Order shall expire in four (4) years or, if earlier, on the satisfaction of the conditions set forth in Paragraph 15 of this Order. Notwithstanding the above, this Order may be extended further upon motion of the United States to the Court, for good cause shown.

20. Any time limits for performance fixed by this Order may be extended by mutual written agreement of the parties. Except as provided by Paragraph 14, other

modifications to this Order may be made only upon approval of the Court, upon motion by either party. The parties recognize that there may be changes in relevant and material factual circumstances during the term of this Order which may impact the accomplishment of its goals. The parties agree to work cooperatively to discuss and attempt to agree upon any proposed modifications to this Order resulting therefrom.

21. This Order shall be binding on the Defendants, including all its officers, employees, agents, representatives, assignees, and successors in interest, and all those in active concert or participation with any of them. In the event the Defendants seek to transfer or assign all or part of its operations, and the successor or assignee intends on carrying on the same or similar use, as a condition of sale, the Defendants shall obtain the written agreement of the successor or assign to any obligations remaining under this Order for its remaining term to the extent compliance with such obligations would be transferred or assigned.

22. Nothing in this Order shall excuse the Defendants' compliance with any currently or subsequently effective provision of law or order of a regulator with authority over the Defendants that imposes additional obligations on the Defendants.

23. The parties agree that, as of the date of entry of this Order, litigation is not "reasonably foreseeable" concerning the matters described in this Order. To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in this Order, the party is no longer required to maintain such a litigation hold.

24. In the event that any disputes arise about the interpretation of or compliance with the terms of this Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. If the United States believes that Defendants have violated any provision of this Order, it will provide Defendants written notice thereof and allow thirty (30) days to resolve the alleged violation before presenting the matter to this Court. In the event of either a failure by the Defendants to perform in a timely manner any act required by this Order or an act by

1  the Defendants in violation of any provision hereof, the United States may move this
2  Court to impose any remedy authorized by law or equity, including attorneys' fees and
3  costs.
4  25.   The Defendants' compliance with the terms of this Order shall fully and finally
5  resolve all claims of the United States Attorney General and United States Secretary of
6  Housing and Urban Development under the FHA and ECOA, except for claims by
7  aggrieved persons under 42 U.S.C. §§ 3610 and 3612, in connection with Countrywide
8  Financial Corporation, Countrywide Home Loans, Inc., and Countrywide Bank's
9  alleged discrimination in the extension of residential credit and in the making of
10 residential real estate-related transactions between January 1, 2004 and December 31,
11 2008, including all claims for equitable relief and monetary damages and penalties
12 arising from those claims.  This Order does not release any claims under any statute
13 other than the FHA and the ECOA.  This Order does not release legal claims for loans
14 originated by entities other than Countrywide Financial Corporation, Countrywide
15 Home Loans, Countrywide Bank, and any subsidiary of those three entities between
16 January 1, 2004 and December 31, 2008, or for time periods before 2004 and after 2008.
17 26.   Each party to this Order shall bear its own costs and attorneys' fees associated
18 with this litigation.

27. The Court shall retain jurisdiction for the duration of this Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice.

So ORDERED, this 28th day of December, 2011.

_____
UNITED STATES DISTRICT JUDGE

The undersigned apply for and consent to the entry of this Order.

**For Plaintiff United States:**

ANDRÉ BIROTTE JR.
United States Attorney

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

_/s/ Steven H. Rosenbaum_
STEVEN H. ROSENBAUM
Chief
Housing and Civil Enforcement Section

LEON W. WEIDMAN
Chief, Civil Division

_/s/ Donna M. Murphy_
DONNA M. MURPHY
Principal Deputy Chief

_/s/ Sekret T. Sneed_
SEKRET T. SNEED
Assistant United States Attorney

_/s/ Patricia L. O'Beirne_
PATRICIA L. O'BEIRNE

_/s/ Burtis M. Dougherty_
BURTIS M. DOUGHERTY

_/s/ Daniel P. Mosteller_
DANIEL P. MOSTELLER
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice

**For Defendant Countrywide Financial Corporation:**

_/s/ Michael W. Schloessmann_
MICHAEL W. SCHLOESSMANN
President
Countrywide Financial Corporation

- 15 -

1  For Defendant Countrywide Home Loans, Inc.:

2

3  _____
   MICHAEL W. SCHLOESSMANN
4  President
   Countrywide Home Loans, Inc.
5

6  For Defendant Countrywide Bank:

7

8  _____
   GREG HOBBY
9  Senior Vice President
   Countrywide Bank
10

11 Counsel for Defendants Countrywide Financial Corporation;
   Countrywide Home Loans, Inc.; and Countrywide Bank:
12

13

14 _____
   K&L Gates
15 Counsel for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

For Defendant Countrywide Home Loans, Inc.:

_____
MICHAEL W. SCHLOESSMANN
President
Countrywide Home Loans, Inc.

For Defendant Countrywide Bank:

_____
GREG HOBBY
Senior Vice President
Countrywide Bank

Counsel for Defendants Countrywide Financial Corporation; Countrywide Home Loans, Inc.; and Countrywide Bank:

_____
Melanie Brody
K&L Gates LLP
1601 K Street, NW
Washington, DC 20006
202-778-9000
Counsel for Defendants