**BRYAN CAVE LLP**
ROBERT E. BOONE III (SBN 132780)
NAFIZ CEKIRGE (SBN 255710)
ROBERT G. LANCASTER (SBN 257504)
120 Broadway, Suite 300
Santa Monica, California  90401-2386
Telephone:   (310) 576-2100
Facsimile:    (310) 576-2200
E-Mail:        reboone@bryancave.com
                   nafiz.cekirge@bryancave.com
                   rglancaster@bryancave.com

Attorneys for Plaintiffs
COUNTRYWIDE HOME LOANS, INC.,
BANK OF AMERICA CORPORATION and
BANK OF AMERICA, N.A.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.<br><br>                         Plaintiffs,<br><br>              v.<br><br>AMERICA'S WHOLESALE LENDER, INC., a New York Corporation, DENNIS L. BELL, an individual; CHERI B. ENGLISH, an individual, JAN VAN ECK (a/k/a HERMAN JAN VAN ECK a/k/a MAURITZ VAN ECK a/k/a MAURICE VAN ECK a/k/a MARITZ VAN ECK a/k/a GEORGE TOMAS), an individual; and DOES 1-100,<br><br>                         Defendants. | Case No. 8:12-cv-00242-CJC-AN<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO ORDER THE SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>[Filed Concurrently with Supplemental Declaration of Nafiz Cekirge; Supplemental Declaration of Devra Lindgren; Supplemental Declaration of Renell Welch; Objection to Request for Judicial Notice]<br><br>Date Filed: February 13, 2012<br>Trial Date: None |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# **Table of Contents**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.      INTRODUCTION ................................................................................................... 1

II.     BELL'S DECLARATIONS ..................................................................................... 3

III.    CHL'S USE OF THE "AMERICA'S WHOLESALE LENDER" FICTITIOUS
        BUSINESS NAME WAS PROPER ........................................................................ 7

IV.     CHL AND BANA HAVE STANDING TO BRING THIS ACTION AND ARE
        THE REAL PARTIES IN INTEREST ..................................................................... 8

V.      DEFENDANTS' ABANDONMENT ARGUMENT LACKS MERIT .................... 9

        A.      Plaintiffs Have Not Abandoned The AMERICA'S WHOLESALE
                LENDER® and "America's Wholesale Lender" Name ............................. 10

        B.      Defendants Have Not Met Their Burden Of Proving Abandonment........... 11

        C.      Plaintiffs Are Entitled To Injunctive Relief Even If They Abandoned
                The AMERICA'S WHOLESALE LENDER® Trademark And
                "America's Wholesale Lender" Trade Name............................................... 12

VI.     PLAINTIFFS CAN ESTABLISH THE ELEMENTS OF THEIR LANHAM
        ACT CLAIMS ...................................................................................................... 13

        A.      The AMERICA'S WHOLESALE LENDER® Trademark And
                America's Wholesale Lender Name Are Valid And Protectable................. 15

        B.      The *Sleekcraft* Factors Demonstrate A Likelihood Of Confusion ............... 16

VII.    PLAINTIFFS' ARE LIKELY TO PREVAIL ON THEIR UCL CLAIM .............. 22

VIII.   IRREPARABLE HARM ....................................................................................... 24

IX.     BALANCE OF THE EQUITIES .......................................................................... 24

X.      THE PUBLIC INTEREST .................................................................................... 25

XI.     THE *ROOKER-FELDMAN* DOCTRINE DOES NOT PREVENT THIS
        COURT FROM ISSUING A PRELIMINARY INJUNCTION ............................. 25

XII.    CONCLUSION ..................................................................................................... 26

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO OSC RE: PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Accuride International, Inc. v. Accuride Corp.*,
  871 F.2d 1531, 1534 (9th Cir. 1989) ................................................................ 12, 15

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) .......................................................................... 12, 17

*Applied Info. Scis. Corp. v. eBay, Inc.*,
  511 F.3d 966, 969 (9th Cir. 2007) ................................................................... 12, 13

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ............................................................................ 13

*Cadbury Beverages v. Cott Corp.*,
  73 F.3d 474, 479 (2d Cir. 1995) ......................................................................... 16

*Chronicle Pub. Co. v. Chronicle Publ'ns, Inc.*,
  733 F. Supp. 1371 (S.D. Cal. 1989) .................................................................... 13

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*,
  304 F.3d 1167, 1175 n.10 ............................................................................. 10, 21

*CytoSport, Inc. v. Vital Pharms., Inc.*,
  617 F. Supp. 2d 1051 (E.D. Cal. 2009) ................................................................ 22

*Dreamwerks Prod. Group v. SKG Studio*,
  142 F.3d 1127 (9th Cir. 1998) ............................................................................ 18

*Electropix v. Liberty Livewire Co.*,
  178 F. Supp. 2d 1125 (C.D. Cal. 2001) ............................................................... 19

*Ferrari S.p.A. Esercizio Fabbriche Automobil e Corse v. McBurnie*,
  1989 U.S. Dist. LEXIS 13442 (S.D. Cal. Jun. 4 1989) ........................................... 11

*First Nationwide Bank v. Nationwide Sav. & Loan Ass'n*,
  682 F. Supp. 965 (D. Ark. 1988) ................................................................... 10, 15

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
  618 F.3d 1025 (9th Cir. 2010) ............................................................................ 13

*Grooms v. Legge*,
  2009 U.S. Dist. LEXIS 29235 (S.D. Cal. Apr. 8, 2009) .......................................... 20

*GSC Logistics, Inc. v. Star Galaxy Logistics, Inc.*,
  Case No: C 09-5886 SBA, 2010 U.S. Dist. LEXIS 340765 (N.D. Cal. Apr.
  7, 2010) ............................................................................................................ 12

*Jack Russell Terrier Network v. Am. Kennel Club, Inc.*,
  407 F.3d 1027 (9th Cir. 2005) .............................................................................. 8

*Keating v. America's Wholesale Lender*,
  U.S. Dist. LEXIS 65532 (N.D. Ohio Jun. 21, 2011) ............................................... 10

*Kougasian v. TMSL, Inc.*,
  359 F.3d 1136 (9th Cir. 2004) ............................................................................ 23

*Kurek v. America's Wholesale Lender*,
  U.S. Dist. LEXIS 82669 (N.D. Cal. Jul 28, 2011) .................................................. 10

*Maldonado v. Harris*,
  370 F.3d 945 (9th Cir. 2004) .............................................................................. 23

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*McGregor-Doniger, Inc. v. Drizzle, Inc.,*
  559 F.2d 1126 (2d Cir. 1979) .................................................................16

*Mortgage Elec. Registration Sys. v. Brosnan,*
  U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4, 2009)..................................14

*Noel v. Hall,*
  341 F.3d 1148 (9th Cir. 2003).................................................................23

*Partners for Health & Home, L.P. v. Yang,*
  2010 U.S. Dist. LEXIS 143476 (C.D. Cal. Sept. 13, 2010) .....................11

*PETsMART v. Lanrus, Inc.,*
  1992 U.S. Dist. LEXIS 1125712 (S.D. Cal. Mar. 30, 1992)....................12

*Pinel v. Aurora Loan Servs., LLC,*
  814 F. Supp. 2d 930, 2011 U.S. Dist. LEXIS 97384 (N.D. Cal. 2011) ...............21

*Saccio v. Bank of Am., Inc.,*
  2011 U.S. Dist. LEXIS 96618 (D. Utah Aug. 28, 2011).........................10

*SMC Promotions, Inc. v. SMC Promotions,*
  355 F. Supp. 2d 1127 (C.D. Cal. 2004)............................................12, 13

*Sterling Bank v. Sterling Bank & Trust,*
  1996 U.S. Dist. LEXIS 22215 (C.D. Cal. May 29, 1996).........................8

**Statutes**

Cal. Bus. & Prof. Code § 17900 ..................................................................7

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO OSC RE: PRELIMINARY INJUNCTION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

This Court should issue a preliminary injunction against Defendants.[1] Defendant Dennis Bell is a fraud and a con-artist.  He has committed perjury before this Court in an effort to conceal and keep alive Defendants' ongoing fraudulent scheme.  Bell claims that he had no contact with CHL borrowers, that he had no association with (defaulted) Defendant Jan Van Eck, that he never solicited lawsuits from CHL's borrowers, and that he was generally uninvolved in the fraudulent scheme described in the Complaint.  These are flat lies, as conclusively established by Bell's own declarations in this case and documents filed in a Connecticut federal lawsuit between Bell and Van Eck after they had a falling out.  Plain and simple, Defendants are engaged in wrongful conduct and this Court should stop it.

There is overwhelming evidence that Defendants hijacked the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name for the sole purpose of defrauding Plaintiffs and Plaintiffs' customers.  In response to the Order to Show Cause, Defendants fail to rebut, much less meaningfully address, the evidence of their fraud.  Rather, Defendants take the cockamamie position that they have free reign to impersonate CHL and commandeer loans that CHL originated under its fictitious business name "America's Wholesale Lender" because the loan documents associated with these loans identify "America's Wholesale Lender" as a New York corporation.  Defendants claim that because "America's Wholesale Lender" is a fictitious business name rather than a New York corporation, CHL loans that identify "America's Wholesale Lender" as the lender and a New York corporation somehow "vested to the control of" AWLI, Bell's sham New York corporation.  This is nonsense.  The use of a fictitious business

---

[1]     Plaintiffs are Countrywide Home Loans, Inc. ("CHL"), Bank of America Corporation ("BAC") and Bank of America, N.A. ("BANA").  Defendants are America's Wholesale Lender, Inc. ("AWLI"), Dennis L. Bell and Cheri B. English.

name is perfectly proper.  Moreover, "America's Wholesale Lender" is CHL, which is a New York corporation.

Defendants' contention that Plaintiffs are not entitled to any relief because CHL is allegedly defunct and Plaintiffs have abandoned the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name likewise has no merit.  CHL still exists, and Plaintiffs have not abandoned the marks.  The marks are still used in millions of deeds of trust and other documents recorded in public recorders' offices throughout the country.  Those documents preserve the security interest in properties.  Plaintiffs rely on those documents when they are forced to foreclose against borrowers in default.  Plaintiffs have not filed any notices of abandonment of the marks with respect to records anywhere. Moreover, Defendants have not met their burden showing abandonment by clear and convincing evidence.  But even if Plaintiffs had abandoned their marks, Plaintiffs are still entitled to injunctive relief because Defendant's use of even an abandoned mark to defraud Plaintiffs and their customers is unlawful.

Defendants' remaining arguments are also without merit:

- Contrary to Defendants' contention, CHL and BANA have standing to pursue the claims in this lawsuit because they are being harmed by Defendants' conduct.

- Contrary to Defendants' contention, the affirmative defense of abandonment does not defeat Plaintiffs' Lanham Act claims.

- Contrary to Defendants' contention, Plaintiffs establish all elements of their Lanham Act claims.

- Contrary to Defendants' contention, Plaintiffs demonstrate that the elements of irreparable harm, balance of the equities, and the public interest tip sharply in their favor.

- Contrary to Defendants' contention, the *Rooker-Feldman* doctrine does not prevent this Court from issuing an injunction, because Plaintiffs do

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO OSC RE: PRELIMINARY INJUNCTION

1             not seek relief from a state court judgment on the ground that the state

2             court committed legal error.

3       Defendants' fraudulent scheme is far more widespread than Plaintiffs initially

4 suspected.  Bell himself cavalierly confirms in his declaration that AWLI has been

5 sued "hundreds" of times and agreed to "settlement terms" in many of these cases,

6 no doubt by purporting to improperly modify or cancel Plaintiffs' loans and strip

7 Plaintiffs' liens.  This Court should put an end to the massive ongoing consumer

8 fraud perpetrated by Defendants.

9 **II.   Bell's Declarations**

10       In this lawsuit, Bell filed three declaration—one on March 12, 2012, (the

11 "First Bell Declaration"), another on March 23, 2012, (the "Second Bell

12 Declaration") and another on March 28, 2012 (the "Third Bell Declaration").  The

13 Third Bell Declaration was five days late.

14       In the declarations, Bell—who has already served jail time for perjury in an

15 unrelated real estate scam—makes numerous perjurious statements in an effort to

16 distance himself and AWLI from the fraudulent scheme described in the Complaint.

17 (Dckt. # 11, *Ex Parte* Appl. 3 n.1.)  Ironically, an action that Bell filed against Van

18 Eck in the United States District Court for the District of Connecticut styled

19 *America's Wholesale Lender, Inc. v. Van Eck* (Case No. 3:11-cv-1493 (the

20 "Connecticut Action"), after the two had a tiff, places Bell in the thick of the

21 fraudulent scheme from which he tries to detach himself, and exposes his

22 declarations as perjurious.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO OSC RE: PRELIMINARY INJUNCTION

The chart below highlights the false statements in Bell's declarations in this action:

| Statements in Bell's Declarations | Contradictory Evidence |
|---|---|
| AWLI "does not solicit any business and does not solicit lawsuits."  (Dckt. # 18, First Bell Decl. ¶ 6.)<br><br>"In regard to the claim that I solicited lawsuits from AWL borrowers, that claim is completely false."  (Dckt. # 41, Second Bell Decl. ¶ 4.) | A filing in the Connecticut Action reflects an e-mail dated April 20, 2011, from Bell to Paul Nguyen, in which Bell solicits the Calco-Crawford lawsuit referenced in Paragraph 27(c) of the Complaint, provides advice on how to obtain a stipulated judgment in that case and states "he will do this one . . . for $65K net."  (Supplemental Declaration of Nafiz Cekirge "Supp. Cekirge Decl.") Ex. 1 at 264.)  The Calco-Crawford complaint was filed on June 14, 2011.  (Dckt. # 11, *Ex Parte* Appl. 8-9.) |
| AWLI "does not have direct contact with borrowers . . . ."  (Dckt. # 18, First Bell Decl. ¶ 6.)<br><br>"I have never met or spoken with any of those borrowers."  (Dckt. # 41, Second Bell Decl. ¶ 4.)<br><br>"I never met or spoke [*sic*] with any borrower, or induced them."  (Dckt. # | A filing in the Connecticut Action reflects an e-mail dated September 26, 2011, from Merry  Wells, who is referenced in Paragraph 27(a) of the Complaint, to Dennis Bell, regarding the fraudulent transaction described in the Complaint.  (Supp. Cekirge Decl. Ex. 1 at 43-44.) |

BRYAN CAVE LLP<br>120 BROADWAY, SUITE 300<br>SANTA MONICA, CALIFORNIA 90401-2386

| | |
|---|---|
| 41, Second Bell Decl. ¶ 4.) | |
| AWLI "does not originate or service loans."  (Dckt. # 18, First Bell Decl. ¶ 5.) | The Complaint in the Connecticut Action verified by Bell states that AWLI is "engaged in the mortgage servicing business."  (Supp. Cekirge Decl. Ex. 2 at 267.)<br><br>Moreover, Bell apparently states in a declaration dated September 27, 2011, and filed in the Connecticut Action that AWLI is in the mortgage servicing business.  (Supp. Cekirge Decl. Ex. 3 at 280.)  Bell's September 27, 2011, declaration was filed under seal and is unavailable. |
| AWLI "has never held itself out to be Countrywide Home Loans, Inc. or its dba Americas [*sic*] Wholesale Lender."  (Dckt. # 18, First Bell Decl. ¶ 5.) | As described in great detail in the *Ex Parte* Application, Defendants hold themselves out to be CHL by falsely representing to borrowers and the public that they are the lender on loans that CHL originated using its fictitious business name, "America's Wholesale Lender."  (Dckt. 11, *Ex Parte* App. Mem. Ps & As 5-12.)<br><br>In the Connecticut Action, Bell apparently makes the same false |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| | statements about AWLI being the originating lender on various CHL-originated and BANA-serviced loans referenced in the Complaint in his September 27, 2011, declaration. (Supp. Cekirge Decl. Ex. 3 at 280-285.) |
|---|---|
| "My association with Van Eck is non-existent. . . . Van Eck was not an employee of AWL ,and derived no salary . . . ."  (Dckt. # 18, First Bell Decl. ¶ 5.) | In the Connecticut Action, Bell apparently states in his September 27, 2011, declaration that Van Eck was hired as an "independent contractor" of AWLI and held a position as "Customer Service Representative." (Supp. Cekirge Decl. Ex. 3 at 280.) |

The belatedly filed Third Bell Declaration also confirms Bell's involvement in the fraudulent scheme discussed in the Complaint.  In Paragraph 4 of that declaration, Bell states that he executed documents pursuant to "facilitate" settlement with the Burks.  (Dckt. # 48, Third Bell Decl. ¶ 4.)  Presumably, Bell refers to the "Settlement Agreement and Judgment Pursuant to Stipulated Finding of Fact" that he executed.  (Dckt. # 11, *Ex Parte* Appl. 5:17-5:21; Supp. Cekirge Decl. Ex. 3 at 281.)

Bell's execution of this document is fraudulent.  It demonstrates that Bell and AWLI impersonated CHL and falsely represented that AWLI was the "Lender" on the  on the Burks' promissory note and "Beneficiary" on the Burks' deed of trust. (Dckt. # 11-3, Declaration of Nafiz Cekirge ("Cekirge Decl.") Ex. 9 at 67.)  In reality, AWLI had nothing to do with the Burks' loan—which was originated by CHL using its fictitious business name "America's Wholesale Lender—and Bell and

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    AWLI had no authority to accept the $260,000 short payoff from the Burks in

2    connection with the Burks' loan.  (Dckt. # 11, *Ex Parte* Appl. 5:5-6:8.)  Simply put,

3    Bell and AWLI were trying to an succeeded in scamming the Burks.  (Dckt. # 11,

4    *Ex Parte* Appl. 5:27.)  Indeed, in the Connecticut Action, Bell admitted to executing

5    the closing instructions that were designed to facilitate the wrongful transfer of the

6    $260,00 from the Burks to AWLI.  (Supp. Cekirge Decl. Ex. 3 at 281.)[2]

7 **III.**    **CHL's Use Of The "America's Wholesale Lender" Fictitious Business**

8        **Name Was Proper**

9      A recurring theme throughout Defendants' Opposition to the Order to Show

10   Cause is that CHL somehow acted wrongfully by identifying its fictitious business

11   name "America's Wholesale Lender" as the "lender" in loan documents and by

12   describing "America's Wholesale Lender" as a New York corporation in loan

13   documents.  (Dckt. # 40, Opp'n 2:14-2:21, 3:2-3:6, 15:24-15:25, 16:9-16:15, 17:7-

14   17:17, 18:26-19:9, 22:25-22:28, 24:2-24:9, 25:3-25:5.)

15      There is nothing improper about using a fictitious business name.  *See, e.g.*,

16   Cal. Bus. & Prof. Code §§ 17900 *et seq.*  CHL did not use this fictitious business

17   name to conceal its identity from borrowers.  To the contrary, CHL publicly

18   registered "America's Wholesale Lender" as a fictitious business name in 49 of 50

19   states.[3]  (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 2.)

20      Identifying "America's Wholesale Lender" as a New York corporation in

21   loan documents is also proper.  "America's Wholesale Lender" is CHL, which is a

22   New York corporation.  (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 2.)

23      Defendants do not provide any evidence that Plaintiffs' customers were

---

24   [2]     That Bell claims he ended up getting scammed by Van Eck and Paul Nguyen

25   does not change the fraudulent nature of Bell's conduct.  (Dckt. # 48, Third Bell Decl. ¶¶ 4-7.)  Moreover, Bell's contention that the Burks' were somehow complicit

26   in the scam to defraud themselves is preposterous.  (Dckt. # 48, Third Bell Decl. ¶ 7.)

27   [3]     The only jurisdictions in which CHL did not register its fictitious business names were places that did not provide a mechanism for such registration.  (Dckt. #

28   11, *Ex Parte* Appl. Mem. Ps & As 2.)

prejudiced by CHL's manner of identifying "America's Wholesale Lender" in loan documents.  Rather, the confusion as to the identity of the lender started when Defendants incorporated AWLI, and began impersonating CHL to swindle Plaintiffs and Plaintiffs' customers.

In any event, CHL's manner of identifying "America's Wholesale Lender" in loan documents—even if Defendants believed it was improper—does not give Defendants license to impersonate Plaintiffs and to defraud Plaintiffs and Plaintiffs' customers.

## IV.   CHL And BANA Have Standing To Bring This Action And Are The Real Parties In Interest

Defendants' contention that CHL and BANA have no standing and are not the real parties in interest to bring this action has no bearing on Plaintiffs' request for injunctive relief.  Defendants do not (and cannot) contend that BAC lacks standing to bring this action.  As long as one party has standing to pursue a preliminary injunction, such relief is not barred.

Moreover, Defendants' contention that CHL (which is not defunct as Defendants claim (Supplemental Declaration of Devra Lindgren ("Supp. Lindgren Decl.") ¶ 6)), and BANA "have no concrete stake in the outcome of this litigation, and they must be immediately dismissed from this action" is unavailing.  (Dckt. # 40, Opp'n 9:2-9:3 & 9:17-9:18.) Setting aside the fact that this is not a motion to dismiss, the fact that BAC owns the AMERICA'S WHOLESALE LENDER® trademark does not preclude CHL and BANA from asserting the second claim in the Complaint for false designation of origin under 15 U.S.C. section 1125(a)(1)(A).  A party asserting a claim under 15 U.S.C. section 1125(a)(1)(A) "need only allege commercial injury based upon the deceptive use of a trademark or its equivalent." *Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).  "Commercial injury" includes "damage to goodwill [and] loss of control over reputation."  *Sterling Bank v. Sterling Bank & Trust*, Case No. CV-94-8378-

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO OSC RE: PRELIMINARY INJUNCTION

1  KMW (MCx), 1996 U.S. Dist. LEXIS 22215, at *24 (C.D. Cal. May 29, 1996).

2      Here, Defendants' commandeering of the AMERICA'S WHOLESALE

3  LENDER® trademark and "America's Wholesale Lender" name has harmed all

4  Plaintiffs' goodwill and has caused all Plaintiffs to lose control over their reputation.

5  For instance, customers like the Burks, who have been duped by Defendants into

6  believing they have paid off their BANA-serviced loans, are getting the false and

7  damaging impression that BANA is improperly servicing their loans when BANA

8  demands payment on these loans.  (Dckt. # 33, Declaration of Dennis Burk ("D.

9  Burk Decl.") ¶¶ 30-31; Dckt. # 34, Declaration of Linda Burk ("L. Burk Decl.") ¶¶

10  30-31.)

11      Further, even if BANA and CHL did not have standing to assert the Lanham

12  Act and state trademark claims in the Complaint, this is not a basis for their

13  dismissal from the lawsuit.  As discussed below, these parties have standing to

14  assert the other claims in the Complaint, such as the UCL claim.

15  **V.    Defendants' Abandonment Argument Lacks Merit**

16      Defendants' contention that Plaintiffs abandoned the AMERICA'S

17  WHOLESALE LENDER® trademark and "America's Wholesale Lender" name is

18  without merit for several reasons.  First, Plaintiffs have not abandoned the name.

19  Plaintiffs still associate themselves with the AMERICA'S WHOLESALE

20  LENDER® trademark and "America's Wholesale Lender" name.  This precludes a

21  finding of abandonment.  Second, Defendants have failed to meet their burden of

22  showing abandonment by clear and convincing evidence.  Third, and perhaps most

23  important, even if Plaintiffs had abandoned the AMERICA'S WHOLESALE

24  LENDER® trademark and "America's Wholesale Lender" name, Plaintiffs are still

25  entitled to injunctive relief to stop Defendants from using a confusingly similar

26  name to dupe the Plaintiff's customers and the public at large.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**A.     Plaintiffs Have Not Abandoned The AMERICA'S WHOLESALE LENDER® Trademark And "America's Wholesale Lender" Name**

Plaintiffs have not abandoned THE AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name to the public domain because:

- The "America's Wholesale Lender" name is still on operative loan documents relating to millions of active loans. (Dckt. 11, *Ex Parte* App. Mem. Ps & As 3.)  This is significant because permitting another party to use a mark that is confusingly similar to "America's Wholesale Lender" would allow unscrupulous parties like Defendants to dupe consumers into believing that they are CHL and have the authority to modify or accept payment on the consumers' loans.

- CHL frequently appears in litigation on behalf of "America's Wholesale Lender" and identifies "America's Wholesale Lender" as its fictitious business name.  *See, e.g.*, *Saccio v. Bank of Am., Inc.*, Case No. 2:11-CV-511 TS, 2011 U.S. Dist. LEXIS 96618, at *1 (D. Utah Aug. 28, 2011); *Kurek v. America's Wholesale Lender*, No. C 10-2155 BZ, 2011 U.S. Dist. LEXIS 82669, at *1 (N.D. Cal. Jul 28, 2011); *Keating v. America's Wholesale Lender*, Case No.: 1:11 CV 5932011 U.S. Dist. LEXIS 65532, at *1 (N.D. Ohio Jun. 21, 2011);

-  "America's Wholesale Lender" remains registered as CHL's fictitious business name in 46 states, giving notice to the public that that name is still associated with CHL (Dckt. 11, *Ex Parte* App. Mem. Ps & As 2.)

These facts are sufficient to preclude a finding of abandonment.  *See First Nationwide Bank v. Nationwide Sav. & Loan Ass'n*, 682 F. Supp. 965, 967 & 969. (D. Ark. 1988) (stating that the presence of the party's old name on "materials such as passbooks, mortgage documents and certificates of deposit, as well as occasional press references to" the party's old name was sufficient to "preclude a finding of abandonment"); *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   1167, 1175 n.10 ("Admittedly, evidence of CMI's use of 'The Breeze' after

2   WBZE's September 2000 name change was limited, consisting largely of a logo on

3   a billboard, some business cards, and a few promotional materials, but it was

4   sufficient to enable the trial court to reject Clear Channel's abandonment defense.").

5   **B.     Defendants Have Not Met Their Burden Of Proving Abandonment**

6   The party asserting the affirmative defense of abandonment bears the "burden

7   to show abandonment of the Trademark by clear and convincing evidence."

8   *Partners for Health & Home, L.P. v. Yang*, No. CV 09-07849 CBM (RZx), 2010

9   U.S. Dist. LEXIS 143476, at *8 (C.D. Cal. Sept. 13, 2010); *see also Ferrari S.p.A.*

10  *Esercizio Fabbriche Automobil e Corse v. McBurnie*, Civil No. 86-1812-B(IEG),

11  1989 U.S. Dist. LEXIS 13442, at *28 (S.D. Cal. Jun. 4 1989) ("Because

12  abandonment of a trademark is in the nature of a forfeiture, it must be strictly

13  proved.").

14  Defendants do not present any facts to support their abandonment defense.

15  Rather, they merely "allege, on information and belief" that Plaintiffs abandoned

16  their AMERICA'S WHOLESALE LENDER® trademark and "America's

17  Wholesale Lender" name.  (Dckt. # 40, Opp'n 4:10 & 10:21).  This is not good

18  enough.

19  **C.     Plaintiffs Are Entitled To Injunctive Relief Even If They**

20  **Abandoned The AMERICA'S WHOLESALE LENDER®**

21  **Trademark And "America's Wholesale Lender" Trade Name**

22  The Lanham Act forbids a "newcomer" from using an abandoned mark to

23  trick consumers into believing that the "newcomer" is associated with the former

24  user of the mark.  *Peter Luger, Inc. v. Silver Star Meats*, Civil Action No. 01-1557,

25  2002 U.S. Dist. LEXIS 19483, *4 (W.D. Pa. May 17, 2002).  "To hold otherwise

26  would result in unfair competition [under the Lanham Act] through intentionally

27  creating public confusion as to the source and origin of the products they buy." *Id.*

28  at *5.  Thus, even if the "newcomer" succeeds in its abandonment defense,

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  "injunctive relief is warranted . . . to prevent confusion caused by the residual

2  association of the" mark "with its former user." *Id.* at *4, *41-*42.

3       Here, as described in great detail in the *Ex Parte* Application, Defendants use

4  the "America's Wholesale Lender, Inc." name to trick consumers into believing that

5  AWLI is their originating lender, CHL.  (Dckt. 11, *Ex Parte* App. Mem. Ps & As 5-

6  12.)  Then, they collect short payoffs from consumers, who mistakenly believe that

7  they are paying off their original loan with CHL.  (Dckt. 11, *Ex Parte* App. Mem. Ps

8  & As 5-12.)  As part of this scheme, Defendants also use the "America's Wholesale

9  Lender, Inc." to record fraudulent documents in the land records, purporting to strip

10  or assign CHL's liens.  (Dckt. 11, *Ex Parte* App. Mem. Ps & As 5-12.)  Regardless

11  of whether Plaintiffs have abandoned the AMERICA'S WHOLESALE LENDER®

12  trademark and "America's Wholesale Lender" name, Defendants' conduct

13  constitutes unfair competition under the Lanham Act and must be enjoined.

14  **VI.**  **Plaintiffs Can Establish The Elements Of Their Lanham Act Claims**

15       15 U.S.C. section 1114 applies only to registered trademarks.  *See Accuride*

16  *International, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir. 1989)  To

17  prevail on a claim under 15 U.S.C. section 1114, a party must show that he has a

18  valid, protectable trademark and the defendant's use of the trademark is likely to

19  cause confusion.  *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th

20  Cir. 2007).

21       15 U.S.C. 1125(a) covers unregistered as well as registered trademarks and

22  trade names.  *See SMC Promotions, Inc. v. SMC Promotions*, 355 F. Supp. 2d 1127,

23  1133 (C.D. Cal. 2004).  To prevail on a claim under 15 U.S.C. section 1125(a), a

24  party must similarly show that he has a valid, protectable trademark and the

25  defendant's use of the trademark is likely to cause confusion.  *See GSC Logistics,*

26  *Inc. v. Star Galaxy Logistics, Inc.*, Case No: C 09-5886 SBA, 2010 U.S. Dist.

27  LEXIS 34076, at *5 (N.D. Cal. Apr. 7, 2010).

28       "[T]he test of likelihood of confusion is the touchstone of trademark

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

infringement as well as unfair competition" *PETsMART v. Lanrus, Inc.*, Civil No. 91-1721-R(M)*, 1992 U.S. Dist. LEXIS 11257, at *12 (S.D. Cal. Mar. 30, 1992). The following eight factors, generally referred to as the *Sleekcraft* factors because they were announced in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), guide the inquiry into whether a defendant's use of a mark is likely to confuse consumers: (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010). "This eight-factor analysis is pliant, illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Id.* (internal quotations and citation omitted). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Id.* at 1031 (internal quotations and citation omitted). "[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

As discussed below and in Plaintiffs' *Ex Parte* Application, Plaintiffs will likely prevail on their Lanham Act claims because the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" trade name are valid and protectable and Defendants' use of the name "America's Wholesale Lender, Inc." is likely to cause confusion. (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 15-19.)

## A.  The AMERICA'S WHOLESALE LENDER® Trademark And America's Wholesale Lender Name Are Valid And Protectable

For purposes of a claim under 15 U.S.C. 1114(a) (Plaintiffs' first claim), a party can establish that it has a valid, protectable mark by showing that he or she

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

owns a "federally registered mark in goods or services."  *Applied Info. Scis. Corp.*, 511 F.3d at 969-70.

For purposes of a claim under 15 U.S.C. section 1125(a)(1)(A) (Plaintiffs' second claim), a party can establish that it has a valid, protectable trade name by demonstrating that it has used the name in commerce for an extended period of time. *See SMC Promotions, Inc.*, 355 F. Supp. 2d at 1134 (holding that "Plaintiffs' continuous use of the SMC mark for nearly fifty years demonstrate that Plaintiffs have a strong mark."); *Chronicle Pub. Co. v. Chronicle Publ'ns, Inc.*, 733 F. Supp. 1371, 1377 (S.D. Cal. 1989) (holding that a party had a valid protectable interest in a trade name because it had used and advertised its trade name for approximately 20 years).

Plaintiffs have established, and Defendants do not contest, that AMERICA'S WHOLESALE LENDER® is BAC's federally registered trademark.  (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 3.)  In addition, CHL used the "America's Wholesale Lender" name in commerce for over 15 years, registered the name in 49 states as its fictitious business name, and originated over 3.5 million loans under that name, many of which are still outstanding.  (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 15-19.)  As such, both the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name are valid and protectable.

As discussed above, Defendants' abandonment argument is without merit and does not establish that Plaintiffs' marks are not valid and not protectable.  (Dckt. # 40, Opp'n 13-14.)

### B.    The *Sleekcraft* Factors Demonstrate A Likelihood Of Confusion

Defendants claim that Plaintiffs failed to demonstrate the likelihood of confusion under the *Sleekcraft* test.  Defendants are wrong.

**Strength of the Mark.**  The fact that CHL originated more than 3.5 million loans over a 15 year period under the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name, (Dckt. # 11, *Ex Parte* Appl.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   Mem. Ps & As 3.), renders these marks strong. *See Mortgage Elec. Registration*

2   *Sys. v. Brosnan*, No: C 09-3600 SBA, 2009 U.S. Dist. LEXIS 87596, at *14-*15

3   (N.D. Cal. Sept. 4, 2009) ("Plaintiff MERS has presented undisputed evidence that

4   its name has commercial strength. Over 4,593 member lenders and loan servicers

5   use Plaintiff MERS' services (among them are the nation's best known financial

6   institutions), and Plaintiff is identified as the mortgagee or beneficiary in close to 60

7   million mortgages and deeds of trust. In addition, Plaintiff MERS has used and

8   marketed its corporate name for the last thirteen years, (citation omitted), which

9   further supports the strength of its name. The Court finds that Plaintiff MERS has

10   presented sufficient evidence to support the strength of its mark.").

11     Defendants assert a potpourri of groundless reasons as to why the

12   AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale

13   Lender" name are not strong. Initially, Defendants claim that the AMERICA'S

14   WHOLESALE LENDER® trademark and "America's Wholesale Lender" are not

15   strong because they are associated with an alleged predatory lender and were used in

16   a "deceptive manner." (Dckt. # 40, Opp'n 16:16.) There is no authority to suggest

17   that a mark is not strong because it has some allegedly negative connotations.

18   Moreover, as discussed above, Bell's contention that "America's Wholesale

19   Lender" was used deceptively because it concealed the identity of CHL is baseless.

20     Defendants further claim that the AMERICA'S WHOLESALE LENDER®

21   trademark and "America's Wholesale Lender" name are not strong because

22   Defendants used them "without any reference to '®' or '™' in over 3.5 million

23   recorded notes and deeds of trusts." (Dckt. # 40, Opp'n 15:17.) There is no

24   requirement that a registrant use a registration symbol for its mark because "[t]he

25   statutory provision pertaining to use of registration symbols is permissive." *First*

26   *Nationwide Bank*, 682 F. Supp. at 979 (*citing* 15 U.S.C. § 1111). Moreover,

27   because the use of "America's Wholesale Lender" in loan documents is primarily as

28   a trade name, the use of a registration symbol would be inapt. *See Accuride Int'l,*

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*Inc.*, 871 F.2d at 1534 ("Trademarks and trade names are technically distinct. Trade names are symbols used to distinguish companies, partnerships and businesses. Trade names symbolize the reputation of a business as a whole. In contrast, trademarks and service marks are designed to identify and distinguish a company's goods and services. The major legal distinction between trademarks and trade names is that trade names cannot be registered . . . .").

Defendants next claim that the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name are not strong because "[t]here is absolutely no reason to believe ANYONE knows that this mark is a trademark or [*sic*] CHLI much less BOF [*sic*] who has not ever used the mark." (Dckt. # 40, Opp'n 15:18-15:20.) This contention has no merit. "Although trademarks serve to identify goods or services that share a common source or sponsor, the identity of the source or sponsor may remain anonymous. It is universally recognized that a likelihood of confusion sufficient to establish infringement may exist regardless of whether prospective purchasers know the specific identity of the trademark owner." Restatement (Third) of Unfair Competition § 20 cmt. d (1995); *see also Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 479 (2d Cir. 1995) ("The 'strength' of a mark is its 'tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." (*citing McGregor-Doniger, Inc. v. Drizzle, Inc.*, 559 F.2d 1126, 1131 (2d Cir. 1979))).

Defendants lastly claim that the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name are not strong because 3.5 million loan documents with the "America's Wholesale Lender" name are somehow not enough, Plaintiffs are out of business, and "America's Wholesale Lender's" description of itself as a New York corporation is some how wrongful. These contentions are baseless. 3.5 million loan documents bearing the "America's Wholesale Lender" name over 15 years is enough to establish the strength of the mark. Plaintiffs still exist and conduct business. Finally, as discussed above, there

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO OSC RE: PRELIMINARY INJUNCTION

is nothing wrongful about the description of "America's Wholesale Lender" as a New York corporation in loan documents.

**Relatedness of Services.**  Defendants claim that their services and Plaintiffs' services are not related because "BofA is a lending institution and acts as a loan servicer of loans," while Defendants "offers no such services."  (Dckt. # 40, Opp'n 13:17-13:18 & 13:25-13:25.)  In Paragraph 5 of his Declaration, Bell states under penalty of perjury that AWLI "does not originate or service loans."  (Dckt. # 18, First Bell Decl. ¶ 5.)

Defendants' assertions and Bell's statement under penalty of perjury in this action are directly contradicted by Paragraph 4 of the Complaint in the Connecticut Action—verified by Bell—which states that AWLI is "engaged in the mortgage servicing business."  (Supp. Cekirge. Decl. Ex. 2 at 267.)  Bell apparently also declares under penalty of perjury in his September 27, 2011, declaration in the Connecticut Action that AWLI is a loan servicer.  (Supp. Cekirge. Decl. Ex. 3 at 280.)  Further, the loan closing documents that Defendants and their agents provided to the Burks as part of the fraudulent short payoff that Defendants orchestrated for the Burks demonstrate that Defendants hold themselves out to the public as a lender, albeit falsely.  (Dckt. # 33, D. Burk Decl. ¶¶ 5, 8, 11, 17-28 & Ex. 2 at 14-18 & Ex. 3 at 19; Dckt. # 34, L. Burk Decl. ¶¶ 5, 8, 11, 17-28 & Ex. 2 at 14-18 & Ex. 3 at 19.)

**Similarity of the Marks.**  Defendants contend that this factor does not come into play because Defendants' mark is a valid corporate name under state law and Plaintiffs' mark is a federally registered trademark.  (Dckt. # 40, Opp'n 16:19-17:2.)  Defendants' contention is without merit.  It does not matter whether a name is a corporate name, trademark, logo or some other demarcating symbol.  The analysis of the "[s]imilarity of the marks is tested on three levels: sight, sound, and meaning."  *AMF, Inc.*, 599 F.2d at 351.  Under these criteria, Plaintiffs' and Defendants' marks are essentially identical.

**Evidence of Actual Confusion.**  There is clear evidence that many of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Plaintiffs' customers were confused into believing that AWLI was CHL.  (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 18.)  In fact, Defendants took affirmative steps to perpetuate this confusion.  Although AWLI had nothing to do with the loans, (Dckt. # 11-8, Declaration of Renell Welch ("Welch Decl.") ¶ 17-20), Defendants falsely represented to consumers in sham settlement documents that AWLI was the "lender" and "beneficiary" on certain CHL-originated loans that identified CHL's fictitious business name, "America's Wholesale Lender", as the "lender" in loan documents.  (Dckt. # 11, *Ex Parte* App. 5-12; Dckt. # 11-3 to 11-6, Cekirge Decl. Ex. 9 at 67-68, Ex. 13 at 87, Ex. 18 at 143, Ex. 22, 199.)

Defendants also misrepresented AWLI as the "lender" on Bell's mortgages in a Confession of Judgment filed in a Kentucky federal court, when the mortgages were in fact originated by CHL using CHL's fictitious business name "America's Wholesale Lender" and AWLI had nothing to do with these mortgages.  (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 3-4, Dckt. # 11-2, Ex. 5 at 43.)  The confession of judgment was a ruse to trick the federal court into believing that CHL was confessing judgment in favor of Bell.  The federal court did not fall for the trick and ordered the "fraudulent" confession of judgment stricken. (Dckt. # 11, *Ex Parte* App. 4.)

Moreover, the Burks' declarations clearly indicate that they were actually confused into believing that AWLI was their lender, when in reality CHL was their lender; in fact, Defendants and their agents repeatedly told the Burks that AWLI was their lender, so that they could carry out their fraudulent scheme to induce the Burks' to make a payment to AWLI.  (D. Burk Decl. ¶¶ 5, 8-9, 11, 18, 24-25; L. Burk Decl. ¶¶ 5, 8-9, 11, 18, 24-25.)  Ultimately the Burks paid AWLI $260,000, believing that they were paying CHL.  (D. Burk Decl. ¶¶ 20-21 & Ex. 2 at 11; L. Burk Decl. ¶¶ 20-21 & Ex. 2 at 11.)

In fact, Bell's first Declaration further proves actual confusion by asserting that AWLI has been mistakenly sued in hundreds of lawsuits by Plaintiffs'

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   customers.  (Dckt. # 18, Bell Decl. ¶¶ 4, 6.)

2   **Marketing Channels, Expansion Into Other Markets And Care Exercised**

3   **By Customers.**  As explained in Plaintiffs' *Ex Parte* Application, these three

4   *Sleekcraft* factors are not meaningful in this case and the Court can accordingly

5   assign them little or no weight.  *See Dreamwerks Prod. Group v. SKG Studio*, 142

6   F.3d 1127, 1131 n.6 (9th Cir. 1998).

7       First, Defendants do not operate a legitimate business where marketing

8   channels and expansion into other markets are serious factors to consider.  As

9   explained in the declarations of Dennis and Linda Burk, Defendants' sole market

10  consists of Plaintiffs' former and current customers, who had loans originated under

11  CHL's fictitious business name "America's Wholesale Lender."  (D. Burk Decl. ¶¶

12  5, 8, 11; L. Burk Decl. ¶¶ 5, 8, 11.)  Defendants' seek these customers out and try to

13  lure them into the scam.  (D. Burk Decl. ¶ 5; L. Burk Decl. ¶ 5.)  Defendants'

14  attempt to apply the abandonment defense into these prongs of the *Sleekcraft*

15  analysis is unavailing because, as discussed above, abandonment is not a valid

16  defense in this case.

17      Similarly, it is not valuable to talk about the care of customers.  Defendants

18  target consumers and actively deceive them into thinking that AWLI is CHL.

19  "[V]irtually no amount of consumer care can prevent confusion" here.  *Electropix v.*

20  *Liberty Livewire Co.*, 178 F. Supp. 2d 1125, 1134 (C.D. Cal. 2001).

21  **Defendants' Intent.**  Defendant Bell claims that he did not incorporate

22  AWLI to impersonate CHL, but rather "to assist him in his predatory lending

23  lawsuit against Countrywide."  (Dckt. # 40, Opp'n 19:13; Dckt. # 18, First Bell

24  Decl. ¶ 3, Dckt. # 41, Second Bell Decl. ¶¶ 3, 6.)

25      This is yet another lie by Bell.  Bell's claim that he formed the sham

26  corporation to aid him in his litigation against Plaintiffs confirms his lack of

27  legitimate purpose.  Indeed, Defendants have not proffered any evidence that AWLI

28  is engaged in any sort of legitimate business activity.  The reason why is obvious:

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  AWLI has no legitimate purpose.  Its only purpose is to perpetrate Defendants'
2  fraud.

3      Also, Bell's actions after he incorporated AWLI prove his fraudulent intent.
4  First, he filed a confession of judgment in his favor for $5.825 million to trick the
5  federal court into believing that the judgment was in his favor and against CHL.
6  (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 3-4.)

7      Then, he had his confederate, Jan Van Eck, attempt to release his mortgages
8  by impersonating CHL.  (Dckt. # 11, *Ex Parte* Appl. Mem. Ps & As 3-4.)

9      Some time later, Bell and the other Defendants impersonated CHL to collect
10  unauthorized payments from Plaintiffs' customers.  (Dckt. # 11, *Ex Parte* Appl.
11  Mem. Ps & As 5-12.)  Defendants' scam is explained in great detail in the
12  declarations of victims Dennis and Linda Burk.  (Dckt. # 33, D. Burk Decl. ¶¶ 5-28;
13  Dckt. # 34, L. Burk Decl. ¶¶ 5-28.)

14      Moreover, AWLI, Bell and English's efforts to distance themselves from
15  Defendant Jan Van Eck are unconvincing.  It is simply implausible that Van Eck
16  would sign satisfactions of Bell's mortgages unless Bell and Van Eck were in
17  cahoots.  (Dckt. # 11, *Ex Parte* Appl. Ps & As 3-4.)  Moreover, even if they
18  were not in cahoots with Van Eck, Bell and English do not explain the fraudulent
19  documents that they signed, such as the confession of judgment signed by English,
20  and the various stipulations, reconveyances and assignments signed by Bell.  (Dckt.
21  # 11, *Ex Parte* Appl. Ps & As 3-6, 12.)

22  **VII.   Plaintiffs' Are Likely To Prevail On Their UCL Claim**

23       "Claims arising under Section 17200 which are based upon trademark
24  infringement, are 'substantially congruent' to claims made pursuant to the Lanham
25  Act."  *Grooms v. Legge*, Case No. 09cv489-IEG-POR, 2009 U.S. Dist. LEXIS
26  29235, at *25 (S.D. Cal. Apr. 8, 2009).  "Under both, the test is whether the public
27  is likely to be deceived or confused by the similarity of the marks."  *Id.* (internal
28  quotations and citation omitted).  If the court finds that a likelihood of confusion

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

exists, then the plaintiff will prevail on his or her UCL claim.  *See id.*

Here, as explained above, there is not only a likelihood of confusion, but also actual confusion.  It was Defendants' plan to confuse the public into believing that AWLI is CHL.  As such, Plaintiffs' UCL claim will likely be successful.

Defendants' claim of abandonment has no bearing on Plaintiffs' UCL claim. It is an unfair and fraudulent business practice for a party to use even an abandoned name to mislead the public into believing that the party is associated with the previous user of the abandoned mark.  In a case involving a party who adopted the former name of a popular radio station to deceive the public into believing that it was associated with that radio station, a Florida district court found that such conduct violated Florida's analogue of the UCL and the "affirmative defense of 'abandonment' [gave] . . . no license to mislead consumers." *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, Case No.: 4:01cv441-SPM, 2001 U.S. Dist. LEXIS 24688, at *8 (N.D. Fla. Nov. 1, 2001).  Indeed, "[c]onduct is considered 'fraudulent' under the UCL if the conduct is likely to deceive," without any limitation as to whether the mark at the center of the conduct has been abandoned.  *Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 2011 U.S. Dist. LEXIS 97384, *21 (N.D. Cal. 2011) (internal quotations and citation omitted).

Defendants' contention that Plaintiffs' UCL claim must fail because Plaintiffs have not "lost money or property as a result of the alleged unfair business practices of Defendant" has no merit.  A party has lost money or property within the meaning of the UCL if "when he or she has: (1) expended money due to the defendant's acts of unfair competition (2) lost money or property or (3) been denied money to which he or she has a cognizable claim." *Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 2011 U.S. Dist. LEXIS 97384, *24-25 (N.D. Cal. 2011).

Here, Plaintiffs have been forced to expend money as a result of Defendants' improper conduct.  BANA's servicing obligations generally require it to safeguard the interests of the parties on whose behalf it services mortgages.  (Supplemental

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Declaration of Renell Welch ("Supp. Welch Decl.") ¶ 7.)  Accordingly, Plaintiffs

2  have been forced to expend money filing this lawsuit to, among other things, protect

3  lien priorities.  (Supp. Welch Decl. ¶ 8.)  Plaintiffs would not have had to file this

4  lawsuit but for Defendants' wrongful acts.  (Supp. Welch Decl. ¶ 8.)  In addition,

5  pursuant to its servicing obligations, BANA has been required to expend money to

6  record lis pendens relating to the properties affected by Defendants' scheme to

7  protect the lien interests on the properties.  (Supp. Welch Decl. ¶ 9.)  With respect to

8  at least one of the properties, BANA has been compelled to cancel a short sale

9  because Defendants' recordation of fraudulent documents clouded title.  (Supp.

10  Welch Decl. ¶ 10.)  As a result and as part of its servicing obligations, BANA has

11  been forced to make a $8,436.54 property tax payment that it would not have had to

12  make had the short sale gone through.  (Supp. Welch Decl. ¶ 10.)  Plaintiffs will

13  have to make a $2,287 hazard insurance payment on April 26, 2012.  (Supp. Welch

14  Decl. ¶ 10.)

15  **VIII.  Irreparable Harm**

16      The gist of Defendants' purported defense is that Plaintiffs allegedly suffered

17  no irreparable harm because Plaintiffs used the America's Wholesale Lender" name

18  to deceive consumers, and Plaintiffs abandoned the AMERICA'S WHOLESALE

19  LENDER® trademark and "America's Wholesale Lender" name.  (Dckt. # 40,

20  Opp'n 24:2-24:4)  As discussed above, there is nothing wrongful about Plaintiffs'

21  use of the "America's Wholesale Lender" name and Plaintiffs' did not abandon their

22  marks.  Moreover, Defendants have hijacked Plaintiffs' control over their reputation

23  and harmed their good will.  This is irreparable harm.  *See CytoSport, Inc. v. Vital*

24  *Pharms., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009) (""In trademark cases,

25  courts have found irreparable harm in the loss of control of a business' reputation, a

26  loss of trade and loss of goodwill.").

27  **IX.    Balance Of The Equities**

28      Defendants contend that the balance of the equities favors them because

1  Plaintiffs used the "America's Wholesale Lender" name to deceive the public.  As

2  explained above, this is nonsense.  Conducting business under a fictitious business

3  name is proper and does not give Defendants a license to commit fraud.  The harm

4  to Plaintiffs is self-evident—Defendants are purporting to fraudulently reconvey and

5  assign liens established by CHL and fraudulently cancel debt obligations to BANA.

6  In contrast, an injunction will not harm Defendants given that all it will do is stop

7  Defendants from carrying out a fraud.

8  **X.    The Public Interest**

9     Defendants claim that the public interest would be "served by allowing those

10  who organize legitimate corporations under the laws of a state to continue to pursue

11  their legitimate business activities."  (Dckt. # 40, Opp'n 25:2-25:3.)  This premise

12  may be true, but is wholly irrelevant here because Defendants are not conducting

13  any legitimate business; rather they are defrauding Plaintiffs and Plaintiffs'

14  customers by infringing Plaintiffs' marks.  The public interest is not served by

15  allowing them to continue.

16  **XI.   The *Rooker-Feldman* Doctrine Does Not Prevent This Court From**

17  **Issuing A Preliminary Injunction**

18     "The *Rooker-Feldman* doctrine has evolved from the two Supreme Court

19  cases from which its name is derived."  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136,

20  1139 (9th Cir. 2004).  "The basic premise of *Rooker-Feldman* is that 'a federal

21  district court does not have subject matter jurisdiction to hear a direct appeal from

22  the final judgment of a state court.'"  *Maldonado v. Harris*, 370 F.3d 945, 949 (9th

23  Cir. 2004) (*quoting Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003).  The *Rooker-*

24  *Feldman* doctrine "applies only when the federal plaintiff both asserts as her injury

25  legal error or errors by the state court *and* seeks as her remedy relief from the state

26  court judgment."  *Kougasian*, 359 F.3d at 1140 (emphasis in the original).

27  *Maldonado*, 370 F.3d at 951 ("As we have already explained, Maldonado does not

28  allege any legal errors by the California state court as a basis for relief, and *Rooker-*

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    *Feldman* therefore does not bar his federal action.")  The *Rooker-Feldman* doctrine

2    does not apply when a federal plaintiff "alleges a cause of action for extrinsic fraud

3    on a state court and seeks to set aside a state court judgment obtained by that fraud"

4    or alleges claims based on "wrongful acts by the defendants."  *Kougasian*, 359 F.3d

5    at 1141-42.

6         The *Rooker-Feldman* doctrine does not apply in this case.  Plaintiffs do not

7    seek relief from the state court stipulated judgments—that Defendants fraudulently

8    obtained by impersonating CHL—based on legal error by the state courts.  Rather,

9    the relief that Plaintiffs seek is based on Defendants' continuing fraudulent

10   impersonation of CHL to defraud Plaintiffs and Plaintiffs' customers.

11   **XII.  Conclusion**

12        In a word, Defendants' Opposition is unbelievable.  The premise of their

13   Opposition is that because CHL did not incorporate its registered fictitious business

14   name in New York, Defendants had the right to incorporate a corporation in New

15   York with a similar name, impersonate CHL and then proceed to defraud Plaintiffs'

16   and their customers.  One thing is clear:  Defendants' fraudulent scheme is

17   widespread.  Indeed, it is much more widespread than originally contemplated by

18   Plaintiffs, as evidenced by Defendants' admission that AWLI has been sued

19   hundreds of times by CHL borrowers.  Defendants should be enjoined from their

20   fraudulent and criminal conduct.

21   DATED:  March 28, 2012                    Respectfully submitted,

22                                             **BRYAN CAVE LLP**

23                                             By:  ___/s/ Nafiz Cekirge_____

24                                                  NAFIZ CEKIRGE
                                                    Attorneys for Plaintiffs
25                                                  Countrywide Home Loans, Inc.
                                                    Bank of America Corporation
26                                                  and Bank of America, N.A.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386