1 ROBERT E. BOONE III (SBN 132780)
NAFIZ CEKIRGE (SBN 255710)
2 ROBERT G. LANCASTER (SBN 257504)
**BRYAN CAVE LLP**
3 120 Broadway, Suite 300
Santa Monica, California  90401-2386
4 Telephone:   (310) 576-2100
Facsimile:    (310) 576-2200
5 E-Mail:       reboone@bryancave.com
                      nafiz.cekirge@bryancave.com
6                  rglancaster@bryancave.com

7 Attorneys for Plaintiffs
COUNTRYWIDE HOME LOANS, INC.,
8 BANK OF AMERICA CORPORATION,
BANK OF AMERICA, N.A., THE BANK
9 OF NEW YORK MELLON and DEUTSCHE BANK
NATIONAL TRUST COMPANY

10                   **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| 12 COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; THE BANK OF NEW YORK MELLON; and DEUTSCHE BANK NATIONAL TRUST COMPANY, <br><br>16  Plaintiffs, <br><br>17  v. <br><br>18 AMERICA'S WHOLESALE LENDER, INC., a New York Corporation; DENNIS L. BELL, an individual; CHERI B. ENGLISH, an individual; JAN VAN ECK (a/k/a HERMAN JAN VAN ECK a/k/a MAURITZ VAN ECK a/k/a MAURICE VAN ECK a/k/a MARITZ VAN ECK a/k/a GEORGE TOMAS), an individual; THE RYZMAN FOUNDATION, INC., a California Corporation; DAVID E. LANDON, an individual; LE VAN NGUYEN, an individual; WENDMERE FUNDING, LLC, a Kentucky limited liability company; CHASE MERRITT FUND I, LLC, a  Nevada limited liability company; and DOES 1-10, <br><br>  Defendants. | **Case No.: 8:12-cv-00242-CJC-AN** <br><br>Hon. Cormac J. Carney <br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS AMERICA'S WHOLESALE LENDER, INC., DENNIS BELL, AND CHERI ENGLISH'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND TO DISMISS DEFENDANT CHERI ENGLISH FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br>[Filed Concurrently with Objections to Defendants' Motion to Strike and Request for Judicial Notice] <br><br>Date:   August 27, 2012 <br>Time:  1:30 p.m. <br>Dept.:  9B <br>Place:  411 West Fourth Street <br>             Santa Ana, CA 92701-4516 |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA  90401-2386

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 2

III.  STANDARD OF REVIEW ....................................................................... 4

IV.   DISCUSSION ......................................................................................... 5

    A.   Plaintiffs Have Standing To Bring This Action and Are Real Parties in Interest ............................................................................... 5

    B.   The Civil Rico Claim Has Been Sufficiently Pled ............................ 7

        1.   The RICO Activity Affected Interstate Commerce ..................... 7

        2.   Plaintiffs Clearly Pled a Pattern of Related and Continuous Criminal Activity ..................................................... 8

        3.   English Participated in the Fraudulent Enterprise .................... 11

    C.   This Court May Exercise Personal Jurisdiction Over Defendant Cheri English.................................................................. 13

        1.   English Attempted to Deceive a Federal Court ......................... 13

        2.   English's Fraudulent Conduct, Directed Toward California Borrowers and Concerning California Property, Subjects Her to Specific Jurisdiction ..................................................... 14

        3.   English's Involvement in the Racketeering Activity Subjects Her to RICO Jurisdiction Pursuant to 18 U.S.C. § 1965(b)........................................................................................ 15

    D.   Plaintiffs Have Not Abandoned Their Trademark and Cancellation Is Improper and Not Warranted ................................. 16

        1.   Abandonment is an Affirmative Defense and Has No Bearing on a Motion to Dismiss ............................................... 17

        2.   Cancellation of Plaintiffs' Trademark is Unwarranted and Improper At This Stage ............................................................ 18

    E.   The Rooker-Feldman Doctrine Does Not Apply ............................. 19

    F.   Plaintiffs Have Adequately Pled Violations of California Business & Professions Code §§ 17200 & 17500 ............................. 21

V.    CONCLUSION ...................................................................................... 22

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

i

# TABLE OF AUTHORITIES

**Page**

### Cases

*Allwaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) .................................................................5, 8, 10

*Bell Atlantic Corp. v. Twombly*,
    550 US 544 (2007)..........................................................................................5

*Bullfrog Films, Inc. v. Wick*,
    847 F. 2d 502 (9th Cir. 1988) ........................................................................5

*Butcher's Union Local No. 498 v. SDC Investments, Inc.*,
    788 F.2d 535 (9th Cir. 1986) ........................................................................15

*Dep't of Commerce v. United States House of Representatives*,
    525 US 316 (1999).........................................................................................5

*Erickson v. Pardus*,
    551 US 89 (2007) ...........................................................................................5

*Fiore v. Walden*,
    657 F.3d 838 (9th Cir. 2011) ..................................................................13, 15

*Gilligan v. Jamco Development Corp.*,
    108 F.3d 246 (9th Cir. 1997) .........................................................................5

*Gladstone Realtors v. Village of Bellwood*,
    441 US 91 (1979)...........................................................................................5

*Grocery Outlet, Inc. v. Albertson's Inc.*,
    497 F.3d 949 (9th Cir. 2007) ........................................................................17

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ......................................................................13

*Heinrich v. Waiting Angels Adoption Servs.*,
    668 F.3d 393 (6th Cir. 2012) ........................................................................11

*Helicopteros Nacionales do Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984).....................................................................................14

*Johnson v. De Grandy*,
    512 U.S. 997 (1994)......................................................................................19

*Kougasian v. TMSL, Inc.*,
    359 F.3d 1136 (9th Cir. 2004) .................................................................19, 20

*Lance v. Dennis*,
    546 U.S. 459 (2006)................................................................................19, 20

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*LeDuc v. Kentucky Cent. Life Ins. Co.*,
  814 F. Supp. 820 (N.D. Cal. 1992) ........................................................ 16

*Menken v. Emm*,
  503 F.3d 1050 (9th Cir. 2007) .............................................................. 14

*Musick v. Burke*,
  913 F.2d 1390 (9th Cir. 1990) ................................................................ 8

*People v. Dollar Rent-A-Car Sys.*,
  211 Cal. App. 3d 119 (1989) .......................................................... 21, 22

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .............................................................................. 11

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) .............................................................. 14

*Silvas v. E*Trade Mortg. Corp.*,
  514 F.3d 1001 (9th Cir. 2008) ................................................................ 5

*Ticor Title Ins. Co. v. Florida*,
  937 F.2d 447 (9th Cir. 1991) .......................................................... 10, 11

*United States v. Juvenile Male*,
  118 F.3d 1344 (9th Cir. 1997) ................................................................ 8

*United States v. Rone*,
  598 F.2d 564 (9th Cir. 1979) .................................................................. 8

*Wood v. Apodaca*,
  375 F. Supp. 2d 942 (N.D. Cal. 2005) .................................................. 17

**Statutes**

15 U.S.C .§ 1052 ....................................................................................... 18

15 U.S.C. § 1052(a) ................................................................................... 18

15 U.S.C. § 1115(b)(2) ............................................................................... 17

18 U.S.C. § 1961 ......................................................................................... 7

18 U.S.C. § 1962 ......................................................................................... 8

18 U.S.C. § 1962(c) ................................................................................... 11

18 U.S.C. § 1965(b) ................................................................................... 15

Bus. & Prof. Code § 17200 ................................................................. 21, 22

Bus. & Prof. Code § 17500 ................................................................. 21, 22

Cal. Bus. & Prof. Code § 17900 ............................................................... 18

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In their First Amended Complaint ("FAC"), Plaintiffs allege, in painstaking detail, numerous facts demonstrating that Defendants hijacked the AMERICA'S WHOLESALE LENDER® trademark and "America's Wholesale Lender" name for the sole purpose of defrauding Plaintiffs and Plaintiffs' customers.[1]

In their Motion to Dismiss ("MTD"), Defendants do not meaningfully challenge the allegations of fraud against them.  Rather, they try to divert the Court's attention from their malfeasance by rehashing arguments that Plaintiffs abandoned their name and mark or used the name and mark improperly so as to justify Defendants' fraudulent impersonation of Plaintiffs.  These issues were already considered and rejected by this Court on March 30, 2012, in deciding to grant Plaintiffs' request for a preliminary injunction against Defendants' fraud. These issues continue to fail here because the affirmative defense of abandonment has no place in the context of a motion to dismiss and Plaintiffs' use of their own trademark and name was entirely proper.  In any event, Plaintiffs' purported improper use of their own name and mark would not grant Defendants free reign to impersonate Plaintiffs and deceive Plaintiffs' customers and courts.

Further, Defendants again trot out the argument that Plaintiffs are somehow not the real parties in interest and cannot prove that they have been injured or damaged by Defendants' fraudulent impersonation of them.  Once again, this argument was already considered and rejected by this Court on March 30, 2012. This argument continues to fail here because the FAC fully alleges how Plaintiffs suffered economic injury and harm to their goodwill and business reputations due to Defendants' deceptive and unauthorized misuse of Plaintiffs' name and mark.

---

[1]    Plaintiffs are Countrywide Home Loans, Inc. ("CHL"), Bank of America Corporation ("BAC"), Bank of America, N.A. ("BANA"), The Bank of New York Mellon ("BNY Mellon"), and Deutsche Bank National Trust Company (Deutsche Bank").  Defendants are America's Wholesale Lender, Inc. ("AWLI"), Dennis L. Bell ("Bell"), and Cheri B. English ("English").

1    Defendants' remaining arguments are also without merit:

2    • Contrary to Defendants' contention, the *Rooker-Feldman* doctrine does not

3      prevent this Court from deciding the 7th and 8th Claims for Declaratory

4      Relief and Cancellation of Instruments because Plaintiffs were not parties

5      to the state court actions at issue and do not seek relief from a state court

6      judgment on the ground that the state court committed legal error.

7    • Contrary to Defendants' contention, Plaintiffs establish all elements of

8      their RICO claims because they allege a clear pattern of racketeering

9      activity that affected interstate commerce.

10   • Contrary to Defendants' contention, this Court does have jurisdiction over

11     Defendant Cheri English because Plaintiffs allege sufficient facts to show

12     that English was involved in the fraudulent attempt to impersonate

13     Plaintiffs and to deceive borrowers and courts in Kentucky and California.

14     These allegations establish that this Court has both specific jurisdiction

15     and national RICO jurisdiction over English.

16   For these and the following reasons, this Court should deny Defendants'

17   Motion to Dismiss.

18   **II.    STATEMENT OF FACTS**

19       The FAC asserts the following relevant facts:

20   • CHL has used the registered "America's Wholesale Lender" fictitious

21     business name and AMERICA'S WHOLESALE LENDER® mark in

22     connection with its mortgage banking business for over eighteen years in

23     California and throughout the United States.  CHL originated over 3.5

24     million loans in California and throughout the United States using the

25     registered name and mark.  "America's Wholesale Lender" continues to be

26     registered by CHL as a fictitious business name in 46 states and both the

27     name and mark are well known to the public.  (FAC ¶¶ 33, 35-36.)

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- As a result of BAC's acquisition of Countrywide Financial Corporation and its family of companies, including CHL, BAC currently owns the AMERICA'S WHOLESALE LENDER® mark.  Plaintiffs continue to use the "America's Wholesale Lender" name and AMERICA'S WHOLESALE LENDER® mark because CHL frequently appears in litigation on behalf of "America's Wholesale Lender" and identifies "America's Wholesale Lender" as its fictitious business name and the "America's Wholesale Lender" name is still on millions of operative loan documents and Plaintiffs rely on these documents to service the these loans and enforce borrowers' obligations under these loans.  (FAC ¶¶ 38-39.)

- On or about December 16, 2008, Bell incorporated AWLI in New York, choosing the name of "America's Wholesale Lender, Inc." for the corporation for the sole purpose of impersonating CHL and committing fraud.  (FAC ¶¶ 40, 43.)

- On December 18, 2008, English attempted to trick the Western District of Kentucky court into believing that CHL was confessing a $5.825 judgment in favor of Defendant Bell by falsely identifying AWLI as the lender named on Bell's loans and executing a confession of judgment.  (FAC ¶ 44.)  The real lender of Bell's loans—CHL using its fictitious business name, "America's Wholesale Lender"—did not authorize English to confess a judgment to Bell.  (FAC ¶¶ 8, 44.)

- On September 11 and October 6, 2009, Van Eck, impersonating the real lender, CHL, falsely executed three satisfactions of mortgage for Bell's mortgages on three separate Kentucky properties, and recorded these satisfactions in the Kentucky land records on September 17 and October 28, 2009.  (FAC ¶¶ 41, 45.)

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

- On October 8, 2009, in furtherance of the attempt to fraudulently release the liens, Bell executed mortgages on these three Kentucky properties in favor of another confederate's company, Devine financial, which then assigned the mortgages to Wendmere Funding, LLC on April 19, 2010. The mortgages and assignments were recorded in the Kentucky land records on February 27, 2010 and April 20, 2010, respectively.  (FAC ¶¶ 46-47.)

- From March 2011 to January 2012, Defendants impersonated CHL, with seven of Plaintiffs' customers, and convinced borrowers to file lawsuits in order to enter into fraudulent settlement agreements and stipulated judgments to release Plaintiffs' liens on the mortgage property, and assign the liens to Defendants' confederates.  Defendants used telephones, mail, e-mail, and wires in furtherance of their fraudulent scheme.  (FAC 14:14-24:14.)

- Defendants' deceptive and fraudulent impersonation of CHL and deceptive, fraudulent and unauthorized misuse of the "America's Wholesale Lender" fictitious business name and AMERICA'S WHOLESALE LENDER® mark have caused pecuniary harm to Plaintiffs because Plaintiffs have been forced to, among other things, expend money that they would not otherwise have had to have expended to protect the loans that they originated, service and/or own.  Defendants' actions have also harmed Plaintiffs goodwill, business reputation and interfered with Plaintiffs' business.  (FAC ¶ 54.)

## III.   STANDARD OF REVIEW

Federal pleading requirements are extremely liberal.  The rules are designed specifically to minimize disputes over pleading technicalities.  "The federal rules require only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 248 (9th

1    Cir. 1997).  A complaint is sufficient if it gives the defendant "fair notice of what

2    the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*,

3    550 US 544, 555 (2007) (internal quotes omitted).  Federal Rules of Civil

4    Procedure, Rule 8(e) provides that "[p]leadings must be construed so as to do

5    justice."  "The Rule 8 standard contains 'a powerful presumption against rejecting

6    pleadings for failure to state a claim.'"  *Gilligan*, 108 F.3d at 249.

7        In determining the sufficiency of a pleading, allegations of material fact are

8    taken as true and construed in the light most favorable to the pleader. *See Erickson*

9    *v. Pardus*, 551 US 89, 94 (2007); *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001,

10   1003-04 (9th Cir. 2008).  A complaint should not be dismissed unless it appears

11   beyond doubt that a plaintiff can prove no set of facts in support of his claim which

12   would entitle him to relief.  *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir.

13   1995).

14   **IV.   DISCUSSION**

15       **A.    Plaintiffs Have Standing To Bring This Action and Are Real**

16             **Parties in Interest**

17       Defendants' contentions that Plaintiffs have no standing and are not the real

18   parties in interest to bring this action are refuted by the allegations in the FAC which

19   show that Plaintiffs have been harmed by Defendants' scheme to impersonate

20   Plaintiffs in order to defraud Plaintiffs and their customers.

21       Standing under Article III of the U.S. Constitution generally requires a

22   showing that a plaintiff has suffered actual loss, damage or injury, or is threatened

23   with impairment of his or her own interests caused by the defendant's wrongful

24   conduct.  *Gladstone Realtors v. Village of Bellwood*, 441 US 91, 99-100 (1979);

25   *Bullfrog Films, Inc. v. Wick*, 847 F. 2d 502, 506 (9th Cir. 1988).  If any plaintiff has

26   standing, it satisfies the standing requirement for all co-plaintiffs who are proper

27   parties on the same complaint seeking the same relief.  *Dep't of Commerce v. United*

28   *States House of Representatives*, 525 US 316, 328 (1999).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    Here, Defendants argue that Plaintiffs have no legal standing and are not the

2 real parties in interest to bring this action because "no Plaintiff's [sic] can establish

3 that they lent their own funds, or that they paid any consideration for any

4 assignments of deed of trust that purport [sic] to transfer loan ownership" so "there

5 can be no injuries for the alleged fraudulent scheme pleaded in the FAC."  (MTD

6 24:13-26.)

7    First, Defendants overlook the fact that at this stage in the litigation, Plaintiffs

8 need only *allege* injury for standing, they do not need to present evidence to

9 *establish* any injury.  Second, Plaintiffs have adequately alleged economic injury to

10 show standing.  Specifically, Plaintiffs have alleged that, as a result of "[t]he AWLI

11 Defendants' deceptive and fraudulent impersonation of CHL and deceptive,

12 fraudulent and unauthorized misuse of the 'America's Wholesale Lender' fictitious

13 business name and AMERICA'S WHOLESALE LENDER® mark," Plaintiffs have

14 suffered pecuniary harm because they have "incurred legal fees and costs in prior

15 litigation other than the one at issue," lost servicing fees, mortgage payments, had a

16 lien extinguished, and incurred carrying costs such as tax payments and hazard

17 insurance payments.  (FAC ¶¶ 54, 79-82, 104-106.)  Further, Plaintiffs alleged that

18 "[t]he AWLI Defendants' actions have also harmed Plaintiffs goodwill, business

19 reputation and interfered with Plaintiffs' business."  (FAC ¶¶ 54, 90.)

20    These allegations are sufficient to show that all Plaintiffs—CHL, BAC,

21 BANA, BNY Mellon, and Deutsche Bank—have suffered economic harm as a

22 result of Defendants' fraudulent scheme to impersonate CHL and misuse the

23 "America's Wholesale Lender" name and mark.  Even if only one Plaintiff could

24 allege economic harm, which is not the case here, this would be sufficient to show

25 that the standing requirement has been met for all plaintiffs.  *Dep't of Commerce*,

26 525 US at 328.

27    Defendants take issue with the May loan and dispute that BANA is the

28 current servicer of the loan.  (MTD 24:19-25.)  Even if the loan were service-

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  released to another and BANA is not the current servicer of the loan, this would not

2  affect BNY Mellon's ownership rights to the loan in its capacity as trustee of

3  Alternative Loan Trust 2006-OA2.  (*See* FAC 22:25-26.)  Thus, Defendants' attempt

4  to release this loan would still cause harm to BNY Mellon's ownership rights to the

5  loan and would still demonstrate standing.  Defendants' claim that this somehow

6  demonstrates "a clear motive and propensity to make false representations to the

7  court," has absolutely no relevance to this Motion.

8          **B.**    **The Civil Rico Claim Has Been Sufficiently Pled**

9         Defendants complain that the first claim alleging civil RICO violations fails

10  to "specifically" allege that Defendants' conduct affected interstate commerce or

11  amounted to a pattern of racketeering activity.  Defendants also contend that the

12  FAC fails to allege that Defendant English committed two predicate acts to hold her

13  liable under RICO.  These arguments fail because the FAC lays out in meticulous

14  detail how Defendants' fraud affected individuals and national corporations in

15  California and Kentucky, establishing an effect on interstate commerce.  The FAC

16  also alleges the specific dates, fraudulent intent and activity, and use of the mail,

17  telephones, e-mail, and wires to establish a pattern of racketeering activity.  Further,

18  RICO does not require Plaintiffs to allege that English committed two predicate

19  acts.  It is enough to allege that English participated in the AWLI enterprise, which

20  the FAC has done.  Thus, Plaintiffs have sufficiently alleged a claim under RICO.

21          **1.**    **The RICO Activity Affected Interstate Commerce**

22         Defendants maintain that the RICO claim is defective because there is no

23  "specific" allegation in the FAC that Defendants' conduct affected interstate or

24  foreign commerce.  (MTD 12:4-12.)  Defendants mischaracterize RICO's

25  requirements.

26         To establish a claim under the Racketeer Influenced and Corrupt Organization

27  Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, plaintiffs must demonstrate that the

28  enterprise which is involved in the racketeering activity is one engaged in, or having

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

an effect on, interstate commerce. *Musick v. Burke*, 913 F.2d 1390, 1398 (9th Cir. 1990). RICO requires that the activities of the "enterprise," affect interstate commerce, not each "predicate act" of racketeering. *United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979). The interstate commerce nexus may be "minimal" or "de minimis" and the requirement is satisfied by proof of a probable or potential impact. *United States v. Juvenile Male*, 118 F.3d 1344, 1348-49 (9th Cir. 1997).

In the FAC, Plaintiffs sufficiently pled that AWLI, the RICO enterprise, is corporation with its principal place of business in New York, that engaged in fraudulent activities in Kentucky and California. (FAC ¶¶ 6, 44-49.) Further, coconspirators Bell, English, and Van Eck are residents of Kentucky, Kentucky, and Connecticut (respectively) and engaged in fraudulent activities in Kentucky and California. (FAC ¶¶ 7-9, 22-24, 44-49.) Defendants' actions affected Plaintiffs— national corporations—operating and engaged in transactions throughout the country. (FAC ¶¶ 1-5, 79-82.) Defendants' fraudulent activities crossed state lines and affected individuals and businesses throughout at least two states, Kentucky and California. Thus, Plaintiffs have adequately shown that the RICO enterprise, and Defendants in particular, have had at least a *de minimis* effect on interstate commerce.

## 2. Plaintiffs Clearly Pled a Pattern of Related and Continuous Criminal Activity

"To prevail under RICO, a plaintiff must establish a 'pattern of criminal activity'. 18 U.S.C. § 1962. At a minimum, a 'pattern' requires that the predicate criminal acts be 'related' and 'continuous.'" *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). "Continuous" conduct is shown by pleading either "closed-ended continuity," which is "established by showing that the predicate acts occurred over a substantial period of time," or by pleading "open-ended continuity," which is "established by showing either that the predicate acts specifically threaten repetition

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   or that they were an ongoing entity's regular way of doing business." *Id.* at 1526.

2   "Flexibility rather than rigidity should govern the application of RICO." *Id.* at 1528.

3       Defendants claim that the "FAC does not adequately put Defendant's [sic] on

4   notice of which precise acts constitute the precise pattern of racketeering activity,

5   and make clear how the continuity element is established," and fails to plead

6   Defendants' specific intent to defraud or the use of the mail, phones, or faxes.

7   (MTD 15:10-15, 16:6-10.)  Defendants focus only on the section of the FAC

8   discussing the First Claim for Relief under RICO and completely overlook the

9   numerous previous detailed factual allegations, which were incorporated by

10  reference into this section.  In the FAC, Plaintiffs clearly alleged that the predicate

11  acts were related to Defendants' impersonation of CHL through AWLI (relying on

12  the confusion over CHL's nearly identical fictitious business name "America's

13  Wholesale Lender"), which began in 2008 and continued at least until January 2012.

14  (FAC ¶¶ 77-78.)  Specifically, Plaintiffs alleged that:

- Bell chose the name for and incorporated the RICO enterprise, AWLI, on or about December 16, 2008, for the sole purpose of impersonating CHL and committing fraud.  (FAC ¶¶ 40, 43.)

- On December 18, 2008, English attempted to trick the Western District of Kentucky court into believing that CHL was confessing a $5.825 judgment in favor of Defendant Bell by falsely identifying AWLI as the lender named on Bell's loans and executing a confession of judgment.  (FAC ¶ 44.)  The real lender of Bell's loans—CHL using its fictitious business name, "America's Wholesale Lender"—did not authorize English to confess a judgment to Bell.  (FAC ¶¶ 8, 44.)

- On September 11 and October 6, 2009, Van Eck, without any authority to do so, falsely executed three satisfactions of mortgage for Bell's mortgages on three separate Kentucky properties, and recorded these

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

satisfactions in the Kentucky land records on September 17 and October 28, 2009.  (FAC ¶ 45.)

- On October 8, 2009, in furtherance of the attempt to fraudulently release the liens, Bell executed mortgages on these three Kentucky properties in favor of another confederate's company, Devine financial, which then assigned the mortgages to Wendmere Funding, LLC on April 19, 2010. The mortgages and assignments were recorded in the Kentucky land records on February 27, 2010 and April 20, 2010, respectively.  (FAC ¶¶ 46-47.)

Further, the FAC specifically details Defendants' interactions with seven of Plaintiffs' customers from March 2011 to January 2012 where Defendants impersonated CHL through the confusion over the AWLI name, convinced borrowers to file lawsuits in order to enter into fraudulent settlement agreements and stipulated judgments to release Plaintiffs' liens on the mortgage property, and assign the liens to Defendants' confederates.  (FAC 14:14-24:14.)  Plaintiffs specifically plead dates, Defendants' fraudulent intent and actions, and Defendants' use of telephones, mail, e-mail, and wires in furtherance of their fraudulent scheme.  *Id.* These allegations establish a pattern of related criminal acts that occurred over a substantial period of at least three years, from December 2008 to January 2012. This is sufficient to show close-ended continuity.  *Allwaste, Inc.*, 65 F.3d at 1526 (holding that predicate acts occurring over a period of thirteen months is sufficient to satisfy closed-ended continuity requirement).  Further, these allegations are also sufficient to show open-ended continuity because the repeated fraudulent actions of impersonating CHL by the AWLI Defendants demonstrate a clear threat of continuing misconduct and show that this was AWLI's regular way of doing business.  *Id.*

In *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450-451 (9th Cir. 1991), the court ruled that defendants forging three title documents in thirteen months reflected

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

a regular way of doing business and a continuing threat of criminal activity so as to satisfy the open-ended continuity requirement.  Here, the FAC alleges at least eighteen predicate acts over a three year timeframe, including executing false confessions of judgment, executing false satisfactions of mortgage, executing and filing false settlement agreements and stipulated judgments with state courts, and executing and recording false reconveyances and assignments.  (FAC ¶¶ 44-45, 49.) This volume of criminal conduct is even more extensive than the defendants' behavior in *Ticor*, which the Ninth Circuit found established open-ended continuity. Such repeated misconduct reflects AWLI's regular way of doing business and shows a clear threat of future criminal activity to warrant a finding of open-ended continuity here.  While Defendants appear to argue that there is no continued threat due to the preliminary injunction and lawsuit (MTD 14:9-13), courts reject the argument that filing suit (or the government prosecuting) stops the illicit actions, thereby eliminating the risk of future misconduct. "The lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 410 (6th Cir. 2012).  As demonstrated above, Plaintiffs have clearly established a pattern of racketeering activity with sufficient detail to state a RICO claim.

### 3.   English Participated in the Fraudulent Enterprise

Defendants next complain that the FAC does not identify two acts of racketeering activity committed by Defendant English, so she must be dismissed. (MTD 12:26-13:4, 13:15-19, 16:11-14.)  English can be liable under RICO, however, so long as she conducts or participates in the enterprise.  18 U.S.C. § 1962(c).  "In order to participate, directly or *indirectly*, in the conduct of such enterprise's affairs, one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (internal quotes omitted).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Plaintiffs have adequately alleged English's participation in the AWLI enterprise and have identified at least one predicate act by English. Plaintiffs have alleged that "English is a former Executive Vice President, Vice President and/or "Secretary Treasure" of AWLI"; she "conducted the affairs of the AWLI enterprise by, among other things, taking unauthorized and fraudulent actions with respect to various loans and liens in which AWLI had no interest." (FAC ¶¶ 59, 67.)

Plaintiffs specifically detail English's *direct* involvement with the enterprise through her unauthorized and fraudulent actions with regard to Bell's loans in 2008. The FAC clearly alleges that on December 18, 2008, English attempted to trick the Western District of Kentucky court into believing that CHL was confessing a $5.825 judgment in favor of Defendant Bell by falsely identifying AWLI as the lender named on Bell's loans and executing a confession of judgment as the "Executive Vice President" of AWLI. (FAC ¶ 44.) In reality, the lender of Bell's loans—CHL using its fictitious business name, "America's Wholesale Lender"—did not authorize English to confess a judgment to Bell. (FAC ¶¶ 8, 44.)

Further, Plaintiffs have sufficiently alleged English's *indirect* participation in the conduct of the enterprise's affairs because the FAC alleges that English consulted with the other AWLI defendants and acted within her hierarchical role as Executive Vice President, Vice President and/or "Secretary Treasure" of AWLI to "defraud borrowers and impair various Plaintiffs' interests in mortgaged property." (FAC ¶¶ 59, 63.) Thus, Plaintiffs have shown that "[i]n conducting the affairs of the AWLI enterprise, English has engaged in a pattern of racketeering activity." (FAC ¶ 73.) *See Reves*, 507 U.S. at 179.

As shown above, Plaintiffs have fully met the requirements to state a civil RICO claim.

SM01DOCS\917512.3

**C.      This Court May Exercise Personal Jurisdiction Over Defendant Cheri English**

Defendants next contend that this Court has no jurisdiction over English and she must be dismissed from this action.  (MTD 7:3-7; 17:17-18:9.)  This is not so. Plaintiffs have adequately alleged that Defendant Cheri English is subject to personal jurisdiction in this Court on the basis of sufficient "minimum contacts" and under RICO's nationwide jurisdiction.

In opposing a motion to dismiss on the papers, "the plaintiff need only make a 'prima facie' showing of jurisdictional facts," to establish a basis for personal jurisdiction. *Fiore v. Walden*, 657 F.3d 838, 846 (9th Cir. 2011).  A "prima facie" showing means that a plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  "Uncontroverted allegations in plaintiff's complaint must be taken as true," and "the court resolves all disputed facts in favor of the plaintiff." *Fiore*, 657 F.3d at 846-47.  The court must "draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility." *Id.* at 847.

Here, Defendants argue in their Motion to Dismiss that there is no basis to exercise personal jurisdiction over Cheri English because the FAC fails to allege "specific facts" to show that English (1) was involved in any wrongdoing, "other than her being a 'former vice president,'" because she resigned on March 11, 2011, and the allegations in the FAC post-date her resignation; or (2) has any contacts with California or directed any activities to California.  (MTD 7:3-7; 17:17-18:9.) Neither of these arguments has any merit.

**1.      English Attempted to Deceive a Federal Court**

First, the FAC clearly alleges that on December 18, 2008, English attempted to trick the Western District of Kentucky court into believing that CHL was

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

confessing a $5.825 judgment in favor of Defendant Bell by falsely identifying AWLI as the lender named on Bell's loans and executing a confession of judgment as the "Executive Vice President" of AWLI.  (FAC ¶ 44.)  Not only does this conduct show specific wrongdoing on the part of English in attempting to deceive a court into entering judgment against CHL, but this conduct also predates English's claimed resignation (which has no evidentiary support).  Thus, Plaintiffs have alleged sufficient facts to show that English was involved in wrongdoing to subject her to liability.

### 2. English's Fraudulent Conduct, Directed Toward California Borrowers and Concerning California Property, Subjects Her to Specific Jurisdiction

Second, the FAC makes a 'prima facie' showing of jurisdictional facts to allow this Court to exercise personal jurisdiction over English.  California courts may assert specific jurisdiction over non-resident defendants if their activities in the forum give rise to or are related to the litigation.  *Helicopteros Nacionales do Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984).  Specific jurisdiction is established by a three-part test: (1) the out of state defendant must have purposefully directed its activities toward residents of the forum state; (2) the cause of action must arise out of or result from the defendant's forum-related action; and (3) the forum's exercise of personal jurisdiction must be reasonable.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  Once a plaintiff establishes the first two factors, the burden is on the defendant to present a "*compelling* case that the exercise of jurisdiction would not be reasonable."  *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (emph. added; internal quotes omitted).  The mere fact local litigation is inconvenient is not enough to show that it is unreasonable.  *Sher*, 911 F.2d at 1365.

In the FAC, Plaintiffs met the first prong for specific jurisdiction by alleging that English purposefully directed her activities toward California residents by conducting the affairs of and participating as an officer of AWLI, and "recording

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

fraudulent reconveyances and assignments in California county recorder's offices that affect Plaintiffs' liens on California real properties; and (2) filing fraudulent stipulated judgments in California state courts that purport to affect Plaintiffs' loans related to and liens on California real properties." (FAC ¶¶ 8, 23, 59, 67.) Furthermore, Plaintiffs have alleged that English is currently participating in a consumer fraud scheme that targets California borrowers. (FAC ¶ 48.)

The second and third prong of the specific jurisdiction test are also met because the instant action arises out of these California-directed activities and it is reasonable for English to defend the action in California, which has a strong interest in adjudicating this matter. Defendants have failed to show any reason why litigating this action in California would be unreasonable to English. At this stage, these allegations are more than sufficient to meet the prima facie showing that English is subject to personal jurisdiction here and this Court must disregard any conflicting and unsupported allegations in Defendants' Motion to Dismiss. *Fiore*, 657 F.3d at 846-47.

**3.    English's Involvement in the Racketeering Activity Subjects Her to RICO Jurisdiction Pursuant to 18 U.S.C. § 1965(b)**

Finally, the FAC clearly alleges that English was engaged in racketeering activity through the AWLI enterprise that directed its fraudulent conduct to California to allow this Court to exercise personal jurisdiction over English. *See* Section IV.B.3, *supra*.

A federal court obtains personal jurisdiction over a nonresident defendant under 18 U.S.C. § 1965(b), which authorizes nationwide service in RICO suits. See *Butcher's Union Local No. 498 v. SDC Investments, Inc.*, 788 F.2d 535, 538-39 (9th Cir. 1986). "For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over *all* of the alleged co-

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   conspirators." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 826 (N.D.

2   Cal. 1992) (emph. added).

3     Here, Plaintiffs have alleged that English, along with defendants Bell, Van

4   Eck, Paul Nguyen, Shriver, and Villapudua, was a member of the AWLI enterprise

5   and was engaged in racketeering activity to defraud borrowers and impair Plaintiffs'

6   interests in mortgaged property.  (FAC ¶¶ 56-63.)  This Court has personal

7   jurisdiction over defendants Paul Nguyen, Shriver, and Villapudua because they are

8   California residents.  While English and Bell both reside in Kentucky, Van Eck

9   resides in Connecticut and the other confederates reside in California.  Therefore, no

10  other district court will have jurisdiction over all of the defendants, and California,

11  the state in which the subject mortgaged properties and borrowers are located, is the

12  most appropriate forum to litigate this action.

13    Accordingly, because there are allegations of specific wrongdoing by English,

14  as well as sufficient facts to support both limited jurisdiction and RICO jurisdiction,

15  Defendants' attempts to have English dismissed for lack of personal jurisdiction

16  must be denied.

17    **D.** **<u>Plaintiffs Have Not Abandoned Their Trademark and Cancellation</u>**

18     **<u>Is Improper and Not Warranted</u>**

19    Defendants' contention that Plaintiffs abandoned the AMERICA'S

20  WHOLESALE LENDER® trademark and "America's Wholesale Lender" name is

21  without merit for two reasons.  First, "abandonment" is an affirmative defense to a

22  claim for trademark infringement and cannot serve as a ground for dismissal at this

23  stage.  Second, Plaintiffs have not abandoned the name.  Plaintiffs still associate

24  themselves with the AMERICA'S WHOLESALE LENDER® trademark and

25  "America's Wholesale Lender" name and have adequately alleged this in the FAC.

26  This precludes a finding of abandonment.  Further, Defendants' improper backdoor

27  attempt to have Plaintiffs' trademark cancelled because it was purportedly used in

28  an immoral manner should be disregarded.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1.   **<u>Abandonment is an Affirmative Defense and Has No Bearing on a Motion to Dismiss</u>**

Defendants devote much of their Motion to Dismiss to their contention that Plaintiffs "intentionally abandoned their trademark," thus requiring dismissal of claims two, three, and four relating to trademark infringement and false designation of origin.  (MTD 18:14-21:12.)  Aside from the fact that this Court has already considered and rejected this abandonment argument in granting Plaintiffs' preliminary injunction against Defendants on March 30, 2012,[2] this abandonment argument has no place in the context of a motion to dismiss.

"Abandonment is a **defense** to a claim of infringement of a registered trademark. 15 U.S.C. § 1115(b)(2)." *Grocery Outlet, Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (emph. added).  As long as a plaintiff alleges continuous use of a trademark, the plaintiff need not plead around the affirmative defense of abandonment to survive a motion to dismiss. *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947 (N.D. Cal. 2005) (rejecting defendants arguments in their motion to dismiss that allegations in the complaint "imply" that plaintiff abandoned the use of the mark).

Here, Plaintiffs have alleged continuous use of their trademark and the "America's Wholesale Lender" name, and have thus met the elements for trademark infringement and false designation of origin.  (FAC ¶¶ 33, 39.)  The abandonment claim has no bearing on the Motion to Dismiss.

---

[2] At the March 30, 2012 hearing, this Court specifically found that "the mark and name [have] not been abandoned.  In fact, it's in all the deeds of trust and loan documents that are still in existence that plaintiffs have a right to pursue their rights, remedies, and options for….I do not believe that the mark or the name has been abandoned.  I do believe it's being currently, actively used.  And I can assure you that there are hundreds of cases pending in this court where the name and this entity is part of the record and they're still ongoing.  So it hasn't been abandoned." (Transcript of Order to Show Cause Hearing, March 30, 2012, at 11:4-7; 12:12-17).

2.      **Cancellation of Plaintiffs' Trademark is Unwarranted and Improper At This Stage**

Defendants contend that Plaintiffs' trademark should be cancelled under 15 U.S.C. 1052(a) because of what they perceive to be an "immoral" and "scandalous" use of the mark to "shield" CHL from the predatory lending claims of its borrowers. (MTD 21:16-22:14.)  First, this attempt to cancel Plaintiffs' trademark is improper in the context of a motion to dismiss because it requires this court to go well beyond the four corners of the FAC to determine issues of fact regarding the claims of Defendants.  Second, the code cited by Defendants, 15 U.S.C. § 1052(a), does not allow Defendants to cancel a trademark, it merely provides grounds for refusal to register a trademark.[3]  Third, CHL's use of the "America's Wholesale Lender" fictitious business name was proper.  There is nothing improper about using a fictitious business name.  *See, e.g.*, Cal. Bus. & Prof. Code §§ 17900 *et seq.*  CHL did not use this fictitious business name to conceal its identity from borrowers.  To the contrary, CHL publicly registered "America's Wholesale Lender" as a fictitious business name, which continues to be registered in 46 states.  (FAC ¶ 33.)

Identifying "America's Wholesale Lender" as a New York corporation in loan documents is also proper.  "America's Wholesale Lender" is CHL, which is a New York corporation.  (FAC ¶¶ 1, 33.)  Defendants cannot point to anything in the FAC to show that Plaintiffs' customers were prejudiced by CHL's manner of

---

[3] 15 U.S.C .§ 1052 provides: No trademark by which the goods of the applicant may be distinguished from the goods of others **shall be refused registration on the principal register on account of its nature unless it** –

(a) Consists of or comprises immoral, deceptive, or scandalous matter; or matter which may disparage or falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols, or bring them into contempt, or disrepute; or a geographical indication which, when used on or in connection with wines or spirits, identifies a place other than the origin of the goods and is first used on or in connection with wines or spirits by the applicant on or after one year after the date on which the WTO Agreement (as defined in section 3501(9) of title 19) enters into force with respect to the United States.

15 U.S.C. § 1052(a) (emph. added).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  identifying "America's Wholesale Lender" in loan documents.  Rather, the

2  confusion as to the identity of the lender started when Defendants incorporated

3  AWLI, and began impersonating CHL to swindle Plaintiffs and Plaintiffs'

4  customers.  (FAC ¶¶ 40-49.)  In any event, CHL's manner of identifying "America's

5  Wholesale Lender" in loan documents—even if Defendants believed it was

6  improper—does not give Defendants license to impersonate Plaintiffs and to defraud

7  Plaintiffs and Plaintiffs' customers.

8          **E.**      **The _Rooker-Feldman_ Doctrine Does Not Apply**

9        Defendants' contention that the *Rooker-Feldman* doctrine bars Plaintiffs

10  claims for declaratory relief and cancellation of state court judgments fails because

11  Plaintiffs only seek to cancel assignments and reconveyances obtained through

12  Defendants' **fraud** on the state courts, and Plaintiffs were not parties to the state

13  court actions, so the doctrine is not implicated.

14        "The *Rooker-Feldman* doctrine has evolved from the two Supreme Court

15  cases from which its name is derived." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136,

16  1139 (9th Cir. 2004).  *Rooker-Feldman* "is a narrow doctrine, confined to cases

17  brought by state-court losers complaining of injuries caused by state-court

18  judgments rendered before the district court proceedings commenced and inviting

19  district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S.

20  459, 464 (2006).  The Supreme Court has held that the *Rooker-Feldman* doctrine is

21  "inapplicable where the party against whom the doctrine is invoked was not a party

22  to the underlying state-court proceeding." *Id.* (vacating district court's dismissal of

23  claim because *Rooker-Feldman* does not bar federal actions merely because a party

24  is in privity with a state-court loser); *see also Johnson v. De Grandy*, 512 U.S. 997,

25  1006 (1994) (*Rooker-Feldman* did not bar the United States from bringing its own

26  action in federal court under the Voting Rights Act, even though the Florida

27  Supreme Court had already declared the law valid under state and federal law).

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

The *Rooker-Feldman* doctrine "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Kougasian*, 359 F.3d at 1140 (emphasis in the original). The *Rooker-Feldman* doctrine does not apply when a federal plaintiff "alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud" or alleges claims based on "wrongful acts by the defendants." *Kougasian*, 359 F.3d at 1141-42 (holding *Rooker-Feldman* doctrine inapplicable where plaintiff alleged adverse party submitted a false declaration to the state court resulting in extrinsic fraud on the court).

The *Rooker-Feldman* doctrine does not apply in this case. First, in their Cancellation of Instruments claim, Plaintiffs do not seek to appeal or overturn any state court judgments. As the FAC makes clear, Plaintiffs simply seek to cancel various assignments and reconveyances of liens that Defendants recorded without any authority. (*See* FAC ¶¶ 120-122.)

Second, even if Plaintiffs were challenging state court judgments with respect to the subject loans, *Rooker-Feldman* is inapplicable here because Plaintiffs were not parties to any of the state court actions in which the subject loans were purportedly adjudicated. Because Plaintiffs were not parties to the state court actions, they are not "state-court losers" seeking to appeal state court judgments, and the doctrine does not apply. *See Lance*, 546 U.S. at 464.

Third, Plaintiffs may seek relief from the state court stipulated judgments based on Defendants' continuing fraudulent impersonation of CHL and Defendants' extrinsic fraud on the state courts. "Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud." Kougasian, 359 F.3d at 1141. Thus, *Rooker-Feldman* does not bar Plaintiffs from seeking to overturn state court judgments obtained through Defendants' fraud.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

F.   **Plaintiffs Have Adequately Pled Violations of California Business & Professions Code §§ 17200 & 17500**

In contrast to Defendants' assertions, Plaintiffs have adequately alleged violations of Business & Professions Code §§ 17200 & 17500. Beside their blanket criticisms that the claims have not been pled with particularity, Defendants fail to point to any specific reason why these claims should be dismissed. (MTD 23:19-24:8.)

In their FAC, Plaintiffs have fully pled the requisite statutory violations in painstaking detail, showing how Defendants falsely claimed that AWLI was the lender of the subject loans, orchestrated the filings of lawsuits in state courts so that they could impersonate CHL and enter in settlement agreements and stipulated judgments for which they had absolutely no authority, and executed false confessions of judgment, false satisfactions of mortgage, false settlement agreements, false stipulated judgments with state courts, and recorded false reconveyances and assignments. (FAC ¶¶ 44-45, 49, 101-102.)

Further, Plaintiffs have sufficiently alleged that Defendants engaged in untrue or misleading advertising under Section 17500. This section "prohibits the use of any untrue or misleading statement in selling real or personal property or personal services. The prohibition extends to the use of false or misleading oral statements." *People v. Dollar Rent-A-Car Sys.*, 211 Cal. App. 3d 119, 128 (1989). "In order to recover under [Section 17500], it is necessary to show only that members of the public are likely to be deceived." *Id.* at 129.

In the FAC, Plaintiffs have fully alleged that Defendants are using the "America's Wholesale Lender" name and mark in order to mislead borrowers into thinking that they are dealing with CHL, with the intent to promote and sell Defendants' services and to profit from Plaintiffs' reputation and goodwill. (FAC ¶¶ 48-49, 109.) Plaintiffs have alleged that Defendants use the "America's Wholesale Lender" name when they orally solicit borrowers to engage in

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Defendants' services and in written communication regarding their services.  (FAC

2  ¶¶ 48, 49(a), (b) & (d).)  These oral and written communications using the

3  "America's Wholesale Lender" to promote Defendants' services are sufficient to

4  establish untrue and misleading advertising under Section 17500. *See Dollar Rent-*

5  *A-Car Sys.*, 211 Cal. App. 3d at 128.

6      Moreover, Plaintiffs have fully alleged how they were damaged by such

7  conduct.  *See* Section IV.A, *supra*.  Therefore, Plaintiffs have established claims for

8  violations of Sections 17200 and 17500.

9  **V.     CONCLUSION**

10      For the above reasons, Plaintiffs respectfully request that this Court deny

11  Defendants' Motion to Dismiss.  If this Court is inclined to grant Defendants'

12  Motion in any part, Plaintiffs request leave to amend to address any pleading

13  deficiencies.

14  Dated:  August 6, 2012                    Respectfully submitted,

15                                            **BRYAN CAVE LLP**

16

17                                            By:   /s/ Nafiz Cekirge
                                                   NAFIZ CEKIRGE
18
                                             Attorneys for Plaintiffs
19                                           COUNTRYWIDE HOME LOANS, INC.,
                                             BANK OF AMERICA CORPORATION,
20                                           BANK OF AMERICA, N.A., THE BANK
                                             OF NEW YORK MELLON and DEUTSCHE
21                                           BANK NATIONAL TRUST COMPANY