STEVEN C. VONDRAN (BAR NO. 232337)
steve@vondranlaw.com
THE LAW OFFICES OF STEVEN
C. VONDRAN, P.C.
620 Newport Center Drive
Suite 1100
Newport Beach, CA 92660
Telephone: (949) 945-8700
Facsimile: (888) 551-2252

Attorney for Defendant(s) and Crossdefendant(s):
AMERICA'S WHOLESALE LENDER, INC.,
DENNIS L. BELL; CHERI B. ENGLISH, AND
WENDMERE FUNDING, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A., THE BANK OF NEW YORK MELLON and DEUTSCHE BANK NATIONAL TRUST COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICA'S WHOLESALE LENDER, INC., a New York Corporation; DENNIS L. BELL, an individual; CHERI B. ENGLISH, an individual; JAN VAN ECK (a/k/a HERMAN JAN VAN ECK a/k/a MAURITZ VAN ECK a/k/a MAURICE VAN ECK a/k/a MARITZ VAN ECK a/k/a GEORGE TOMAS), an individual: THE RYZMAN FOUNDATION, INC., a California Corporation, DAVID E. LANDON, an individual, LE VAN NGUYEN, an individual; WENDMERE FUNDING, LLC, a Kentucky limited liability company; CHASE MERRITT FUND I, LLC, A Nevada limited liability company; and DOES 1-10 <br><br> Defendants, | Case No.: CV 12-00242 CJC (ANx) <br><br> HON. JUDGE CORMAC J. CARNEY <br><br> **DEFENDANT AMERICA'S WHOLESALE LENDER, INC., CHERI B. ENGLISH, WENDMERE FUNDING, LLC, AND DENNIS L. BELL NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER AND TO SEAL RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES.** <br><br> [*Proposed Order filed concurrently*] <br><br> **Hearing** <br> Date: February 4th, 2013 <br> Time: 1:30 p.m. <br> Ct: 9B |

1

2 DAVID E. LANDON, an individual,

3     Counterclaimant

4

5      v.

6 COUNTRYWIDE HOME LOANS,
 INC.; BANK OF AMERICA

7 CORPORATION; BANK OF
 AMERICA, N.A., THE BANK OF NEW

8 YORK MELLON and DEUTSCHE
 BANK NATIONAL TRUST

9 COMPANY,

10     Counterdefendants

11 -------------------------------------------------

12 DAVID E. LANDON, an individual,

13     Crossclaimant,

14      v.

15 AMERICA'S WHOLESALE LENDER,
 INC., a New York Corporation;  DENNIS

16 L. BELL, an individual;  CHERI B.
 ENGLISH, an individual: JAN VAN

17 ECK (a/k/a HERMAN JAN VAN ECK
 a/k/a MAURITZ VAN ECK a/k/a

18 MAURICE VAN ECK a/k/a MARITZ
 VAN ECK a/k/a GEORGE TOMAS), an

19 individual; and ROES 1-100,

20     Crossdefendants.

21 -------------------------------------------------

22

23

24

25

26

27

28

2

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

THE RYZMAN FOUNDATION, INC., a
California Corporation,

Counterclaimant,

v.

COUNTRYWIDE HOME LOANS,
INC.; BANK OF AMERICA
CORPORATION; BANK OF
AMERICA, N.A., THE BANK OF NEW
YORK MELLON and DEUTSCHE
BANK NATIONAL TRUST
COMPANY,

Counterdefendants

------------------------------------------------------

THE RYZMAN FOUNDATION, INC., a
California Corporation,

Crossclaimant,

v.

AMERICA'S WHOLESALE LENDER,
INC., a New York Corporation; DENNIS
L. BELL, an individual;  CHERI B.
ENGLISH, an individual: JAN VAN
ECK (a/k/a HERMAN JAN VAN ECK
a/k/a MAURITZ VAN ECK a/k/a
MAURICE VAN ECK a/k/a MARITZ
VAN ECK a/k/a GEORGE TOMAS), an
individual; and ROES 1-10,

Crossdefendants

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

# TABLE OF CONTENTS

**Page**

I.      Notice of Motion…………………………………………..……...4-5

II.     Introduction…………………………………………………..…..6-7

III.    Memorandum of Points and Authorities…………………………8-19

   A. The   Court   is   empowered   to   issue   a   protective order……………………………………………………….……8

   B. Defendant AWLI, and Bell and English, each hereby assert their 5th amendment right against self-incrimination…………………………………..8-9

   C. Good Cause exists for this Court to issue a protective order……..9-14

   D. The protective order must also permit Defendant to continue to conduct its own discovery in order to protect its interests in this litigation…………………………………………………………14-15

   E. This protective order must be extended and applied to all other parties to this proceeding…………………………………………………15

   F. The protective order must include an Order to seal all of Defendant's discovery responses in this case……………………………………………15

   G. No other parties will suffer no prejudice by the granting of this protective order as the case will be allowed to proceed…………………16-17

H.    A Protective Order Would Not Injure the Public Interest or Persons

Not Parties to the Litigation…………………………………………………..17-19

IV.    Conclusion……………………………………………………19-20

# TABLE OF AUTHORITIES

**Page**

## I. CASES

*Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)...................8

*Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) ...................8

*Kastigar v. United States*, 406 U.S. 441 (1972)......................................9

*Allen v. Illinois*, 478 U.S. 364, 368 (1986) ........................................9

*Maness v. Meyers*, 419 U.S. 449 (1975). ............................................9

*United States v. Kordel*, 397 U.S. 1, 7-8 (1970) ....................................9

*Spevack v. Klein*, 385 U.S. 511 (1967) ..............................................9

*Campbell v. Gerrans*, 592 F.2d 1054, 1056-57 (9th Cir. 1979) .....................9

*State v. Wilcox*, 942 P.2d at 208 (1997)...............................................9

*Bellis v. United States*, 417 U.S. 85 (1974)...........................9-10,11,12,13

*Braswell v. United States*, 487 U.S. 99 (1988).......................................10

*California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) ............................10

*United States v. White*, 322 U.S. 694 (1944) .......................................10

*Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 211-12 (1 Cir. 1987)...............................................................................11

*Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)..........11

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, 2009 U.S. Dist. LEXIS 60849.......................................................................14

*Hoffman v. United States*, 341 U.S. 479, 486 (1951)...............................14

*Huffy Corp. v. Sup.Ct.* (Winterthur Swiss Ins. Co. (2003) 112 CA4th 97, 108, 4 CR3d 823, 834.................................................................................15

*U.S. v. Talco Contractors, Inc.*, 153 F.R.D. 501 (W.D. N.Y. 1994). ..............16

*LaSalle Bank Lake View v. Seguban*, 851 F. Supp. 336 (N.D. Ill. 1994)..............................................................................................16

*In re Moses*, 792 F. Supp. 529, 536–537 (E.D. Mich. 1992).......................17

*S.E.C. v. Thomas*, 116 F.R.D. 230, 234–235 (D. Utah 1987).....................17

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980).................................................................................................18

## II. STATUTES

*Fed. R. Civ. P. 26(c)(1)*............................................................*8, 18*
*Fifth Amendment to U.S. Const*..................................................*1-20*

## III. MISCELLANEOUS

6-26 James Wm. Moore et al., *Moore's Federal Practice* ¶ 26.104[1] (3d ed. 2009)...................................................................................................8

6-26 *James Wm. Moore et al., Moore's Federal Practice* ¶ 26.105[3][c] (3d ed. 2009)..................................................................................................17

TABLE OF AUTHORITIES

(iv.)

PLEASE TAKE NOTICE THAT on February 4th, 2013, at 1:30 p.m. in the above referenced courthouse in room 9B located at 411 West Fourth Street, Santa Ana, California, 92701-451, (or as soon thereafter as the matter may be heard in this Court), Defendants AMERICA'S WHOLESALE LENDER, INC.; ("AWLI") and DENNIS L. BELL, ("BELL"); and CHERI B. ENGLISH ("ENGLISH") and WENDMERE FUNDING, LLC ("WENDMERE") (collectively referred to as "Defendant" and/or "Defendants") will and hereby does move this Court for a Protective Order pursuant to *Fed. R. Civ. P. 26* precluding responses to certain Discovery requests propounded by Plaintiff BANK OF AMERICA, N.A. ("BOA") and to limit discovery as to all other Defendants, and to seek an Order sealing all records pertaining to Defendant and their discovery responses in this case.

This motion is based on this notice of motion and accompanying Memorandum of Points and Authorities; Requests for Judicial Notice, Declarations, other pleadings on file in this case and any oral arguments or other evidence that may be presented to and/or heard by the Court.   Pursuant to *Fed. R. Civ. P. 26(c)(1)* and Local Rule 37-1, Defendant certifies that on December 5th, 2012, it conferred in good faith with BOA'S counsel in an effort to resolve the dispute without court action, but was unable to reach agreement.

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

1    RESPECTFULLY SUBMITTED

2

3

4    Dated:    December 19, 2012          THE LAW OFFICES OF STEVEN C.
                                          VONDRAN, P.C.
5

6                                         By:    _____/s/ Steven C. Vondran_____
                                                      Steven C. Vondran, Esq.
7
                                                steve@vondranlaw.com
8
                                                Attorneys for Defendants / Cross-
9                                               defendants
                                                AMERICA'S WHOLESALE
10                                              LENDER, INC., DENNIS L.
                                                BELL, CHERI B. ENGLISH,
11                                              WENDMERE FUNDING, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        5
            MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

## I. INTRODUCTION

Plaintiffs have sued defendants for violations of Civil RICO and other causes of action relating to various mortgage loans as set forth in the Complaint. Plaintiff Bank of America, N.A. ("BOA") alleges a fraudulent scheme by Defendants and Plaintiff has served initial discovery requests on Defendant America's Wholesale Lender, Inc. ("AWLI"), which responses are currently due January 19, 2013.

In the interim, on or around September 23, 2011, Bell was contacted by an investigator from the State Bar of California who questioned him about his activities and dealings with Attorney Diane Bealle and he asked questions, and wanted information about the relationship between Bell and Bealle and AWLI, and their relationship with Attorney Paul Nguyen and had questions about the $260,000 in relation to the Burke loan and he asked questions, and wanted information about the Chase Merritt Fund bank account, and TD bank account.

In addition, a representative of the United States Secret Service office (Mr. Kenneth Naughton) personally visited Defendant Cheri B. English (in Kentucky) on or around November 20th, 2012 and requested information from Cheri English-Bell regarding the involvement of Attorney Paul Nguyen, (who is one of the parties alleged to be involved in this case at paragraph 10 of the First Amended Complaint "FAC"), the whereabouts of certain monies, and the secret service agent asked questions about Nguyen's involvement and requested information about the whereabouts of Dennis Bell. He also questioned Cheri English-Bell about a transaction alleged in the

6

complaint, and requested answers to questions involving Cheri English-Bell, Dennis

Bell and wanted an explanation as to the inter-relationship between Bell, English and

Nguyen and other attorneys.

These investigations and visit by the secret service agent makes clear there is a

potential criminal investigation into the facts involving the case at hand and

Defendants thus have reason to believe that certain responses to discovery requests

propounded by Plaintiff may tend to result in defendant AWLI, (and the other

defendants) incriminating themselves, and as such, Defendants, and each of them,

hereby seek a protective Order directing that:

(a)    Defendants, including AWLI, English, and Bell, may assert their right

against self-incrimination under the 5th amendment to the United States

Constitution, and as permitted under the California Constitution as to all

discovery requests that may involve a response that tends to incriminate

Defendants;

(b)    Defendant's assertion of their fifth amendment rights must be honored by

each and every current and future claimaint and crossclaimaint in this case

and discovery shall be limited as set forth in the order;

(c)    That all of Defendant's responses to discovery made in this case, be sealed

by the Court by appropriate order.

(d)    That Defendants be permitted to defend their interests and be permitted to

conduct their own discovery despite the assertion of the 5th amendment

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

herein.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. The Court is empowered to issue a protective order.

Federal Rule of Civil Procedure 26 provides that a court may issue a protective order for "good cause" to limit the scope of discovery. *Fed. R. Civ. P. 26(c)(1)*; see also *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

A protective order is usually granted upon a showing of good cause: "The [C]ourt may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery. . . ." *Fed. R. Civ. P. 26(c)(1)*. " 'Good cause' is established when it is specifically demonstrated that the disclosure will cause a clearly defined and serious injury." 6-26 James Wm. Moore et al., *Moore's Federal Practice* ¶ 26.104[1] (3d ed. 2009).

### B. Defendant AWLI, and Bell and English, each hereby assert their 5th amendment right against self-incrimination.

Here, by being forced to respond to all discovery requests, AWLI (and the other Defendants) could expose themselves to serious injury in the form of criminal liability. As such, they each hereby assert their fifth amendment right against self-incrimination under the Federal constitution and as permitted under the California constitution.

The availability of the Fifth Amendment privilege against self-incrimination does not depend on the type of proceeding. "[T]he Fifth Amendment's protections against

8

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory." See *Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) (citing Kastigar v. United States, 406 U.S. 441 (1972)). See *Allen v. Illinois*, 478 U.S. 364, 368 (1986); *Maness v. Meyers*, 419 U.S. 449 (1975).

The privilege applies not only at trial but also at the pleading stage such as in response to a complaint, interrogatories, document requests, requests for admissions, or deposition questions. See *United States v. Kordel*, 397 U.S. 1, 7-8 (1970) (holding that discoveree may assert the Fifth Amendment when answers to civil discovery provides evidence for criminal prosecution); see also *Spevack v. Klein*, 385 U.S. 511 (1967); *Campbell v. Gerrans*, 592 F.2d 1054, 1056-57 (9th Cir. 1979); see also *Wilcox*, 942 P.2d at 208 (applying privilege to production of documents as well as speech).

**C. Good Cause exists for this Court to issue a protective order.**

First, AWLI has the right to assert the fifth-amendment privilege to refuse to respond to the first set of discovery recently served on them as do Bell and English. Although AWLI is incorporated in New York, Defendants have asserted and alleged in their First Amendment Complaint that AWLI is a "*sham corporation*" (See FAC P. ¶9)

As such, this is not the case of a *typical corporation* (an 'impersonal corporation' as one court has called it) wherein many courts have held that ***corporations do not enjoy fifth amendment rights or protections and must respond to discovery requests such as producing documents in discovery***. See e.g., *Bellis v. United States*, 417 U.S. 85

9

(1974); see also *Braswell v. United States*, 487 U.S. 99 (1988) (holding that custodian of corporation's records could not resist subpoena for production of documents on grounds that compliance with subpoena would violate his Fifth Amendment privilege because corporation has no privilege) *California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) (dealing with incorporated banks); *United States v. White*, 322 U.S. 694 (1944) (dealing with labor unions).

However, in this case, it cannot reasonably be argued that Defendant Bell is a "*custodian*" for AWLI, (an alleged sham company) and those these cases can be easily distinguished.

Instead, to the extent Bell or English have or hold any records of AWLI, these records would be held purely in a private capacity as a private individual and such papers personally maintained (not as a custodian in the capacity of acting as a representative of AWLI), are not discoverable when a party asserts the fifth amendment. As such, neither AWLI, Bell or English can be compelled to turn over documents requested by Plaintiff in their pending discovery request and this could should not seek to force Bell or English to respond to discovery where the company is alleged to be a sham, and not a real company at all.

In fact, if the AWLI corporation is a "sham corporation" as Plaintiffs urge in their pleading, then it must be treated as a *sole proprietorship* and fifth amendment rights surely apply. The law compels this conclusion. Given Plaintiffs insistence that AWLI is a sham, and not a real corporation, they are *judicially estopped* from arguing that

10

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

AWLI is a corporation that has no first amendment rights.  In short, they cannot play

"*fast and loose*" with the pleadings and arguments to the court - arguing on one hand

there is <u>no valid corporation</u> - and arguing on the other hand that AWLI <u>is a</u>

<u>corporation</u> with no fifth amendment rights as it is anticipated they will argue.

Judicial estoppel should be employed when a litigant is "playing fast and loose with

the courts," and when "intentional self-contradiction is being used as a means of

obtaining unfair advantage in a forum provided for suitors seeking justice." See *Patriot*

*Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 211-12 (1 Cir. 1987).

Moreover, the privilege against self-incrimination in the case of a ***sole***

***proprietorship*** (in refusing to turn over corporate records) was recognized in the

United States Supreme Court case of *Bellis v. United States, which* held:

> "It has long been established, of course, that the Fifth Amendment privilege
> against compulsory self-incrimination protects an individual from ***compelled***
> ***production of his personal papers and effects as well as compelled oral***
> ***testimony***. In Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746
> (1886), we held that 'any forcible and compulsory extortion of a man's own
> testimony, or of his private papers to be used as evidence to convict him of
> crime' would violate the Fifth Amendment privilege. Id., at 630, 6 S.Ct., at 532;
> see also id., at 633-635, 6 S.Ct. at 533-535; Wilson v. United States, 221 U.S.
> 361, 377, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911). ***The privilege applies to the***
> ***business records of the sole proprietor*** or sole practitioner as well as to personal
> documents containing more intimate information about the individual's private
> life. Boyd v. United States, supra; Couch v. United States, 409 U.S. 322, 93
> S.Ct. 611, 34 L.Ed.2d 548 (1973); Hill v. Philpott, 445 F.2d 144 (CA7), cert.
> denied, 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 5 (1971); Stuart v. United States,
> 416 F.2d 459, 462 (CA5 1969). As the Court explained in United States v.
> White, supra, 322 U.S. at 698, 64 S.Ct. at 1251, ***'(t)he constitutional privilege***
> ***against self-incrimination . . . is designed to prevent the use of legal process to***
> ***force from the lips of the accused individual the evidence necessary to convict***
> ***him or to force him to produce and authenticate any personal documents or***

11

*effects that might incriminate him.*' See also Curcio v. United States, 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957); Couch v. United States, supra, 409 U.S. at 330-331, 93 S.Ct. at 616-617." (emphasis added).

This makes clear that where you have an entity that is argued to be a sham, and which is argued to have "*no legitimate business purposes and was incorporated as a means of effectuating fraud.*" (See FAC P. 26 at ¶¶9-10) must be treated as a sole proprietorship and not a corporation that has no fifth amendment rights.  This is made even more clear by Justice Douglas who issued the dissenting opinion in *Bellis v. United States:*

> "Bellis, the petitioner, was formerly one of three partners in a small law firm; the partnership was dissolved, and Bellis currently has lawful possession of the firm's records. The grand jury has subpoenaed those records apparently for the purpose of a tax investigation directed against Bellis personally.  He refused to comply, claiming his Fifth Amendment privilege against self-incrimination, but the Court today holds that privilege not available to Bellis. *I think the case is clearly controlled by Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, and thus I dissent.  *In Boyd the Court held that the Fifth Amendment privilege extends to the production of papers personally held as well as to the compulsion of testimony.* '(W)e have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself.' (emphasis added).

Justice Douglas continued:

> "In extending these corporation cases to the union papers involved in White, we stressed that *the test is not a mechanical one, but 'whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only.'* Id., at 701, 64 S.Ct., at 1252………..(portions omitted) This small three-man firm had no real existence apart from the three individual attorneys.  All this only

12

goes to demonstrate that ***Bellis was not holding the records involved here as a
representative of some separate, impersonal entity with no rights under the
Fifth Amendment***..........(portions omitted). If Bellis had been conducting a
solo practice, his claim of privilege could not be overridden, as the Government
here necessarily conceded. I am unable to perceive why he should be held to
have forfeited that constitutional right by joining with two others in a
partnership. (emphasis added).

Justice Douglas concluded his dissent by recognizing the importance of the fifth

amendment in a civilized society:

'This command of the Fifth Amendment . . . registers an important advance in
the development of our liberty-'one of the great landmarks in man's struggle to
make himself civilized.' Time has not shown that protection from the evils
against which this safeguard was directed is needless or unwarranted. This
constitutional protection must not be interpreted in a hostile or niggardly spirit.'
Ullmann v. United States, 350 U.S. 422, 426, 76 S.Ct. 497, 500, 100 L.Ed. 511.
But it is the nigardly view, which prevails today, with the Court effectively
overruling Boyd in holding that the Government can compel an individual to
produce his private records to aid a Government investigation of him. That is a
view I cannot join."

As discussed above, the secret service has sought out Defendants to question them

in regard to issues involving attorney Paul Nguyen.  As such, there is potential for

criminal ramifications for any testimony provided or given by AWLI, and Bell and

English which compels them to seek the fifth amendment protections guaranteed by

the Constitution of the United States and under the California constitution.

Absent a protective order, a clearly defined and serious injury to Bell and English

fundamental constitutional rights will result if AWLI, Bell or English must proceed

with Plaintiffs' requested discovery in this matter.   The mere possibility of criminal

prosecution is all that is necessary "for the Fifth Amendment privilege against self-

13

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

incrimination to be invoked." See *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, 2009 U.S. Dist. LEXIS 60849 at 9 (E.D. Cal. July 15, 2009) (italics in original).

Because Bell and English reasonably apprehends a risk of self-incrimination if forced to proceed with Plaintiffs' requested discovery in this pending civil matter, a protective order forbidding Plaintiff from compelling AWLI, Bell or English from turning over records that may be held or maintained by them personally, or forcing them to give testimony in response to requests for admissions, depositions, and interrogatories, is the only method sufficient to guarantee their respective Fifth Amendment right against self-incrimination.

The privilege against self-incrimination extends not only "to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would *furnish a link in the chain of evidence* needed to prosecute the claimant for a federal crime." See *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

The court should thus recognize the right of AWLI (and Bell and English) to invoke the fifth amendment and to prevent Plaintiff and other claimants from seeking to force Bell or English to essentially testify against themselves in a manner that may prove incriminating.  A protective order is required to protect their interests.

**D.    The protective order must also permit Defendant to continue to conduct its own discovery in order to protect its interests in this litigation.**

As the case will likely proceed irrespective of Defendant's invoking their fifth

14

amendment rights, Defendant's request that this court permit them to pursue their legitimate discovery procedures that will <u>not</u> involve them testifying in their own right, or otherwise risking incriminating themselves, but which allows them to produce evidence tending to disprove Plaintiffs claims of damages among other issues.

**E.   This protective order must be extended and applied to all other parties to this proceeding.**

Plaintiff seeks to assert their fifth amendment rights as to each of them, and as to each party to this proceeding.  If so required, Defendants will file separate motions for protective orders if additional discovery requests are served on Defendants which requests may have the capacity to incriminate Defendants.

**F.   The protective order must include an Order to seal all of Defendant's discovery responses in this case.**

This court is empowered to exercise its discretion and seal documents containing "material protected by a privilege." See *Huffy Corp. v. Sup.Ct.* (Winterthur Swiss Ins. Co. (2003) 112 CA4th 97, 108, 4 CR3d 823, 834.  The issue here is the 5th amendment privilege against self-incrimination.  Although Defendants plan to respond to discovery questions that do not raise issues as to self-incrimination, there is still the possibility that information obtained will be used against them in a future proceeding.  As such, it is requested that any and all discovery requests, and other documents pertaining to Defendants be sealed pursuant to their privileges afforded under the fifth amendment.

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

**G.    No other parties will suffer no prejudice by the granting of this protective order as the case will be allowed to proceed.**

The issuance of the limited protective order requested here will not prejudice Plaintiffs or other crossclaimaints.  Each will have the right to proceed to attempt to prove their claims.  As such, there is no need to deny Defendants fifth amendment protections.

Where a defendant refuses to respond to discovery on Fifth Amendment grounds, the court could preclude him from testifying for example. See *U.S. v. Talco Contractors, Inc.*, 153 F.R.D. 501 (W.D. N.Y. 1994).   On summary judgment motion by plaintiff, the court could, for example, draw negative inferences from defendant's refusal to respond to discovery on Fifth Amendment grounds. See *LaSalle Bank Lake View v. Seguban*, 851 F. Supp. 336 (N.D. Ill. 1994), judgment rev'd, 54 F.3d 387 (7th Cir. 1995).

The courts have never held that a Fifth Amendment claimant in a civil proceeding must be shielded from all possible negative consequences that may attend his invocation of the privilege. In fact, civil claimants have been denied certain benefits and exposed to negative consequences as a result of having invoked the privilege. … *In a typical case, a court will permit a negative inference to attend the civil litigant's invocation of the privilege or will impose a discovery or evidentiary limitation on the claimant.* … thus, under Baxter and its progeny, a court is permitted to impose a cost on a civil defendant who chooses to remain silent by invoking his Fifth Amendment

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

privilege." *But "[a] negative consequence may not be used solely to punish a claimant for having invoked his privilege.* It may, however, be used to compensate the non–invoking party or to better administer the proceeding." *In re Moses*, 792 F. Supp. 529, 536–537 (E.D. Mich. 1992).

Further, the Supreme Court has held drawing an adverse inference even from a party's legitimate assertions of the privilege against self–incrimination in a civil case does not render assertion of the privilege unconstitutionally 'costly.' " See *S.E.C. v. Thomas*, 116 F.R.D. 230, 234–235 (D. Utah 1987).

As such, despite the invocation of the fifth amendment by AWLI, and Bell and English, the case can proceed with further rulings by the Court and discovery as to other parties may continue.  If claimants can prove their cases and causes of action with the appropriate evidence, they may then seek their requested relief.

**H. A Protective Order Would Not Injure the Public Interest or Persons Not Parties to the Litigation**

Another factor considered by courts when entertaining a protective order to stay discovery in order to protect a party's Fifth Amendment rights is whether there is a risk of serious injury to the public interest or those not parties to the litigation. See 6-26 *James Wm. Moore et al., Moore's Federal Practice* ¶ 26.105[3][c] (3d ed. 2009).

Here, Plaintiffs assert claims for damages, private damages and injunctive relief, neither of which is connected to a public interest purpose nor would harm a non-party to this litigation. The injunction is already in effect, and there is no risk to the public

17

and no interest to the public that warrants a denial of the protective order.

The circumstances in this case sharply contrast to those in Kordel, for example, in which the Food and Drug Administration attempted to prevent the distribution of misbranded drugs, 397 U.S. at 11, or in *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980), in which a stay of the case might have permitted the dissemination of false or misleading information to public investors. 628 F.2d at 1377.   In granting a stay of the case, the court in Tolkow noted that Dresser and Kordel "involve[d] a tangible threat of immediate and serious harm to the public at large." Tolkow, 109 F.R.D, at 120. However, nothing about the case here poses such a tangible threat of immediate and serious harm to the public at large such that the public will suffer injury if a protective order forbidding Defendant's participation in responding to potentially incriminating discovery is granted.

No aspect of the Complaint seeks to vindicate a public interest. Thus, Plaintiffs cannot demonstrate "*a tangible threat of immediate and serious harm to the public at large*" necessary to defeat this request for a protective order. Thus, on balance, the public interest weighs in favor of granting this Motion.

I. Defendants have Attempted in Good Faith to Confer with Plaintiffs

With respect to a protective order, Rule 26(c) of the Federal Rules of Civil Procedure requires that the movant seeking a protective order "include a certification that [it] has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Fed. R. Civ. P. 26(c)(1).*

18

Defendants have attempted to informally resolve this dispute by agreeing to a stipulation to a protective order without resorting to Court action on several occasions, including a meet and confer on December 5th, 2012, but has not been successful.

Due to the parties' inability to agree to an amicable solution, Defendants were forced, as a last resort, to seek the Court's intervention to assist in preventing any harm to Defendants and their Fifth Amendment rights.

## III.   CONCLUSION

For the reasons set forth above, the Court should grant the protective order and motion to seal records. Plaintiff states AWLI is a "sham corporation" as such, they should be treated as a sole proprietorship and Bell and English should be afforded the full fifth amendment rights they hereby seek. Neither is a "custodian" of a impersonal company and neither should be forced to potentially incriminate themselves, or forced to give compelled testimony in a civil proceeding. The fifth amendment is designed to protect against that and Defendants should not be treated as if they were a corporate entity such as Enron.

Defendant AWLI has been served with requests for admissions, request for production of records, and interrogatories by Plaintiff BOA. As set forth above, a secret service agent has contacted Defendant Cheri English directly and asked questions pertaining to a Mr. Paul Nguyen, who has been referenced as a person pertaining to the facts of this case and appears to be named as a Defendant in the case ("Le Van Nguyen"). The government agent asked questions pertaining to the

19

interrelationship between Cheri English-Bell, Dennis Bell, and AWLI and Nguyen and a state bar investigator has requested information from Dennis Bell in regard to Attorney Diane Bealle and Paul Nguyen and activities dealing with the facts of the FAC.   As such, there is a serious risk of criminal prosecution, and an active investigation is underway.

Under these circumstances, the courts should not force Defendants to potentially incriminate themselves in this civil proceeding and each is entitled to assert the fifth. There is no way to appoint an agent to provide documentation for AWLI, which should be treated as a sole proprietorship.  This motion, and all responses to discovery that are made by Defendants (who will answer non-incriminating questions posed to AWLI, Bell or English) must be sealed for the purposes of honoring the assertion of the fifth as any evidence obtained in this could provide an essential link to be used in a future case.

Defendants respectfully request that this court grant the attached motion for protective order.

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

1    RESPECTFULLY SUBMITTED:

2

3    Dated:    December 19, 2012           THE LAW OFFICES OF STEVEN C.
4                                         VONDRAN, P.C.

5
                                          By:    _____/s/ Steven C. Vondran_____
6                                                       Steven C. Vondran, Esq.

7                                                steve@vondranlaw.com

8                                                Attorneys for Defendants / Cross-
                                                 defendants
9                                                AMERICA'S WHOLESALE
                                                 LENDER, INC., DENNIS L.
10                                               BELL, CHERI B. ENGLISH,
                                                 WENDMERE FUNDING, LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

## PROOF OF SERVICE

**STATE OF CALIFORNIA**
**COUNTY OF ORANGE**

I am employed by The Law Offices of Steven C. Vondran. P.C. in the County of Orange, State of California. I am over the age of 18 and not a party to the above-captioned action. My business address is 620 Newport Center Drive, Suite 1100, Newport Beach, CA, 92660. I also have an office at 2415 E. Camelback Road, Suite 700, Phoenix, Arizona 85016.

On December 19, *2012*, I served the foregoing document(s) in the within action, described as:

**DEFENDANT DENNIS L. BELL, AMERICA'S WHOLESALE LENDER, INC., CHERI B. ENGLISH, AND WENDMERE FUNDING, LLC MOTION FOR PROTECTIVE ORDER; MOTION TO SEAL DOCUMENTS; MEMORANDUM OF POINTS AND AUTHORITIES AND PROPOSED ORDER.**

On the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

[ ]   **BY MAIL:** By placing a true and correct copy thereof enclosed in a sealed envelope addressed as above, with postage thereon fully prepared, in the U.S. Mail at Newport Beach, CA. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal service on the same day with postage thereon fully prepaid at Newport Beach, CA, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing as stated in the affidavit.

[ ]   **BY OVERNIGHT COURIER:** I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document(s) in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as forth above, with fees for overnight delivery paid or provided for.

[ ]   **BY FAX:** By use of a facsimile machine I transmitted a true copy of the foregoing document(s) to the addressee(s) listed above at the facsimile number(s) noted after the party's address. The transmission was reported as complete and without error.

[ ]   **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee(s) listed above.

[X]   **BY ELECTRONIC SERVICE:** The document will be served upon e-filing, via the United States District Court-Central District's CM/ECF electronic transfer system which generates a Notice of Electronic Filing (NEF) upon the assigned judge and any party who is a registered user in the case.

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

[ ] **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] **(Federal)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on December 19, 2012, at Phoenix, Arizona

Dated:     December 19, 2012     THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.

                           By:    /s/ Steven C. Vondran
                                      Steven C. Vondran, Esq.

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS

**<u>SERVICE LIST (Electronic filing)</u>**

CV 12-00242 CJC (ANx)

Nafiz Cekirge, Esq
Robert Edward Boone, III Esq.
Robert G. Lancaster, Esq.
BRYAN CAVE, LLP
120 Broadway, Suite 300
Santa Monica, CA  90401-2386

Email:      Nafiz Cekirge            nafiz.cekirge@bryancave.com
            Robert E. Boone III      reboone@bryancave.com
            Robert G. Lancaster      rglancaster@bryancave.com

William Wright, Esq.
Eric Peter Early, Esq.
Kevin Sinclair, Esq.
EARLY SULLIVAN WRIGHT GIZER & MCRAE
6420 Wilshire Blvd. 17th Floor
Los Angeles, CA 90048

Email:      William Wright           wwright@earlysullivan.com
            Eric Peter Early         eearly@earlysullivan.com
            Kevin Sinclair           ksinclair@earlysullivan.com

MOTION FOR PROTECTIVE ORDER & SEAL RECORDS