1 | Eric P. Early, State Bar Number 166275
   *eearly@earlysullivan.com*
2 | William A. Wright, State Bar Number 193314
   *wwright@earlysullivan.com*
3 | Kevin S. Sinclair, State Bar Number 254069
   *ksinclair@earlysullivan.com*
4 | EARLY SULLIVAN WRIGHT
   GIZER & McRAE LLP
5 | 6420 Wilshire Boulevard, 17th Floor
   Los Angeles, California 90048
6 | Telephone: (323) 301-4660
   Facsimile: (323) 301-4676
7 |
8 | Attorneys for Defendant and Cross-Claimant
   FIRST AMERICAN TITLE INSURANCE COMPANY



9 |                    **UNITED STATES DISTRICT COURT**

10 |                   **CENTRAL DISTRICT OF CALIFORNIA**

11 |

| | |
|---|---|
| 12  COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; THE BANK OF NEW YORK MELLON; and DEUTSCHE BANK NATIONAL TRUST COMPANY, | Case No.: CV 12-00242 CJC (ANx) |
| 13 | **FIRST AMERICAN TITLE INSURANCE COMPANY'S ANSWER AND CROSSCLAIMS IN RESPONSE TO THE FIRST AMENDED COMPLAINT** |
| 14 | |
| 15 | |
| 16           Plaintiffs, | |
| 17                vs. | |
| 18  AMERICA'S WHOLESALE LENDER, INC., a New York Corporation; DENNIS L. BELL, an individual; CHERI B. ENGLISH, an individual; JAN VAN ECK (a/k/a HERMAN JAN VAN ECK a/k/a MAURITZ VAN ECK a/k/a MARITZ VAN ECK a/k/a GEORGE TOMAS), an individual; THE RYZMAN FOUNDATION, INC., a California Corporation; DAVID E. LANDON, an individual; LE VAN NGUYEN, an individual; WENDMERE FUNDING, LLC, a Kentucky limited liability company; CHASE MERRITT FUND I, LLC, a Nevada limited liability company; and DOES 1-10, | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27           Defendants. | |

28

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW
WGM

20636.1

1

2   FIRST AMERICAN TITLE
    INSURANCE COMPANY,
3
                    Cross-Claimant,
4
        vs.
5
    AMERICA'S WHOLESALE
6   LENDER, INC., a New York
    Corporation; DENNIS L. BELL, an
7   individual; JAN VAN ECK (a/k/a
    HERMAN JAN VAN ECK a/k/a
8   MAURITZ VAN ECK a/k/a MARITZ
    VAN ECK a/k/a GEORGE TOMAS),
9   an individual; and ROES 1-10,

10                  Cross-Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1  Pursuant to the Court's order of March 15, 2013 (dkt. 153) substituting

2  Defendant and Cross-Claimant First American Title Insurance Company ("First

3  American") for former defendant David E. Landon ("Landon") and former defendant

4  the Ryzman Foundation, Inc. ("Ryzman"), First American hereby answers the First

5  Amended Complaint of plaintiffs Countrywide Home Loans, Inc. ("Countrywide"),

6  Bank of America Corporation ("BAC"), Bank of America, N.A. ("BANA"), the

7  Bank of New York Mellon ("BNY") and Deutsche Bank National Trust Company

8  ("DBNT") (collectively, "Plaintiffs") as follows:

9  **RESPONSE TO ALLEGATIONS REGARDING THE PARTIES**

10  1.  First American lacks knowledge or information sufficient to admit the

11  truth of the allegations set forth in paragraphs 1 through 5 of the First Amended

12  Complaint, and on that basis denies such allegations.

13  2.  First American admits the allegations of paragraphs 6 through 12 based

14  on information and belief.

15  3.  First American lacks knowledge or information sufficient to admit the

16  truth of the allegations set forth in paragraphs 13 and 14 of the First Amended

17  Complaint, and on that basis denies such allegations.

18  4.  In response to paragraph 16 of the First Amended Complaint, First

19  American admits Landon is an individual residing in California.  First American

20  further admits that, as of the date that Plaintiffs filed their First Amended Complaint,

21  Landon claimed an interest in that certain real property referenced in paragraph 49(f)

22  of the First Amended Complaint, and that, as a result, Landon was (at that time) a

23  necessary party to Plaintiffs' eighth claim for relief.  First American further admits

24  that Landon has since assigned his interest in that Property, among other rights, to

25  First American, and that, as a result, First American is now a necessary party to

26  Plaintiffs' eighth claim for relief.

27  5.  In response to paragraph 17 of the First Amended Complaint, First

28  American admits that Ryzman is a California corporation.  First American further

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1

20636.1

1  admits that, as of the date that Plaintiffs filed their First Amended Complaint,

2  Ryzman claimed an interest in that certain real property referenced in paragraph

3  49(g) of the First Amended Complaint, and that, as a result, Ryzman was (at that

4  time) a necessary party to Plaintiffs' eighth claim for relief.  First American further

5  admits that Ryzman has since assigned its claimed interest in that Property, among

6  other rights, to First American, and that, as a result, First American is now a

7  necessary party to Plaintiffs' eighth claim for relief.

8        6.    First American lacks knowledge or information sufficient to admit the

9  truth of the allegations set forth in paragraph 18 of the First Amended Complaint,

10  and on that basis denies such allegations.

11       **RESPONSE TO ALLEGATIONS REGARDING JURISDICTION**

12        7.    In response to paragraph 19 of the First Amended Complaint, First

13  American admits that this Court has subject matter jurisdiction over the federal

14  claims asserted in this action against the other parties.  As to the balance of the

15  allegations in paragraph 19 of the First Amended Complaint, First American lacks

16  knowledge or information sufficient to admit the truth of those allegations, and so

17  that basis denies such allegations.

18        8.    First American admits the allegations of paragraphs 20 through 27 of

19  the First Amended Complaint based on information and belief.

20        9.    First American admits the allegations of paragraphs 28 and 29 of the

21  First Amended Complaint.

22       10.    First American lacks knowledge or information sufficient to admit the

23  truth of the allegations set forth in paragraphs 30 through 31 of the First Amended

24  Complaint, and on that basis denies such allegations.

25         **RESPONSE TO ALLEGATIONS REGARDING VENUE**

26       11.    First American admits the allegations of paragraph 32 of the First

27  Amended Complaint.

28

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

## RESPONSE TO ALLEGATIONS REGARDING
## THE NATURE OF THE CASE

12.     First American admits the allegations of paragraphs 33 through 49(e) of the First Amended Complaint based on information and belief.

13.     In response to the allegations of paragraph 49(f) of the First Amended Complaint, First American admits on information and belief that, on or about June 21, 2011, Cecilia May ("May") commenced an action against AWLI in the Los Angeles County Superior Court styled *May, et al. v. America's Wholesale Lender, Inc., et al.*, Case No. LC093985 (the "May Action"). First American further admits on information and belief that the May Action concerned a loan for $877,600 that May obtained from Countrywide (the "May Loan") on or about December 20, 2005, in a transaction in which Countrywide utilized its fictitious business name, "America's Wholesale Lender." First American further admits that the May Loan was secured by a deed of trust recorded in the Los Angeles County Recorder's Office on or about December 30, 2005 as Instrument No. 053232308 against that certain real property located at 29000 Woodcreek Court, Agoura Hills, California (the "May Property").

14.     In further response to the allegations of paragraph 49(f) of the First Amended Complaint, First American is informed and believes, and on that basis admits, that Defendant and Cross-Defendant Dennis L. Bell ("Bell"), acting as President of Defendant and Cross-Defendant America's Wholesale Lender, Inc. ("AWLI"), executed a reconveyance of the deed of trust securing the May Loan, which reconveyance was recorded in the Official Records of Los Angeles County on or about October 26, 2011. First American is further informed and believes, and on that basis admits, that neither Bell nor AWLI had actual authority from Countrywide or any of the other Plaintiffs to take any action with respect to the May Loan.

15.     In further response to the allegations of paragraph 49(f) of the First Amended Complaint, First American admits that, on or about October 18, 2011, May

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

3
**FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC**

20636.1

1  executed a deed of trust in favor of Landon against the May Property (the "Landon

2  Deed of Trust"), which deed of trust secured a loan in the principal amount of

3  $340,000 from Landon to May (the "Landon Loan"). First American admits that the

4  Landon Deed of Trust was recorded in the Official Records of Los Angeles County

5  on October 26, 2011.

6      16.    As to the balance of the allegations in paragraph 49(f) of the First

7  Amended Complaint, First American lacks knowledge or information sufficient to

8  admit the truth of those allegations, and on that basis denies such allegations.

9      17.    In response to the allegations of paragraph 49(g) of the First Amended

10  Complaint, First American admits that, on or about April 25, 2005, Countrywide,

11  utilizing its fictitious business name, "America's Wholesale Lender," made a loan in

12  the amount of $1,440,000 (the "Hamilton Loan") to Jeffrey C. Hamilton and

13  Elizabeth Hamilton (the "Hamiltons"). First American further admits that the

14  Hamilton Loan was secured by a deed of trust recorded in the Official Records of

15  Orange County as Instrument No. 2005000329048 (The "Hamilton Deed of Trust")

16  against that certain real property located at 89 Old Course Drive, Newport Beach,

17  California (the "Hamilton Property").

18      18.    In further response to the allegations of paragraph 49(g) of the First

19  Amended Complaint, First American is informed and believes, and on that basis

20  admits, that Defendant and Cross-Defendant Jan Van Eck ("Van Eck") executed an

21  assignment of the Hamilton Deed of Trust (purportedly on behalf of "America's

22  Wholesale Lender") to Ryzman (the "Ryzman Assignment"). The Ryzman

23  Assignment was recorded as Instrument No. 2011000415908 in the Official Records

24  of Orange County on or about August 23, 2011. First American is further informed

25  and believes, and on that basis admits, that Van Eck lacked actual authority from

26  Countrywide or any of the other Plaintiffs to take any action with respect to the

27  Hamilton Loan.

28

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

4
**FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC**

20636.1

1      19.    As to the balance of the allegations in paragraph 49(g) of the First

2  Amended Complaint, First American lacks knowledge or information sufficient to

3  admit the truth of those allegations, and on that basis denies such allegations.

4      20.    First American lacks knowledge or information sufficient to admit the

5  truth of the allegations set forth in paragraphs 50 through 54 of the First Amended

6  Complaint, and on that basis denies such allegations.

7  **RESPONSE TO ALLEGATIONS IN THE FIRST CLAIM FOR RELIEF**

8      21.    In response to the allegations of paragraph 55 of the First Amended

9  Complaint, First American realleges and reincorporates herein by reference its

10  answers to paragraph 1 through 54 of the First Amended Complaint, as though fully

11  set forth herein.

12      22.    First American lacks knowledge or information sufficient to admit the

13  truth of the allegations set forth in paragraphs 56 through 82 of the First Amended

14  Complaint, and on that basis denies such allegations.

15  **RESPONSE TO ALLEGATIONS IN THE SECOND CLAIM FOR RELIEF**

16      23.    In response to the allegations of paragraph 83 of the First Amended

17  Complaint, First American realleges and reincorporates herein by reference its

18  answers to paragraph 1 through 82 of the First Amended Complaint, as though fully

19  set forth herein.

20      24.    First American lacks knowledge or information sufficient to admit the

21  truth of the allegations set forth in paragraphs 84 through 91 of the First Amended

22  Complaint, and on that basis denies such allegations.

23  **RESPONSE TO ALLEGATIONS IN THE THIRD CLAIM FOR RELIEF**

24      25.    In response to the allegations of paragraph 92 of the First Amended

25  Complaint, First American realleges and reincorporates herein by reference its

26  answers to paragraph 1 through 91 of the First Amended Complaint, as though fully

27  set forth herein.

28

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC**

20636.1

26.     First American lacks knowledge or information sufficient to admit the truth of the allegations set forth in paragraphs 93 through 97 of the First Amended Complaint, and on that basis denies such allegations.

**RESPONSE TO ALLEGATIONS IN THE FOURTH CLAIM FOR RELIEF**

27.     In response to the allegations of paragraph 98 of the First Amended Complaint, First American realleges and reincorporates herein by reference its answers to paragraph 1 through 97 of the First Amended Complaint, as though fully set forth herein.

28.     First American lacks knowledge or information sufficient to admit the truth of the allegations set forth in paragraphs 99 through 100 of the First Amended Complaint, and on that basis denies such allegations.

**RESPONSE TO ALLEGATIONS IN THE FIFTH CLAIM FOR RELIEF**

29.     In response to the allegations of paragraph 101 of the First Amended Complaint, First American realleges and reincorporates herein by reference its answers to paragraph 1 through 100 of the First Amended Complaint, as though fully set forth herein.

30.     First American lacks knowledge or information sufficient to admit the truth of the allegations set forth in paragraphs 102 through 107 of the First Amended Complaint, and on that basis denies such allegations.

**RESPONSE TO ALLEGATIONS IN THE SIXTH CLAIM FOR RELIEF**

31.     In response to the allegations of paragraph 108 of the First Amended Complaint, First American realleges and reincorporates herein by reference its answers to paragraph 1 through 107 of the First Amended Complaint, as though fully set forth herein.

32.     First American lacks knowledge or information sufficient to admit the truth of the allegations set forth in paragraphs 109 through 112 of the First Amended Complaint, and on that basis denies such allegations.

**RESPONSE TO ALLEGATIONS IN THE SEVENTH CLAIM FOR RELIEF**

33.     In response to the allegations of paragraph 113 of the First Amended Complaint, First American realleges and reincorporates herein by reference its answers to paragraph 1 through 112 of the First Amended Complaint, as though fully set forth herein.

34.     First American lacks knowledge or information sufficient to admit the truth of the allegations set forth in paragraphs 114 through 118 of the First Amended Complaint, and on that basis denies such allegations.

**RESPONSE TO ALLEGATIONS IN THE EIGHTH CLAIM FOR RELIEF**

35.     In response to the allegations of paragraph 119 of the First Amended Complaint, First American realleges and reincorporates herein by reference its answers to paragraph 1 through 118 of the First Amended Complaint, as though fully set forth herein.

36.     In response to the allegations of paragraph 120 of the First Amended Complaint, First American admits that neither Bell nor AWLI had actual authority to reconvey the May Deed of Trust, and First American further admits that Van Eck lacked actual authority to assign the Hamilton Deed of Trust.  As to the balance of the allegations in paragraph 120 of the First Amended Complaint, First American lacks knowledge or information sufficient to admit the truth of those allegations, and on that basis denies such allegations.

37.     First American admits the allegations of paragraphs 121 and 122 of the First Amended Complaint.

38.     First American denies that Plaintiffs are entitled to any of the relief identified in paragraphs 1-23 of the Prayer, or that Plaintiffs are entitled to any relief, whatsoever, against First American.

**AFFIRMATIVE DEFENSES**

39.     Without waiving or excusing Plaintiffs' burden of proof, or admitting that First American has any burden of proof, First American hereby asserts the

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

7

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

following affirmative defenses to Plaintiffs' eighth claim for relief, which is the only claim for relief asserted against First American:

## FIRST AFFIRMATIVE DEFENSE

### (Estoppel)

40.     First American is informed and believes, and based thereon alleges, that Countrywide prepared the Hamilton Deed of Trust and the May Deed of Trust.

41.     First American is further informed and believes, and based thereon alleges, that as a result of what was, at a minimum, Countrywide's own negligence, Countrywide identified "America's Wholesale Lender," a "Corporation organized and existing under the laws of New York" as the lender in both the Hamilton Deed of Trust and the May Deed of Trust. In other words, Countrywide identified AWLI, and not itself, as the beneficiary of both deeds of trust.

42.     By Countrywide's own judicial admission, AWLI executed that certain assignment of the Hamilton Deed of Trust (i.e., the Ryzman Assignment) which Countrywide now seeks to cancel, as well as the reconveyance of the May Deed of Trust, which Countrywide also now seeks to cancel.

43.     Thus, even if the Ryzman Assignment and the reconveyance of the May Deed of Trust was not authorized by Countrywide, and assuming *arguendo* that there was misconduct by AWLI or its principals, as between two innocent parties (i.e., Countrywide and First American), the one whose negligence facilitated the misconduct must bear any loss resulting therefrom. Accordingly, for these and other reasons, Countrywide (and Plaintiffs) are equitably estopped from obtaining the cancellation of the Ryzman Assignment or the reconveyance of the May Deed of Trust.

## SECOND AFFIRMATIVE DEFENSE

### (Laches)

44.     First American alleges that the eighth claim for relief is barred by the doctrine of laches.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

8

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

## THIRD AFFIRMATIVE DEFENSE

### (Waiver)

45.     First American alleges that the eighth claim for relief is barred by the doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

46.     First American alleges that the eighth claim for relief is barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

47.     First American alleges that the eighth claim for relief is barred in whole or in part because Plaintiffs knowingly and voluntarily assumed the risk of the purported injuries alleged in the First Amended Complaint.

## SIXTH AFFIRMATIVE DEFENSE

### (Plaintiffs' Negligence/Contributory Negligence)

48.     First American alleges that the eighth claim for relief is barred in whole or in part by Plaintiffs' own negligence.

## SEVENTH AFFIRMATIVE DEFENSE

### (Knowledge, Acquiescence, Consent, Acceptance and/or Ratification)

49.     First American alleges that the eighth claim for relief is barred to the extent that Plaintiffs (including Countrywide), through their words or conduct, implicitly or explicitly ratified, acquiesced to and/or accepted the alleged conduct of the original defendants in this action, including, without limitation, the recording of the Ryzman Assignment and the reconveyance of the May Deed of Trust.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Join Necessary Parties)

50.     First American alleges that the eighth claim for relief fails as a matter of law because Plaintiffs have failed to sue necessary parties, including the current

9

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

20636.1

owners of the properties referenced in paragraph 49 of the First Amended Complaint and anyone claiming a lien on those properties, because the adjudication of this claim for relief affects their interests in the real properties at issue and their interests in the recorded instruments which Plaintiffs seek to cancel. Accordingly, any judgment in favor of Plaintiffs on the eighth cause of action would be invalid and of no force or effect.

## NINTH AFFIRMATIVE DEFENSE

### (*Bona Fide* Purchaser and Encumbrancer for Value)

51.     First American alleges that the eighth claim for relief is barred because Ryzman was a *bona fide* purchaser and encumbrancer for value of the Hamilton Deed of Trust, and because Landon was a *bona fide* encumbrancer of the May Property, and, therefore, as a matter of law, Plaintiffs are not entitled to any relief which would disturb First American's interests in the Hamilton Property or the May Property.

## TENTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

52.     First American alleges that the eighth claim for relief is barred to the extent that Plaintiffs lack standing to seek cancellation of the Ryzman Assignment and the reconveyance of the May Deed of Trust.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Reservation of Rights re: Additional Affirmative Defenses)

53.     First American reserves its right to allege further affirmative defenses as they may become known through the course of discovery and/or further legal analysis

## FIRST AMERICAN'S CROSS-CLAIMS AGAINST THE AWLI PARTIES

54.     First American hereby cross-claims against AWLI, Bell and Van Eck as follows:

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

**PARTIES**

55.    First American is a California corporation with its principal place of business in Santa Ana, California.

56.    First American is informed and believes, and based thereon alleges, that AWLI is a New York corporation with its principal place of business in New York. First American is informed and believes, and based thereon alleges that AWLI is inadequately capitalized, has no existence separate and apart from its incorporators and exists solely as a corporate shell which Bell, Van Eck and others have used exclusively as an instrumentality for perpetrating the fraudulent scheme described both herein and in Plaintiff's First Amended Complaint.  Accordingly, adhering to the fiction of AWLI's corporate separateness from the other Cross-Defendants would result in injustice.

57.    First American is informed and believes, and based thereon alleges, that Bell is an individual residing in Kentucky, who has conducted business, activities and transactions in California, including those set forth herein.

58.    First American is informed and believes, and based thereon alleges, that Van Eck is an individual residing in Connecticut, who has conducted business, activities and transactions in and pertaining to California, including those set forth herein.

59.    First American is not aware of the real names of Roes 1-10, and for that reason, sues them by these fictitious names.  First American will amend this pleading to identify Roes 1-10 by their real names as they become known to First American.

60.    First American is informed and believes, and based thereon alleges, that at all times relevant hereto, AWLI, Bell, Van Eck and Roes 1-10 (collectively, "Cross-Defendants") were and are acting in concert, were and are agents of one another, induced and aided and abetted, and continue to induce and aid and abet, each other's actions, conspired and continue to conspire to commit the wrongful conduct alleged in these Cross-Claims, and are each alter-egos of one another.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC**

20636.1

**SUBJECT MATTER JURISDICTION OVER THE CROSS-CLAIMS**

61.     This Court has supplemental jurisdiction over these Cross-Claims pursuant to 28 U.S.C. § 1367(a), based upon the federal jurisdiction of the federal claims asserted by Plaintiffs in the First Amended Complaint.

62.     Additionally, this Court has original jurisdiction over the claims for relief asserted in these Cross-Claims pursuant to 28 U.S.C. § 1332, on the grounds that there is complete diversity of citizenship between First American, on the one hand, and Cross-Defendants, on the other hand, and because the amount at issue in these Cross-Claims exceeds $75,000.

**FACTUAL BACKGROUND**

63.     First American is informed and believes, and based thereon alleges, that on or about December 16, 2008, Bell incorporated AWLI in New York. Bell incorporated AWLI for the sole purpose of impersonating Countrywide, which, for nearly twenty years, had used the "America's Wholesale Lender" fictitious business name and registered trademark in connection with its mortgage banking business in California and throughout the United States.

64.     Because Countrywide identified "America's Wholesale Lender," a "Corporation organized and existing under the laws of New York" (i.e., an entity which did not previously exist) as the lender on numerous deeds of trust securing Countrywide loans, including the deeds of trust given by May and the Hamiltons, Bell reasoned that he could his newly-formed and nearly-identically-named entity, AWLI, as a vehicle to defraud Countywide customers and others into believing that Bell and his co-conspirators (namely, the other Cross-Defendants) represented and could act on behalf of one of the largest mortgage lenders in the United States.

65.     First American is informed and believes, and based thereon alleges, that Van Eck was an officer of AWLI who, in concert with Bell and others, conspired to and did perpetrate a massive fraud on various known and unknown Countrywide customers (and others), including, by way of example only, and without limitation,

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC**

20636.1

1 Landon, Ryzman and May. First American is further informed and believes that, at

2 all times relevant hereto, Bell and Van Eck had knowledge of, and participated in, all

3 aspects of this scam.

## THE MAY LOAN

5 66. First American is informed and believes that, on or about December 20,

6 2005, May obtained the May Loan from Countrywide.

7 67. The May Loan was secured by the May Deed of Trust, recorded against

8 the May Property.

9 68. On its face, the May Deed of Trust identified "America's Wholesale

10 Lender," a "Corporation organized and existing under the laws of New York," as the

11 lender.

12 69. First American is informed and believes that, in 2011, Cross-Defendants

13 targeted May for the purpose of perpetrating against her the same scam which

14 Plaintiffs allege Cross-Defendants perpetrated against Countrywide borrowers

15 Dennis and Linda Burk in paragraph 49(a) of Plaintiff's First Amended Complaint.

16 70. Specifically, First American is informed and believes that Cross-

17 Defendants contacted May, pretending to be authorized representatives of Plaintiffs.

18 First American is further informed and believes that Cross-Defendants advised May

19 that, due to certain purported irregularities with the May Loan, Countrywide would

20 release the May Deed of Trust and cancel the note securing the May Loan if May

21 paid a discounted sum (vis-à-vis the total outstanding balance of the May Loan) to

22 Plaintiffs. First American is informed and believes that Cross-Defendants further

23 advised May that, in order to avail herself of this offer, she would have to file a

24 lawsuit against Plaintiffs, and that now-disbarred attorney Gary Harre ("Harre")

25 would assist May in the filing of this action.

26 71. On or about June 21, 2011, Harre filed the May Action in the Los

27 Angeles Superior Court on May's behalf. First American is informed and believes

28 that the complaint in the May Action was never actually served on anyone.


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

13

**FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC**

20636.1

72.     In or about October 2011, Harre prepared a "Settlement Agreement, Stipulation for Entry of Judgment and Judgment" (the "Settlement"). In the Settlement, AWLI claimed that it was the beneficial owner of the May Deed of Trust and the note evidencing the May Loan. Pursuant to the terms of the Settlement, AWLI agreed to accept just $260,000 in full satisfaction of the May Loan and to release and reconvey the May Deed of Trust upon receipt of that sum. The Settlement was signed by Bell (as the purported president of AWLI) on or about October 14, 2011 and by May on or about October 19, 2011.

73.     In order to finance this $260,000 payment, May had to obtain a new home mortgage loan. May obtained her new loan through PacShores Mortgage, Inc. ("PacShores"), a broker which connected high-risk borrowers with non-traditional lenders, such as investors. Landon – who had no prior connection to May, Cross-Defendants or Plaintiffs – was such an investor, and in a transaction facilitated by PacShores, Landon agreed to make the Landon Loan (in the amount of $340,000) to May, which was to be secured by a first position deed of trust recorded against the May Property.

74.     First American is informed and believes that PacShores opened an escrow on behalf of May and Landon to facilitate the closing of the Landon Loan. The escrow instructions stated, in all-caps: "THIS LOAN MUST RECORD IN 1ST LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE."

75.     First American is informed and believes, and on that basis alleges, that in order to cause Landon and the escrow holder to believe that the Landon Deed of Trust would record in first position (as required by Landon's closing instructions for the Landon Loan to close), Bell executed a "Substitution of Trustee and Full Reconveyance" of the May Deed of Trust (the "May Reconveyance"). Bell signed the May Reconveyance as the president of "Americas [sic] Wholesale Lender, a New York Corporation."

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

14

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

76.     First American is informed and believes, and on that basis alleges, that based on the escrow holder's receipt of the May Reconveyance from Cross-Defendants, the Landon Loan in the amount of $340,000 was funded, the escrow for the Landon Loan closed, and at least $200,000 of the proceeds of the Landon Loan was disbursed to Cross-Defendants. In connection with the closing of the Landon Loan, First American issued a policy of title insurance to Landon.

## THE HAMILTON LOAN

77.     First American is informed and believes, and based thereon alleges, that on or about April 25, 2005, the Hamiltons obtained the Hamilton Loan from Countrywide.

78.     The Hamilton Loan was secured by the Hamilton Deed of Trust, recorded against the Hamilton Property.

79.     Like the May Deed of Trust, the Hamilton Deed of Trust identified "America's Wholesale Lender," a "Corporation organized and existing under the laws of New York," as the lender.

80.     Ryzman is a non-profit 501(c)(3) organization with its principal place of business in Los Angeles, California.

81.     In mid-2011, two real estate brokers approached Ron Sentchuk, an investment advisor to Ryzman, with an opportunity to purchase four distressed loans from what the brokers believed was Countrywide. In reality, the offer had come from Cross-Defendants, who had no interest, whatsoever, in the distressed loans. Sentchuk, in turn, brought this investment opportunity to Brian Dror at Ryzman.

82.     Ultimately, Ryzman elected to purchase one of the four loans that were purported for sale, i.e., the Hamilton Loan. Specifically, Ryzman agreed to purchase the Hamilton Loan (and the associated note and deed of trust) for $925,000. Similar to the scam which they perpetrated against May, Cross-Defendants planned to provide Ryzman with a recordable instrument executed by AWLI, purporting to

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

20636.1

1 dispose of an asset (the Hamilton Deed of Trust) owned by the similarly-named
2 America's Wholesale Lender (i.e., Countrywide's fictitious business name).
3     83.    On or about August 18, 2011, Van Eck, acting as "Vice President" of
4 "America's Wholesale Lender," executed the Ryzman Assignment, which purported
5 to transfer the beneficial interest in the Hamilton Deed of Trust to Ryzman, even
6 though Van Eck was not authorized by any of Plaintiffs to execute the Ryzman
7 Assignment. Van Eck also signed several other documents in connection with this
8 purported assignment of the Hamilton Loan.
9     84.    First American is informed and believes, and based thereon alleges, that
10 Van Eck delivered the Ryzman Assignment to escrow. Ryzman delivered to escrow
11 funds sufficient to effect the contemplated purchase of the Hamilton Loan. When
12 escrow closed, the escrow holder recorded the Ryzman Assignment and disbursed to
13 Cross-Defendants in excess of $900,000 of Ryzman's money.
14     85.    In connection with the closing of this assignment transaction, Ryzman
15 obtained from First American title insurance coverage for the Ryzman Assignment.
16 **FIRST AMERICAN'S STANDING TO SUE**
17     86.    First American has standing to assert the claims herein as both assignee
18 and subrogee. When Landon and Ryzman each learned of the pendency of the
19 instant litigation, they tendered title insurance claims to First American, seeking
20 indemnification for any losses that they might sustain if any relief were granted
21 against them in the instant litigation.
22     87.    Pursuant to the terms of their respective title insurance policies with
23 First American, First American paid Landon's and Ryzman's claims, thereby fully
24 compensating Landon and Ryzman. First American paid $960,000 to Ryzman and
25 paid $367,557.64 to Landon to fully resolve their respective title insurance claims.
26 Additionally, First American incurred fees and costs in connection with the
27 resolution of these claims (including, without limitation, attorney's fees arising from
28 First American's defense of Landon and Ryzman in this litigation). In connection

16
FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC
20636.1

with the payment of the Ryzman claim, First American obtained an express assignment of rights, and in connection with the payment of the Landon claim, First American received an express assignment of the note and deed of trust pertaining to the Landon Loan.

88.     In addition, the policies of title insurance issued to Landon and Ryzman each provide as follows:

> Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company.

89.     Thus, by operation of contract, First American has "stepped into the shoes" of its insureds for purposes of asserting Landon's and Ryzman's claims against third parties, including Cross-Defendants.

90.     First American is also entitled, by operation of law pursuant to the doctrine of subrogation, to Landon's and Ryzman's rights of recovery against Cross-Defendants for any sums paid by First American as a result of Cross-Defendants' tortious and otherwise-wrongful conduct.

## FIRST CLAIM FOR RELIEF

### (Intentional Misrepresentation – Against All Cross Defendants)

91.     First American repeats and incorporates by reference the allegations contained in paragraphs 54 through 90 hereof.

92.     As the signatory of the Settlement on behalf of AWLI, Bell (on behalf of himself and all of the other Cross-Defendants) falsely represented to May that AWLI (as distinct from Countrywide, or any of Plaintiffs) was the rightful holder of the note evidencing the May Loan, as well as the beneficiary of the May Deed of Trust.

93.     As the signatory of the May Reconveyance, Bell (on behalf of himself and all of the other Cross-Defendants) falsely represented to Landon and the escrow

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

1   holder (who was carrying out Landon's escrow instructions -- including his

2   instruction to record the Landon Deed of Trust in first lien position) that AWLI was

3   the beneficiary of the May Deed of Trust, and that the May Deed of Trust would

4   therefore be released as a lien against the May Property as soon as the May

5   Reconveyance was recorded.

6       94.    As the Signatory of the Ryzman Assignment, Van Eck (on behalf of

7   himself and all of the other Cross-Defendants) falsely represented to Ryzman that

8   AWLI was the beneficiary of the Hamilton Deed of Trust and the holder of the note

9   securing the Hamilton Loan, and that both would therefore be transferred to Ryzman

10  as soon as the Ryzman Assignment was recorded.

11      95.    Van Eck and Bell signed other documents containing false statements in

12  connection with the closings of the Landon Loan and the assignment to Ryzman,

13  which Landon and Ryzman reasonably relied upon.

14      96.    The aforementioned representations were false when made, as neither

15  AWLI nor any of the Cross-Defendants ever had any interest, whatsoever, in the

16  May Loan, the May Deed of Trust, the Hamilton Loan or the Hamilton Deed of

17  Trust.

18      97.    Bell and Van Eck (and all of Cross-Defendants) knew that the

19  aforementioned written representations were false when they were made.

20      98.    Bell and Van Eck (and all of Cross-Defendants) made the

21  aforementioned misrepresentations with the intent that others (including, as set forth

22  above, Landon and Ryzman) would rely upon them.

23      99.    Landon and Ryzman reasonably relied on the aforementioned

24  misrepresentations.

25      100.  As a result of the aforementioned misrepresentations, both Landon and

26  Ryzman (and therefore First American) were harmed and have suffered damages in

27  an amount to be proven at trial.

28

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

101.   Landon's and Ryzman's reliance on the aforementioned misrepresentations was a substantial factor in causing the harm that they suffered.

## SECOND CLAIM FOR RELIEF

### (Concealment – Against All Cross-Defendants)

102.   First American repeats and incorporates by reference the allegations contained in paragraphs 54 through 101 hereof.

103.   Cross-Defendants provided certain documents and information to Landon and Ryzman, as well as their respective agents (i.e., the reconveyance of the May Deed of Trust and the Ryzman Assignment), but Cross-Defendants failed to disclose other important facts (i.e., that none of them actually had any beneficial interest in the May Loan, the May Deed of Trust, the Hamilton Loan or the Hamilton Deed of Trust, and that none of them had any affiliation with Plaintiffs), thereby rendering the documents and information provided deceptive.

104.   Landon and Ryzman did not know the aforementioned concealed facts.

105.   Cross-Defendants intended to deceive Landon and Ryzman by concealing the aforementioned facts.

106.   Landon and Ryzman reasonably relied on Cross-Defendants' deception.

107.   As a result of the aforementioned concealment, Landon and Ryzman (and therefore First American) were harmed and have suffered damages in an amount to be proven at trial.

108.   Landon's and Ryzman's reliance on the aforementioned concealment was a substantial factor in causing the harm that was suffered.

## THIRD CLAIM FOR RELIEF

### (Negligent Misrepresentation – Against All Cross-Defendants)

109.   First American repeats and incorporates by reference the allegations contained in paragraphs 54 through 108 hereof.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

19

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

110. As set forth in paragraphs 92 through 94, above, Bell and Van Eck, on behalf of themselves and the other Cross-Defendants, made certain false representations.

111. Even if Bell and Van Eck (and all of Cross-Defendants) believed that the above-referenced false statements were true, they did not have reasonable grounds for believing that they were true when made.

112. Bell and Van Eck (and all of Cross-Defendants) made the aforementioned misrepresentations with the intent that others (including, as set forth above, Landon and Ryzman) would rely upon them.

113. Landon and Ryzman reasonably relied on the aforementioned misrepresentations.

114. As a result of the aforementioned misrepresentations, both Landon and Ryzman (and therefore First American) were harmed and have suffered damages in an amount to be proven at trial.

115. Landon's and Ryzman's reliance on the aforementioned misrepresentations was a substantial factor in causing the harm that was suffered.

### FOURTH CLAIM FOR RELIEF

### (Negligence – Against All Cross-Defendants)

116. First American repeats and incorporates by reference the allegations contained in paragraphs 54 through 115 hereof.

117. At a minimum, Cross-Defendants' conduct in connection with the Settlement, the closing of the Landon Loan and the Ryzman Assignment was negligent.

118. As a result of the aforementioned negligence, both Landon and Ryzman (and therefore First American) were harmed and have suffered damages in an amount to be proven at trial.

119. Cross-Defendants' negligence was a substantial factor in causing the harm suffered by Landon and Ryzman.



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, et seq. – Against All Cross-Defendants)

120.   First American repeats and incorporates by reference the allegations contained in paragraphs 54 through 119 hereof.

121.   Cross-Defendants engaged in unfair and fraudulent business acts and practices because they impersonated Countrywide through their use of the corporate name "America's Wholeseale Lender, Inc." That business name is deceptively similar to Countrywide's fictitious business name, "America's Wholesale Lender."

122.   Among other things, Cross-Defendants duped May into believing that they (i.e., Cross-Defendants) were actually representatives of her home mortgage lender, Cross-Defendants duped Landon and his escrow company into believing that they (i.e., Cross-Defendants) were representatives of the beneficial holder of the May Deed of Trust (and therefore were authorized to reconvey that deed of trust) and Cross-Defendants duped Ryzman into believing that they were representatives of the beneficial holder of the Hamilton Deed of Trust (and therefore were authorized to assign that deed of trust to Ryzman).

123.   In reality, all May, Landon and Ryzman received in exchange for hundreds of thousands of dollars paid to Cross-Defendants were voidable and unauthorized instruments.

124.   The AWLI Defendants unfair and fraudulent business acts and practices caused Landon, Ryzman and First American to lose money, in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract – Against All Cross-Defendants)

125.   First American repeats and incorporates by reference the allegations contained in paragraphs 54 through 124 hereof.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

126. First American is informed and believes, and based thereon alleges, that Ryzman, on the one hand, and AWLI, on the other hand, entered into a valid and enforceable contract, whereby AWLI agreed to sell to Ryzman the note evidencing the Hamilton Loan and the Hamilton Deed of Trust, in exchange for the sum of $925,000. The instant agreement was memorialized in writing.

127. As set forth above, Ryzman performed it obligations under the contract by tendering the sum of $925,000 to AWLI.

128. First American is informed and believes, and based thereon alleges, that AWLI did not perform its obligations under the contract.

129. As a result of AWLI's breach, Ryzman (and therefore First American) has suffered damages in an amount equal to the total principal and interest payable under the note evidencing the Hamilton Loan.

## SEVENTH CLAIM FOR RELIEF

### (Money Had and Received – Against All Cross-Defendants)

130. First American repeats and incorporates by reference the allegations contained in paragraphs 54 through 129 hereof.

131. First American is informed and believes, and based thereon alleges, that Cross-Defendants received money that was intended to be used for the benefit of Landon and Ryzman. Specifically, Cross-Defendants received at least $200,000 which was to be used to cause the reconveyance of the May Deed of Trust in connection with the closing of the Landon Loan, and Cross-Defendants received $925,000 which was to be used to cause the transfer of the Hamilton Loan and Hamilton Deed of Trust to Ryzman.

132. The above-referenced sums were not used for the benefit of Landon or Ryzman.

133. Cross-Defendants have not returned the above-referenced sums to Landon or Ryzman, which are now due and owing to First American



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

FIRST AMERICAN'S ANSWER AND CROSS-CLAIMS IN RESPONSE TO FAC

20636.1

### EIGHTH CLAIM FOR RELIEF

#### (Indemnity – Against All Cross-Defendants)

134. First American repeats and incorporates by reference the allegations contained in paragraphs 54 through 133 hereof.

135. As a result of the above-referenced tortious conduct by Cross-Defendants, First American has been required to pay claims to its insureds, Landon and Ryzman. In addition, First American has been required to incur attorney's fees in connection with the defense of the claims asserted by Plaintiffs against Landon and Ryzman, among other damages.

136. Therefore, based on principles of total and/or equitable and/or implied indemnity, Cross-Defendants are obligated to fully and/or partially indemnify First American for all of these sums.

### PRAYER

**WHEREFORE**, First American requests that the Court enter judgment in its favor and against Cross-Defendants, as follows:

1. On the first, second, third, fourth and sixth claims for relief, damages in an amount according to proof at trial, including, without limitation, attorney's fees pursuant to the tort of another doctrine;

2. On the fifth claim for relief, restitution pursuant to Cal. Bus. & Prof. Code § 17203;

3. That First American be awarded its costs of suit incurred herein; and

4. For such other and further relief as the Court may deem proper and just.

Dated: March 29, 2013

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By:
KEVIN S. SINCLAIR
Attorneys for Defendant and Cross-Claimant FIRST AMERICAN TITLE INSURANCE COMPANY.

**PROOF OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 6420 Wilshire Boulevard, 17th Floor, Los Angeles, California 90048.

     On March 29, 2013, I served the foregoing document(s) described as: **FIRST AMERICAN TITLE INSURANCE COMPANY'S ANSWER AND CROSSCLAIMS IN RESPONSE TO THE FIRST AMENDED COMPLAINT** on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Nafiz Cekirge, Esq. | Steven C. Vondran, Esq. |
| Robert Edward Boone, III, Esq. | THE LAW OFFICES OF |
| Robert G. Lancaster, Esq. |     STEVEN C. VONDRAN, P.C. |
| BRYAN CAVE LLP | 620 Newport Center Drive, Suite 1100 |
| 120 Broadway, Suite 300 | Newport Beach, California 92660 |
| Santa Monica, California 90401-2386 | |

☑      (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐      (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐      (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

☐      (BY EXPRESS MAIL)  By placing the above documents in the United States mail for Express Mail delivery at 6420 Wilshire Boulevard, 17th Floor, Los Angeles, California 90048, in a sealed envelope addressed as above, with Express Mail postage thereon fully prepaid.

☐      (BY FACSIMILE)  By use of facsimile machine, I faxed a true copy to the addressee(s) listed above at the facsimile number(s) noted after the party's address. The transmission was reported as complete and without error.

     I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

     Executed on March 29, 2013, at Los Angeles, California.

_____
ADELE T. JOHNSON