UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| COUNTRYWIDE HOME LOANS, INC., ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICA'S WHOLESALE LENDER, INC., ET AL., <br><br> Defendants. | Case No.: SACV 12-00242-CJC(ANx) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

## I. INTRODUCTION & BACKGROUND

Plaintiffs Countrywide Home Loans, Inc. ("Countrywide"), Bank of America Corp. ("BAC"), Bank of America, N.A. ("BANA"), Bank of New York Mellon ("BNY"),[1] and Deutsche Bank National Trust Company ("DBN")[2] (collectively,

---

[1] BNY appeared solely in its capacity as the Trustee of: (1) the CHL Mortgage Pass-Through Trust 2006-OA5; (2) the CHL Mortgage Pass-Through Trust 2004-29; (3) the Alternative Loan Trust 2006-4CB; and (4) the Alternative Loan Trust 2005-76.

[2] DBN appeared solely in its capacity as Trustee of the GSAA Home Equity Trust 2005-8.


"Plaintiffs") originally filed this trademark infringement action against Defendants America's Wholesale Lender, Inc. ("AWLI"), Dennis L. Bell, Jan Van Eck, Cheri B. English, and Wendmere Funding, LLC (collectively, "Defendants") on February 13, 2012, (Dkt. No. 1), and filed a Second Amended Complaint ("SAC") in the matter on July 2, 2013, (Dkt. No. 177 ["SAC"]).  On August 30, 2013, Plaintiffs moved for entry of default judgment against Defendants.  (Dkt. No. 222.)  Prior to the Court's ruling on Defendants' motion, Mr. Bell and Ms. English reappeared and moved the Court to set aside the default entered against them.  (Dkt. No. 243.)  The Court therefore denied Plaintiffs' motion for entry of default judgment pending resolution of Mr. Bell and Ms. English's motion.  On November 7, 2013, the Court denied Mr. Bell and Ms. English's motion to set aside default, and ordered Plaintiffs to renew their motion for entry of default judgment.  (Dkt. No. 256.)

Plaintiffs now move for default judgment against the above-named Defendants, excepting Mr. Van Eck, on the second, third, fifth, seventh, eighth, and ninth claims pleaded in their SAC for (1) trademark infringement in violation of 15 U.S.C. § 1114(1); (2) false designation of origin in violation of 15 U.S.C. §1125(A)(1)(a); (3) declaratory relief as to Defendants' use of the "America's Wholesale Lender, Inc." name; (4) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code section 17200 *et seq.*; cancellation of Instruments under California Civil Code section 3412; and (5) declaratory relief as to certain instruments.[3]  (Dkt. No. 222 ["Pls.' Mot. for Default J."].)  For the following reasons, Plaintiffs' motion is GRANTED as to all Defendants, including Mr. Van Eck.[4]

---

[3] Plaintiffs seek cancellation and declaratory relief as to nine unauthorized assignments and reconveyances made by Defendants while presenting themselves to be representatives of Countrywide's fictitious business name "America's Wholesale Lender."  (*See* SAC ¶ 44; *see also* Dkt. No. 222, Exhs. 6–14 (Plaintiffs' proposed orders incorporating declaratory relief and cancellation remedies sought for each of the nine respective assignments and reconveyances.)

[4] Mr. Van Eck has never appeared in this action.  On August 26, 2013, Plaintiffs requested the Clerk enter default against Mr. Van Eck.  (Dkt. No. 213.)  Through no fault of Plaintiffs, default

## II. BACKGROUND

Plaintiffs are national banking and lending corporations that operate in the home lending market. In 1995, Countrywide registered the trademark "America's Wholesale Lender," (SAC ¶ 31), and has used the mark and fictitious business name in connection with its mortgage-lending operations in California and throughout the United States, (SAC ¶¶ 27–29). The fictitious business name has been used to generate more than 3.5 million home loans nationwide, (SAC ¶29), and continues to appear on millions of operative loan documents, (SAC ¶ 33). The "America's Wholesale Lender" mark is currently owned by BAC, (SAC ¶ 32), and was used to originate the loans at issue in this action, (SAC ¶ 44).

In December 2008, Mr. Bell incorporated "America's Wholesale Lender, Inc." as a corporation in the state of New York. (SAC ¶ 34.) Plaintiffs allege that Defendants, who are alleged to have been officers of Mr. Bell's corporation, use that corporate name (the "AWLI mark") and the "America's Wholesale Lender" mark in counterfeit, to impersonate Countrywide. (SAC ¶¶ 37–42.) Plaintiffs further allege that trading on the similarity of the AWLI mark to Countrywide's fictitious business name, Defendants acted in concert to solicit borrowers whose loans were originated by Countrywide and to engage with them in a series of transactions, the results of which were to improperly release the borrowers from their obligations under the liens established by Countrywide. (SAC ¶¶ 42–43.) In some cases, the transactions included court actions between the

---

was not entered. (Dkt. No. 214.) Therefore, the Court hereby enters default against Mr. Van Eck, and further considers Plaintiffs' motion for entry of default judgment as to him as well. Because Mr. Van Eck filed no answer to the Complaint, defaulted on the Cross-Claims asserted against him, filed no opposition to the motion for default judgment on the Cross-Claims, and has shown no willingness to defend any part of this action, the Court believes a default judgment against him is warranted.

borrower and Defendants, using the AWLI mark to hold themselves out as Plaintiffs, in which stipulated judgments were signed to release Plaintiffs' established liens. (SAC ¶ 42.) In other cases, Defendants used the AWLI mark to record fraudulent assignments and reconveyances of loans originated by Countrywide, and thereby achieved the same effect of releasing Plaintiffs' liens. (SAC ¶ 43.) According to Plaintiffs, however, Defendants do not have authority to take any action with respect to Countrywide-originated loans. (*See* SAC ¶ 44.)

At issue here are nine assignments and reconveyances made by Defendants using the AWLI mark while purporting to be "America's Wholesale Lender." They include:

(1) The Wells Loan. In 2006, Countrywide originated a loan to Merry Wells secured by the deed of trust recorded in the Official Records of the Orange County Recorder's Office as Instrument Number 2006-000067191. In 2011, after a court action between Defendants, acting under the AWLI mark, and Ms. Wells, Defendants entered a settlement agreement in which Ms. Wells agreed to a new promissory note executed in favor of AWLI. The deed of trust securing the new promissory note was recorded as Instrument Number 2011-000580144. That deed of trust was later assigned by Mr. Bell to Wendmere Funding, LLC, in an assignment recorded as Instrument Number 2012-000360232. (SAC ¶ 44(b).)

(2) The Nguyen Loan. In 2004, Countrywide originated a loan to Tan Khan Nguyen secured by the deed of trust recorded in the Official Records of the Orange County Recorder's Office as Instrument Number 2004-00938222. In 2011, after a court action similar to that of the Wells Loan, Defendants entered a settlement agreement in which Mr. Nguyen agreed to a new promissory note executed in favor of AWLI. Defendants then recorded a reconveyance of the

original Countrywide loan, which was recorded as Instrument Number 2011-000197448.  (SAC ¶ 44(c).)

(3) The Calco-Crawford Loan.  In 2005, Countrywide originated a loan to Celia Calco-Crawford secured by the deed of trust recorded in the Official Records of the Orange County Recorder's Office as Instrument Number 2005-000829245.  After a court action between Defendants and Ms. Calco-Crawford, in 2011 Defendants executed an "Assignment of Deed of Trust," which purported to assign the original Countrywide-originated deed of trust to AWLI.  That assignment was recorded as Instrument Number 2011-000344047.  Another similar assignment of the Countrywide-originated loan to AWLI was recorded as Instrument Number 2011-000347498.  (SAC ¶ 44(d).)

(4) The Budka Loan.  In 2004, Countrywide originated a loan to Michael and Jan Budka secured by the deed of trust recorded in the Official Records of the Orange County Recorder's Office as Instrument Number 2004-000884675.  In 2011, after a court action between Defendants and the Budkas, Defendants executed an "Assignment of Deed of Trust," which purported to assign the original Countrywide-originated deed of trust to AWLI.  That assignment was recorded as Instrument Number 2011-000360230.  (SAC ¶ 44(e).)

(5) The May Loan.  In 2005, Countrywide originated a loan to Celia May secured by the deed of trust recorded in the Official Records of the Los Angeles County Recorder's Office as Instrument Number 05-3232308.  In 2009, Defendants recorded a reconveyance of that loan using the AWLI mark.  That assignment was recorded as Instrument Number 2011-1445629.  (SAC ¶ 44(f).)

//

(6) The First Robinson Reconveyance. In 2005, Countrywide originated a loan to Andre Robinson secured by the deed of trust recorded in the Official Records of the San Bernardino County Recorder's Office as Instrument Number 2005-0900922. In 2009, Defendants recorded a reconveyance of that loan using the AWLI mark. That reconveyance was recorded as Instrument Number 2009-0436285. (SAC ¶ 44(h).)

(7) The Second Robinson Reconveyance. In 2005, Andre Robinson obtained a second loan from Countrywide, which was recorded as Instrument Number 2005-0900923. In 2009, Defendants, using the AWLI mark, executed a reconveyance of this second loan using the AWLI mark. That reconveyance is recorded as Instrument Number 2009-0436286. (*Id.*)

Each of the assignments and reconveyances at issue was made by Defendants using the AWLI mark, while purporting to act as Countrywide, and more specifically, America's Wholesale Lender. (SAC ¶ 44.) Defendants never had any authority from Countrywide or its successors-in-interest to take action with respect to the abovementioned Countrywide-originated loans, (*id.*), nor did Defendants have any authority to use the America's Wholesale Lender name or trademark in any form, or for any purpose, (SAC ¶ 48).

//

### III. LEGAL STANDARD AND PROCEDURAL REQUIREMENTS

The district court may enter default judgment upon application by a party under Federal Rule of Civil Procedure 55(b). Local Rule 55-1 also requires submission of a declaration with the default application. After a default has been entered by the Clerk of

the Court, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations related to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Thus, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations. Necessary facts not contained in the pleadings, and claims which are legally insufficient, however, are not established by default. *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. *Action S.A. v. Marc Rich & Co. Inc.*, 951 F.2d 504, 508 (2nd Cir. 1991). Relief is limited to the plaintiff's specific demand in its complaint. Fed. R. Civ. P. 54(c).

## IV. ANALYSIS

### a. Procedural Requirements

Plaintiffs satisfied the procedural requirements for default judgment provided in Federal Rule of Civil Procedure 55 and Local Rule 55-1. Pursuant to Rule 55(a), Plaintiffs obtained a default against Defendants, as described above. (*See* Dkt. Nos. 194, 198–200, 202.) In accordance with Local Rule 55-1, Plaintiffs submitted a signed declaration indicating that Defendants defaulted on the SAC by failing to respond to it within the time permitted by law, that Defendants are not infants or incompetent persons, and that the Servicemembers Civil Relief Act does not apply. (Dkt. No. 222-3, Decl. of Nafiz Cekirge in Supp. of Pls.' Mot. ["Cikerge Decl."] ¶¶ 2–7.) Additionally, Plaintiffs served notice of their application for default judgment on Defendants pursuant to Rule 55(b)(2) and Local Rule 55-2. (Cikerge Decl. ¶ 8.) Finally, Plaintiffs' motion complies

with Rule 54(c) because it does not seek relief that differs in kind from, nor exceeds in amount, what was originally demanded in their SAC.[5] (*See* SAC at 45–47.)

### b. Default Judgment and the *Eitel* Factors

Because Plaintiffs have satisfied the procedural requirements necessary for default judgment to issue, the Court now addresses the merits of Plaintiffs' motion. A defendant's default does not automatically entitle a plaintiff to judgment; rather, entry of judgment is based on the court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has articulated that the following factors may be considered by the court in exercising its discretion to award a default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy of the Federal Rules that favors decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon consideration of the *Eitel* factors, the Court finds that default judgment against Defendants is appropriate.

The first *Eitel* factor supports the grant of default judgment. Plaintiffs would suffer prejudice if default judgment were not granted because this action is the only way for them to obtain relief against Defendants. While Plaintiffs could obtain a judgment against Defendants by proceeding to trial, that course of action would prejudice Plaintiffs

---

[5] The declaration of Kevin Sinclair, submitted by First American Title Insurance Company in support of its motion for partial summary judgment, demonstrates that Mr. Van Eck is not an infant or incompetent person, and the Servicemembers Civil Relief Act does not apply to him. (*See* Dkt. No. 224 [Decl. of Kevin Sinclair in Supp. of Mot. for Partial Summ. J. ("Sinclair Decl.")] ¶¶ 2–4.) Further, because Mr. Van Eck never appeared in this action, he need not be served with notice pursuant to Rule 55(b)(2).

by requiring them to prepare for trial and present its case to obtain a judgment despite Defendants' default and failure to defend in this suit.

The Court next considers the second and third *Eitel* factors, the merits and sufficiency of Plaintiffs' substantive claims. Taking Plaintiffs' allegations as true, the Court finds that Plaintiffs have stated valid and meritorious Lanham Act, UCL, and cancellation of instrument claims.

As to the Lanham Act, Plaintiff BAC pleaded a claim under § 1114(1), and Plaintiffs BAC, BANA, and Countrywide pleaded a claim under § 1125(a). (SAC ¶¶ 84–98.) In order to plead a claim for federal trademark infringement under § 1114(1), the plaintiff "must show that it is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet, Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007). "The 'ultimate test' for [federal] unfair competition [under § 1125(a)] is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.' " *Century 21 Real Estate Corp. v. Sandin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (quoting *New W. Corp v. NYM Co. of Ca.*, 595 F.2d 1194, 1201 (9th Cir. 1979)). However, whereas only the registrant of a trademark can plead a claim under § 1114(1), § 1125(a) claims are additionally open to non-owners with a protectable interest in the mark. *See Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d 1213, 1225–26 (9th Cir. 2008) (citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 27:20–21, 32:3, 32:12 (4th ed. 2008)).

The SAC alleges that the "America's Wholesale Lender" mark is a valid, registered mark owned by BAC, (SAC ¶¶ 31–32; *see also* Cekergie Decl. Exhs. 1–2), and that BAC, BANA, and Countrywide all have a protectable interest in that mark, (SAC ¶¶ 32). It additionally demonstrates that when evaluated under the factors for likelihood of

confusion articulated by the Ninth Circuit in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 342, 348 (9th Cir. 1979), the AWLI mark is confusingly similar to Plaintiffs' valid "America's Wholesale Lender" mark. (*See* SAC ¶¶ 34–39.)[6] Plaintiffs have further pleaded sufficient facts to show that Defendants' continued use of the AWLI name, as well as their use of a counterfeit "America's Wholesale Lender" mark in commerce, is likely to confuse and deceive the public, and therefore constitutes infringement in violation of § 1114(1) (as to Plaintiff BAC), and unfair competition in violation of § 1125(a) (as to Plaintiffs BAC, BANA, and Countrywide). (*Id.*)

With respect to Plaintiffs' UCL claim, "[t]he Ninth Circuit has consistently held that . . . actions pursuant to California Business and Professions Code section 17200 are 'substantially congruent' to claims under the Lanham Act." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) (citing *Clearly v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)). Therefore, the Court finds that Plaintiffs' claim under the UCL is sufficiently pleaded and meritorious.

Plaintiffs' claim for cancellation of instruments is similarly sufficiently pleaded and meritorious. Section 3412 of the California Civil Code provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. Civ. Code § 3412. "To plead a cause of action for cancellation of instrument, plaintiff must show that he will be injured or prejudiced if the instrument is not cancelled, and that such

---

[6] *Sleekcraft* established an eight-factor test to determine whether confusion between related goods is likely: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. 599 F.2d at 348–49. At a minimum, the first, third, fourth, sixth, and seventh factors all counsel strongly in favor of finding that the "America's Wholesale Lender" mark and the "AWLI" mark are confusingly similar.

instrument is void or voidable." *Zendejas v. GMAC Wholesale Mortg. Corp.*, No. 1:10-CV-00184 OWW GSA, 2010 WL 2629899, at *7 (E.D. Cal. June 29, 2010).

Plaintiffs allege that Defendants had no authority to make or record the assignments and reconveyances at issue in this suit. (SAC ¶¶ 43, 44, 46, 121.) Plaintiffs further allege that they originated and currently own, or have otherwise been authorized to pursue claims on behalf of the current owners of, the loans at issue in this suit that were made prior to Defendants' fraudulent assignments and reconveyances, (SAC ¶ 44; *see also* Cekirge Decl. ¶¶ 11–13), and that they would be prejudiced without cancellation, (SAC ¶¶ 44, 121). Assuming the truth of Plaintiffs' well-pleaded allegations, Defendants' fraudulent assignments and reconveyances are void, and therefore, subject to cancellation. *See Compass Bank v. Petersen*, 886 F. Supp. 2d 1186, 1195 (C.D. Cal. 2012) ("[A] forged document is void ab initio and constitutes a nullity." (quoting *Schaivon v. Arnaudo Bros.*, 84 Cal. App. 4th 374, 379 (2000))).

The remaining *Eitel* factors also support default judgment. Regarding the fourth *Eitel* factor, the sum sought — $1,425,000 — is large, but given the context and the profits earned by Defendants, the Court does not find such an award to weigh against granting default judgment. *See Wecosign*, 845 F. Supp. 2d at 1082 (noting that an award of $1,023,151.27 would be consistent with other default judgment awards in the context of trademark infringement). As to the fifth factor, Plaintiffs have alleged in their SAC and, substantiated through additional exhibits attached to their application for default judgment, that the possibility of dispute over the material facts is remote. Finally, notwithstanding the federal policy favoring resolution on the merits, Defendants have ceased to litigate the merits of this case, and there does not appear to be any indication

1  that their default resulted from excusable neglect.[7]  Therefore, the sixth and seventh *Eitel*
2  factors also support a grant of default judgment.

### c. Damages

6  Having determined that the motion for default judgment should be granted, the
7  Court now turns to the matter of damages.  Plaintiff BAC, the owner of the "America's
8  Wholesale Lender" mark, seeks damages under the Lanham Act, 15 U.S.C. § 1117.
9  (Pls.' Mot. for Default J. at 22.)  Section 1117(a) provides that upon establishment of a
10 trademark violation under Section 1125, the trademark registrant is entitled, subject to the
11 principles of equity, to recover "(1) defendant's profits, (2) any damages sustained by the
12 plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).  "In assessing profits, the
13 plaintiff shall be required to prove defendant's sales only; defendant must prove all
14 elements of cost or deduction claimed." *Id*.  Additionally, for any violation of
15 § 1114(a)(1), absent extenuating circumstances, monetary relief under 15 U.S.C. §
16 1117(a) shall be trebled when (1) the defendant intentionally used a counterfeit mark in
17 commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale,
18 offering for sale, or distribution of goods; and (4) its use was likely to cause confusion or
19 deceive. 15 U.S.C. § 1117(b); *see also Idaho Potato Comm'n v. G & T Terminal*
20 *Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

22 BAC has established that it is entitled to recover under § 1117(a).  BAC has proven
23 Defendants earned $475,000 from several homeowners through infringement of its

---

[7] On June 7, 2013 and July 18, 2013, the Court granted the motions of AWLI's counsel to withdraw from their representation. (Dkt. Nos. 167, 179.) Because withdrawal of these attorneys left AWLI unrepresented, the Court ordered AWLI to obtain new counsel by August 1, 2013. (Dkt. No. 179.) To date, AWLI has not complied with the Court's order. The Court thus finds that AWLI's non-appearance, like that of its co-Defendants, was not the result of excusable neglect.

"America's Wholesale Lender" mark. (*See* Cekirge Decl., Exh. 3 (showing Defendants' earnings of $215,000 on loan payment); Dkt. No. 33 [Decl. of Dennis Burk ("D. Burk Decl.")] ¶¶ 18–22 (showing Defendants' earnings of $260,000 on loan payment).) Further, the allegations in the SAC, taken as true, as well as other evidence provided in the record, sufficiently establish that Defendants' use of the counterfeit "AWLI" mark was intentional and knowing. (*See* SAC ¶¶ 34–49; Dkt. No. 18 [Decl. of Dennis Bell]; D. Burk Decl.) Therefore, the Court finds that BAC is entitled to treble damages on the $475,000 award, for a total damage award of $1,425,000.

### d. Injunctive Relief

Plaintiffs seek a permanent injunction under 15 U.S.C. § 1116(a) to prevent Defendants from continuing to infringe on their protected marks. In particular, Plaintiffs ask the Court to convert the preliminary injunction currently in place, (Dkt. No. 58), against Defendants into a permanent injunction. The Court finds such action is appropriate here.

A party is entitled to an injunction when a trademark owner's rights are being violated under the Lanham Act. *See* 15 U.S.C. § 1116(a) (vesting the district court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title"). In order to obtain injunctive relief, a plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiffs have established that they have suffered, and will continue to suffer, irreparable injury to their business reputation and customer goodwill caused by Defendants' sale of counterfeit products bearing Plaintiffs' protected marks. (*See* SAC ¶¶ 38, 48.) Monetary damages are inadequate to compensate for Plaintiffs' injuries because business reputation and customer goodwill are extremely difficult to quantify. *See Rent-A-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to . . . goodwill, qualify as irreparable harm."); *Century 21 Real Estate Corp*, 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). The balance of hardships favors granting a permanent injunction because Plaintiffs have suffered, and will continue to suffer, irreparable injury to their reputation and goodwill if an injunction is not issued. In contrast, Defendants have no legal right to continue their fraudulent scheme. *See Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1574 (S.D. Cal. 1996) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration."). Finally, the public interest clearly favors a permanent injunction. The public is entitled to a clear understanding of the source of a product and to distinguish goods among competitors. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 n.14 (citing legislative history of the Lanham Act). Defendants' use of the "America's Wholesale Lender" mark in real estate transactions is likely to mislead members of the public into thinking that they are actually utilizing Plaintiffs' lending-related services.

//

### e. Declaratory Relief

Plaintiffs ask the Court to provide declaratory relief that the assignments and reconveyances conducted by Defendants were void *ab initio*, that they will not have any effect on deed priority or on the validity of other documents associated with the respective Deeds of Trust, and that the void assignment and reconveyances are cancelled and expunged. (*See* Dkt. No. 222, Exhs. 6–14 (Plaintiffs' proposed orders incorporating the declaratory relief sought from the Court).) Plaintiffs' cause of action for declaratory relief was sufficiently well pleaded and meritorious. Plaintiffs would be prejudiced absent such relief, and there seems to be no dispute as to the material facts concerning such relief. Given that the *Eitel* factors have been met, and further given the nature of the action and the harm caused, Plaintiffs have established entitlement to declaratory relief.

### f. Costs and Attorneys' Fees

Pursuant to section 1117, Plaintiffs seek attorney's fees in the amount of $32,100, pursuant to the attorney's fee formula provided in Local Rule 55-3, as well as costs. Plaintiffs are entitled to such fees in this action.

Under § 1117(a), the Court is vested with discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). Trademark violations under Section 1117(a) are considered exceptional "when the infringement is malicious, fraudulent, deliberate or willful." *Moroccanoil Inc. v. Allstate Beauty Products, Inc.*, 847 F. Supp. 2d 1197, 1204 (C.D. Cal. 2012) (quoting *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir.1999)). Courts may consider a defendant's failure to defend as one factor in determining whether the defendant's conduct was willful. *Id.* at 1205 (citing *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010)).

Defendants' infringement is found to have been fraudulent and willful, based both on Defendants' failure to appear and evidence in the record. *(See, e.g.*, SAC ¶¶ 34–49; Decl. of Dennis Bell; D. Burk Decl.)  Plaintiffs may recover attorney's fees in the amount of $32,100.  Further, because Plaintiffs prevailed on their claim under § 1125, they are entitled to recover costs of the action.  *See* 15 U.S.C. § 1117(a); *Wecosign, Inc.,* 845 F. Supp. 2d at 1086.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' application for default judgment, request for attorney's fees and costs, and request for a permanent injunction and declaratory relief are GRANTED.  The preliminary injunction issued by the Court on March 30, 2012, (Dkt. No. 58), shall hereby be made permanent.  Further, the nine assignments and reconveyances involved in this action shall be declared void *ab initio* and cancelled, as per the Court's separate orders issued herewith.

DATED:     December 13, 2013

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE